C.D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiff Ana Patricia Fernandez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ANA PATRICIA FERNANDEZ, an individual,

Plaintiff,

v.

LOS ANGELES COUNTY, THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, WYATT WALDRON, an individual, JOHN ROTH, an individual, SUSAN O'LEARY BROWN, an individual, ALEX VILLANUEVA, in his Official Capacity as Sheriff of Los Angeles County; and DOES 1-10,

Defendants.

Case No.: 2:20-cv-09876 DMG (PDx)

**PLAINTIFF'S OPPOSITION TO DEFENDANT SUSAN O'LEARY BROWN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Hearing Date:    January 29, 2021
Hearing Time:    9:30 a.m.
Courtroom:       8C
Judge:           Hon. Dolly M. Gee

Action Filed: October 27, 2020

# TABLE OF CONTENTS

**Page**

Table of Contents ..................................................................................................... i

Table of Authorities ............................................................................................... iii

Introduction .............................................................................................................. 1

Statement of Facts ................................................................................................... 2

I.    California Penal Code Section 33880 and the Adoption of Los Angeles County's
      Administrative Fee for the Storage and Processing of Seized Firearms ................... 2

II.   The Seizure of Manuel Fernandez's Extensive Firearm Collection and Ana
      Patricia Fernandez's Attempts to Recover It ................................................... 3

Argument .................................................................................................................. 5

I.    Legal Standard ............................................................................................... 5

II.   The Court Should Not Dismiss This Action Based on O'Leary Brown's Qualified
      Immunity Claim .............................................................................................. 5

      A.    The Court Should Not Decide the Fact-based Qualified Immunity Issue on
            the Barebones Record of a Motion to Dismiss ............................................ 6

      B.    O'Leary Brown Is Not Entitled to Qualified Immunity .................................. 7

            1.    Qualified Immunity Does Not Protect O'Leary Brown From Liability
                  Because Her Duties Regarding the Firearms Were Ministerial ........... 7

            2.    Even If Her Actions Were Not Purely Non-Discretionary, O'Leary
                  Brown Is Not Entitled to Qualified Immunity Because Fernandez
                  Alleges the Violation of a Clearly Established Constitutional Right .... 9

                  a.    The Damage to Fernandez's Firearms and the Delay in
                        Releasing Them Violated the Fourth Amendment ...................... 9

                        i.    O'Leary Brown's failure to release Fernandez's firearms
                              once probable cause evaporated to continue the once-
                              lawful seizure violates the Fourth Amendment. ............. 10

                        ii.   O'Leary Brown's handling of Fernandez's firearms
                              permanently damaged the seized property giving more
                              support to Fernandez's Fourth Amendment claim .......... 12

                  b.    O'Leary Brown Knew, or Reasonably Should Have Known,
                        That Recklessly Storing, Unreasonably Withholding, and
                        Greatly Damaging Seized Property Under Her Control
                        Violates Clearly Established Fourth Amendment Rights ......... 13

i

III.    Rule 5.1 Does Not Apply to As-Applied Challenges; But if it Does, Failure to Provide Rule 5.1 Notice Is Not Grounds for Dismissal ........................................... 16

IV.    The Complaint States Valid Federal Claims for Declaratory Relief, So the Court Has Supplemental Jurisdiction ................................................................................. 18

Conclusion ............................................................................................................................ 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii
TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
   781 F.2d 1393 (9th Cir. 1986) ................................................................... 19

*Am. Fire, Theft & Collision Mgrs., Inc. v. Gillespie*,
   932 F.2d 816 (9th Cir. 1991) ...................................................................... 6

*Anderson v. Creighton*,
   483 U.S. 635 (1987) .................................................................................. 14

*Ashcroft v. al-Kidd*,
   562 U.S. 731 (2011) .................................................................................. 13

*Bonds v. Cox*,
   20 F.3d 697 (6th Cir. 1994) ...................................................................... 12

*Brewster v. Beck*,
   859 F.3d 1194 (9th Cir. 2017) ............................................... 10, 11, 14, 15

*Brosseau v. Haugen*,
   543 U.S. 194 (2004) .................................................................................. 13

*City of Garden Grove v. Super. Ct.*,
   157 Cal. App. 4th 355 (2007) ..................................................................... 8

*Dahl v. Palo Alto*,
   372 F. Supp. 647 (N. D. Cal. 1974) ......................................................... 11

*Davis v. Scherer*,
   468 U.S. 183 (1984) .................................................................................... 7

*Doe v. United States*,
   419 F.3d 1058 (9th Cir. 2005) .................................................................... 5

*F.E. Trotter, Inc. v. Watkins*,
   869 F.2d 1312 (9th Cir. 1989) .................................................................... 7

*Figueroa v. Gates*,
   120 F. Supp. 2d 917 (C.D. Cal. 2000) ....................................................... 7

*Florida v. Jimeno*,
   500 U.S. 248 (1991) .................................................................................... 7

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................ 10, 19

*Galbraith v. Cty. of Santa Clara*,
   307 F.3d 1119 (9th Cir. 2002) .................................................................... 7

TABLE OF AUTHORITIES

*Gooden v. Howard Cty., Md.*,
   917 F.2d 1355 (4th Cir. 1990) ........................................................................... 6

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ................................................................................. 6, 9

*Hartman v. United Bank Card, Inc.*,
   291 F.R.D. 591 (W.D. Wash. 2013) ................................................................... 18

*Hope v. Pelzer*,
   536 U.S. 730 (2002) ................................................................................... 16

*Hydrick v. Hunter*,
   500 F.3d 978 (9th Cir. 2007) .......................................................................... 6, 7

*Jessop v. City of Fresno*,
   918 F.3d 1031 (9th Cir. 2019) ....................................................................... 10, 16

*K.B. v. Waddle*,
   764 F.3d 821 (8th Cir. 2014) ............................................................................. 8

