C.D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiff Ana Patricia Fernandez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA PATRICIA FERNANDEZ, an individual,<br><br>              Plaintiff,<br><br>    v.<br><br>LOS ANGELES COUNTY, THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, WYATT WALDRON, an individual, JOHN ROTH, an individual, SUSAN O'LEARY BROWN, an individual, ALEX VILLANUEVA, in his Official Capacity as Sheriff of Los Angeles County; and DOES 1-10,<br><br>              Defendants. | Case No.: 2:20-cv-09876 DMG (PDx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS LOS ANGELES COUNTY, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND SHERIFF ALEX VILLANUEVA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hearing Date:    January 29, 2021<br>Hearing Time:    9:30 a.m.<br>Courtroom:        8C<br>Judge:               Hon. Dolly M. Gee<br><br>Action Filed: October 27, 2020 |

# TABLE OF CONTENTS

**Page**

Table of Contents .................................................................................................. i

Table of Authorities ........................................................................................... iii

Introduction .......................................................................................................... 1

Statement of Facts ............................................................................................... 2

I.    California Penal Code Section 33880 and the Adoption of Los Angeles County's Administrative Fee for the Storage and Processing of Seized Firearms ................... 2

II.    The Seizure of Manuel Fernandez's Extensive Firearm Collection and Patricia Fernandez's Attempts to Recover It ........................................................................... 3

Argument .............................................................................................................. 5

I.    Legal Standard .................................................................................................... 5

II.    Fernandez Properly States an Eighth Amendment Claim .......................................... 5

    A.    As Applied to Fernandez, the Per-firearm "Fee" Likely Led to the County Recovering Far More Than Its Administrative Costs, Making it a Punitive Fine .......... 6

    B.    As Applied to Fernandez, the County's Per-firearm Fee Was "Excessive" .... 9

    C.    The Payment of the Purported Fee Did Not Moot Claims to Challenge It .... 10

III.    Fernandez Properly States a Fourth Amendment Claim ......................................... 11

    A.    The County Misunderstands Fernandez's Fourth Amendment Claim .......... 11

    B.    The County's Continued Seizure of Fernandez's Firearms Without Probable Cause Violates the Fourth Amendment ........................................................................ 12

    C.    The County's Abysmal Handling of Fernandez's Firearms Led to Permanent Damage to the Seized Property Giving More Support to Fernandez's Fourth Amendment Claim ..................................................................................................... 14

    D.    The Existence of Post-Deprivation Remedies Does Not Bar Fernandez's Fourth Amendment Claim ............................................................................................. 15

IV.    Fernandez Properly Brings an As-applied Challenge to Policies Enacted by the County and LASD and Enforced by the Sheriff ........................................................... 19

    A.    The County's Per-firearm Fee Is the Relevant Policy Enactment That Caused Fernandez's Harm Under Her Eighth Amendment Claim ................................ 19

    B.    The County's Custom of Ignoring Its Own Property Storage Policies Makes Up Part of Fernandez's Fourth Amendment Claim ....................................................... 21

i

TABLE OF CONTENTS

V.      Rule 5.1 Does Not Apply to As-Applied Challenges; But if it Does, Failure to
        Provide Rule 5.1 Notice Is Not Grounds for Dismissal ........................................... 22

VI.     Fernandez States Valid Federal Claims for Declaratory Relief, So the Court Has
        Supplemental Jurisdiction ........................................................................................... 23

Conclusion ................................................................................................................................. 24

ii

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
781 F.2d 1393 (9th Cir. 1986) ............................................................... 24

*Augustine v. Doe*,
740 F.2d 322 (5th Cir. 1984) ................................................................. 17

*Austin v. United States*,
509 U.S. 602 (1993) ............................................................................. 7, 9

*Barnett v. Centoni*,
31 F.3d 813 (9th Cir. 1994) ......................................................... 16, 17, 18

*Bonds v. Cox*,
20 F.3d 697 (6th Cir. 1994) ................................................................... 15

*Brewster v. Beck*,
859 F.3d 1194 (9th Cir. 2017) ........................................................... 13, 14

*Byrd v. Stewart*,
811 F.2d 554 (11th Cir. 1987) ........................................................... 16, 18

*Cal. Sportfishing Prot. All. v. Pac. States Indus., Inc.*,
No. 15-cv-01482, 2015 WL 5569073 (N.D. Cal. Sept. 22, 2015) ............... 12

*Carey v. Maricopa Cty.*,
602 F. Supp. 2d 1132 (D. Ariz. 2009) ...................................................... 24

*Dahl v. Palo Alto*,
372 F. Supp. 647 (N. D. Cal. 1974) ......................................................... 13

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) ................................................................... 5

*Estelle v. Gamble*,
429 U.S. 97 (1976) ................................................................................. 16

*Foman v. Davis*,
371 U.S. 178 (1962) ............................................................................... 24

*Foti v. City of Menlo Park*,
146 F.3d 629 (9th Cir. 1998) ................................................................... 21

*Gilmere v. City of Atlanta*,
774 F.2d 1495 (11th Cir. 1985) ............................................................... 18

*Hartman v. United Bank Card, Inc.*,
291 F.R.D. 591 (W.D. Wash. 2013) ......................................................... 23

iii

*Hoye v. City of Oakland*,
   653 F.3d 835 (9th Cir. 2011) ...................................................... 21

*Hudson v. Palmer*,
   468 U.S. 517 (1984)........................................................ 16, 17, 18

*Jessop v. City of Fresno*,
   918 F.3d 1031 (9th Cir. 2019) .................................................. 13

*Kescoli v. Babbitt*,
   101 F.3d 1304 (9th Cir. 1996) .................................................. 11

*King v. Massarweh*,
   782 F.2d 825 (9th Cir. 1986) ................................................... 17

*Lavan v. City of Los Angeles*,
   693 F.3d 693 F.3d 1022 (9th Cir. 2012) ................................... 13

*Manuel v. City of Joliet*,
   -- U.S. --, 137 S. Ct. 911 (2017) .............................................. 13

*McKenzie v. Lamb*,
   738 F.2d 1005 (9th Cir. 1984) ................................................. 17

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)............................................................ 19, 22

*Monroe v. Pape*,
   365 U.S. 167 (1961)............................................................ 16, 17

*Newsome v. Erwin*,
   137 F. Supp. 2d 934 (S. D. Ohio 2000) ................................... 15

*Palmer v. Hudson*,
   697 F.2d 1220 (4th Cir. 1983) ................................................. 17

*Parratt v. Taylor*,
   451 U.S. 527 (1981)........................................................ 16, 17, 18

*People v. Dueñas*,
   30 Cal. App. 5th 1157 (2019) .................................................... 8

*Pimentel v. City of Los Angeles*,
   974 F.3d 917 (9th Cir. 2020) ............................................... 10, 11

*Porter v. Jones*,
   319 F.3d 483 (9th Cir. 2003) ..................................................... 5

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984) ..................................................... 5

*Robins v. Harum*,
   773 F.2d 1004 (9th Cir. 1985) .............................................. 17, 18

iv

TABLE OF AUTHORITIES

*Rucker v. Davis*,
   203 F.3d 627 (9th Cir. 2000) ........................................................................ 6

*Sandoval v. Cty. of Sonoma*,
   72 F. Supp. 3d 997 (N.D. Cal. 2014) ........................................................ 12

*Somers v. Dig. Realty Tr., Inc.*,
   119 F. Supp. 3d 1088 (N.D. Cal. 2015) .................................................... 12

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
   No. 18-cv-02980, 2020 U.S. Dist. LEXIS 204396 (D. Ariz. Nov. 2, 2020) ................ 23

