C.D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiff Ana Patricia Fernandez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA PATRICIA FERNANDEZ, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>LOS ANGELES COUNTY, THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, WYATT WALDRON, an individual, JOHN ROTH, an individual, SUSAN O'LEARY BROWN, an individual, ALEX VILLANUEVA, in his Official Capacity as Sheriff of Los Angeles County; and DOES 1-10,<br><br>                    Defendants. | Case No.: 2:20-cv-09876 DMG (PDx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS WYATT WALDRON AND JOHN ROTH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hearing Date:    January 29, 2021<br>Hearing Time:    9:30 a.m.<br>Courtroom:       8C<br>Judge:           Hon. Dolly M. Gee<br><br>Action Filed: October 27, 2020 |

---

OPPOSITION TO DEFENDANT WALDRON AND ROTH'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

Table of Contents ..................................................................................................... i

Table of Authorities ............................................................................................... ii

Introduction ............................................................................................................ 1

Statement of Facts .................................................................................................. 2

I.    California Penal Code Section 33880 and the Adoption of Los Angeles County's
      Administrative Fee for the Storage and Processing of Seized Firearms ................... 2

II.   The Seizure of Manuel Fernandez's Extensive Firearm Collection and Ana
      Patricia Fernandez's Attempts to Recover It ........................................................... 3

Argument................................................................................................................. 5

I.    Legal Standard ....................................................................................................... 5

II.   The Court Should Not Dismiss This Action Based on the Officer Defendants'
      Qualified Immunity Claim...................................................................................... 5

      A.    The Court Should Not Decide the Fact-based Qualified Immunity Issue on
            the Barebones Record of a Motion to Dismiss ................................................ 6

      B.    The Officer Defendants Are Not Entitled to Qualified Immunity Because
            Fernandez Alleges the Violation of a Clearly Established Constitutional
            Right ............................................................................................................... 7

            1.    The Officer Defendants' Conduct Violated Fernandez's Rights
                  Under the Fourth Amendment ................................................................ 8

            2.    The Officer Defendants Knew, or Reasonably Should Have Known,
                  That Recklessly Handling and Greatly Damaging Seized Property
                  Under Their Control Violates Clearly Established Fourth
                  Amendment Rights ................................................................................ 9

III.  The Complaint States Valid Federal Claims for Declaratory Relief, So this
      Court Has Supplemental Jurisdiction ..................................................................... 11

Conclusion ............................................................................................................ 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
    781 F.2d 1393 (9th Cir. 1986) ............................................................... 12

*Am. Fire, Theft & Collision Mgrs., Inc. v. Gillespie*,
    932 F.2d 816 (9th Cir. 1991) ................................................................. 6

*Ashcroft v. al-Kidd*,
    562 U.S. 731 (2011) ............................................................................... 9

*Bonds v. Cox*,
    20 F.3d 697 (6th Cir. 1994) ................................................................... 8

*Brosseau v. Haugen*,
    543 U.S. 194 (2004) ............................................................................... 9

*Brown v. Hilton*,
    492 F. Supp. 771 (D.N.J. 1980) ........................................................... 10

*Doe v. United States*,
    419 F.3d 1058 (9th Cir. 2005) ............................................................... 5

*Figueroa v. Gates*,
    120 F. Supp. 2d 917 (C.D. Cal. 2000) ................................................... 7

*Florida v. Jimeno*,
    500 U.S. 248 (1991) ............................................................................... 7

*Foman v. Davis*,
    371 U.S. 178 (1962) ......................................................................... 8, 11

*Galbraith v. Cty. of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002) ............................................................... 6

*Gooden v. Howard Cty., Md.*,
    917 F.2d 1355 (4th Cir. 1990) ............................................................... 6

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ............................................................................ 6, 7

*Hope v. Pelzer*,
    536 U.S. 730 (2002) ............................................................................. 10

*Hydrick v. Hunter*,
    500 F.3d 978 (9th Cir. 2007) ............................................................... 6, 7

*Kisela v. Hughes*,
    -- U.S. --, 138 S. Ct. 1148 (2018) ......................................................... 9

ii

*L.A. Police Protective League v. Gates*,
  995 F.2d 1469 (9th Cir. 1992) ................................................................ 6

