C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiff Ana Patricia Fernandez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA PATRICIA FERNANDEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES COUNTY, THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, WYATT WALDRON, an individual, JOHN ROTH, an individual, SUSAN O'LEARY BROWN, an individual, ALEX VILLANUEVA, in his Official Capacity as Sheriff of Los Angeles County, RICHARD LEON, an individual, MURRAY JACOB, an individual, DAVID ROACH, an individual, SALVADOR MORENO IV, an individual, JASON AMES, an individual, KYLE DINGMAN, an individual, NICHOLAS SAYLOR, an individual, and DOES 8-20,<br><br>Defendants. | Case No.: 2:20-cv-09876 DMG (PDx)<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES:**<br><br>**1. VIOLATION OF THE EIGHTH AMENDMENT [42 U.S.C. § 1983];**<br><br>**2. VIOLATION OF THE FOURTH AMENDMENT [42 U.S.C. § 1983];**<br><br>**3. NEGLIGENCE [CAL. CIVIL CODE § 1714];**<br><br>**4. BREACH OF BAILMENT [CAL. CIVIL CODE § 1813, ET SEQ.];**<br><br>**5. TRESPASS TO CHATTELS**<br><br>**6. FAILURE TO TRAIN**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ana Patricia Fernandez, through her counsel, brings this action against Defendants Los Angeles County, the Los Angeles County Sheriff's Department, Deputy Wyatt Waldron, Detective John Roth, Susan O'Leary Brown, Richard Leon, Murray Jacob, David Roach, Salvador Moreno IV, Jason Ames, Kyle Dingman, Nicholas Saylor, and Sheriff Alex Villanueva, in his official capacity, and makes the following allegations:

## JURISDICTION AND VENUE

1.     The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the state of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2.     Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. § 2201, and her claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

3.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because the entirety of the events or omissions giving rise to Plaintiff's claims occurred in this district.

4.     Plaintiff submitted a Government Tort Claim form to the county of Los Angeles on February 24, 2020. The county served its rejection of Plaintiff's claim on April 28, 2020, giving Plaintiff until October 28, 2020 to bring this action under California Government Code § 945.6.

## PARTIES

5.     Plaintiff Ana Patricia Fernandez is a resident of Los Angeles County, California, and a law-abiding citizen of the United States who is not prohibited from owning firearms. She is the widow of Manuel Fernandez and the Trustee of the Fernandez Trust.

6.     Defendant County of Los Angeles ("the County") is, and at time relevant hereto was, a political subdivision of the United States, organized and existing under the laws of

FIRST AMENDED COMPLAINT

the state of California, with its principal place of business in this judicial district. The County legally responsible for the operation of the Los Angeles Sheriff's Department pursuant to official decision-making channels, in policy, practices, customs, or law.

7.      Defendant Los Angeles County Sheriff's Department ("LASD") is a local government entity created under the laws of the state of California and an agency of defendant County of Los Angeles. LASD is a political subdivision of Defendant County. LASD oversees the storage of firearms recovered or seized by its personnel in Los Angeles County, and also enforces the administrative fee required by Defendant County for the return of recovered or seized firearms to their lawful owners.

8.      Defendant Alex Villanueva is an employee of Defendant County of Los Angeles and currently holds the title of Sheriff of LASD. Defendant Villanueva is, and at all times relevant to this complaint was, one of the ultimate policy makers for Defendant LASD. He is directly responsible for promulgating, enforcing, and continuing the policies of the LASD, including the unlawful policies and procedures complained of herein. Villanueva is sued solely in his official capacity.

9.      Defendant Wyatt Waldron is, and at all times relevant to this complaint was, employed by Defendant LASD. He currently holds the title of "Deputy." Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant Waldron was acting in the course and scope of his employment with Defendant LASD. And he is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

10.     Defendant John M. Roth is, and at all times relevant to this complaint was, employed by Defendant LASD. He is, and all times relevant to this complaint was, employed as a "Detective." Plaintiff is informed and believes, and on that basis alleges that, in his role as detective, Defendant Roth investigated whether Plaintiff's seized firearms were lawful to possess, requiring that he handle and inspect the firearms, and at some point, damaged Plaintiff's property. Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant Roth was acting in the

course and scope of his employment with Defendant LASD. And he is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

11.     Defendant Susan O'Leary Brown is, and at all times relevant to this complaint was, employed by Defendant LASD. She is, and at all time relevant to this complaint was, employed as a Property Custodian at the Palmdale Sheriff Station, where Plaintiff's firearm property was stored for at least some of the time it was in the custody of Defendant LASD. Defendant O'Leary Brown informed Plaintiff of the LASD Palmdale Station's price list ($54 per firearm) and LASD's general policy that the prices reflected on the price list must be paid before the firearms could be released to Plaintiff. Defendant O'Leary Brown also coordinated with Plaintiff regarding the release of her firearms, which eventually occurred at the Palmdale Sheriff Station. Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant O'Leary Brown was acting in the course and scope of her employment with Defendant LASD. And she is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

12.     Doe 1, who has now been identified as Defendant Richard Leon is, and at all times relevant to this complaint was, employed by Defendant LASD. Plaintiff is informed and believes, and on that basis alleges that, in his role as an employee of Defendant LASD, Defendant Leon handled and at some point damaged Plaintiff's property. Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant Leon was acting in the course and scope of his employment with Defendant LASD. And he is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

13.     Doe 2, who has now been identified as Defendant Murray Jacob is, and at all times relevant to this complaint was, employed by Defendant LASD. Plaintiff is informed and believes, and on that basis alleges that, in his role as an employee of Defendant LASD, Defendant Jacob handled and at some point damaged Plaintiff's property.

Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant Jacob was acting in the course and scope of his employment with Defendant LASD. And he is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

14.     Doe 3, who has now been identified as Defendant David Roach is, and at all times relevant to this complaint was, employed by Defendant LASD. Plaintiff is informed and believes, and on that basis alleges that, in his role as an employee of Defendant LASD, Defendant Roach handled and at some point damaged Plaintiff's property. Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant Roach was acting in the course and scope of his employment with Defendant LASD. And he is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

15.     Doe 4, who has now been identified as Defendant Salvador Moreno IV is, and at all times relevant to this complaint was, employed by Defendant LASD.  Plaintiff is informed and believes, and on that basis alleges that, in his role as an employee of Defendant LASD, Defendant Moreno handled and at some point damaged Plaintiff's property. Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant Moreno was acting in the course and scope of his employment with Defendant LASD. And he is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

16.     Doe 5, who has now been identified as Defendant Jason Ames is, and at all times relevant to this complaint was, employed by Defendant LASD. Plaintiff is informed and believes, and on that basis alleges that, in his role as an employee of Defendant LASD, Defendant Ames handled and at some point damaged Plaintiff's property. Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant Ames was acting in the course and scope of his employment with Defendant LASD. And he is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

FIRST AMENDED COMPLAINT

17.    Doe 6, who has now been identified as Defendant Kyle Dingman is, and at all times relevant to this complaint was, employed by Defendant LASD. Plaintiff is informed and believes, and on that basis alleges that, in his role as an employee of Defendant LASD, Defendant Dingman handled and at some point damaged Plaintiff's property. Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant Dingman was acting in the course and scope of his employment with Defendant LASD. And he is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

18.    Doe 7, who has now been identified as Defendant Nicholas Saylor is, and at all times relevant to this complaint was, employed by Defendant LASD. Plaintiff is informed and believes, and on that basis alleges that, in his role as an employee of Defendant LASD, Defendant Dingman handled and at some point damaged Plaintiff's property. Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this complaint, Defendant Dingman was acting in the course and scope of his employment with Defendant LASD. And he is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

19.    Doe 8, whose identity is not yet known to Plaintiff, is, and at all times relevant to this complaint was, employed by Defendant LASD. Plaintiff is informed and believes, and on that basis alleges, that Doe 7 was employed as a property custodian at LASD's Whittier warehouse, or was employed in another similar role that involves overseeing property at that warehouse, where Plaintiff's firearms were stored. Plaintiff is informed and believes, and on that basis alleges, at all times relevant to this complaint, Doe 7 was acting in the course and scope of their employment with Defendant LASD. And he or she is, and was at certain times identified below, acting under color of state law within the meaning of 42 U.S.C. § 1983.

20.    The true names or capacities—whether individual, corporate, associate, or otherwise—of the Defendants named herein as Does 9-20, are presently unknown to Plaintiff, and are therefore sued by these fictitious names. Plaintiff prays for leave to

amend this Complaint to show the true names or capacities of these Defendants if and when they have been determined. Such additional Defendants could include individuals who were responsible for the damage caused to the firearms, or officials responsible for imposing the excessive fine on Plaintiff.

## FACTUAL ALLEGATIONS

### [Right to Be Free from Unreasonable Seizures]

21.     The Fourth Amendment to the United States Constitution provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

22.     "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

23.     "The destruction of property is 'meaningful interference' constituting a seizure under the Fourth Amendment, *Jacobsen*, 466 U.S. at 124-25; *Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir. 1994), because the destruction of property by state officials poses as much of a threat, if not more, to people's right to be "secure . . . in their effects" as does the physical taking of them." Indeed, "[l]aw enforcement activities that unreasonably damage or destroy personal property, thereby 'seizing' it within the meaning of the Fourth Amendment, may give rise to liability under § 1983.' " *Newsome v. Erwin*, 137 F. Supp. 2d 934, 941 (S. D. Ohio 2000).

24.     Further, it is well established that "[a] seizure lawful at its inception can nevertheless violate the Fourth Amendment because the manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[.]" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984) (citing *United States v. Place*, 462 U.S. 696, 707-10 (1983)). Indeed, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). If it cannot, a seizure reasonable at its inception becomes

FIRST AMENDED COMPLAINT

an unreasonable one. *Id.* at 1196-97.

**[Right to Be Free from Excessive Fines]**

25.     The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. This amendment prohibits the federal government from imposing unduly harsh penalties on criminal defendants.

26.     The Supreme Court of the United States recently ruled that the Eighth Amendment right to be free from excessive fines is incorporated against the states through the Fourteenth Amendment. *Timbs v. Indiana*, -- U.S. --, 139 S. Ct. 683 (2019).

27.     "A forfeiture is unconstitutionally excessive 'if it is grossly disproportional to the gravity of a defendant's offense.' " *United States v. Viloski*, 814 F.3d 104, 110 (2d Cir. 2016) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

28.     As the Supreme Court held in *Austin v. United States*, 509 U.S. 602, 610 (1993), "a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." (emphasis added.)