*Kisela v. Hughes*,
   -- U.S. --, 138 S. Ct. 1148 (2018) ..................................................................... 13

*L.A. Police Protective League v. Gates*,
   995 F.2d 1469 (9th Cir. 1992) ........................................................................... 6

*Lavan v. City of Los Angeles*,
   693 F.3d 1022 (9th Cir. 2012) .......................................................................... 10

*Liston v. Cty. of Riverside*,
   120 F.3d 965 (9th Cir. 1997) ........................................................................... 14

*Manuel v. City of Joliet*,
   -- U.S. --, 137 S. Ct. 911 (2017) ...................................................................... 10

*Miller v. Rykoff-Sexton, Inc.*,
   845 F.2d 209 (9th Cir. 1988) ........................................................................... 19

*Newsome v. Erwin*,
   137 F. Supp. 2d 934 (S. D. Ohio 2000) ............................................................... 12

*Ohio v. Robinette*,
   519 U.S. 33 (1996) ..................................................................................... 7

*Porter v. Jones*,
   319 F.3d 483 (9th Cir. 2003) ............................................................................ 5

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984) ............................................................................ 5

*Romero v. Kitsap County*,
   931 F.2d 624 (9th Cir. 1991) ............................................................................ 6

iv

TABLE OF AUTHORITIES

*Sandoval v. Cty. of Sonoma,*
   72 F. Supp. 3d 997 (N.D. Cal. 2014) ................................................................ 10

*Saucier v. Katz,*
   533 U.S. 194 (2001) ................................................................................... 9, 13

*Segura v. United States,*
   468 U.S. 796 (1984) ........................................................................................ 15

*Soldal v. Cook County,*
   506 U.S. 56 (1992) .......................................................................................... 15

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.,*
   No. 18-cv-02980, 2020 U.S. Dist. LEXIS 204396 (D. Ariz. Nov. 2, 2020) ................ 17

*Thompson v. Souza,*
   111 F.3d 694 (9th Cir. 1997) .............................................................................. 7

*Tsc Indus. v. Northway,*
   426 U.S. 438 (1976) ........................................................................................ 11

*United States v. City of Redwood City,*
   640 F.2d 963 (9th Cir. 1981) .............................................................................. 5

*United States v. Jacobsen,*
   466 U.S. 109 (1984) ..................................................................... 10, 12, 14, 16

*United States v. Lynch,*
   137 U.S. 280 (1890) ........................................................................................ 17

*United States v. Place,*
   462 U.S. 696 (1983) ......................................................................... 10, 11, 15

*Wood v. Strickland,*
   420 U.S. 308 (1975) .......................................................................................... 9

**Statutes**

28 U.S.C. § 1367 ................................................................................... 18, 19

42 U.S.C. § 1983 .................................................................................... 1, 18

Cal. Gov't Code § 945.6 ..................................................................................... 5

Cal. Penal Code § 12021.3 ................................................................................. 2

Cal. Penal Code § 33880 ................................................................. 2, 12, 17

**Other Authorities**

Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release
  Application 3, *available at*
  https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ler.pdf (last
  accessed Jan. 8, 2021)...............................................................................3

City of Redondo Beach, Recover Firearms,
  https://www.redondo.org/depts/police/police_services/property_and_evide
  nce/recover_firearms.asp (last accessed Oct. 26, 2020)...................................3

Custodian, Merriam-Webster.com, https://www.merriam-
  webster.com/dictionary/custodian (last accessed Jan. 7, 2020) ...................15

Fed. R. Civ. P. 8 .........................................................................................5

Fed. R. Civ. P. 5.1 ....................................................................... 16, 17, 18

Fed. R. Civ. P. 12 .......................................................................................5

Fed. R. Civ. P. 15 .....................................................................................10

U.S. Const., amend. IV ........................................................................*passim*

U.S. Const., amend. VIII...........................................................................9

U.S. Const., art. III ..................................................................................18

TABLE OF AUTHORITIES

**INTRODUCTION**

In June 2018, Defendant Los Angeles Sheriff's Department seized well over 400 firearms from Plaintiff Ana Patricia Fernandez's now-deceased husband, Manuel Fernandez. At the time of the seizure, Mr. Fernandez was prohibited from owning firearms and, on an anonymous tip, Defendant LASD Officer Wyatt Waldron and Detective John Roth executed a warrant to search Mr. Fernandez's properties and dispossess him of his firearm collection. They arrested Mr. Fernandez arrested and charged him with unlawful possession of firearms. But sadly, Mr. Fernandez passed away, and the charges against him were dropped. Upon his passing, Mrs. Fernandez, became the sole owner of the firearms, which remained in LASD's custody under the care of Defendant Susan O'Leary Brown, the Property Custodian at the Palmdale Station.

When Fernandez tried to retrieve her firearms so they could be sold at auction, she learned that she would have to pay $54 *per firearm*—a fee that Defendant County of Los Angeles enacted to cover its "administrative costs." Because such a fee would amount to *tens of thousands of dollars*, an amount likely exceeding the costs incurred in seizing, processing, and storing the firearms (in violation of state law), Fernandez tried to negotiate a more reasonable fee that would reimburse LASD's *actual* costs. The defendants refused. And Fernandez paid the fee under protest to ensure that defendants would promptly return her property and to prevent the firearms' lawful destruction under state law. After paying over $24,000, Fernandez discovered that, while her firearms were in defendants' custody, they were handled and stored so poorly that significant damage was done to them—leading to nearly $100,000 in lost value when the firearms were sold.

Fernandez sued in this Court under 42 U.S.C. § 1983, alleging that (as relevant to this motion) O'Leary Brown's conduct violated her rights under the Fourth Amendment to the United States Constitution. She also raised several supplemental state-law claims. O'Leary Brown now brings a motion to dismiss, claiming primarily that the doctrine of qualified immunity protects her from liability for violating Fernandez's constitutional rights. If the federal claim against her is dismissed, she continues, the Court should refuse

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

to exercise supplemental jurisdiction to hear Fernandez's related state claims.