*Timbs v. Indiana*,
   -- U.S. --, 139 S. Ct. 682 (2019) ............................................................... 6

*Tsc Indus. v. Northway*,
   426 U.S. 438 (1976) .................................................................................. 13

*United States v. Bajakajian*,
   524 U.S. 321 (1998) ................................................................................ 6, 9

*United States v. City of Redwood City*,
   640 F.2d 963 (9th Cir. 1981) ..................................................................... 5

*United States v. Jacobsen*,
   466 U.S. 109 (1984) ................................................................. 11, 12, 13, 14

*United States v. Lynch*,
   137 U.S. 280 (1890) .................................................................................. 23

*United States v. Place*,
   462 U.S. 696 (1983) ............................................................................. 12, 13

*United States v. Sperrazza*,
   804 F.3d 1113 (11th Cir. 2015) .................................................................. 6

*Wolf-Lillie v. Sonquist*,
   699 F.2d 864 (7th Cir. 1983) ..................................................................... 17

*Wright v. Beck*,
   No. 19-55084, 2020 U.S. App. LEXIS 37463 (9th Cir. Dec. 1, 2020) ................... 10

*Wright v. Riveland*,
   219 F.3d 905 (9th Cir. 2000) ................................................................... 6, 9

*Zinermon v. Burch*,
   494 U.S. 113 (1990) .................................................................................. 16

**Statutes**

28 U.S.C. § 1367 ............................................................................................ 24

42 U.S.C. § 1983 .................................................................................. 1, 16, 21, 24

Cal. Gov't Code § 945.6 ........................................................................... 5

Cal. Penal Code § 12021.3 ........................................................................ 2

Cal. Penal Code § 33880 .................................................................. *passim*

Cal. Penal Code § 34000 ......................................................................... 10

**Other Authorities**

Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release
     Application 3, *available at*
     https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ler.pdf (last
     accessed Jan. 8, 2021) .......................................................................... 3

City of Redondo Beach, Recover Firearms,
     https://www.redondo.org/depts/police/police_services/property_and_evide
     nce/recover_firearms.asp (last accessed Jan. 8, 2021) ............................ 3

*Convicted US Felon Arrested with More Than 500 Guns in California Home*,
     BBC, https://www.bbc.com/news/world-us-canada-
     44537028#:~:text=The%20Los% 20Angeles%20County%20Sheriff's,
     revealed%20the%20massive%20illegal%20arsenal (last visited Dec. 11,
     2020) ................................................................................................... 8

Fed. R. Civ. P. 5.1 ............................................................................. 22, 23

Fed. R. Civ. P. 8 ....................................................................................... 5

Fed. R. Civ. P. 12 ..................................................................................... 5

First Am. Compl. 4-5, *Pimentel v. City of Los Angeles*,
     No. 14-cv-1371 (C.D. Cal. May 21, 2018), ECF No. 29 ....................... 10

Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party
     Standing*, 113 Harv. L. Rev. 1321, 1334 (2000) ................................. 21

Rodney A. Smolla, *The Displacement of Federal Due Process Claims by
     State Tort Remedies:* Parratt v. Taylor *and* Logan v. Zimmerman Brush
     Company, 1982 Univ. Ill. L. Rev. 831, 863 (1982) ............................... 16

U.S. Const., amend. IV ................................................................... *passim*

U.S. Const., amend. VIII ................................................................ *passim*

U.S. Const., amend. XIV ................................................................ 16, 17, 18

## INTRODUCTION

In June 2018, Defendant Los Angeles Sheriff's Department seized well over 400 firearms from Plaintiff Ana Patricia Fernandez's now-deceased husband, Manuel Fernandez. At the time of the seizure, Mr. Fernandez was prohibited from owning firearms and, on an anonymous tip, Defendant LASD Officer Wyatt Waldron and Detective John Roth executed a warrant to search Mr. Fernandez's properties and dispossess him of his firearm collection. They arrested Mr. Fernandez arrested and charged him with unlawful possession of firearms. But sadly, Mr. Fernandez passed away, and the charges against him were dropped. Upon his passing, Mrs. Fernandez, became the sole owner of the firearms, which remained in LASD's custody under the care of Defendant Susan O'Leary Brown, the Property Custodian at the Palmdale Station.

When Fernandez tried to retrieve her firearms so they could be sold at auction, she learned that she would have to pay $54 *per firearm*—a fee that Defendant County of Los Angeles enacted to cover its "administrative costs." Because such a fee would amount to *tens of thousands of dollars*, an amount likely exceeding the costs incurred in seizing, processing, and storing the firearms (in violation of state law), Fernandez tried to negotiate a more reasonable fee that would reimburse LASD's *actual* costs. The defendants refused. And Fernandez paid the fee under protest to ensure that defendants would promptly return her property and to prevent the firearms' lawful destruction under state law. After paying over $24,000, Fernandez discovered that, while her firearms were in defendants' custody, they were handled and stored so poorly that significant damage was done to them—leading to nearly $100,000 in lost value when the firearms were sold.

Fernandez sued in this Court under 42 U.S.C. § 1983, alleging that the defendants' conduct violated her rights under the Fourth and Eighth Amendments to the United States Constitution. She also brought several supplemental state-law claims. The County, LASD, and Sheriff Villanueva now bring a motion to dismiss, claiming that Fernandez has not validly stated any federal claim. If the federal claims against them are dismissed, they continue, the Court should refuse to exercise supplemental jurisdiction to hear

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

Fernandez's related state claims.

The County's motion should be denied because, as this brief will establish, Fernandez's complaint has sufficiently alleged, for purposes of a motion to dismiss, that the County's purported administrative fee was an excessive fine as applied to her circumstances. And the unjustifiable delay in returning her firearms and the damage done to them while in the defendants' custody are each distinct Fourth Amendment violations. Because Fernandez has properly pleaded her federal claims, the Court should exercise supplemental jurisdiction over the related state-law claims.

## STATEMENT OF FACTS

### I. CALIFORNIA PENAL CODE SECTION 33880 AND THE ADOPTION OF LOS ANGELES COUNTY'S ADMINISTRATIVE FEE FOR THE STORAGE AND PROCESSING OF SEIZED FIREARMS

State law authorizes California cities, counties, and state agencies to impose, at their discretion, a charge "equal to its administrative costs relating to the seizure, impounding, storage, or release of any firearm, ammunition feeding device, or ammunition." Cal. Penal Code § 33880(a) (former Cal. Penal Code § 12021.3). Any fee set by local authorities to recover these costs, however, "shall not exceed the actual costs incurred for the expenses directly related to taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner." *Id.* § 33880(b). Interestingly, if localities choose to impose such a fee, they may waive it for those with proof that the firearm sought had been reported stolen by the time law enforcement had taken control of the firearm. *Id.* § 33880(c).

In 2005, under this authority, Defendant Los Angeles County adopted a "fee" of $54 per firearm seized—purportedly to recover the costs of processing and storing the seized property. Compl. ¶ 22. In a letter supporting the "fee's" enactment, then-Sheriff Baca submitted a cost breakdown alleging that for each firearm seized, LASD personnel devoted about 90 minutes of work, costing the department about $54. *Id.* ¶¶ 22-26. Sheriff Baca added: "an analysis of firearms evidence processing over a four-year period revealed that potentially 500 guns per year would be eligible for the administrative fee" and the fee

2

"would yield additional revenue of approximately $27,000 each year." *Id.* ¶ 27.