*Liston v. Cty. of Riverside*,
  120 F.3d 965 (9th Cir. 1997) ................................................................ 10

*Miller v. Rykoff-Sexton, Inc.*,
  845 F.2d 209 (9th Cir. 1988) ................................................................ 12

*Newsome v. Erwin*,
  137 F. Supp. 2d 934 (S. D. Ohio 2000) ................................................ 8

*Ohio v. Robinette*,
  519 U.S. 33 (1996) ................................................................................ 7

*Porter v. Jones*,
  319 F.3d 483 (9th Cir. 2003) ................................................................ 5

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984) ................................................................ 5

*Romero v. Kitsap County*,
  931 F.2d 624 (9th Cir. 1991) ................................................................ 6

*Saucier v. Katz*,
  533 U.S. 194 (2001) .......................................................................... 8, 9

*Tarpley v. Greene*,
  684 F.2d 1 (D.C. Cir. 1982) ................................................................ 10

*Thompson v. Souza*,
  111 F.3d 694 (9th Cir. 1997) ................................................................ 7

*United States v. City of Redwood City*,
  640 F.2d 963 (9th Cir. 1981) ................................................................ 5

*United States v. Jacobsen*,
  466 U.S. 109 (1984) ........................................................................ 8, 10

*Wood v. Strickland*,
  420 U.S. 308 (1975) ............................................................................ 7

**Statutes**

28 U.S.C. § 1367 ................................................................................ 11

42 U.S.C. § 1983 .......................................................................... 1, 11

Cal. Gov't Code § 945.6 ...................................................................... 5

Cal. Penal Code § 12021.3 .................................................................. 2

Cal. Penal Code § 33880 ...................................................................... 2

iii

TABLE OF AUTHORITIES

**Other Authorities**

Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release
    Application 3, *available at*
    https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ler.pdf (last
    accessed Jan. 8, 2021) ............................................................................ 3

City of Redondo Beach, Recover Firearms,
    https://www.redondo.org/depts/police/police_services/property_and_evide
    nce/recover_firearms.asp (last accessed Jan. 8, 2021) ................................ 3

Fed. R. Civ. P. 8 ................................................................................................... 5

Fed. R. Civ. P. 12 ................................................................................................. 5

Fed. R. Civ. P. 15 ................................................................................................. 8

U.S. Const., amend. IV ................................................................................. *passim*

U.S. Const., art. III ............................................................................................ 11

TABLE OF AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

In June 2018, Defendant Los Angeles Sheriff's Department seized well over 400 firearms from Plaintiff Ana Patricia Fernandez's now-deceased husband, Manuel Fernandez. At the time of the seizure, Mr. Fernandez was prohibited from owning firearms and, on an anonymous tip, Defendant LASD Officer Wyatt Waldron and Detective John Roth ("the Officer Defendants") executed a warrant to search Mr. Fernandez's properties and dispossess him of his firearm collection. They arrested Mr. Fernandez arrested and charged him with unlawful possession of firearms. But sadly, Mr. Fernandez passed away, and the charges against him were dropped. Upon his passing, Mrs. Fernandez, became the sole owner of the firearms, which remained in LASD's custody under the care of Defendant Susan O'Leary Brown, the Property Custodian at the Palmdale Sheriff's Station.

When Fernandez tried to retrieve her firearms so they could be sold at auction, she learned that she would have to pay $54 *per firearm*—a fee that Defendant County of Los Angeles enacted to cover its "administrative costs." Because such a fee would amount to *tens of thousands of dollars*, an amount likely exceeding the costs incurred in seizing, processing, and storing the firearms (in violation of state law), Fernandez tried to negotiate a more reasonable fee that would reimburse LASD's *actual* costs. The defendants refused. And Fernandez paid the fee under protest to ensure that defendants would promptly return her property and to prevent the firearms' lawful destruction under state law. After paying over $24,000, Fernandez discovered that, while her firearms were in defendants' custody, they were handled and stored so poorly that significant damage was done to them—leading to nearly $100,000 in lost value when the firearms were sold at auction.