**[State Law and the County's $54 Firearm Storage Fee]**

29.     Under California law, cities, counties, and state agencies "may adopt regulation[s], ordinance[s], or resolution[s] imposing a charge equal to its administrative costs relating to the seizure, impounding, storage, or release of any firearm, ammunition feeding device, or ammunition." Cal. Penal Code § 33880(a).

30.     Any fee set by local authorities to recover these costs, however, "shall not exceed the actual costs incurred for the expenses directly related to taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner." Cal. Penal Code § 12021.3 (repealed and superseded by

the similarly phrased Cal. Penal Code § 33880 in 2012).[1]

31.     On November 22, 2005, relying on then-section 12021.3, the Los Angeles County Board of Supervisors adopted a $54 per-firearm "administrative fee" to "recover the costs of the seizure, storage and return of a firearm."

32.     The County does not charge a storage fee for non-firearm items to be returned.

33.     In a letter to the Board in support of the fee's enactment, then-Sheriff Leroy D. Baca stated that several different classifications of LASD personnel are involved in the processing of firearms, from the initial booking to the storage and release.

34.     A cost breakdown attached to Sheriff Baca's letter alleged that, for each firearm seized, a deputy spends about 20 minutes "booking" the firearm, a station clerk spends about 5 minutes entering information to DOJ/AFS databases, an evidence custodian then spends about 5 minutes verifying that the information was correct, about 20 minutes updating records and preparing the firearm for release from the station, and then 5 more minutes preparing to transfer the property to Central Property and Evidence.

35.     According to then-Sheriff Baca's cost breakdown, at the Central Property and Evidence Unit, another evidence custodian spends about 10 minutes verifying information and storing each firearm and a typist clerk spends about 5 minutes entering information into an unspecified "database."

36.     According to then-Sheriff Baca's cost breakdown, to prepare a gun for release from Central Property, an evidence custodian spends approximately 10 minutes verifying and updating records and a typist clerk spends another approximately 10 minutes updating "databases."

37.     According to then-Sheriff Baca's cost breakdown, all this work adds up to a

---

[1] The relevant portion of section 33880 now reads: "The fee under subdivision (a) shall not exceed the actual costs incurred for the expenses directly related to taking possession of any firearm, ammunition feeding device, or ammunition, storing it, and surrendering possession of it to a licensed firearms dealer or to the owner." Cal. Penal Code § 33880(b).

FIRST AMENDED COMPLAINT

claimed 90 minutes of staff time per gun (55 minutes at the station level and 35 minutes Central Property), adding up to $54.45 per firearm when taking the hourly pay of each employee into account.

38.     Then-Sheriff Baca also wrote that "an analysis of firearms evidence processing over a four-year period revealed that potentially 500 guns per year would be eligible for the administrative fee" and that "[a] $54 fee would yield additional revenue of approximately $27,000 each year."

39.     Per California Penal Code section12021.3, a fee cannot exceed the *actual* costs an agency *directly* incurs related to the firearm seizure, storage, and return. In passing the fee, the Board of Supervisors expected that about 500 firearms *in total* would be subject to the fee annually. It is thus clear that the County's administrative fee, as calculated, was never intended to apply to a firearm collection of hundreds of firearms seized from a single firearm owner. It was mainly contemplating the seizure of either individual firearms or small collections from many different sources.

40.     Under both the original California Penal Code section 12021.3, and the newer section 33880, enactment and enforcement of the administrative fee is discretionary. Localities do not have to impose a fee, and if they do, they may waive it for those claiming recovered firearms that were reported stolen, illustrating that the statute recognizes that the fee may be inappropriate when levied against blameless victims of firearm theft.

41.     Other localities have imposed only the DOJ fee that lessens for each additional firearm.

42.     For example, according to their website, the city of Redondo Beach charges only the California DOJ fee under the Law Enforcement Gun Release (LEGR) Program of $20 per firearm, with the fee for the release of each subsequent firearm being just an additional $3. It charges no fee beyond that, and if the firearms are released directly to an FFL, then even that fee is not charged. *See* City of Redondo Beach, Recover Firearms, https://www.redondo.org/depts/police/police_services/property_and_evidence/recover_fir

earms.asp (last accessed Oct. 26, 2020); *see also* California Dep't of Justice, Bureau of Firearms, Law Enforcement Release Application 3, *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ler.pdf (last accessed Oct. 26, 2020).

**[Defendants' Handling of Plaintiffs' Firearms & Resulting Damage]**

43.     Plaintiff's deceased husband, Manuel Fernandez, was prohibited from owning firearms, ammunition, magazines, and speed loaders due to prior felony convictions stemming from 2009.

44.     According to an investigation report by Special Agent Alvaro Arreola, the California Department of Justice Bureau of Firearms' database Armed Prohibited Persons (APPS) identified Mr. Fernandez as a prohibited person potentially in possession of firearms.

45.     The APPS database indicated that Mr. Fernandez had purchased 41 firearms before becoming prohibited, and that there was no record existed that any of them had been transferred from his possession after his felony conviction.

46.     According Mr. Arreola's report, the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) received an anonymous tip on May 30, 2018, indicating that Mr. Fernandez was in possession of a large collection of firearms. The same tip was also received by Defendant LASD on or around June 10, 2018.