The motion should be denied because O'Leary Brown's role regarding the seized property was purely ministerial, not discretionary, and qualified immunity does not protect the performance of ministerial functions. But even if O'Leary Brown's conduct was discretionary, Fernandez's complaint has sufficiently alleged, for purposes of a motion to dismiss, that O'Leary Brown's conduct violated Fernandez's "clearly established" rights under the Fourth Amendment. Because Fernandez has properly pleaded her federal claims, the Court should exercise supplemental jurisdiction over the related state-law claims. But, if the Court harbors any concern over the specificity of the allegations against O'Leary Brown, Fernandez should be granted leave to amend.

## STATEMENT OF FACTS

**I.     CALIFORNIA PENAL CODE SECTION 33880 AND THE ADOPTION OF LOS ANGELES COUNTY'S ADMINISTRATIVE FEE FOR THE STORAGE AND PROCESSING OF SEIZED FIREARMS**

State law authorizes California cities, counties, and state agencies to impose, at their discretion, a charge "equal to its administrative costs relating to the seizure, impounding, storage, or release of any firearm, ammunition feeding device, or ammunition." Cal. Penal Code § 33880(a) (former Cal. Penal Code § 12021.3). Any fee set by local authorities to recover these costs, however, "shall not exceed the actual costs incurred for the expenses directly related to taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner." *Id.* § 33880(b). Interestingly, if localities choose to impose such a fee, they may waive it for those with proof that the firearm had been reported stolen by the time law enforcement had taken control of it. *Id.* § 33880(c).

In 2005, under this authority, Defendant Los Angeles County adopted a "fee" of $54 per firearm seized—purportedly to recover the costs of processing and storing the seized property. Compl. ¶ 22. In a letter supporting the "fee's" enactment, then-Sheriff Baca submitted a cost breakdown alleging that for each firearm seized, LASD personnel devoted about 90 minutes of work, costing the department about $54. *Id.* ¶¶ 22-26. Sheriff

Baca added: "an analysis of firearms evidence processing over a four-year period revealed that potentially 500 guns per year would be eligible for the administrative fee" and the fee "would yield additional revenue of approximately $27,000 each year." *Id.* ¶ 27.

Expecting that about 500 firearms would be subject to the fee annually, the County likely did not consider the actual costs related to seizing a collection of about that many firearms from a single firearm owner at once. *Id.* ¶¶ 2, 44. More probable, it was contemplating the seizure of either individual firearms or small collections from many different sources, requiring unique processing and data entry for each gun. *Id.* When police seize hundreds of firearms from the same source, however, much of the data (and consequently work) is the same for each firearm, significantly reducing the time necessary to process each firearm. *Id.* ¶¶ 40-45. Other localities, likely recognizing this reality, have adopted a fee structure where the fee per firearm is reduced for every firearm but the first. *Id.* ¶ 30. For example, the city of Redondo Beach, following the lead of the California Department of Justice's Law Enforcement Gun Release Program, charges $20 for the first firearm and just $3 for each additional firearm. *Id.* If the firearms the city releases the firearms directly to a licensed firearm dealer, it waives the fee altogether. *Id.*[1] The County, however, opted not to adopt a fee structure that considers the reduced time it takes when police seize multiple firearms from a single person. *Id.* ¶ 22.

## II.   THE SEIZURE OF MANUEL FERNANDEZ'S EXTENSIVE FIREARM COLLECTION AND ANA PATRICIA FERNANDEZ'S ATTEMPTS TO RECOVER IT

Plaintiff Ana Patricia Fernandez's late husband, Manuel Fernandez was prohibited from owning firearms because of a felony conviction stemming from 2009. Compl. ¶ 31. In the summer of 2018, acting on an anonymous tip, Defendant LASD, including Defendants Wyatt Waldron and John Roth, executed multiple search warrants, seizing Mr.

---

[1] *See* City of Redondo Beach, Recover Firearms, https://www.redondo.org/depts/police/police_services/property_and_evidence/recover_firearms.asp (last accessed Jan. 8, 2021); *see also* Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release Application 3, *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ler.pdf (last accessed Jan. 8, 2021).

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

Fernandez's valuable collection of over 400 firearms, as well as several ammunition magazines and speed loaders. *Id.* ¶¶ 32-36. According to a report by Detective Roth, 458 of the seized firearms were legal to possess in California so long as the person in possession was otherwise not prohibited from possessing firearms generally. *Id.* ¶ 37.

After Mr. Fernandez was charged for his unlawful possession of firearms, but before any trial, he passed away and the charges against him were dismissed. *Id.* ¶ 38. Ownership of the firearms then passed to his wife, the plaintiff. *Id.* ¶ 39. When Mrs. Fernandez tried to retrieve her property, however, she learned that she would have to pay the County's $54 *per-firearm* "fee" to recover the firearms. *Id.* Ultimately, applying the County's per-firearm "fee" to Fernandez's extensive collection would result in an exorbitant cost of tens of thousands of dollars. That "fee," Fernandez alleges, far exceeds the actual costs the County incurred because the total fee did not consider that a single person owned all the seized firearms and a single person requested their return, thus requiring less time per firearm to process. *Id.* ¶¶ 40-45. Fernandez thus offered to pay an amount reflecting the County's actual costs. *Id.* ¶ 46. Defendants would not budge, refusing to negotiate and demanding that Fernandez pay *$24,354* to recover her property. *Id*. Fearing the destruction of the firearms, Fernandez paid the "fee" under protest, informing attorneys for the County that she was paying "to stop any claim that the continued storage of the firearms justifie[d] the current or any additional storage fees." *Id.* ¶ 47. But she remained open to negotiating a reasonable lower fee with the County. *Id*.