Expecting that about 500 firearms would be subject to the fee annually, the County likely did not consider the actual costs related to seizing a collection of hundreds of firearms from a single firearm owner at once. *Id.* ¶¶ 2, 44. More probable, it was contemplating the seizure of either individual firearms or small collections from many different sources, requiring unique processing and data entry for each gun. *Id.* When police seize hundreds of firearms from the same source, however, much of the data (and consequently work) is the same for each firearm, significantly reducing the time necessary to process each firearm. *Id.* ¶¶ 40-45. Other localities, likely recognizing this reality, have adopted a fee structure where the fee per firearm is reduced for every firearm but the first. *Id.* ¶ 30. For example, the city of Redondo Beach, following the lead of the California Department of Justice's Law Enforcement Gun Release Program, charges $20 for the first firearm and just $3 for each additional firearm. *Id.* If the firearms the city releases the firearms directly to a licensed firearm dealer, it waives the fee altogether. *Id.*[1] The County, however, opted not to adopt a fee structure that takes into consideration the reduced time it takes when multiple firearms are seized from a single person. *Id.* ¶ 22.

## II. THE SEIZURE OF MANUEL FERNANDEZ'S EXTENSIVE FIREARM COLLECTION AND PATRICIA FERNANDEZ'S ATTEMPTS TO RECOVER IT

Plaintiff Ana Patricia Fernandez's late husband, Manuel Fernandez was prohibited from owning firearms because of a felony conviction stemming from 2009. Compl. ¶ 31. In the summer of 2018, acting on an anonymous tip, Defendant LASD, including Defendants Wyatt Waldron and John Roth, executed multiple search warrants, seizing Mr. Fernandez's valuable collection of over 400 firearms, as well as several ammunition magazines and speed loaders. *Id.* ¶¶ 32-36. According to a report by Detective Roth, 458

---

[1] *See* City of Redondo Beach, Recover Firearms, https://www.redondo.org/depts/ police/police_services/property_and_evidence/recover_firearms.asp (last accessed Jan. 8, 2021); *see also* Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release Application 3, *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ ler.pdf (last accessed Jan. 8, 2021).

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

of the seized firearms were legal to possess in California so long as the person in possession was otherwise not prohibited from possessing firearms generally. *Id.* ¶ 37.

After Mr. Fernandez was charged for his unlawful possession of firearms, but before any trial, he passed away and the charges against him were dismissed. *Id.* ¶ 38. Ownership of the firearms then passed to his wife, the plaintiff. *Id.* ¶ 39. When Mrs. Fernandez tried to retrieve her property, however, she learned that she would have to pay the County's $54 *per-firearm* "fee" to recover the firearms. *Id.* Ultimately, applying the County's per-firearm "fee" to Fernandez's extensive collection would result in an exorbitant cost of tens of thousands of dollars. That "fee," Fernandez alleges, far exceeds the actual costs the County incurred because the total fee did not consider that a single person owned all the seized firearms and a single person requested their return, thus requiring less time per firearm to process. *Id.* ¶¶ 40-45. Fernandez thus offered to pay an amount reflecting the County's actual costs. *Id.* ¶ 46. Defendants would not budge, refusing to negotiate and demanding that Fernandez pay *$24,354* to recover her property. *Id*. Fearing the destruction of the firearms, Fernandez paid the "fee" under protest, informing attorneys for the County that she was paying "to stop any claim that the continued storage of the firearms justifie[d] the current or any additional storage fees." *Id.* ¶ 47. But she remained open to negotiating a reasonable lower fee with the County. *Id*.

Fernandez requested that the County release the firearms to Carol Watson's Orange Coast Auctions, a properly licensed firearm dealer, to be sold at auction. *Id.* The firearms had been stored at the Palmdale Sheriff's Station, under the care of Defendant Property Custodian Susan O'Leary Brown. *Id.* ¶ 11. Upon release of the firearms, Fernandez discovered significant damage to her property resulting from them being in defendants' custody. *Id.* ¶ 49. Photographs taken by auction house personnel at the police station show how poorly defendants handled and stored the firearms. *Id.* For instance, dozens of long guns were packed together tightly in plastic bins. *Id.* Handguns were thrown haphazardly on top of each other. *Id.* They were not stored in separate envelopes or boxes that would have protected them from damage. *Id.* Ultimately, the auction house estimated that the

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

1  damage to the firearms led them to sell for about $96,000 less than they would have had

2  defendants not damaged them. *Id.*

3         Fernandez timely submitted a Government Tort Claim form to the county of Los

4  Angeles on February 24, 2020. *Id.* ¶ 4. The County served its rejection of Fernandez's

5  claim on April 28, 2020, giving Fernandez until October 28, 2020 to sue under California

6  Government Code § 945.6, *id.*, and Fernandez timely sued in this Court. Defendants Los

7  Angeles County, LASD, and Sheriff Villanueva (collectively, "the County") now bring

8  this motion to dismiss all Fernandez's claims.

9                                    **ARGUMENT**

10  **I.   LEGAL STANDARD**

11        Dismissal under Federal Rule of Civil Procedure 12(b)(6) is very rare. Indeed, it is

12  "only the *extraordinary* case in which dismissal is proper" for failure to state a claim.

13  *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (emphasis

14  added). A court may dismiss a claim only if the complaint: (1) lacks a cognizable legal

15  theory; or (2) fails to contain sufficient facts to support a cognizable legal claim.

16  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). To survive a

17  Rule 12(b)(6) motion to dismiss, then, "a complaint generally must satisfy only the

18  minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494

19  (9th Cir. 2003). That is, a plaintiff need provide just a short and plain statement showing

20  that she is entitled to relief. Fed. R. Civ. P. 8(a)(2). What's more, courts must view the

21  complaint "in the light most favorable to the plaintiff, taking all allegations as true, and

22  drawing all reasonable inferences from the complaint in [her] favor." *Doe v. United States*,

23  419 F.3d 1058, 1062 (9th Cir. 2005). Doing so here, leads to the unmistakable conclusion

24  that dismissal (especially with prejudice) is improper.

25  **II.   FERNANDEZ PROPERLY STATES AN EIGHTH AMENDMENT CLAIM**

26        The Eighth Amendment protects the people from, among other things, the

27  imposition of excessive fines. U.S. Const. amend. VIII. Claims brought under the

28  Excessive Fines Clause have typically come in the context of civil forfeiture, *see, e.g.*,

*United States v. Sperrazza*, 804 F.3d 1113, 1127 (11th Cir. 2015), but the principles of an excessive fines claim apply broadly, where the Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). As the Supreme Court recently acknowledged, "the protection against excessive fines guards against abuses of government's punitive or criminal-law enforcement authority" and "has been a constant shield throughout Anglo-American history[.]" *Timbs v. Indiana*, -- U.S. --, 139 S. Ct. 682, 686, 689 (2019) (incorporating the Excessive Fines Clause against the states).

For a fee or other monetary charge implemented by the government to come under the purview of the Eighth Amendment, it must be punitive because the Excessive Fines Clause only limits the government's power to extract payments as punishment. *Rucker v. Davis*, 203 F.3d 627, 648 (9th Cir. 2000). "Two questions are pertinent when determining whether the Excessive Fines Clause has been violated: (1) is the statutory provision a fine, i.e., does it impose punishment? and (2) if so, is the fine excessive?" *Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000). The answer to both questions here, as alleged in Fernandez's complaint, is yes. The Court should deny the County's motion to dismiss Fernandez's Eighth Amendment claim.