Fernandez sued in this Court under 42 U.S.C. § 1983, alleging that (as relevant to this motion) the Officer Defendants' conduct violated her rights under the Fourth Amendment to the United States Constitution. She also raised several supplemental state-law claims. The Officer Defendants now bring a motion to dismiss, claiming primarily

1

that the doctrine of qualified immunity protects them from liability for violating Fernandez's constitutional rights. If the federal claim against them is dismissed, the continue, the Court should refuse to exercise supplemental jurisdiction to hear Fernandez's related state claims.

The motion should be denied because Fernandez's complaint has sufficiently alleged, for purposes of a motion to dismiss, that the Officer Defendants' conduct violated Fernandez's "clearly established" rights under the Fourth Amendment. Because Fernandez has properly pleaded her federal claims, the Court should exercise supplemental jurisdiction over the related state-law claims. But, if the Court harbors any concern over the specificity of the allegations against the Officer Defendants, Fernandez should be granted leave to amend.

## STATEMENT OF FACTS

### I.   CALIFORNIA PENAL CODE SECTION 33880 AND THE ADOPTION OF LOS ANGELES COUNTY'S ADMINISTRATIVE FEE FOR THE STORAGE AND PROCESSING OF SEIZED FIREARMS

State law authorizes California cities, counties, and state agencies to impose, at their discretion, a charge "equal to its administrative costs relating to the seizure, impounding, storage, or release of any firearm, ammunition feeding device, or ammunition." Cal. Penal Code § 33880(a) (former Cal. Penal Code § 12021.3). Any fee set by local authorities to recover these costs, however, "shall not exceed the actual costs incurred for the expenses directly related to taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner." *Id.* § 33880(b). Interestingly, if localities choose to impose such a fee, they may waive it for those with proof that the firearm had been reported stolen by the time law enforcement had taken control of it. *Id.* § 33880(c).

In 2005, under this authority, Defendant Los Angeles County adopted a "fee" of $54 per firearm seized—purportedly to recover the costs of processing and storing the seized property. Compl. ¶ 22. In a letter supporting the "fee's" enactment, then-Sheriff Baca submitted a cost breakdown alleging that for each firearm seized, LASD personnel

OPPOSITION TO DEFENDANT WALDRON AND ROTH'S MOTION TO DISMISS

devoted about 90 minutes of work, costing the department about $54. *Id.* ¶¶ 22-26. Sheriff Baca added that "an analysis of firearms evidence processing over a four-year period revealed that potentially 500 guns per year would be eligible for the administrative fee" and that it "would yield additional revenue of approximately $27,000 each year." *Id.* ¶ 27.

Expecting that about 500 firearms would be subject to the fee annually, the County likely did not consider the actual costs related to seizing a collection of about that many firearms from a single firearm owner at once. *Id.* ¶¶ 2, 44. More probable, it was contemplating the seizure of either individual firearms or small collections from many different sources, requiring unique processing and data entry for each gun. *Id.* When police seize hundreds of firearms from the same source, however, much of the data (and consequently work) is the same for each firearm, significantly reducing the time necessary to process each firearm. *Id.* ¶¶ 40-45. Other localities, likely recognizing this reality, have adopted a fee structure where the fee per firearm is reduced for every firearm but the first. *Id.* ¶ 30. For example, the city of Redondo Beach, following the lead of the California Department of Justice's Law Enforcement Gun Release Program, charges $20 for the first firearm and just $3 for each additional firearm. *Id.* If the firearms the city releases the firearms directly to a licensed firearm dealer, it waives the fee altogether. *Id.*[1] The County, however, opted not to adopt a fee structure that considers the reduced time it takes when police seize multiple firearms from a single person. *Id.* ¶ 22.

## II.   THE SEIZURE OF MANUEL FERNANDEZ'S EXTENSIVE FIREARM COLLECTION AND ANA PATRICIA FERNANDEZ'S ATTEMPTS TO RECOVER IT

Plaintiff Ana Patricia Fernandez's late husband, Manuel Fernandez was prohibited from owning firearms because of a felony conviction stemming from 2009. Compl. ¶ 31. In the summer of 2018, acting on an anonymous tip, Defendant LASD, including Defendants Wyatt Waldron and John Roth, executed multiple search warrants, seizing Mr.