47.     On June 11, 2018, Defendant Deputy Wyatt Waldron presented a statement of probable cause to the Los Angeles Superior Court, and the Honorable Judge Lisa Chung issued a warrant for the search of Mr. Fernandez's residence.

48.     On June 14, 2018, Defendants Waldron, Roth, and Does 8-20 executed the search warrant at Mr. Fernandez's residence.

49.     During the course of the June 14, 2018 search, Defendants Waldron, Roth, and Does 9-20 discovered Mr. Fernandez's firearm collection. They arrested Mr. Fernandez and seized more than 400 firearms.

50.     On information and belief, Plaintiff alleges that Defendants Waldron, Roth, and Does 8-20 damaged Plaintiffs' firearms either during the execution of the warrant and

seizure of the firearms or when transporting the firearms to the first station where they stored, which Plaintiff believes to be the Palmdale Sheriff's Station, but could also have been another station.

51.     Under separate warrants, Defendants Waldron, Roth, and Does 8-20 executed three later searches of the Fernandez property on June 15, 2018, June 21, 2018, and June 29, 2018. These later searches resulted in the seizure of dozens more firearms, as well as ammunition magazines and speed loaders.

52.     On information and belief, Plaintiff alleges that Defendants Waldron, Roth, and Does 8-20 damaged the later-seized firearms either during the execution of the warrant and seizure of the firearms or when transporting the firearms to the first station where they stored, which Plaintiff believes to be the Palmdale Sheriff's Station, but could also have been another station.

53.     Between June 14, 2018, and June 28, 2014, Plaintiffs' firearms arrived at the Palmdale Sheriff's Station, where Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, and Saylor booked them into LASD custody. *See* County of Los Angeles Sheriff's Department Evidence and Property Page, Palmdale Station.

54.     Plaintiff is informed and believes, and on that basis alleges that Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, and Does 8-20 each handled the firearms during their processing.

55.     On information and belief, Plaintiff alleges that Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, and Does 8-20 were each responsible for seeing to it that each firearm they handled was stored properly and safely but did not do so despite written department policies regarding the proper storage of firearms in LASD custody

56.     Based on an email sent to Plaintiff's counsel by Defendant O'Leary Brown in March 2019, Plaintiff is informed and believes, and on that basis alleges, that all the seized firearms were at some point transferred to LASD's warehouse in Whittier for

storage and were, during that time, in the care of either Defendant O'Leary Brown, Doe 8, or both.

57.     Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, and Does 8-20 were property custodians with LASD, either at the Palmdale Station or the Whittier Warehouse, during the time that Plaintiff's firearms were in LASD custody or were otherwise responsible for properly storing, handling, and safeguarding the firearms, but failed to do so.

58.     Plaintiff is informed and believes, and on that basis alleges that, in his role as detective, Defendant Roth and Doe 9 investigated whether Plaintiff's seized firearms were lawful to possess and thus not contraband, if possessed by a person not otherwise prohibited from possessing firearms.

59.     Having investigated the legality of the seized firearms, Defendant Roth and Doe 9 prepared a "supplemental report," where he reported his findings that 458 of the seized firearms were legal to possess, and thus not contraband.

60.     On information and belief, Defendants Roth and Doe 9 handled the firearms in the course of examining them to determine if they were legal to own in California and, at some point during the examination and/or handling, damaged Plaintiffs' firearms.

61.     After Plaintiffs paid Defendant County's required $54-per-firearm fee (as alleged further below), Plaintiff requested that all the lawful firearms (i.e., those firearms not determined to be unlawful to possess under state law) be transferred to Carol Watson's Orange Coast Auctions, a properly licensed firearm dealer, to be sold at auction.

62.     To effectuate the transfer to Orange Coast Auctions, Defendants transferred the firearms from the Whittier warehouse to the Palmdale Sheriff Station, and they were then released to Orange Coast Auctions.

63.     Upon release of the firearms to Carol Watson's Orange Coast Auctions, Plaintiff discovered the extent of the damage to her firearms that resulted from being in LASD custody through photographs taken by auction house personnel at the police station showing how poorly the firearms were transported and stored by Defendants LASD,

Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, Waldron and Does 8-20

64. For instance, photographs show dozens of long guns were packed together tightly in plastic bins. Photographs also revealed that handguns were thrown haphazardly on top of each other; they were not stored in separate envelopes that would have protected them from damage.

65. Orange Coast Auctions estimated that the damage to the firearms caused by Defendants' poor storage, handling, and transport of them while in LASD custody resulted in them selling for approximately $96,000 less than they would have had they not been damaged.

66. Defendants' storage of the firearms was in violation of LASD's written policies described in the Department's "Manual of Policy and Procedures" ("the Manual"). Volume 5, Chapter 4 of the Manual describes the LASD's policies for storage of property and evidence.

67. Volume 5, Chapter 4, Subtopic 070.00 of the Manual states that "all property/evidence items shall be stored in a secure manner in a secure facility." It goes on to state that "high value items" must be stored in a safe.

68. To the extent the firearm collection was damaged because it was so large, Subtopic 070.30 would also apply, which explains that when property and evidence involved in a case is of such a large bulk or quantity that it is not feasible to store at a station or unit, the watch commanders "shall contact Central Property and Evidence (CPE) and arrange for immediate transfer."

69. Defendants' storage of the firearms also conflicted with guidelines for evidence and property handling from the California Commission on Peace Officer Standards and Training ("the Commission").