Fernandez requested that the County release the firearms to Carol Watson's Orange Coast Auctions, a properly licensed firearm dealer, to be sold at auction. *Id.* The firearms had been stored at the Palmdale Sheriff's Station, under the care of Defendant Property Custodian Susan O'Leary Brown. *Id.* ¶ 11. Upon release of the firearms, Fernandez discovered significant damage to her property resulting from them being in defendants' custody. *Id.* ¶ 49. Photographs taken by auction house personnel at the police station show how poorly defendants handled and stored the firearms. *Id.* For instance, dozens of long guns were packed together tightly in plastic bins. *Id.* Handguns were thrown haphazardly

4

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

on top of each other. *Id.* They were not stored in separate envelopes or boxes that would have protected them from damage. *Id.* Ultimately, the auction house estimated that the damage to the firearms led them to sell for about $96,000 less than they would have had defendants not damaged them. *Id.*

Fernandez timely submitted a Government Tort Claim form to the county of Los Angeles on February 24, 2020. *Id.* ¶ 4. The County served its rejection of Fernandez's claim on April 28, 2020, giving Fernandez until October 28, 2020 to sue under California Government Code § 945.6, *id.*, and Fernandez timely sued in this Court. Defendant O'Leary Brown now brings this motion to dismiss all Fernandez's claims.

## ARGUMENT

### I.   LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is very rare. Indeed, it is "only the *extraordinary* case in which dismissal is proper" for failure to state a claim. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (emphasis added). A court may dismiss a claim only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). To survive a Rule 12(b)(6) motion to dismiss, then, "a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). That is, a plaintiff need provide just a short and plain statement showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2). What's more, courts must view the complaint "in the light most favorable to the plaintiff, taking all allegations as true, and drawing all reasonable inferences from the complaint in [her] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Doing so here, leads to the unmistakable conclusion that dismissal (especially with prejudice) is improper.

### II.   THE COURT SHOULD NOT DISMISS THIS ACTION BASED ON O'LEARY BROWN'S QUALIFIED IMMUNITY CLAIM

The doctrine of qualified immunity shields "government officials performing

*discretionary* functions . . . from liability for *civil damages*[2] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). In analyzing O'Leary Brown's qualified immunity defense, the Court must identify: (1) "the specific right allegedly violated; (2) . . . whether that right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters; and (3) . . . whether a reasonable officer could have believed lawful the particular conduct at issue." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991) (citing *Gooden v. Howard Cty., Md.*, 917 F.2d 1355, 1361 (4th Cir. 1990).

For the reasons described below, the Court should refrain from deciding these highly fact-specific issues at this stage. But if the Court holds that it is proper to decide them now, it should hold that the doctrine of qualified immunity does not shield O'Leary Brown from liability. For the conduct Fernandez alleges violated her rights was undertaken in the exercise of a ministerial, not discretionary, function. But even if O'Leary Brown were engaged in discretionary acts, a reasonable person in her shoes would have understood that the conduct would violate Fernandez's clearly established rights under the Fourth Amendment.

### A. The Court Should Not Decide the Fact-based Qualified Immunity Issue on the Barebones Record of a Motion to Dismiss

As an initial matter, "a motion to dismiss on qualified immunity grounds puts the court in the difficult position of deciding 'far-reaching constitutional questions on a non-existent factual record.' " *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007) (citation omitted), *vacated on other grounds by Hunter v. Hydrick*, 556 U.S. 1256 (2009). Courts

---

[2] " 'Qualified immunity . . . does not bar actions for declaratory or injunctive relief.' " *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993) (quoting *Am. Fire, Theft & Collision Mgrs., Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991)). It protects only against the imposition of personal liability for money damages. *Id.* Because Fernandez seeks both damages *and* equitable relief, Compl., Prayer for Relief ¶¶ 2, 4-5, if qualified immunity attaches at all, it does not justify dismissing O'Leary Brown from the suit altogether.

6

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

1  should thus be "cautious not to eviscerate the notice pleading standard in suits where

2  qualified immunity is at issue." *Id.* at 985-86 (citing *Galbraith v. Cty. of Santa Clara*, 307

3  F.3d 1119, 1125-26 (9th Cir. 2002)). They should also be careful when asked to decide the

4  issue of qualified immunity on motion to dismiss because it is, in large part, a fact-based

5  inquiry. *See Figueroa v. Gates*, 120 F. Supp. 2d 917, 920-21 (C.D. Cal. 2000) (holding

6  that the issue of city officials' "good faith compliance" with the law, an element of

7  qualified immunity, was not appropriately decided on motion to dismiss).

8          This is especially true here, where plaintiff has alleged the defendant has violated

9  her rights under the Fourth Amendment, " 'the touchstone of [which] is reasonableness.' "

10 *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250

11 (1991)). And "the 'reasonableness' of a search or seizure[] is a fact-intensive inquiry that

12 cannot be determined at this stage." *Hydrick*, 500 F.3d at 993 (citing *Thompson v. Souza*,

13 111 F.3d 694 (9th Cir. 1997)). Indeed, "[i]t is impossible to make such a fact-specific

14 determination when the precise circumstances of the searches or seizures are not before

15 the court and when the [d]efendants have not yet had a chance to justify the alleged

16 searches or seizures." *Id.*

17         In short, the determination of whether O'Leary Brown, the Property Custodian at

18 the Palmdale Station, knew or reasonably should have known that her conduct would

19 violate Fernandez's constitutional rights is not appropriate on a motion to dismiss.