A.   **As Applied to Fernandez, the Per-firearm "Fee" Likely Led to the County Recovering Far More Than Its Administrative Costs, Making it a Punitive Fine**

In its motion to dismiss, the County asserts that the Eighth Amendment protection against excessive fines does not apply to the "fee" assessed against Fernandez because the costs assessed under Penal Code section 33880 are merely the administrative costs related to the seizure, impounding, storage, and release of firearms.[2] Defs.' Mot. to Dismiss ("County Mot.") 6. But the County cannot simply *declare* that its "fee" is purely non-

---

[2] Of course, this claim raises a question of fact that the Court cannot decide against Fernandez on a motion to dismiss. Whether the purported fee assessed against Fernandez only covered LASD's actual costs or exceeded those costs can be determined only after discovery.

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

punitive and avoid application of the Eighth Amendment. "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Austin v. United States*, 509 U.S. 602, 610 (1993). So even if some of the collected amount is used to cover administrative costs, if another portion cannot be explained as reimbursing a cost incurred, the purported fee may be a punitive fine. *Id.* at 610 ("We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving in part to punish.").

Here, if the County's fee exceeds its actual administrative costs for processing Fernandez's firearms, and Fernandez alleges that it does, Compl. ¶ 62, then for the purposes of a motion to dismiss, Fernandez has alleged enough to show the fee she had to pay was not just a non-punitive fee, but a punitive fine. Even at this early stage, however, the claim that the fee has only covered administrative costs seems ridiculous on its face. Fernandez acknowledges that processing her 451 firearms likely did take a great deal of work—that is why she was willing to negotiate a fee that would reflect the County's actual costs. *Id.* ¶ 46. But Fernandez disputes that processing the collection took more than *675* employee hours, which is what the County would have to show for the fee to reflect the County's actual costs. *Id.* ¶ 43.

To highlight the apparent absurdity of this claim, imagine a scenario where a single County employee was assigned to handle the processing of all the Fernandez firearms from start to finish. Assuming the typical 2,080-hour full-time work-year, for the fee to not exceed the County's administrative costs, that employee would have to spend just under one-third of their year, *about solid 4 months of employment*, processing the Fernandez firearms and *nothing else*. While the estimates of time involved for processing a single seized firearm may indeed be correct, in processing hundreds of guns from a single source, there are very likely shortcuts that can ease the workload. For example, copying and pasting information about the firearms' owner into all the relevant forms for

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

each weapon seized. If nothing else, the County's actual costs, whatever they may be, is a question of fact not appropriately disposed of by a motion to dismiss.

The County's reliance on *People v. Dueñas*, 30 Cal. App. 5th 1157 (2019), a California state-court case, is misplaced. County Mot. 6. While it is true that the court facilities and operations assessments at issue there were not *intended* to be punitive (and were not *actually* punitive in most cases), *id.* at 1165, the *Dueñas* court still found that the assessments were punitive as applied to indigent people despite the non-punitive intent behind their enactment. "These additional, potentially devastating consequences suffered only by indigent persons in effect transform a funding mechanism for the courts into additional punishment for a criminal conviction for those unable to pay." *Id*. at 1168. Similarly, the County's per-firearm fee, as applied to the large number of firearms seized and processed at once and amounting to more than *$24,000*, transforms what might have been intended to be a nominal, non-punitive fee into a substantial fine hard to characterize as anything but punishment.

Indeed, at the time of the seizure, LASD embraced the media coverage of this large firearm seizure, apparently wanting to make an example of Mr. Fernandez. Then-Sheriff Jim McDonnell told the BBC that "this case is a testament to the community's involvement in reducing crime and taking guns out of the hands of criminals."[3] When Mr. Fernandez passed away and the firearms passed to his wife, the County did not try to accommodate her and instead demanded that she pay the full amount of its purported "fee" even as she offered to negotiate an amount reflecting the County's actual costs. Compl. ¶¶ 39, 46. All this despite the fact that state law authorizing the fee is clear that levying the fee is discretionary in the first place and that, even if adopted, it may be

---

[3] *Convicted US Felon Arrested with More Than 500 Guns in California Home*, BBC, https://www.bbc.com/news/world-us-canada-44537028#:~:text=The%20Los% 20Angeles%20County%20Sheriff's, revealed%20the%20massive%20illegal%20arsenal (last visited Dec. 11, 2020).

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

waived in some cases. Cal. Penal Code § 33880(c).[4] And still, the County forced Fernandez to pay over $24,000 to recover her own property—likely because they wanted to punish her for her husband's alleged crime.

Fernandez has sufficiently alleged, for purposes of a motion to dismiss, that the fee the County imposed on her far exceeded the County's administrative costs and that, at least in part, it was meant to punish. Under controlling precedent, even though the County denies its fee is intended to penalize and even though some portion of the fee may cover the County's administrative costs, Fernandez has made a claim that the County's fee was punitive for purposes of the Eighth Amendment. *See Austin*, 509 U.S. at 610.

**B.     As Applied to Fernandez, the County's Per-firearm Fee Was "Excessive"**

"Once a statute is deemed to be punitive and is thus a 'fine' within the meaning of the Excessive Fines Clause, we must turn to the question of whether the fine is excessive." *Wright*, 219 F.3d at 916. The Supreme Court has ruled that a fine violates the Eighth Amendment's excessiveness standard if it is grossly disproportional to the crime committed. *United States v. Bajakajian*, 524 U.S. 321, 337 (1998). This guidance from the high court somewhat simplifies the analysis, which rests on a series of relevant factors. *Id.* at 337-340 (listing four factors, including the nature of the harm caused by defendant's conduct). But ultimately, this Court need not even apply the *Bajakajian* factors here because Fernandez is an innocent party. It is unclear how the factors could even be applied to her, given that she has not been charged with any crime and harmed no one. The County cannot dispute this fact. And its motion does not even address whether the County's fee, if it is a fine, was excessive as applied to her. County Mot. 5-8. But in the end, any fine applied to Fernandez would necessarily be "grossly disproportional to the

---

[4]  That the fee can be waived for innocent parties when their firearms are stolen suggests that it is not truly about recovering costs but about the perceived innocence or guilt of the party seeking return of the firearm. After all, the costs the County takes on are the same if the property claimant was convicted of a crime or if they were an innocent third party. If the County waives the fee when the firearm was reported stolen, it makes the fee look all the more punitive.

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

crime committed," *id.*, because she has indisputably committed no crime.[5]

### C.    The Payment of the Purported Fee Did Not Moot Claims to Challenge It

The County argues that, by paying the fee, Fernandez can no longer challenge it. County Mot. 7-8. This is a borderline frivolous argument that is easily disposed of by one of the very cases the County cites. In *Pimentel v. City of Los Angeles*, 974 F.3d 917 (9th Cir. 2020), both plaintiffs challenged city parking violations, the fines for which they had in fact already paid. First Am. Compl. 4-5, *Pimentel v. City of Los Angeles*, No. 14-cv-1371 (C.D. Cal. May 21, 2018), ECF No. 29. There, the first amended complaint made clear that the fee challengers opted to pay the fees they were challenging because, if they did not, the DMV might withhold their annual vehicle registration. *Id*. The payment of fines did not moot their claims—in fact, the Ninth Circuit did not even find the fact that the fines had been paid worth mentioning.

This is not unlike the situation Fernandez found herself in. Had she not paid the purported fee, she risked losing her firearms permanently. Indeed, Penal Code section 34000(a) states that a firearm "shall be . . . destroyed" when "the firearm is an exhibit filed in any criminal action or proceeding which is no longer needed or is unclaimed or abandoned property, which has been in the possession of the officer for at least 180 days . . . ." A recently decided case involved this very issue. There, police officers destroyed a massive firearm collection without providing any notice to the firearms' owner, who had been negotiating actively for years to try to secure their return. *See Wright v. Beck*, No. 19-55084, 2020 U.S. App. LEXIS 37463 (9th Cir. Dec. 1, 2020). And, when challenged, the city claimed that section 34000(a) gave them cover to do as they had. *Id*. at *26.