---

[1] *See* City of Redondo Beach, Recover Firearms, https://www.redondo.org/depts/police/police_services/property_and_evidence/recover_firearms.asp (last accessed Oct. 26, 2020); *see also* Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release Application 3, *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ler.pdf (last accessed Oct. 26, 2020).

OPPOSITION TO DEFENDANT WALDRON AND ROTH'S MOTION TO DISMISS

Fernandez's valuable collection of over 400 firearms, as well as several ammunition magazines and speed loaders. *Id.* ¶¶ 32-36. According to a report by Detective Roth, 458 of the seized firearms were legal to possess in California so long as the person in possession was otherwise not prohibited from possessing firearms generally. *Id.* ¶ 37.

After Mr. Fernandez was charged for his unlawful possession of firearms, but before any trial, he passed away and the charges against him were dismissed. *Id.* ¶ 38. Ownership of the firearms then passed to his wife, the plaintiff. *Id.* ¶ 39. When Mrs. Fernandez tried to retrieve her property, however, she learned that she would have to pay the County's $54 *per-firearm* "fee" to recover the firearms. *Id.* Ultimately, applying the County's per-firearm "fee" to Fernandez's extensive collection would result in an exorbitant cost of tens of thousands of dollars. That "fee," Fernandez alleges, far exceeds the actual costs the County incurred because the total fee did not consider that a single person owned all the seized firearms and a single person requested their return, thus requiring less time per firearm to process. *Id.* ¶¶ 40-45. Fernandez thus offered to pay an amount reflecting the County's actual costs. *Id.* ¶ 46. Defendants would not budge, refusing to negotiate and demanding that Fernandez pay *$24,354* to recover her property. *Id*. Fearing the destruction of the firearms, Fernandez paid the "fee" under protest, informing attorneys for the County that she was paying "to stop any claim that the continued storage of the firearms justifie[d] the current or any additional storage fees." *Id.* ¶ 47. But she remained open to negotiating a reasonable lower fee with the County. *Id.*

Fernandez requested that the County release the firearms to Carol Watson's Orange Coast Auctions, a properly licensed firearm dealer, to be sold at auction. *Id.* The firearms had been stored at the Palmdale Sheriff's Station, under the care of Defendant Property Custodian Susan O'Leary Brown. *Id.* ¶ 11. Upon release of the firearms, Fernandez discovered significant damage to her property resulting from them being in defendants' custody. *Id.* ¶ 49. Photographs taken by auction house personnel at the police station show how poorly defendants handled and stored the firearms. *Id.* For instance, dozens of long guns were packed together tightly in plastic bins. *Id.* Handguns were thrown haphazardly

on top of each other. *Id.* They were not stored in separate envelopes or boxes that would have protected them from damage. *Id.* Ultimately, the auction house estimated that the damage to the firearms led them to sell for about $96,000 less than they would have had defendants not damaged them. *Id.*

Fernandez timely submitted a Government Tort Claim form to the county of Los Angeles on February 24, 2020. Compl. ¶ 4. The County served its rejection of Fernandez's claim on April 28, 2020, giving Fernandez until October 28, 2020 to sue under California Government Code § 945.6, *id.*, and Fernandez timely sued in this Court. The Officer Defendants now bring this motion to dismiss all Fernandez's claims.

## ARGUMENT

## I. LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is very rare. Indeed, it is "only the *extraordinary* case in which dismissal is proper" for failure to state a claim. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (emphasis added). A court may dismiss a claim only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). To survive a Rule 12(b)(6) motion to dismiss, then, "a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). That is, a plaintiff need provide just a short and plain statement showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2). What's more, courts must view the complaint "in the light most favorable to the plaintiff, taking all allegations as true, and drawing all reasonable inferences from the complaint in [her] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Doing so here, leads to the unmistakable conclusion that dismissal (especially with prejudice) is improper.