70. The Commission advises that "[a]gencies must develop specific guidelines detailing the acceptable methods for the receipt, packaging and storing of evidence and property that meet both agency needs and judicial standards." Cal. Comm'n on Peace

Officer Standards & Training, Law Enforcement Evidence & Property Management Guide 4-1 (3d ed. 2013), *available at* https://www.crime-scene-investigator.net/PDF/law-enforcement-evidence-and-property-management-guide.pdf.

71.     The Commission's guideline entitled Guideline 4.3: Firearms Handling Procedures, directs agencies to package firearms into appropriate gun boxes. *Id.* at 4-4. "[A] firearm must be rendered unloaded and safe with the action open and placed in a specifically designed firearms storage container (e.g., cardboard gun box or similar container), and secured to the container using nylon ties." *Id.* at 4-5.

72.     Plaintiff is informed and believes, and on that basis alleges, that Defendant LASD has neither investigated nor disciplined any of it employees who handled the firearms for violating any of its written storage policies or other guidance regarding the proper storage of property in LASD custody, including firearms and property of significant value.

73.     Given the disregard for their own written policies and guidelines and that, to Plaintiffs' knowledge, Defendant LASD has neither investigated nor disciplined its employees who handled the firearms for violating its written storage policies, Plaintiff alleges that it is Defendants' longstanding (though unwritten) policy or custom to store firearms haphazardly without care for any damage that may result notwithstanding any written policy or guidance on the subject.

### [Plaintiff's Payment of the County's $54-Per-Firearm Fee]

74.     On September 27, 2018, after Mr. Fernandez was charged for his unlawful possession of firearms, but before any trial could begin, he passed away.

75.     The charges against Mr. Fernandez were dismissed due to his death.

76.     Upon Mr. Fernandez's death, any interest in the seized firearms passed to Plaintiff, as she was the trustee of the Fernandez Trust.

77.     In order for Plaintiff to retrieve the seized firearms that were not contraband, 451 in total, Defendants demanded that Plaintiff pay Defendant County's "fee" of $54 *per firearm*—or $24,354.

78.     Indeed, counsel for Plaintiff spoke with Defendant O'Leary Brown, the property custodian for the LASD Palmdale Sheriff's Station, who informed Plaintiff's counsel of Palmdale Station's price list reflecting the fee of $54 per firearm for the return of firearm property and LASD's general policy that the prices reflected on the price list must be paid before the firearms could be released to Plaintiff.

79.     There are myriad problems with how the County's "administrative fee" was applied to Plaintiffs' firearms.

80.     First, the work performed for each firearm appears to have been duplicative, with various employees seemingly entering the same information and updating the same databases.

81.     Second, no reasonable reduction was given in consideration of the fact that hundreds of firearms were all taken from the same individual. Unlike a situation where a single stray firearm is recovered and has to be processed, much of the work here was the same for each firearm, which would cut down on the amount of time necessary to process each firearm.

82.     For the per-firearm fee to not be in violation of state law, it must not exceed the actual administrative costs incurred by LASD. Yet LASD per-firearm fee rests on the assumption that the processing the 451 firearms that were returned to Plaintiff took them *more than 675 employee hours*, despite the fact that all the firearms came from the same source.

83.     What's more, the Board of Supervisors plainly never contemplated a situation such as this where hundreds of firearms all came from one source. As then-Sheriff Baca wrote, "an analysis of firearms evidence processing over a four-year period revealed that potentially 500 guns per year would be eligible for the administrative fee. A $54 fee would yield additional revenue of approximately $27,000 each year." Here, Plaintiff has paid almost that entire amount on her own, just to retrieve her own property.

84.     In refusing to reduce the fee to reflect that all of the firearms came from the same person and required less work to process, the LASD fee as applied to Plaintiff

FIRST AMENDED COMPLAINT

exceeded the actual administrative costs borne by LASD in violation of California Penal Code section 33880 and became unconstitutionally excessive as applied to Plaintiff.

85.    Insofar as the so-called "fee" exceeded the actual administrative costs borne by LASD, its existence can only be punitive in nature. *See Austin*, 509 U.S. at 610 ("[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.").

86.    Plaintiff, through her counsel, thus expressed to Defendants that Plaintiff was willing to pay a reduced fee that more reasonably reflected the actual administrative costs of Defendants' processing and storing the firearm collection.

87.    Defendants refused to negotiate a lower fee amount, stating that there was no discretion to lower the per-firearm fee regardless of the circumstances because it was set by county ordinance, leaving Plaintiff no other option to take possession of her property but to pay the full amount of $24,354.

88.    On December 9, 2019, Plaintiff's counsel sent a letter to Deputy County Counsel Lana Choi of the Sheriff's Legal Advisory Unit, informing Defendants that Plaintiff would pay the full amount of the demanded "administrative fees" "under protest in order to get the firearms out of the possession of the county" and "to stop any claim that the continued storage of the firearms justifie[d] the current or any additional storage fees." But Plaintiff's counsel repeated that Plaintiff remained open to negotiating a lower fee with the County.

89.    In summary, Plaintiff had to pay over $24,000 for the "service" of Defendants storing her firearms so poorly that nearly $100,000 in damage was done to them.