20         **B.      O'Leary Brown Is Not Entitled to Qualified Immunity**

21                 **1.      Qualified Immunity Does Not Protect O'Leary Brown From
                             Liability Because Her Duties Regarding the Firearms Were
22                           Ministerial**

23 O'Leary Brown argues that Fernandez's federal claim is barred by qualified

24 immunity, Def. O'Leary Brown's Mot. to Dismiss ("O'Leary Brown Mot.") 4-7, but

25 qualified immunity shields only actions taken under discretionary functions. *F.E. Trotter,*

26 *Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989). Indeed, the Supreme Court's

27 doctrine "grants qualified immunity to officials in the performance of discretionary, but

28 not ministerial, functions." *Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984). A ministerial

function is one "which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [her] own judgment or opinion concerning the propriety of the act to be performed." *K.B. v. Waddle*, 764 F.3d 821, 825 (8th Cir. 2014). What's more, in California, a police department's role "with respect to seized property" "is primarily one of custodian for the court." *City of Garden Grove v. Super. Ct.*, 157 Cal. App. 4th 355, 366 (2007). "[I]ts duties insofar as looking after the property and ensuring its safe transfer are plainly ministerial. No special discretion, judgment or skill is called for. . .." *Id.* at 367.

In her role as a property custodian for LASD, O'Leary Brown has limited discretion, if any, over how she keeps seized property on behalf of the court under the policies she is mandated to follow. Those policies are made clear in LASD's "Manual of Policy and Procedures." Volume 5, chapter 4, section 070.00 of the manual describes LASD's policies for storage of property and evidence, specifically commanding that "all property/evidence items shall be stored in a secure manner in a secure facility." Compl. ¶ 51. Further, high value items must be stored in a safe, and large collections that cannot be safely stored at the station must be immediately transferred to Central Property and Evidence. *Id.*

Fernandez has alleged that all of this was disregarded, leading to the extensive damage to her firearms resulting in a nearly $100,000 loss when they were sold at auction. *Id.* ¶ 50. There is no room for discretion here. And with the firearms so extensively damaged and stored together so poorly, *id.* ¶ 49, it is undisputable that O'Leary Brown was not following department policy about proper storage procedures to prevent exactly this kind of damage. Similarly, O'Leary Brown was bound to release the firearms once probable cause for their seizure dissipated and no reasonable and lawful justification for the further retention of the property remained, but she did not. For these reasons, O'Leary Brown cannot claim qualified immunity as a defense to her failure to safeguard and then to timely release Fernandez's firearms.

///

### 2. Even If Her Actions Were Not Purely Non-Discretionary, O'Leary Brown Is Not Entitled to Qualified Immunity Because Fernandez Alleges the Violation of a Clearly Established Constitutional Right

Again, qualified immunity protects government officials from liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Harlow*, 457 U.S. at 818. Thus, a defense of "qualified immunity will be defeated if an official '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury[.]" *Id.* at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). So even if the Court determines that O'Leary Brown was engaged in discretionary acts, opening the door to a qualified immunity defense, to establish her immunity, O'Leary Brown must show that Fernandez has either failed to allege the violation of a constitutional right, or failed to show that the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under a faithful application of this test, a reasonable jury could find that the defendants, including O'Leary Brown, violated Fernandez's "clearly established" Fourth Amendment rights. Dismissal on this ground is thus improper.

### a. The Damage to Fernandez's Firearms and the Delay in Releasing Them Violated the Fourth Amendment

Oddly, O'Leary Brown contends that she had nothing to do with the imposition of the administrative fee on Fernandez, O'Leary Brown Mot. 6-7, but Fernandez does not allege that she had, given that her Eighth Amendment cause of action names only Los Angeles County, LASD, and Sheriff Villanueva. Compl. ¶ 65. Fernandez alleges just one federal claim against O'Leary Brown—violation of the Fourth Amendment right to be secure from unreasonable seizures. Compl. ¶¶ 67-75. In support of that claim, she alleges that O'Leary Brown, as the Property Custodian at the Palmdale Sheriff's Station where Fernandez's firearms were kept, is responsible for both the delay in returning the firearms following Mr. Fernandez's death, as well as the damage done to the firearms while they

9

were under O'Leary Brown's custody and control. Compl. ¶¶ 11, 67-75.[3] As explained below, Fernandez has sufficiently alleged that O'Leary Brown's conduct violated her rights under the Fourth Amendment to the United States Constitution.

        i.    *O'Leary Brown's failure to release Fernandez's firearms once probable cause evaporated to continue the once-lawful seizure violates the Fourth Amendment.*

      The Fourth Amendment protects against searches made "unreasonable" by the government's refusal to return property validly seized. The Supreme Court has long held that "[a] seizure lawful at its inception can nevertheless violate the Fourth Amendment because the manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[.]" *Jacobsen*, 466 U.S. at 124 (citing *United States v. Place*, 462 U.S. 696, 707-10 (1983)).[4] And the Ninth Circuit has confirmed that "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) (citing *Jacobsen*, 466 U.S. at 123 & n.25; *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030-31 (9th Cir. 2012); *Manuel v. City of Joliet*, -- U.S. --, 137 S. Ct. 911, 914, 920 (2017)). To the contrary, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. *Thereafter, the government must cease the seizure or secure a new justification*." *Brewster*, 859 F.3d at 1197. If it does neither, a seizure reasonable at its inception becomes unreasonable. *Id.* (emphasis added).[5]

---

[3] If this Court has concerns that Plaintiffs' complaint does not sufficiently allege that O'Leary Brown, as the relevant Property Custodian, was ultimately responsible for the delay in releasing and the damage done to Fernandez's firearms, the Court should grant Fernandez leave to file a first amended complaint to include such allegations. "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded . . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[4] *See also Sandoval v. Cty. of Sonoma*, 72 F. Supp. 3d 997, 1004 (N.D. Cal. 2014) (holding that the Fourth Amendment "is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual").

[5] *But cf. Jessop v. City of Fresno*, 918 F.3d 1031, 1036 (9th Cir. 2019) (holding that plaintiff did not have an established right under the Fourth Amendment to not have seized property stolen by police officers).