The County cites no authority that once a fine has been paid, it can no longer be challenged. Instead, it recites general mootness principles, such as the "well-established

---

[5] Even if a fine for any crime allegedly committed by the late Mr. Fernandez could be levied against his estate, the facts that Mr. Fernandez was never convicted and the charges were dropped should likewise be dispositive.

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

rule that a case is moot if the court cannot 'undo what has already been done.'" County Mot. 7 (citing *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996)). But this Court can easily undo the payment of the "fee" by ordering the County to repay Fernandez for any amount that exceeded their actual administrative costs. Fernandez has a legally cognizable interest in the outcome of this case, just as the plaintiffs who had paid the fines that they were challenging in *Pimentel* did. Fernandez's Eighth Amendment claim is not moot.

## III. FERNANDEZ PROPERLY STATES A FOURTH AMENDMENT CLAIM

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures[.]" U.S. Const. amend. IV. Because a "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property," *United States  v. Jacobsen*, 466 U.S. 109, 113 (1984), and because refusing to return and causing significant damage to Fernandez's seized property necessarily interferes with that interest, she has properly pleaded a Fourth Amendment claim. Yet, the County argues that Fernandez fails to state a claim because the initial seizure under warrant was lawful. County Mot. 8-9. The County then claims that the existence of post-deprivation remedies under state law bars Fernandez's Fourth Amendment claim. *Id.* at 9-10. Both arguments lack merit.

### A.    The County Misunderstands Fernandez's Fourth Amendment Claim

First, Fernandez must correct the County's fundamental misunderstanding of the basis for her Fourth Amendment claim. In short, Fernandez is *not* challenging the initial seizure of her late husband's firearms. To the contrary, Fernandez's Fourth Amendment claim stems from the County's unjustifiable delay in returning her seized property and, to a lesser extent, the damage done to that property while under the County's control—a point Fernandez made clear in both the complaint *and* during meet-and-confer efforts over this very motion. *See, e.g.*, Compl. ¶ 55 ("Regardless of the legality of the original search and seizure, Defendants had no probable cause to continue the seizure of Plaintiffs' property after Mr. Fernandez's death. . . ."); *id.* ¶ 68 ("[A] seizure legal at inception can

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

later become unlawful if the government unreasonably damages or destroys personal property or lacks probable cause to continue a seizure past a certain point."); *see also* Barvir Decl. ¶¶ 4-5.

Even so, the County pursues a defense almost entirely limited to its argument that the initial seizure was valid and so Fernandez fails to state a Fourth Amendment claim. Indeed, the County does little more than summarize basic authorities about warrants and the Fourth Amendment, state law governing probable cause to seize firearms from prohibited persons, and the basis for obtaining the original search warrant against Mr. Fernandez. County Mot. 8-9. But the County fails to point to anything in the complaint challenging the initial seizure. And it cannot because, again, Fernandez does not raise such a claim. Because the County fails to address the Fourth Amendment theory at issue—a theory of which the County was made expressly aware—the County should be barred from addressing it for the first time on reply.[6]

## B.   The County's Continued Seizure of Fernandez's Firearms Without Probable Cause Violates the Fourth Amendment

The Fourth Amendment protects against searches made "unreasonable" by the government's refusal to return property validly seized. The Supreme Court has long held that "[a] seizure lawful at its inception can nevertheless violate the Fourth Amendment because the manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[.]" *Jacobsen*, 466 U.S. at 124 (citing *United States v. Place*, 462 U.S. 696, 707-10 (1983)).[7] And the Ninth Circuit has confirmed that "[t]he Fourth

---

[6] Any attempt by the County to make its case for the first time on reply offends the "general principle [that] arguments raised for the first time in a reply brief are waived." *Somers v. Dig. Realty Tr., Inc.*, 119 F. Supp. 3d 1088, 1106 (N.D. Cal. 2015). Indeed, "[r]aising new arguments in a reply brief is classic sandbagging, and the [c]ourt [should] not tolerate it." *Cal. Sportfishing Prot. All. v. Pac. States Indus., Inc.*, No. 15-cv-01482, 2015 WL 5569073, at *2 (N.D. Cal. Sept. 22, 2015).

[7] *See also Sandoval v. Cty. of Sonoma*, 72 F. Supp. 3d 997, 1004 (N.D. Cal. 2014) (holding that the Fourth Amendment "is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual").

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

Amendment doesn't become irrelevant once an initial seizure has run its course." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) (citing *Jacobsen*, 466 U.S. at 123 & n.25; *Lavan v. City of Los Angeles*, 693 F.3d 693 F.3d 1022, 1030-31 (9th Cir. 2012); *Manuel v. City of Joliet*, -- U.S. --, 137 S. Ct. 911, 914, 920 (2017)). To the contrary, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. *Thereafter, the government must cease the seizure or secure a new justification.*" *Brewster*, 859 F.3d at 1197. If it does neither, a seizure reasonable at its inception becomes unreasonable. *Id.* (emphasis added).[8]

The relevant question, then, is whether the County reasonably refused to return the seized firearms to Fernandez when she demanded them. *See Place*, 462 U.S. at 703. But a motion to dismiss is generally an inappropriate avenue to determine questions of reasonableness. *See Dahl v. Palo Alto*, 372 F. Supp. 647, 648 (N. D. Cal. 1974) ("The determination of reasonableness is a factual one encompassing the interests of the public, the appropriateness of the means, and the oppressiveness of the action. Such a determination is inappropriate in a motion to dismiss."). Indeed, such a question is ordinarily the function of the trier of fact applying the "reasonable person" standard. *Tsc Indus. v. Northway*, 426 U.S. 438, 450 n.12 (1976). Deciding this question against Fernandez now, would require the Court to view the complaint in a manner unfavorable to Fernandez without the benefit of an evidentiary record supporting such a view, turning the well-settled standard for deciding motions to dismiss on its head.

But even if the Court could make this determination at this stage, evaluating the evidence in the light most favorable to Fernandez as the non-moving party, it is clear the County's conduct was unreasonable. The only justification the County had for the initial seizure was that Mr. Fernandez was a prohibited person, and the relevant warrants were issued to dispossess him of his firearms. County Mot. 9. When Mr. Fernandez died, the

---

[8] *But cf. Jessop v. City of Fresno*, 918 F.3d 1031, 1036 (9th Cir. 2019) (holding that plaintiff did not have an established right under the Fourth Amendment to not have seized property stolen by police officers).

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

County dismissed the charges against him and ownership of the seized firearms passed to Mrs. Fernandez, who was *not* prohibited from owning or possessing firearms. Compl. ¶¶ 38, 39. At that point, the initial justification for the seizure expired, requiring the County to secure a new justification to continue the seizure of the firearms. *See Brewster*, 859 F.3d at 1197. The County never asserted—and its motion does not now suggest—any other justification aside from the County's insistence that Mrs. Fernandez pay a "fee" of *$24,354* before it would release her property. To be sure, continuing an otherwise lawful seizure until the property claimant pays an administrative fee reflecting the actual costs incurred by the government may be permissible under the Fourth Amendment. But holding a citizen's property hostage until she agrees to pay the government tens of thousands of dollars—a fee Fernandez alleges far exceeds the costs the government incurred—is patently *un*reasonable. Indeed, the government profiting off seized property it no longer has probable cause to hold is plainly repugnant to the very purpose of the constitutional protection against unreasonable seizures.