## II. THE COURT SHOULD NOT DISMISS THIS ACTION BASED ON THE OFFICER DEFENDANTS' QUALIFIED IMMUNITY CLAIM

The doctrine of qualified immunity shields "government officials performing

*discretionary* functions . . . from liability for *civil damages*[2] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). In analyzing the Officer Defendants' qualified immunity defense, the Court must identify: (1) "the specific right allegedly violated; (2) . . . whether that right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters; and (3) . . . whether a reasonable officer could have believed lawful the particular conduct at issue." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991) (citing *Gooden v. Howard Cty., Md.*, 917 F.2d 1355, 1361 (4th Cir. 1990).

For the reasons described below, the Court should refrain from deciding these highly fact-specific issues at this stage. But if the Court holds that it is proper to decide them now, it should hold that the doctrine of qualified immunity does not shield the Officer Defendants from liability. For a reasonable person in the defendants' shoes would have understood that the conduct would violate Fernandez's clearly established rights under the Fourth Amendment.

## A.  The Court Should Not Decide the Fact-based Qualified Immunity Issue on the Barebones Record of a Motion to Dismiss

As an initial matter, "a motion to dismiss on qualified immunity grounds puts the court in the difficult position of deciding 'far-reaching constitutional questions on a non-existent factual record.'" *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007) (citation omitted), *vacated on other grounds by Hunter v. Hydrick*, 556 U.S. 1256 (2009). Courts should thus be "cautious not to eviscerate the notice pleading standard in suits where qualified immunity is at issue." *Id.* at 985-86 (citing *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002)). They should also be careful when asked to decide the

---

[2] " 'Qualified immunity . . . does not bar actions for declaratory or injunctive relief.' " *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir.1992) (quoting *Am. Fire, Theft & Collision Mgrs., Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991)). It protects only against the imposition of personal liability for money damages. *Id.* Because Fernandez seeks both damages *and* equitable relief, Compl., Prayer for Relief ¶¶ 2, 4-5, if qualified immunity attaches at all, it does not justify dismissing the Officer Defendants from the suit altogether.

OPPOSITION TO DEFENDANT WALDRON AND ROTH'S MOTION TO DISMISS

issue of qualified immunity on motion to dismiss because it is, in large part, a fact-based inquiry. *See Figueroa v. Gates*, 120 F. Supp. 2d 917, 920-21 (C.D. Cal. 2000) (holding that the issue of city officials' "good faith compliance" with the law, an element of qualified immunity, was not appropriately decided on motion to dismiss).

This is especially true here, where plaintiff has alleged the defendants have violated her rights under the Fourth Amendment, " 'the touchstone of [which] is reasonableness.' " *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). And "the 'reasonableness' of a search or seizure[] is a fact-intensive inquiry that cannot be determined at this stage." *Hydrick*, 500 F.3d at 993 (citing *Thompson v. Souza*, 111 F.3d 694 (9th Cir. 1997)). Indeed, "[i]t is impossible to make such a fact-specific determination when the precise circumstances of the searches or seizures are not before the court and when the [d]efendants have not yet had a chance to justify the alleged searches or seizures." *Id.*

In short, the determination of whether the Officer Defendants knew or reasonably should have known that their conduct would violate Fernandez's constitutional rights is not appropriate at this stage.

## B. The Officer Defendants Are Not Entitled to Qualified Immunity Because Fernandez Alleges the Violation of a Clearly Established Constitutional Right

Again, qualified immunity protects government officials from liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Harlow*, 457 U.S. at 818. Thus, A defense of "qualified immunity will be defeated if an official '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury[.]" *Harlow*, 457 U.S. at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). So, to establish their immunity, the Officer Defendants must show that Fernandez has either failed to allege the violation of a constitutional right, or failed to show that the right at

7

issue was "clearly established" when the incident took place. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under a faithful application of this test, a reasonable jury could find that the Officer Defendants, as the officers who effected the warrants and seized the subject property, were responsible for the damage done to Fernandez's firearms and thus violated Fernandez's "clearly established" Fourth Amendment rights. Dismissal based on qualified immunity is thus improper.[3]

### 1. The Officer Defendants' Conduct Violated Fernandez's Rights Under the Fourth Amendment

It is settled law that government destruction of property is "meaningful interference" constituting a seizure under the Fourth Amendment. *Jacobsen*, 466 U.S. at 124-25; *see also Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir. 1994). Indeed, "[l]aw enforcement activities that unreasonably damage or destroy personal property, thereby 'seizing' it within the meaning of the Fourth Amendment, may give rise to liability under [section] 1983.' " *Newsome v. Erwin*, 137 F. Supp. 2d 934, 941 (S. D. Ohio 2000).