## DECLARATORY JUDGMENT ALLEGATIONS

90.    There is an actual and present controversy between the parties. Plaintiff contends that Defendant LASD'S per-firearm fee of $54, imposed under Penal Code section 33880, constitutes an excessive and punitive fine as applied to a large collection of firearms all seized from a single owner who was never convicted of any charges. Plaintiff thus desires

a judicial declaration that California Penal Code section 33880, as applied here by Defendants, violates Plaintiff's rights under the Eighth Amendment. Plaintiff also desires a declaration that the County's fee, at minimum, violates the clear mandate of Penal Code section 33880 against charging a fee greater than the actual administrative costs related to processing and storing the firearms.

91.     Plaintiff also contends that Defendants' refusal to release the firearms to Plaintiff upon her husband's death and the dismissal of all charges violated the Fourth Amendment prohibition on unreasonable seizures. Regardless of the legality of the original search and seizure, Defendants had no probable cause to continue the seizure of Plaintiffs' property after Mr. Fernandez's death because the fee they sought to extract from Plaintiffs was unreasonably excessive under all the circumstances—including Defendants' extraordinarily poor storage and handling of Plaintiffs' firearm collection that resulted in about $96,000 of damage to the property. Plaintiff thus desires a judicial declaration that Defendants violated Plaintiff's rights under the Fourth Amendment.

**FIRST CLAIM FOR RELIEF**
**Violation of Eighth Amendment Right to Be Free from Excessive Fines**
**42 U.S.C. § 1983, U.S. Const.**
(Against Defendants Los Angeles County, LASD, and Villanueva)

92.      Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 91, inclusive, as though fully set forth below.

93.     The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. This amendment prohibits the federal government from imposing unduly harsh penalties on criminal defendants. It has been incorporated against state and local governments via the Fourteenth Amendment. *Timbs*, 139 S. Ct. 683.

94.     California Penal Code section 33880, which authorizes Defendants to charge a fee for seizing, storing, and returning firearms, prohibits localities from charging more than their actual administrative costs for doing so.

95.     Plaintiff's late husband, Manuel Fernandez, had his collection of hundreds of

firearms seized pursuant to a warrant by Defendants LASD, Waldron, Roth, and Does 9-20.

96.     Before any conviction, however, Mr. Fernandez passed away, Defendants dismissed the charges against him, and full ownership of the seized firearm collection passed on to Plaintiff. In order to secure the release of her firearms, however, Plaintiff had to pay LASD an "administrative fee" $54 per firearm for each of 451 firearms—for a total fee of $24,354.

97.     Plaintiff is informed and believes, and on that basis alleges that the costs for processing and storage Plaintiffs' firearms were substantially lower than the actual processing costs associated with the typical seizure of hundreds of firearms coming from hundreds of different individuals—the type of situation Defendant Los Angeles County had in mind when it adopted the fee. Moreover, according to a conversation with Defendant O'Leary Brown, Defendants do not charge a storage fee for property other than firearms, conflicting with the contention that the fee is meant simply to reimburse Defendants for their storage costs.

98.     Defendants refused to reduce the fee or even negotiate in good faith to come to a reasonable arrangement, citing that the fee was set by Defendant County's duly adopted ordinance—an official policy—and they had no discretion to reduce it.

99.     In charging substantially more for the return of the firearms than the costs Defendants had borne to seize, process, and store them, the "administrative fee" became unconstitutionally excessive and punitive in violation of the Eighth Amendment under the standard set by *Austin v. United States*, 509 U.S. 602, 610 (1993).

100.   It is the official policy of Defendants County, LASD, and Sheriff Villanueva to charge a fee of $54 per firearm for the release of seized firearms, and County and LASD personnel have no discretion to reduce the fee to reflect the Defendants' actual costs. In levying the entire $54 per-firearm fee and refusing to lower it even though it was excessive and punitive as applied to Plaintiff, Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, Waldron, and Does 8-20 were thus

following the official policy set by Defendant County and enforced by Defendants LASD and Sheriff Villanueva.

101. Alternatively, to the extent it is *not* the policy of Defendants County, LASD, and Sheriff Villanueva that County and LASD employees lack discretion to reduce the $54 per-firearm-fee, Defendants County, LASD, and Sheriff Villanueva failed to properly screen, train, and/or supervise their officers and personnel, including Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, Waldron, and Does 8-20 with regard to the applicable written policies, guidelines, and laws.

102. As a result of such failures to train, Defendants failed to apply the written policies, guidelines, and laws that led to Plaintiff's harm—*i.e.*, the violations of her constitutional rights described herein including, inter alia, the Eighth Amendment right to be free from excessive fines.

103. As a direct and proximate consequence of the acts of Defendants County, LASD, and Villanueva, their agents and employees, Plaintiff suffered significant financial loss and is entitled to compensation for that loss.

**SECOND CLAIM FOR RELIEF**
**Violation of Fourth Amendment Right to be Secure from Unreasonable Seizures**
**42 U.S.C. § 1983**
(Against All Defendants)

104. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 105, inclusive, as though fully set forth below.

105. The Fourth Amendment provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

106. "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). So regardless of the legality of the initial seizure, a seizure legal at inception can later become unlawful if the government lacks probable cause to continue a seizure past a certain point

or unreasonably damages or destroys personal property.

107.   During the execution of various valid search warrants, Defendants seized firearms from Plaintiff's now-deceased husband, and proceeded to transport, handle, and store them with extreme negligence or reckless disregard for their condition.