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

1    The relevant question, then, is whether the defendants, including O'Leary Brown as

2    the relevant property custodian, reasonably refused to return the seized firearms to

3    Fernandez when she demanded them. *See Place*, 462 U.S. at 703. But a motion to dismiss

4    is generally an inappropriate avenue to determine questions of reasonableness. *See Dahl v.*

5    *Palo Alto*, 372 F. Supp. 647, 648 (N. D. Cal. 1974) ("The determination of reasonableness

6    is a factual one encompassing the interests of the public, the appropriateness of the means,

7    and the oppressiveness of the action. Such a determination is inappropriate in a motion to

8    dismiss."). Indeed, such a question is ordinarily the function of the trier of fact applying

9    the "reasonable person" standard. *Tsc Indus. v. Northway*, 426 U.S. 438, 450 n.12 (1976).

10   Deciding this question against Fernandez now, would require the Court to view the

11   complaint in a manner unfavorable to Fernandez without the benefit of an evidentiary

12   record supporting such a view, turning the well-settled standard for deciding motions to

13   dismiss on its head.

14   But even if the Court could make this determination at this stage, evaluating the

15   evidence in the light most favorable to Fernandez as the non-moving party, it is clear that

16   O'Leary Brown's conduct was unreasonable. The only justification defendants had for the

17   initial seizure was that Mr. Fernandez was a prohibited person, and the relevant warrants

18   were issued to dispossess him of his firearms. O'Leary Brown Mot. 6. When Mr.

19   Fernandez died, the County dismissed the charges against him and ownership of the

20   seized firearms passed to Mrs. Fernandez, who was *not* prohibited from owning or

21   possessing firearms. Compl. ¶¶ 38, 39. At that point, the initial justification for the seizure

22   expired, requiring defendants to secure a new justification to continue the seizure of the

23   firearms. *See Brewster*, 859 F.3d at 1197. But the only justification for the continued

24   retention of the seized firearms was that Mrs. Fernandez had not yet paid an

25   administrative "fee" of *$24,354* to secure their release. Compl. ¶¶ 46-47. To be sure,

26   continuing an otherwise lawful seizure until the property claimant pays an administrative

27   fee reflecting the actual costs incurred by the government may be permissible under the

28   Fourth Amendment. But holding a citizen's property hostage until she agrees to pay the

11

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

government tens of thousands of dollars—a fee Fernandez alleges far exceeds the costs the government incurred, *id.* ¶¶ 62-64—is patently *un*reasonable.

In short, based on no more than the defendants' unlawful[6] demand that Fernandez pay a "fee" that she alleges far exceeded the actual costs incurred consequent to the seizure of her property, Fernandez unreasonably endured a prolonged wait to retrieve her property. As the property custodian, O'Leary Brown should have released the firearms to their new rightful owner immediately, but instead she delayed. That delay is actionable under the Fourth Amendment.

> ii.    *O'Leary Brown's handling of Fernandez's firearms permanently damaged the seized property giving more support to Fernandez's Fourth Amendment claim.*

What's more, government destruction of property is "meaningful interference" constituting a seizure under the Fourth Amendment. *Jacobsen*, 466 U.S. at 124-25; *see also Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir. 1994). Indeed, "[l]aw enforcement activities that unreasonably damage or destroy personal property, thereby 'seizing' it within the meaning of the Fourth Amendment, may give rise to liability under [section] 1983.'" *Newsome v. Erwin*, 137 F. Supp. 2d 934, 941 (S. D. Ohio 2000).

After being essentially forced to pay over $24,000 for the return of her property, Fernandez discovered that the County's exorbitant "fee" apparently did not include following proper storage procedures for her firearms—procedures that O'Leary Brown was directly responsible for overseeing. The complaint alleges that Fernandez was dismayed to find that the horrendous way defendants stored and handled her firearms led to permanent damage, greatly diminishing the value of the collection. Compl. ¶ 50. Auction house personnel took photographs of the firearms upon their release from O'Leary Brown's control, revealing dozens of long guns improperly packed together in

---

[6]   Recall, Penal Code section 33880, the state law under which a county may levy a charge for "the seizure, impounding, storage, or release of any firearm," makes clear that the fee "shall not exceed the actual costs incurred for the expenses directly related to taking possession of any firearm . . . , storing it, and surrendering possession of it to a licensed firearms dealer or to the owner."

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

plastic bins, handguns thrown haphazardly on top of each other, and firearms otherwise damaged by defendants' poor handling of them. *Id.* ¶ 49. The result was nearly $100,000 in lost value when the guns were sold at auction. *Id.* ¶ 50.

For purposes of a motion to dismiss, Fernandez has sufficiently alleged that her firearms were extensively damaged sometime during their seizure by the defendants and that O'Leary Brown was responsible for the firearms while they were being haphazardly stored during the prolonged seizure. *Id.* ¶¶ 11, 49-53. Like the unjustified delay in returning Fernandez's property, the damage to the firearms is actionable under the Fourth Amendment.

> **b.    O'Leary Brown Knew, or Reasonably Should Have Known, That Recklessly Storing, Unreasonably Withholding, and Greatly Damaging Seized Property Under Her Control Violates Clearly Established Fourth Amendment Rights**

Having shown that she had alleged the violation of a constitutional right, Fernandez next turns to whether O'Leary Brown knew, or should have known, that her conduct violated a "clearly established" constitutional right. *Saucier*, 533 U.S. at 201. "[Q]ualified immunity is lost when plaintiffs point either to 'cases of controlling authority *in their jurisdiction at the time of the incident*' or to 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Ashcroft v. al-Kidd*, 562 U.S. 731, 746 (2011) (Kennedy, J., concurring) (citation omitted). But the Supreme Court "has long rejected the notion than "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful[.]" *Kisela v. Hughes*, -- U.S. --, 138 S. Ct. 1148, 1158 (2018) (Sotomayor, J., dissenting). Instead, the "inquiry boils down to whether [the officer] had 'fair notice' that he acted unconstitutionally." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). This is not an "onerous" standard. *Id.* Fernandez has no trouble meeting it here.