So even if the County's fee is not an excessive "fine" under the Eighth Amendment (see section II.A-B, *supra*), Fernandez has alleged that, at minimum, the fee here clearly exceeded the County's actual costs, so the County lacked probable cause to continue the seizure after Mr. Fernandez's death. But the County refused to end the seizure, insisting that Mrs. Fernandez first pay its exorbitant and unlawful "fee" and refusing to negotiate a fee that reflected its actual costs.[9] That delay is actionable under the Fourth Amendment.

### C. The County's Abysmal Handling of Fernandez's Firearms Led to Permanent Damage to the Seized Property Giving More Support to Fernandez's Fourth Amendment Claim

The destruction of property by the government is "meaningful interference" constituting a seizure under the Fourth Amendment. *Jacobsen*, 466 U.S. at 124-25; *see*

---

[9] Recall, Penal Code section 33880, the state law under which the County may levy a charge for "the seizure, impounding, storage, or release of any firearm," makes clear that the fee "shall not exceed the actual costs incurred for the expenses directly related to taking possession of any firearm . . . , storing it, and surrendering possession of it to a licensed firearms dealer or to the owner."

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

*also Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir. 1994). Indeed, "[l]aw enforcement activities that unreasonably *damage* or destroy personal property, thereby 'seizing' it within the meaning of the Fourth Amendment, may give rise to liability under [section] 1983.'" *Newsome v. Erwin*, 137 F. Supp. 2d 934, 941 (S. D. Ohio 2000) (emphasis added).

After being essentially forced to pay over $24,000 for the return of her property, Fernandez discovered that the County's excessive fee" apparently did not include following proper handling and storage procedures for her firearms. The complaint alleges that Fernandez was dismayed to find that the horrendous way the County stored and handled her firearms led to permanent damage, greatly diminishing the value of the collection. Compl. ¶ 50. Auction house personnel took photographs of the firearms upon their release from the County, revealing dozens of long guns improperly packed together in plastic bins, handguns thrown haphazardly on top of each other, and firearms otherwise damaged by the County's poor handling of them. *Id.* ¶ 49. The result was nearly $100,000 in lost value when the guns were sold at auction. *Id.* ¶ 50.

For purposes of a motion to dismiss, Fernandez has sufficiently alleged that her firearms were extensively damaged sometime during their seizure by the County. *Id.* ¶¶ 49-53. The County does not argue otherwise. In fact, its motion to dismiss is limited to claims that the initial seizure was lawful and that the damage to the firearms is not actionable under federal law because state law provides an adequate post-deprivation remedy. County Mot. 8-9. Like the unjustified delay in returning Fernandez's property, the damage to the firearms is actionable under the Fourth Amendment.

### D. The Existence of Post-Deprivation Remedies Does Not Bar Fernandez's Fourth Amendment Claim

The County also argues that any deprivation of property is not actionable if a post-deprivation state-court remedy exists and that California law provides adequate post-deprivation for property loss. County Mot. 9. To be sure, "the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion

that there has been any constitutional deprivation of property without due process of law within the meaning of the *Fourteenth* Amendment." *Parratt v. Taylor*, 451 U.S. 527, 542 (1981) (emphasis added). But the County has mistakenly taken this rule—a rule that limits Fourteenth Amendment due process claims—and clumsily applied it to Fernandez's Fourth Amendment illegal seizure claim. Indeed, the cases the County relies on are, without exception, about whether available post-deprivation remedies satisfy due process requirements. County Mot. 9 (citing *Zinermon v. Burch*, 494 U.S. 113, 126-27 (1990); *Hudson v. Palmer*, 468 U.S. 517, 536 (1984); *Parratt*, 451 U.S. at 542; *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Byrd v. Stewart*, 811 F.2d 554, 554-555 (11th Cir. 1987)). They do not stand for the notion that the existence of post-deprivation remedies likewise bars Fourth Amendment claims.

Indeed, *Parratt v. Taylor*, a case the County itself cites, makes the distinction clear. There, the Supreme Court recognized that "[t]he *only* deprivation respondent alleges in his complaint is that 'his rights under the Fourteenth Amendment . . . were violated. That he was deprived of his property and Due Process of Law." 451 U.S. at 536 (emphasis added). The Court went on to note that the respondents' claim was thus distinct from the Fourth Amendment claims in *Monroe v. Pape*, 365 U.S. 167 (1961), and the Eighth Amendment claims in *Estelle v. Gamble*, 429 U.S. 97 (1976)—claims that were *not* barred by the existence of some state-law remedy. *Id.* To the contrary, *Monroe* laid out a rule that exhaustion of available state remedies was unnecessary before bringing a federal 1983 action. *Monroe*, *supra*, 365 U.S. at 183. And as at least one commentator has noted, *Parratt*'s post-deprivation doctrine

> can be reconciled with the no-exhaustion rule[] of *Monroe v. Pape* . . . only if it is *absolutely limited to due process cases*. State tort remedies can *never* oust federal courts of jurisdiction under section 1983 in cases in which the federal claim is based on some constitutional or statutory right other than the due process clause, for that would turn the no exhaustion rule on its head.

Rodney A. Smolla, *The Displacement of Federal Due Process Claims by State Tort Remedies:* Parratt v. Taylor *and* Logan v. Zimmerman Brush Company, 1982 Univ. Ill. L. Rev. 831, 863 (1982) (emphasis added).

16

Even *Hudson v. Palmer*, which arguably comes closest to supporting the County's position, is distinguishable. There, the Court dismissed a prisoner's Fourth Amendment claims out of hand because, simply put, "the Fourth Amendment has no applicability to a prison cell." 468 U.S. at 536. It did not strike those claims because of the existence of post-deprivation remedies. *Hudson*'s discussion of such remedies was thus limited to their effect on the prisoner's Fourteenth Amendment claims. *Id.* ("We hold also that, even if petitioner intentionally destroyed respondent's personal property . . . , the destruction did not violate the *Fourteenth Amendment* since the [state] has provided respondent an adequate postdeprivation remedy." (emphasis added)).

This line of authority led the Ninth Circuit to rule in *King v. Massarweh*, 782 F.2d 825 (9th Cir. 1986), that a litigant's *due process* claims may be barred if adequate post-deprivation remedies exist, but this "does *not* foreclose their *other* constitutional claims." *Id.* at 827. Indeed, the *King* court held, "*Parratt* does not apply to plaintiffs claiming direct violation of their substantive constitutional rights, as distinct from their due process rights." *Id.* (citing *Robins v. Harum*, 773 F.2d 1004, 1008 (9th Cir. 1985); *Parratt*, 451 U.S. at 536; *McKenzie v. Lamb*, 738 F.2d 1005, 1011 (9th Cir. 1984); *Palmer v. Hudson*, 697 F.2d 1220, 1225 (4th Cir. 1983), *rev'd on other grounds, sub nom Hudson v. Palmer*, 468 U.S. 517 (1984)). And in *Robins v. Harum*, the Ninth Circuit directly dispelled any notion that *Parratt* bars Fourth Amendment claims, specifically:

> [O]ther circuits have noted the . . . distinction between a Fourteenth Amendment claim for deprivation of life, liberty or property without due process and a claim based upon a violation of Fourth Amendment rights, and have refused to apply the *Parratt* analysis to the latter. *See, e.g., Augustine v. Doe*, 740 F.2d 322, 326 (5th Cir. 1984) ("To hold *Parratt* applicable to the alleged [F]ourth [A]mendment violation in the present case [unreasonable seizure] would be to write *Monroe* out of existence, a result clearly not intended by *Parratt*"); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 872 (7th Cir. 1983) (*Parratt* not applicable to Fourth Amendment violation based upon unlawful seizure of property). Therefore, we conclude that the *Parratt* analysis is not applicable to a claim, such as the instant excessive use of force claim, brought under the Fourth Amendment.