After being essentially forced to pay over $24,000 for the return of her property, Fernandez discovered that the County's exorbitant "fee" apparently did not include following proper handling and storage procedures for her firearms. Whether during the initial seizure of the firearms by the Officer Defendants, the transportation of them that they oversaw, their initial handling of the placement of the firearms into storage, or during the preparations for their final transfer to auction house personnel, the Officer Defendants' carelessness or recklessness in damaging her property caused substantial financial harm to Fernandez. Indeed, the complaint alleges that Fernandez was dismayed to find that the horrendous way defendants stored and handled her firearms led to permanent damage, greatly diminishing the value of the collection. Compl. ¶ 50. Auction house personnel

---

[3] If, however, this Court has concerns that Plaintiff's complaint does not sufficiently allege facts showing that the Officer Defendants were directly responsible for the damage done to the firearms, the Court should grant Fernandez leave to amend to include such allegations. "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded . . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

8

took photographs of the firearms upon their release from defendants' control, revealing dozens of long guns improperly packed together in plastic bins, handguns thrown haphazardly on top of each other, and firearms otherwise damaged by defendants' poor handling of them. *Id.* ¶ 49. The result was nearly $100,000 in lost value when the guns were sold at auction. *Id.* ¶ 50.

For purposes of a motion to dismiss, Fernandez has sufficiently alleged that her firearms were extensively damaged sometime during their seizure by the defendants and that the Officer Defendants were responsible for the firearms while they were being haphazardly seized and transferred to the Palmdale Station for prolonged storage. This damage to Fernandez's firearms is actionable under the Fourth Amendment.

### 2.   The Officer Defendants Knew, or Reasonably Should Have Known, That Recklessly Handling and Greatly Damaging Seized Property Under Their Control Violates Clearly Established Fourth Amendment Rights

Having shown that she had alleged the violation of a constitutional right, Fernandez next turns to whether the Officer Defendants knew, or should have known, that their conduct violated a "clearly established" constitutional right. *Saucier*, 533 U.S. at 201. "[Q]ualified immunity is lost when plaintiffs point either to 'cases of controlling authority *in their jurisdiction at the time of the incident*' or to 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Ashcroft v. al-Kidd*, 562 U.S. 731, 746 (2011) (Kennedy, J., concurring) (citation omitted). Importantly, the Supreme Court "has long rejected the notion than "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful[.]" *Kisela v. Hughes*, -- U.S. --, 138 S. Ct. 1148, 1158 (2018) (Sotomayor, J., dissenting). Instead, the "inquiry boils down to whether [the officer] had 'fair notice' that he acted unconstitutionally." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). This is not an "onerous" standard. *Id.* Fernandez has no trouble meeting it here.

The binding authorities existing when defendants interfered with Fernandez's

interest in the firearms provided fair notice that unjustified destruction of Fernandez's seized property implicated the Fourth Amendment. What matters here are the straightforward Supreme Court and Ninth Circuit authorities existing when the defendants, including the Officer Defendants, acted. Those authorities hold that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). A seizure occurs when there is some "meaningful interference with an individual's possessory interest in [their] property," *id.* at 113, and unjustified damage or destruction to seized property can thus support Fourth Amendment liability, *Liston v. Cty. of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997).