108.   Defendants' disregard for their own written policies on storage of firearms and failure to discipline any employee for such disregard indicates that the custom and longstanding practice of Defendants LASD and Sheriff Villaneuva is to haphazardly store seized firearms, regardless of what their written policies or guidelines state. The Supreme Court in *Monell* held that municipalities may be held liable under section 1983 for constitutional violations resulting from not just official county policy, but also customs. (*Benavidez v. Cty. of San Diego* (9th Cir. 2021) 993 F.3d 1134, 1153.)

109.   Defendants lacked probable cause to continue to withhold the firearms after the death of Mr. Fernandez, the dismissal of the charges against him, and the transfer of the firearms' ownership to Plaintiff because the levying of the County's $54 per-firearm fee was unconstitutional as applied to Plaintiff. The once lawful seizure became an unconstitutional one. The failure to return Plaintiffs' firearms once probable cause evaporated and Plaintiff demanded their return violates the Fourth Amendment.

110.   Further, when Defendants released the firearms to Plaintiff, they had lost about $96,000 in value due to the damage done to them during their storage and/or during their transport to and from Defendants' storage facilities. The damage to Plaintiffs' seized property by Defendants violates the Fourth Amendment.

111.   At all times herein mentioned, Defendants County, LASD, and Villaneuva authorized and ratified the wrongful acts of the individual defendants and Does 8-20. The individual Defendants' wrongful conduct was the result of policies, practices, and customs of Defendants County, LASD, and Villanueva—notwithstanding the official Defendants' written policies.

112.   Defendants County, LASD, and Sheriff Villanueva failed to properly screen, train and/or supervise their officers and personnel, including Defendants Ames, Dingman,

Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, Waldron, and Does 8-20 with regard to such written policies, guidelines, and laws. Their officers and personnel thus wrongly applied an excessive fine on the Fernandez firearms, and also stored them poorly resulting in extensive damage.

113.   As a result of such failures to train, Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, Waldron, and Does 8-20 failed to apply the official Defendants' written policies, guidelines, and laws, leading to Plaintiff's harm—*i.e.*, the violations of her constitutional rights described herein including, inter alia, the violation of her constitutional rights including, inter alia, the Fourth Amendment right to be free from unreasonable searches and seizures.

114.   Plaintiff's constitutional rights were violated as a proximate result of the deliberate indifference of Defendants County, LASD, and Villaneuva in the training and supervision of its officers, detectives, and employees as regards the handling and storage of seized firearms in LASD custody per LASD policy and state guidelines

115.   As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiff suffered a severe financial loss and is entitled to compensation for that loss.

### THIRD CLAIM FOR RELIEF
#### Negligence
### California Civil Code § 1714
(Against All Defendants)

116.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 115, inclusive, as though fully set forth below.

117.   Upon the seizure of Plaintiff's property, Defendants had a legal duty to use due care in transporting and storing that property, including the 451 firearms that Plaintiff eventually had to pay over twenty thousand dollars to retrieve.

118.   Defendants breached that duty by failing to properly store the firearms while they were in their care and during their transport, as they packed the long guns all together in bins and stacked pistols on top of each other. This was done with disregard to

Defendant LASD'S policy manual, the California Commission on Peace Officer Standards and Training's guidelines for handling seized property, and constitutional protections against unlawful seizures.

119.   Defendants' breach was the direct and proximate cause of Plaintiff's resulting harm of $96,000 in lost value when the firearms were sold at auction.

120.   Defendants County of Los Angeles, LASD, and Sheriff Villanueva are liable for the actions or omissions of their employees under California Government Code section 815.2, which states that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

121.   Defendants' negligence or reckless disregard of their duty of care was the main factor in causing Plaintiff's harm, and Plaintiff is entitled to compensation for the resulting financial loss.

### FOURTH CLAIM FOR RELIEF
### Breach of Bailment
### California Civil Code § 1813, et seq.
(Against All Defendants)

122.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 121, inclusive, as though fully set forth below.

123.   By seizing her late husband's firearms, Defendants created an involuntary bailment of that property.

124.   Defendants, as bailees, had sole actual and physical possession and custody of the firearms.

125.   Defendants, as bailees, failed to adequately care for the firearms, transporting and storing them in such a way that tremendous damage resulted to them.

126.   Defendants breached the bailment because they returned the firearms to Plaintiff in damaged condition that they had caused.

127.   Defendants County of Los Angeles, LASD, and Sheriff Villanueva are liable for

the actions or omissions of their employees under California Government Code section 815.2, which states that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

128.   Defendants' breach of bailment caused Plaintiff's harm in the form of damage to her property, and Plaintiff is entitled to compensation for the resulting financial loss.

**FIFTH CLAIM FOR RELIEF**
**Trespass to Chattels**
(Against All Defendants)

129.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 128, inclusive, as though fully set forth below.

130.   Except for a few firearms that are not at issue here, Plaintiff lawfully owned the firearms seized following the death of her husband. A seizure of property is an interference to possessory interests only, and not ownership rights, such that Defendants, or any of them, never had an ownership interest in Plaintiff's firearms. Defendants only had a possessory interest in the firearms from the time they were seized up through the time Plaintiff's husband passed away, which made her eligible as a matter of law to receive the firearms.

131.   Any damage that resulted to the firearms while they were in Defendants' possession was an intentional and substantial interference with Plaintiff's enjoyment of her property and constituted a trespass to chattels.