The binding authorities existing when defendants interfered with Fernandez's interest in the firearms provided fair notice that unjustified continued seizure (and substantial damage) implicated the Fourth Amendment. What matters here are the

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

straightforward Supreme Court and Ninth Circuit authorities existing when the

defendants, including O'Leary Brown, acted. Those authorities hold that:

(1)    "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[]," *United States v. Jacobsen*, 466 U.S. 109, 124 (1984);

(2)    A seizure occurs when there is some "meaningful interference with an individual's possessory interest in [their] property," *id.* at 113, and unjustified damage or destruction to seized property can thus support Fourth Amendment liability, *Liston v. Cty. of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997);

(3)    "A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification," *Brewster*, 859 F.3d at 1197; and

(4)    An "unreasonable refusal to release [lawfully] seized property or an unreasonable decision to dispose of the property," *Jacobsen*, 466 U.S. at 113, 123-24 & n.25, implicates the right to be secure in one's property.

As for Fernandez's claims that the damage to her property violated her

constitutional rights, it has long been understood that unnecessarily destructive behavior

violates the Fourth Amendment during an initial seizure. *Liston*, 120 F.3d at 979. There is

no reason to believe that unnecessarily destructive behavior is suddenly acceptable once

the property is in the custody of police at the station. Again, it is generally unnecessary to

find a controlling decision declaring the "very action in question . . . unlawful." *Anderson

v. Creighton*, 483 U.S. 635, 640 (1987). Instead, "in the light of pre-existing law the

unlawfulness must be *apparent*." *Id*. (emphasis added). Thus, it stands to reason that if

unnecessarily destructive behavior at the initial seizure is unlawful, so too is such

behavior after the initial seizure runs its course.

Beyond just decisions interpreting the scope of the Fourth Amendment, however,

O'Leary Brown had other guidance that should have led her to the same conclusion.

Setting aside that a property custodian working for law enforcement should know that

extensively damaging private property violates the owner's rights, LASD has clear

policies related to firearm storage, Compl. ¶ 51, that O'Leary Brown either negligently or

maliciously failed to follow in her role as property custodian. Similarly, as alleged in the

---

14

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

complaint, the California Commission on Peace Officer Standards and Training standards direct agencies to package firearms into appropriate specifically designed firearm storage containers. *Id.* ¶ 52. Instead, Fernandez received her firearms packed tightly together in plastic bins, with pistols piled on top of each other. *Id.* ¶ 49. O'Leary Brown's role as a property custodian must include, at minimum, safeguarding the property in her care. After all, the word "custodian" is defined as "one that guards and protects or maintains."[7] In this most basic duty, the complaint has alleged that O'Leary Brown plainly failed.

Finally, as established above, just because an initial seizure may have been lawful, that does not mean all subsequent action is justified—especially if probable cause is lost. *Brewster*, 859 F.3d at 1197. If no subsequent probable cause is established, a seizure reasonable at its inception *must* cease or it becomes an unreasonable one. *Id*. at 1196-97. Indeed, one cannot square clear directives about the type of seizures the Fourth Amendment protects against the insistence that the government may keep seized property with no justification as long as justification existed for the initial seizure. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992). Ultimately, the idea that the Fourth Amendment's protections dissipate after the initial seizure has no authoritative foundation. For when the justification for a seizure expires, so too does the justification for continued possession. *See United States v. Place*, 462 U.S. 696, 707-10 (1983); *see also Segura v. United States*, 468 U.S. 796, 812 (1984). Further retention of the property then becomes unreasonable, implicating clearly established rights under the Fourth Amendment.

Here, continuing to withhold the guns after Mr. Fernandez's death was unjustified. Indeed, O'Leary Brown knew or should have known that her conduct was unlawful, as the firearms were held under her care long after Mr. Fernandez had passed away and the charges against him dropped. Compl. ¶ 38. Yet she continued to refuse to release the firearms based solely on the defendants' unlawful demand that Mrs. Fernandez pay a

---

[7] Custodian, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/custodian (last accessed Jan. 7, 2020).

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

$24,354 fine to secure their return. *Id.* ¶ 39. There is nothing reasonable about the refusal to end the seizure under these circumstances.

The Ninth Circuit's decision in *Jessop v. City of Fresno*, 918 F.3d 1031 (9th Cir. 2019), does not alter that conclusion. *Jessop* is distinguishable. To be sure, as in *Jessop*, the initial seizure of Fernandez's property was conducted under a lawful warrant. Compl. ¶ 35. But when Mr. Fernandez died and the charges against him were dismissed, that initial lawful seizure ended. *Id.* ¶ 39. Fernandez contends that O'Leary Brown's refusal to release her property *after* that point amounted to an unreasonable seizure because defendants no longer harbored reasonable justification to continue the seizure. *Id.* ¶ 55. This fact is critical. Mr. Fernandez's death and the dismissal of all charges, triggered defendants' obligation to return the property to Mrs. Fernandez, the firearm's new lawful owner. the failure to do so is a Fourth Amendment "seizure" because it constitutes a "meaningful interference with [Fernandez's] possessory interests." *Jacobsen*, 466 U.S. at 113. The *Jessop* plaintiffs could make no similar argument. The police stole their property while probable cause under the initial seizure still existed. *Jessop, supra,* 918 F.3d at 1035. So, unlike this case, in *Jessop* there was no obligation to return the property when the ultimate dispossession occurred.

Ultimately, precedent existing at the time provided "fair notice [to defendants] that their conduct was unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Fernandez has thus sufficiently alleged that O'Leary Brown knew or should have known that her conduct violated Fernandez's clearly established Fourth Amendment rights. Qualified immunity is not a defense to Fernandez's claim.