773 F.2d at 1009.

The County cites only one Ninth Circuit case, *Barnett v. Centoni*, 31 F.3d 813, for

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

its argument that "California law provides an adequate post-deprivation remedy for *any* property damage claims." County Mot. 9 (emphasis added). But the case only marginally supports the County's position. Admittedly, *Barnett* could be read to make the broad pronouncement that "*any* property deprivation[]" is adequately remedied by state law. 31 F.3d at 816. But interpreting it in this way both ignores the context in which the court made the statement and would expand the Supreme Court's decisions in *Hudson* and *Parratt* in a way that still-binding circuit precedent expressly rejected. Indeed, *Barnett* dealt with a procedural due process claim, not a claim based on the Fourth Amendment or some other substantive constitutional right. *Id.* at 816-17. And, in casting the due process claim aside, the court cited that portion of *Hudson* that limits the *Parratt* doctrine to violations of procedural due process. *Id.* (quoting *Hudson*, 468 U.S. at 533). Reading *Barnett* to expand the rule beyond the *Hudson* holding is untenable considering the Ninth Circuit's earlier declaration that the "*Parratt* analysis is not applicable to a claim, such as the instant excessive use of force claim, brought under the Fourth Amendment." *Robins*, 773 F.2d at 1009.[10]

But of course, this limitation makes sense. For a violation of the Fourth Amendment fundamentally differs from a violation of the Fourteenth. The availability of post-deprivation procedures to challenge a deprivation of property effected without adequate pre-deprivation procedures can provide, in many cases, the due process owed under the Fourteenth Amendment.[11] But no amount of post-deprivation process can remedy the invasion that is an illegal seizure under the Fourth Amendment—because the Fourth

---

[10] The last case the County cites, *Byrd v. Stewart*, is an out-of-circuit case that also limits *Parratt* to Fourteenth Amendment due process claims. 811 F.2d at 554-55 ("If plaintiff intends to allege that the officers have failed to return the items seized without due process of law, such a procedural due process claim would be barred by *Parratt* . . . , If the plaintiff intends to allege that the search and seizure itself was unlawful, such a [F]ourth [A]mendment claim would not be barred by the *Parratt* doctrine.") (citing *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir. 1985)).

[11] *See* Smolla, *supra*, at 833 (explaining that the *Parratt* "doctrine rests on the theory that whenever a post-deprivation remedy exists that will fully compensate an individual for whatever losses government has inflicted . . ., the deprivation was not made without 'due process;' the process simply comes after the deprivation rather than before").

18

PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

Amendment does not protect the right to "process." Rather, it protects something more abstract that cannot really be remedied by simply providing process to recover illegally seized property or the value of it. It protects "[t]he right of the people to be *secure* in [our] persons, houses, papers, and effects." U.S. Const., amend. IV (emphasis added). To ensure that security, declaratory and injunctive relief is often more important than any money judgment for damages that could be obtained under state tort law.

For these reasons, the existence of any post-deprivation processes available under state law—assuming they could even adequately remedy the harms complained of here—cannot bar Fernandez's Fourth Amendment claim.

## IV.  FERNANDEZ PROPERLY BRINGS AN AS-APPLIED CHALLENGE TO POLICIES ENACTED BY THE COUNTY AND LASD AND ENFORCED BY THE SHERIFF

### A.  The County's Per-firearm Fee Is the Relevant Policy Enactment That Caused Fernandez's Harm Under Her Eighth Amendment Claim

The County correctly argues that, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Fernandez must allege that the constitutional deprivation she suffered was caused by the implementation or execution of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. County Mot. 3 (citing *Monell*, 436 U.S. at 690-691). But there can be no serious question that Fernandez has sufficiently identified an offending policy for purposes of *Monell* liability. The County's claim otherwise is wrong.

First, the County argues that the conduct Fernandez challenges is the County's refusal to reduce the administrative costs "as applied to the Plaintiff." County Mot. 4. The County either misunderstands Fernandez's complaint, or purposefully mischaracterizes it, or both. To be clear, Fernandez is not challenging the refusal of the County to reduce its administrative costs just for her. Rather, she alleges that the "fee" itself, strictly enforced against Fernandez, far exceeded the County's actual costs under the circumstances of this seizure and thus became an excessive fine *as applied to Fernandez*. The complaint is clear on this point, including the paragraph the County mischaracterizes:

> In refusing to reduce the fee to reflect that all of the firearms came from the same person and required less work to process, the **LASD fee *as applied to***

19

*Plaintiff* exceeded the actual administrative costs borne by LASD in violation of California Penal Code section 33880 and became unconstitutionally excessive.

Compl. ¶ 45 (double emphasis added).

The County then wrongly claims that Fernandez makes "no allegation that the policies themselves were unconstitutional." County Mot. 4. The complaint was also clear on this point. Paragraph 54 of the complaint reads, in relevant part:

> Plaintiff contends that Defendant ***LASD's per-firearm fee of $54***, imposed under Penal Code section 33880, constitutes an excessive fine as applied to a large collection of firearms all seized from a single owner who was never convicted of any charges. Plaintiff desires a judicial declaration that California Penal Code section 33880, ***as applied here***, violates Plaintiff's rights under the Eighth Amendment.

Fernandez has properly alleged an as-applied challenge to the County's $54 per-firearm fee adopted under Penal Code section 33880. Indeed, Fernandez has gone further than most plaintiffs—not only identifying the policy she challenges as applied to her circumstances, but also its legislative history. *Id.* ¶¶ 20-27. As the complaint makes clear, the County adopted a fee that did not contemplate the seizure of a firearm collection of this size, given then-Sheriff Baca's statements that it would apply to about 500 guns and yield revenue of about $27,000 annually. *Id.* ¶ 44. Fernandez's firearms nearly fulfilled those estimates on their own. Yet despite the extraordinary circumstances involved, Defendants LASD and Sheriff Villanueva did not try to accommodate Fernandez and negotiate a fee that reflected the actual administrative costs associated with seizing, processing, and storing her firearm collection, instead choosing blind adherence to the fee adopted by Defendant County. *Id.* ¶ 46.[12]

---

[12] Nor, as the County implies, are Fernandez's claims against the County based in some sort of equal protection theory that she was treated "differently" than others whose firearms have been seized. County Mot. 3. Instead, Fernandez contends that the County's "fee," as applied to uniquely large firearm collections (like hers), is an unconstitutionally excessive fine. Fernandez does not challenge section 33880 on its face or even the County's fee as it applies most of the time. She merely contends that, as applied to her likely unusual circumstances, the County's fee implemented under the authority of section 33880 is unconstitutional. Fernandez has sufficiently pleaded this in her complaint.

Reading between the lines, the County seems to argue that as-applied challenges are not valid constitutional challenges. County Mot. 3-4. But, of course, that is not correct. "An as-applied challenge does not implicate the enforcement of the law against third parties." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted). Rather, it looks at how a particular law may be unconstitutional under a certain set of circumstances, even if it would be constitutional in most other circumstances. "A paradigmatic as-applied attack . . . challenges only one of the rules in a statute, a subset of the statute's applications, or the application of the statute to a specific factual circumstance, under the assumption that a court can 'separate valid from invalid subrules or applications.'" *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (quoting Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1334 (2000)). Fernandez, challenging section 33880 as applied to her through the County's $54 per-firearm "fee" and LASD and Villanueva's strict application of it against Fernandez's uniquely large firearm collection, has alleged a valid "as-applied" challenge sufficient to survive a motion to dismiss.