As for Fernandez's claims that the damage to her property violated her constitutional rights, it has long been understood that unnecessarily destructive behavior violates the Fourth Amendment during an initial seizure. *Liston*, 120 F.3d at 979. In *Tarpley v. Greene*, 684 F.2d 1 (D.C. Cir. 1982), a case cited as persuasive authority by the Ninth Circuit in *Liston*, the D.C. Circuit held that police officers were unnecessarily destructive in conducting a search. The court found that "The touchstone . . . is reasonableness; destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment." *Id.* at 9. Even prisoners can make a valid claim that their property was subjected to unnecessary destruction during a search, *Brown v. Hilton*, 492 F. Supp. 771, 774-75 (D.N.J. 1980). Here, Fernandez alleges that her firearms were handled and stored extremely poorly and contrary to established department guidelines, causing the firearms significant damage. Compl. ¶¶ 49-52. Such reckless damage to property was not reasonably necessary to seizing, transferring, or storing the firearms, and Fernandez has sufficiently alleged as much in her complaint.

Ultimately, precedent existing at the time provided "fair notice [to defendants] that their conduct was unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Fernandez has thus sufficiently alleged that the Officer Defendants knew or should have known that their

OPPOSITION TO DEFENDANT WALDRON AND ROTH'S MOTION TO DISMISS

conduct violated Fernandez's clearly established Fourth Amendment rights. Qualified immunity is not a defense to Fernandez's claim.

### III. FERNANDEZ STATES VALID FEDERAL CLAIMS FOR DECLARATORY RELIEF, SO THIS COURT HAS SUPPLEMENTAL JURISDICTION

Fernandez has established the validity of her federal claims throughout this brief and in her brief opposing the County's motion to dismiss. At minimum, she has sufficiently alleged a federal cause of action under § 1983 to enable her to proceed beyond the pleadings and into discovery. The Officer Defendants argue that this Court should not exercise supplemental jurisdiction over the claims arising from state law because Fernandez does not state a valid federal claim. Officer Defendant Mot. 10. But if Fernandez's federal claim against them is valid, then this Court should exercise supplemental jurisdiction over the related state causes of action. 28 U.S.C. § 1367.

What's more, Fernandez has similar federal claims pending against the County, LASD, O'Leary Brown, and Sheriff Villanueva, in his official capacity. Even if the Court finds that the Officer Defendants are entitled to qualified immunity, if the Court hears Fernandez's federal claims against the other defendants, the Court retains supplemental jurisdiction over the state law claims against the Officer Defendants as well. Indeed, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional partie*s." 28 U.S.C.S. § 1367 (2020) (emphasis added).

### CONCLUSION

For these reasons, the Court should deny the Officer Defendants' motion to dismiss. But if the Court believes Fernandez has failed to allege sufficient facts supporting her claims, Fernandez should be given a chance to amend her complaint to address the Court's concerns. Indeed, leave to amend should be freely given. *Foman*, 371 U.S. at 182. There

OPPOSITION TO DEFENDANT WALDRON AND ROTH'S MOTION TO DISMISS

is no undue delay, bad faith, or undue prejudice here that would be grounds for denying leave to amend. *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). And amendment would not be futile because Fernandez can, if necessary, better describe the Officer Defendants' actions giving rise to their liability. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."). If the Court determines that the complaint is insufficient, Fernandez requests leave to amend.


Dated: January 8, 2021                    MICHEL & ASSOCIATES, P.C.


                                          *s/ Anna M. Barvir*
                                          Anna M. Barvir
                                          *Counsel for Plaintiff Ana Patricia*
                                          *Fernandez*

OPPOSITION TO DEFENDANT WALDRON AND ROTH'S MOTION TO DISMISS

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Fernandez, v. Los Angeles County, et al.*
Case No.:     2:20-cv-09876 DMG (PDx)

IT IS HEREBY CERTIFIED THAT:

      I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

      I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS WYATT WALDRON AND JOHN ROTH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Henry Patrick Nelson
nelson-fulton@nelson-fulton.com
Amber Logan
amberlogan@nelson-fulton.com
Nelson & Fulton
3435 Wilshire Blvd., Suite 2800
Los Angeles, CA 90010
   *Attorneys for Defendants Los Angeles County,*
   *The Los Angeles County Sheriff's Department,*
   *and Alex Villanueva*

      I declare under penalty of perjury that the foregoing is true and correct.

Executed January 8, 2021.

                    *s/ Laura Palmerin*
                    Laura Palmerin