132.   Plaintiff did not consent to Defendants' interference with her ownership rights to her property.

133.   Plaintiff seeks a remedy against Defendants for their wrongful exercise of control over Plaintiff's personal property by demanding an excessive fine be paid prior to its return, and the resulting damage to that property.

134.   Defendants County of Los Angeles, LASD, and Sheriff Villanueva are liable for the actions or omissions of their employees under California Government Code section

815.2, which states that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

135.   Plaintiff was harmed in the form of lost value to the firearms due to the damage done to them while they were in the possession of Defendants. Plaintiff is entitled to compensation for her loss.

**SIXTH CLAIM FOR RELIEF**
**Failure to Train**
(Against Defendants Los Angeles County, LASD, and Alex Villanueva)

136.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 136, inclusive, as though fully set forth below.

137.   Defendants County, LASD, and Villanueva are responsible for the operations, practices, and customs of the Los Angeles Sheriff's Department.

138.   Defendants LASD and Villanueva are also responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the personnel and officers under their supervision and command, including the personnel who forced Plaintiff to pay an excessive fine to retrieve her firearms, and the personnel who poorly stored and transported her firearms, resulting in damage to them.

139.   On information and belief, Defendants, and each of them, will deny that in committing the acts and omissions against Plaintiff described herein, including the violations of the Fourth and Eighth Amendments described above.

140.   Defendants  County, LASD, and Villanueva, and each of them, had notice of the applicable state law regarding the imposition of administrative fees under Penal Code section 33880, as the $54 fee that is one of the subjects of this litigation exists based on the authority granted by that section.

141.   Defendants Los Angeles County, LASD, and Villanueva, and each of them, also had notice of LASD policies described in the Department's "Manual of Policy and Procedures", specifically, the sections pertaining to the policies for storage of property

25

and evidence. Further, they had notice of the guidelines laid out by the California Commission on Peace Officer Standards and Training in their "Law Enforcement Evidence and Property Management Guide," specifically, the portions discussing firearm handling and storage procedures.

142.   Notwithstanding such notice, Defendants failed to properly screen, train and/or supervise their officers and personnel, including Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, Waldron, and Does 8-20, with regard to such written policies, guidelines, and laws. Their officers and personnel thus wrongly applied an excessive fine on the Fernandez firearms, and also stored them poorly resulting in extensive damage. Failure to train constitutes a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees. (*Benavidez v. Cty. of San Diego* (9th Cir. 2021) 993 F.3d 1134, 1153-1154.)

143.   As a result of such failures to train, Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, Waldron, and Does 8-20 failed to properly apply the written policies, guidelines, and laws of Defendants County, LASD, and Villanueva, leading to Plaintiff's harm. Plaintiff resultantly suffered violations of her constitutional rights including, inter alia, the Eight Amendment right to be free from excessive fines and the Fourth Amendment right to be free from unreasonable searches and seizures.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.   Enter a declaratory judgment that California Penal Code section 33880(a), as applied to Plaintiff Fernandez by way of Defendants' $54 per-firearm "administrative fee," was punitive and constituted an excessive fine in violation of Plaintiffs' rights under the Eighth Amendment to the United States Constitution;

2.   Enter a declaratory judgment that Defendants' $54 per-firearm "administrative fee," as applied to Plaintiff, violates California Penal Code section 33880(a) and its

FIRST AMENDED COMPLAINT

express mandate that such fees do not exceed the actual costs incurred for the seizure, impounding, storage, or release of any firearm, ammunition feeding device, or ammunition;

3.    Enter a declaratory judgment that Defendants' conduct as complained of in this complaint violates Plaintiffs' rights under the Fourth Amendment to the United States Constitution;

4.    Award compensatory and general damages, in an amount to be proven at trial, against Defendants Los Angeles County and LASD and against each Defendant sued in his or her personal capacity;

5.    Award exemplary and punitive damages, in an amount to be proven at trial, against Defendants Los Angeles County and LASD and against each of the individual Defendants sued in his or her personal capacity;

6.    Award reasonable attorneys' fees and costs of suit, according to proof;

7.    Award interest; and

8.    Grant any such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and Central District Local Rule 38-1, Plaintiff hereby demands a trial by jury in the above-captioned action of all issues triable by jury.


Dated: October 12, 2021                    **MICHEL & ASSOCIATES, P.C.**

                                           _____
                                           Anna M. Barvir
                                           *Counsel for Plaintiff Ana Patricia*
                                           *Fernandez*

FIRST AMENDED COMPLAINT

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Fernandez, v. Los Angeles County, et al.*
Case No.: 2:20-cv-09876 DMG (PDx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**FIRST AMENDED COMPLAINT FOR DECLARATORY
RELIEF AND DAMAGES**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Henry Patrick Nelson
nelson-fulton@nelson-fulton.com
Amber Logan
amberlogan@nelson-fulton.com
Nelson & Fulton
3435 Wilshire Blvd., Suite 2800
Los Angeles, CA 90010
*Attorneys for Los Angeles County, Los Angeles County Sheriff's Department, Sheriff Alex Villanueva, Deputy Wyatt Waldron, Deputy John Roth, Susan O'Leary Brown*

I declare under penalty of perjury that the foregoing is true and correct.

Executed October 12, 2021.

Laura Palmerin

CERTIFICATE OF SERVICE