### III. RULE 5.1 DOES NOT APPLY TO AS-APPLIED CHALLENGES; BUT IF IT DOES, FAILURE TO PROVIDE RULE 5.1 NOTICE IS NOT GROUNDS FOR DISMISSAL

O'Leary Brown correctly notes that Federal Rule of Civil Procedure 5.1 requires a party "that files a pleading, written motion, or other paper drawing into question the constitutionality of a . . . state statute" to promptly file a notice of constitutional question and serve that notice on the state's attorney general if the filing does not name the state or

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

one of its agents. O'Leary Brown Mot. 7 (quoting Fed. R. Civ. P. 5.1(a)). She also correctly notes that Fernandez had not provided such notice right after filing her lawsuit. *Id.* But, in raising this issue in its motion to dismiss, O'Leary Brown assumes that Rule 5.1 applies to as-applied challenges (like this one) or that failure to "promptly" file the required notice would be grounds for dismissal. Both assumptions are incorrect.

First, "[t]he validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority, every time an act done by such authority is disputed. The validity of a statute or the validity of an authority is drawn in question when the existence, or constitutionality, or legality of such statute or authority is denied, and the denial forms the subject of direct inquiry." *United States v. Lynch*, 137 U.S. 280, 285 (1890). What's more, "courts outside the Ninth Circuit have suggested that notice under Rule 5.1 would be required in a case raising a facial preemption challenge *but not* an as-applied challenge." *ThermoLife Int'l LLC v. NeoGenis Labs Inc*., No. 18-cv-02980, 2020 U.S. Dist. LEXIS 204396, at *47 (D. Ariz. Nov. 2, 2020) (emphasis added). Fernandez's claim only challenges state law (Penal Code section 33880) as applied to her by a single County's application of the law in a single instance. The lawsuit does not challenge the validity of section 33880 generally. Rule 5.1 does not apply here.

In any event, to be safe, Fernandez filed a Notice of Constitutional Challenge in this Court and served that notice on Attorney General Becerra on December 9, 2020, just four weeks after service on O'Leary Brown was effected and before any responsive pleading has been filed Ntc. of Const. Challenge of Stat., ECF No. 20; Proof of Service on Susan O'Leary Brown, ECF No. 12. Under any rubric, that notice was made "promptly," as required by Rule 5.1 Indeed, at this early stage, before an answer has been filed, California still has plenty of time to intervene if it so desires. Not long ago, a district court in Washington proceeded with a class action case much further along into the litigation even though the plaintiffs had failed to file a Rule 5.1 notice. The court notified the state itself, and proceeded with the case, writing that it would "entertain a motion for

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

reconsideration if the Washington State Attorney General determines that intervention is necessary." *Hartman v. United Bank Card, Inc*., 291 F.R.D. 591, 600 (W.D. Wash. 2013). As that court noted, Rule 5.1(d) provides that a party's failure to file and serve the notice does *not* forfeit a constitutional claim that is otherwise timely asserted. *Id.*

In summary, Fernandez does not believe a Rule 5.1 notice is required in this as-applied challenge. But one has now been served regardless, and by any reasonable standard, it was promptly filed. Even if the Court considers the filing late, that finding would not doom Fernandez's constitutional claims.

## IV. FERNANDEZ STATES VALID FEDERAL CLAIMS FOR DECLARATORY RELIEF, SO THE COURT HAS SUPPLEMENTAL JURISDICTION

Fernandez has established the validity of her federal claims throughout this brief and in her brief opposing the County's motion to dismiss. At minimum, she has sufficiently alleged federal causes of action under § 1983 to enable her to proceed beyond the pleadings and into discovery. Defendant O'Leary Brown argues that this Court should not exercise supplemental jurisdiction over the claims arising from state law because Fernandez does not state a valid federal claim. O'Leary Brown Mot. 8. But if either of Fernandez's federal claims are valid, then this Court should exercise supplemental jurisdiction over the related state causes of action. 28 U.S.C. § 1367.

What's more, Fernandez has similar claims pending against Los Angeles County, the Los Angeles Sheriff's Department, Susan O'Leary Brown, and Sheriff Villanueva in his official capacity. Even if the Court finds that O'Leary Brown is entitled to qualified immunity as to Fernandez's Fourth Amendment claim, if the Court hears Fernandez's federal claims against the other defendants, the Court retains supplemental jurisdiction over the state law claims against O'Leary Brown as well. Indeed, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include*

18

*claims that involve the joinder or intervention of additional partie*s." 28 U.S.C.S. § 1367 (2020) (emphasis added).

## CONCLUSION

For these reasons, the Court should deny O'Leary Brown's motion to dismiss. But if the Court believes Fernandez has failed to allege sufficient facts supporting her claims, Fernandez should be given a chance to amend her complaint to address the Court's concerns. Indeed, leave to amend should be freely given. *Foman*, 371 U.S. at 182. There is no undue delay, bad faith, or undue prejudice here that would be grounds for denying leave to amend. *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). And amendment would not be futile because Fernandez can, if necessary, better describe O'Leary Brown's actions giving rise to her liability. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."). If the Court determines that the complaint is insufficient, Fernandez requests leave to amend.

Dated: January 8, 2021

MICHEL & ASSOCIATES, P.C.

*s/ Anna M. Barvir*
Anna M. Barvir
*Counsel for Plaintiff Ana Patricia Fernandez*

OPPOSITION TO DEFENDANT O'LEARY BROWN'S MOTION TO DISMISS

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Fernandez, v. Los Angeles County, et al.*
Case No.:    2:20-cv-09876 DMG (PDx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFF'S OPPOSITION TO DEFENDANT SUSUAN O'LEARY BROWN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Henry Patrick Nelson
nelson-fulton@nelson-fulton.com
Amber Logan
amberlogan@nelson-fulton.com
Nelson & Fulton
3435 Wilshire Blvd., Suite 2800
Los Angeles, CA 90010
*Attorneys for Defendants Los Angeles County,*
*The Los Angeles County Sheriff's Department,*
*and Alex Villanueva*

I declare under penalty of perjury that the foregoing is true and correct.

Executed January 8, 2021.

*s/ Laura Palmerin*
Laura Palmerin