### B. The County's Custom of Ignoring Its Own Property Storage Policies Makes Up Part of Fernandez's Fourth Amendment Claim

In a single passing sentence, the County also suggests Fernandez has not sufficiently stated a claim against the County defendants as regards the damage done to her firearms: "The Complaint further alleges that the manner of the storage and retention of the firearms was in violation of LASD policies described in the Department's 'Manual of Policies and Procedures,' not in compliance with unconstitutional policies created by these defendants." County Mot. 4. But as the relevant precedent makes clear and the County cites in its brief, "'policy or *custom*' must have played a part in the violation of federal law." County Mot. 4 (emphasis added). "Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional

21

1  deprivations visited pursuant to governmental 'custom' even though such a custom has

2  not received formal approval through the body's official decisionmaking channels."

3  *Monell*, 436 U.S. at 690-91.

4  Given the reckless way the firearms were stored with total disregard to the risk of

5  any damage being done to them, it is clear the County had a custom of disregarding their

6  duty to safeguard property in their care. Recall that the firearms were presented to auction

7  house personnel for pickup in their poor storage conditions. Compl. ¶ 45. The County did

8  not even attempt to hide the slapdash way they stored Fernandez's property on the day

9  they had arranged for that property to be picked up. *See id.* This betrays a custom within

10  the County of ordinarily ignoring its own policy guidelines related to storage of

11  impounded property, *id.* ¶ 52, as well as their basic duty of care. The County's custom

12  cost Fernandez $96,000 in lost property value, and Fernandez has properly alleged her

13  Fourth Amendment claim, in part, on this basis.

14
15  **V.  RULE 5.1 DOES NOT APPLY TO AS-APPLIED CHALLENGES; BUT IF IT DOES, FAILURE TO PROVIDE RULE 5.1 NOTICE IS NOT GROUNDS FOR DISMISSAL**

16  The County correctly notes that Federal Rule of Civil Procedure 5.1 requires a party

17  "that files a pleading, written motion, or other paper drawing into question the

18  constitutionality of a . . . state statute" to promptly file a notice of constitutional question

19  and serve that notice on the state's attorney general if the filing does not name the state or

20  one of its agents. County Mot. 10 (quoting Fed. R. Civ. Proc. 5.1(a)). The County also

21  correctly notes that Fernandez had not provided such notice right after filing her lawsuit.

22  *Id.* But, in raising this issue in its motion to dismiss, the County assumes that Rule 5.1

23  applies to as-applied challenges (like this one) or that failure to "promptly" file the

24  required notice would be grounds for dismissal. Both assumptions are incorrect.

25  First, "[t]he validity of a statute is not drawn in question every time rights claimed

26  under such statute are controverted, nor is the validity of an authority, every time an act

27  done by such authority is disputed. The validity of a statute or the validity of an authority

28  is drawn in question when the existence, or constitutionality, or legality of such statute or

22

authority is denied, and the denial forms the subject of direct inquiry." *United States v. Lynch*, 137 U.S. 280, 285 (1890). What's more, "courts outside the Ninth Circuit have suggested that notice under Rule 5.1 would be required in a case raising a facial preemption challenge *but not* an as-applied challenge." *ThermoLife Int'l LLC v. NeoGenis Labs Inc*., No. 18-cv-02980, 2020 U.S. Dist. LEXIS 204396, at *47 (D. Ariz. Nov. 2, 2020) (emphasis added). Fernandez's claim only challenges section 33880 as applied to her by a single County's application of the law in a single instance. The lawsuit does not challenge the validity of the law generally. Rule 5.1 does not apply here.

In any event, to be safe, Fernandez filed a Notice of Constitutional Challenge in this Court and served that notice on Attorney General Becerra on December 9, 2020, just two weeks after service on all defendants was completed and before any responsive pleading has been filed. Ntc. of Const. Challenge of Stat., ECF No. 20; Proof of Serv. on Def. Wyatt Waldron, ECF No. 24 (showing that Waldron was served on November 25, 2020). Under any rubric, that notice was made "promptly," as required by Rule 5.1 Indeed, at this early stage, before an answer has been filed, California still has plenty of time to intervene if it so desires. Not long ago, a district court in Washington proceeded with a class action case much further along even though the plaintiffs had failed to comply with Rule 5.1. The court notified the state and proceeded with the case. *Hartman v. United Bank Card, Inc*., 291 F.R.D. 591, 600 (W.D. Wash. 2013). As that court noted, Rule 5.1(d) provides that a party's failure to file and serve the notice does *not* forfeit a constitutional claim that is otherwise timely asserted. *Id.*

In summary, Fernandez does not believe a Rule 5.1 notice is required in this as-applied challenge. But one has now been served regardless, and by any reasonable standard, it was promptly filed. Even if the Court considers the filing late, that finding would not doom Fernandez's constitutional claims.

## VI.   FERNANDEZ STATES VALID FEDERAL CLAIMS FOR DECLARATORY RELIEF, SO THE COURT HAS SUPPLEMENTAL JURISDICTION

Fernandez has established the validity of her federal claims throughout this brief. At

23

minimum, she has sufficiently alleged federal causes of action under section 1983 to enable her to proceed beyond the pleadings and into discovery. For this reason, the County's conclusory claims that Fernandez cannot identify an actual controversy under the Federal Civil Rights Act, County Mot. 11, can be dismissed summarily. If this Court agrees with Fernandez that *either* of the constitutional claims survives this motion, then Fernandez has indeed properly stated a claim for declaratory relief.

Similarly, the County argues this Court should not exercise supplemental jurisdiction over the claims arising from state law because Fernandez does not state a valid federal claim. County Mot. 11-12. Again, if either of Fernandez's federal claims are valid, then this Court has supplemental jurisdiction over the state causes of action as well. 28 U.S.C. § 1367. Indeed, "[o]ne federal claim is sufficient to support federal court jurisdiction over a case involving both federal and state law claims." *Carey v. Maricopa Cty.*, 602 F. Supp. 2d 1132, 1136 (D. Ariz. 2009) (citing 28 U.S.C. § 1367).

## CONCLUSION

For these reasons, the Court should deny the County's motion to dismiss. But if the Court believes Fernandez has failed to allege sufficient facts supporting her claims, Fernandez should be given a chance to amend her complaint to address the Court's concerns. Indeed, leave to amend should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962). And there is no undue delay, bad faith, or undue prejudice here that would be grounds for denying such leave. *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). If the Court determines that the complaint is insufficient, Fernandez requests leave to amend.

Dated: January 8, 2021                  MICHEL & ASSOCIATES, P.C.

                                        *s/ Anna M. Barvir*
                                        Anna M. Barvir
                                        *Counsel for Plaintiff Ana Patricia Fernandez*

24

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Fernandez, v. Los Angeles County, et al.*
Case No.:    2:20-cv-09876 DMG (PDx)

IT IS HEREBY CERTIFIED THAT:

      I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

      I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS LOS ANGELES COUNTY, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND SHERIFF ALEX VILLANUEVA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Henry Patrick Nelson
nelson-fulton@nelson-fulton.com
Amber Logan
amberlogan@nelson-fulton.com
Nelson & Fulton
3435 Wilshire Blvd., Suite 2800
Los Angeles, CA 90010
    *Attorneys for Defendants Los Angeles County,*
    *The Los Angeles County Sheriff's Department,*
    *and Alex Villanueva*

      I declare under penalty of perjury that the foregoing is true and correct.

Executed January 8, 2021.

                        *s/ Laura Palmerin*
                        Laura Palmerin