1  Henry Patrick Nelson, CSB #32249
   Amber A. Logan, CSB #166395
2  *Nelson & Fulton*
   Equitable Plaza, Suite 2800
3  3435 Wilshire Boulevard
   Los Angeles, CA 90010-2014
4  Tel. (213) 365-2703 / Fax (213) 201-1031
   nelson-fulton@nelson-fulton.com
5  amberlogan@nelson-fulton.com

6  Attorneys for Defendants, County of Los Angeles, Los Angeles County Sheriff's Department,
7  Sheriff Villanueva, Los Angeles County Employees Ames, O'Leary Brown, Dingham, Jacob,
   Leon, Moreno IV, Roach, Roth, Saylor, Waldron

8
                    UNITED STATES DISTRICT COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10

11
   ANA PATRICIA FERNANDEZ,          )  CASE NO. 2:20-cv-09876-DMG (PD)
12 an individual,                   )
                                    )  [Fee Exempt - Govt. Code §6103]
13                Plaintiff,        )
                                    )  **DEFENDANTS, COUNTY OF**
14 vs.                              )  **LOS ANGELES, LOS ANGELES**
                                    )  **COUNTY SHERIFF'S DEPARTMENT,**
15 LOS ANGELES COUNTY; THE          )  **AND SHERIFF ALEX VILLANUEVA'S**
   LOS ANGELES COUNTY SHERIFF'S     )  **NOTICE OF MOTION AND MOTION**
16 DEPARTMENT; WYATT WALDRON,       )  **TO DISMISS PLAINTIFF'S ENTIRE**
   an individual; JOHN ROTH, an     )  **FIRST AMENDED COMPLAINT FOR**
17 individual; SUSAN O'LEARY BROWN  )  **FAILURE TO STATE A CLAIM UPON**
   an individual; ALEX VILLANUEVA, in )  **WHICH RELIEF CAN BE GRANTED**
18 his official capacity as Sheriff of )
   Los Angeles County; RICHARD LEON, )  [F.R.C.P. 12(b)(1) and (6)]
19 an individual; MURRAY JACOB an   )
   individual; DAVID ROACH, an      )
20 individual; SALVADOR MORENO IV,  )  Date:  January 14, 2022
   an individual; JASON AMES, an    )  Time:  9:30 a.m.
21 individual; KYLE DINGMAN, an     )  Place: Courtroom 8C
   individual; NICHOLAS SAYLOR, an  )  Judge: Hon. Dolly M. Gee
22 individual; and DOES 8 through 20, )
                                    )
23                Defendants.       )
                                    )
24 _____ )

25 TO THE COURT, TO ALL PARTIES HEREIN AND THEIR COUNSEL OF RECORD:

26        PLEASE TAKE NOTICE that on January 14, 2022, at 9:30 a.m., or as soon

27 thereafter as the matter may be heard in Courtroom 8C of the United States District Court,

   located at 350 West 1st Street, 8th Floor, Los Angeles, CA 90012, the Defendants

1   COUNTY OF LOS ANGELES (also  sued and served as the LOS ANGELES COUNTY

2   SHERIFF'S DEPARTMENT), and SHERIFF ALEX VILLANUEVA, will move the Court

3   for an order dismissing the Plaintiff's First Amended Complaint pursuant to Federal Rule

4   of Civil Procedure 12(b)(6) for failure to allege sufficient facts to state a claim upon which

5   relief can be granted.

6        This motion shall be supported by this notice, the accompanying Memorandum of

7   Law and upon all pleadings and papers on file herein.

8   **MEET AND CONFER REQUIREMENT**

9        On October 27, 2021, I met and conferred telephonically with Plaintiff's counsel, Ms.

10  Anna Barvir, regarding the grounds for the motion.  As many of the issues are duplicative of

11  issues raised in the defendant's first Motion to Dismiss, the parties were unable to resolve any

12  of the contested issues during that meeting.  Ms. Barvir stipulated to a continuance for the

13  defendants to respond to the First Amended Complaint by November 22, 2021.

14
15  DATED: November 22, 2021                    **NELSON & FULTON**

16
17                                             By: s / Amber A. Logan
                                               AMBER A. LOGAN
18                                             Attorneys for Defendants,
                                               County of Los Angeles, et al.

19

20

21

22

23

24

25

26

27

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................. ii-iii

STATEMENT OF THE FACTS ................................................ 1

MEMORANDUM OF LAW ..................................................... 3

I.   THE COURT SHOULD DISMISS THE PLAINTIFF'S FIRST
     AMENDED COMPLAINT AS IT FAILS TO STATE A CLAIM
     FOR RELIEF UNDER THE FEDERAL CIVIL RIGHTS ACT ................ 3

A.   THE FAC FAILS TO ALLEGE AN EIGHTH AMENDMENT
     VIOLATION AS THE ADMINISTRATIVE FEES ARE
     NOT PUNITIVE .................................................. 4

B.   THE FAC FAILS TO ALLEGE A FOURTH AMENDMENT
     VIOLATION FOR RETENTION OF SEIZED PROPERTY. .................. 6

II.  THE FIRST AMENDED COMPLAINT FAILS TO STATE A
     CLAIM FOR MUNICIPAL LIABILITY AGAINST THESE
     DEFENDANTS ................................................... 9

A.   THE PLAINTIFF CANNOT MAINTAIN A *MONELL* CLAIM
     AGAINST THE LOS ANGELES COUNTY SHERIFF'S
     DEPARTMENT .................................................. 11

B.   THE FAC ALLEGES NO VIOLATION OF AN OFFICIAL
     POLICY OF THE COUNTY OF LOS ANGELES ......................... 11

C.   THE FAC FAILS TO ALLEGE *MONELL* LIABILITY BASED
     ON A LONG STANDING CUSTOM AND PRACTICE ...................... 12

D.   THE FAC FAILS TO ALLEGE FACTS SUFFICIENT TO
     STATE A CLAIM FOR FAILURE TO TRAIN AND
     SUPERVISE UNDER *MONELL* ..................................... 13

E.   THE FAC FAILS TO STATE A CLAIM FOR MUNICIPAL
     LIABILITY UNDER A THEORY OF FAILURE TO DISCIPLINE ........... 15

III. THE FAC FAILS TO STATE A CLAIM FOR DECLARATORY
     RELIEF ...................................................... 15

IV.  THE COURT SHOULD REFUSE TO EXERCISE SUPPLEMENTAL
     JURISDICTION OVER THE STATE CLAIMS .......................... 17

CONCLUSION ............................................................ 17

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

AE ex rel. Hernandez v. Cnty. of Tulare,
    666 F.3d 631, 637 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,
    300 U.S. 227, 240 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

American States Ins. Co. v. Kearns,
    15 F.3d 142, 143–144 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ashcroft v Iqbal, 129 S.Ct. 1937, 1949 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Austin v. United States, 509 U.S. 602, 609–610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Bauer v Becerra, 858 F.3d 1216 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007) . . . . . . . . . . . . . . . . . . . 3

Blankenhorn v City of Orange, 485 F.3d 463 at 484 (9th Cir. 2017) . . . . . . . . . . . . . . . . . 14

Board of Comm'rs of Bryan County v. Brown,
    520 U.S. 397, 404 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

Brewster v Beck, 859 F.3d 1194, 1197 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Brigham City v. Stuart, 547 U.S. 398, 403, (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Camara v. Municipal Court of City and County of San Francisco,
    387 U.S. 523, 528 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Chapman v. Houston Welfare Rights Organization 441 U.S. 600 (1979) . . . . . . . . . . . . . 9

Christie v IOPA, 176 F.3d 1231, 1239 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 15

City of Canton, Ohio v Harris, 489 U.S. 378, 388 (1988) . . . . . . . . . . . . . . . . . . . . . . 14

Connick v. Thompson (2011) 563 U.S. 51, 61–62 (2011) . . . . . . . . . . . . . . . . . . . . 13-14

Cox v. New Hampshire, 312 U.S. 569, 577 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cupp v Harris, 2021 WL 4443099 *4, slip copy filed September 28, 2021,
(E.D. Cal. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

E. Conn. Citizens Action Grp. v. Powers,
    723 F.2d 1050, 1056 (2d Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . 15

Kentucky v. Graham, 473 U.S. 159, 165 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kwong v Bloomberg, 723 F.3d 160, 165 (2nd Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . 5

Los Angeles County, Cal. v. Humpheries, 562 U.S. 29, 38-39 (2010) . . . . . . . . . . . . . . . 16

Louis v. Commissioner of Internal Revenue,
    170 F.3rd 1232, 1236 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 . . . . . . . . . . . . . . . 16

Monell v. Dep't of Soc. Serv's. of City of New York,
    436 U.S. 658, 690-691 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-13, 16

Oklahoma City v. Tuttle, 471 U.S. 808, 822–823,
105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pimentel v. City of Los Angeles, 974 F.3d 917, 921 (9th Cir. 2020) . . . . . . . . . . . . . . . 4

Rabinovitz, 287 F.Supp.3d at 963 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

Sheehan v. City & Cty. of S.F., 743 F.3d 1211, 1231 (9th Cir. 2014) . . . . . . . . . . . . . 15

Soldal v. Cook Cty., Ill., 506 U.S. 56, 61 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Thompson v. City of Los Angeles, 885 F.2d 1439, 1443–44 (9th Cir.1989) . . . . . . . 12-13

Trevino v. Gates, 99 F.3d 911, 918 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v Bajakajian, 524 U.S. 321, 327 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Kama, 394 F.3d 1236, 1239–40 (9th Cir. 2005) . . . . . . . . . . . . . . . . . 11

United States v. Jacobsen, 466 U.S. 109 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Sabhnani, 599 F.3d 215, 263 n. 19 (2d Cir. 2010) . . . . . . . . . . . . . . . 4

Weisbuch v. County of Los Angeles,
    119 F.3d 778, 781–82 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

West v Atkins, 487 U.S. 42, 48 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wilson v Lynch, 835 F.3d 1083, 1097 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wright v. Riveland, 219 F.3d 905, 915 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATUTES**

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
28 U.S.C. § 2201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-13, 15
42 U.S.C. § 1984 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Cal. Penal Code § 28225 (b)(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
California Penal Code §33880 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-8, 13
U.S. Const. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
U.S. Const. amend. VIII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATEMENT OF THE FACTS**

In the year 2009, Plaintiff Ana Patricia Fernandez contends that her husband Manuel Fernandez was a convicted felon prohibited from owning firearms, ammunition, magazines and speed loaders.  Special Agent Alvaro Arreola of the California Department of Justice Bureau of Firearms reported that their database of Armed Prohibited Persons, revealed that Manuel Fernandez purchased 41 firearms prior to becoming prohibited, but failed to transfer them from his possession pursuant to the terms and conditions of his conviction.  *(FAC, ¶¶ 41-45).*

Special Agent Alvaro's report also provided the Los Angeles County Sheriff's Department (hereafter "LASD") received a tip on or about June 10, 2018, indicating that Manuel Fernandez was in possession of a large collection of firearms.  *(FAC, ¶ 46)*

On June 11, 2018, Los Angeles County Sheriff's Deputy Wyatt Waldron presented a statement of probable cause to Judge Lisa Chung who issued a warrant for the search of the Fernandez residence.  The June 14, 2018- search resulted in the seizure of more than 400 firearms.  *(FAC, ¶¶ 47-49).*

Subsequent seizures of the residence occurred pursuant to subsequent warrants on June 15, June 21, and June 29, 2018.  These searches resulted in the seizure of dozens of additional weapons, ammunition magazines and speed loaders.  *(FAC, ¶ 51).*

The FAC alleges on information and belief that Deputies Roth and Waldron damaged the seized firearms either when executing the warrant or when transporting them to their first storage location believed to be the Palmdale Sheriff's Station.  *(FAC, ¶ 51).*

The FAC further alleges on information and belief that between June 14 and June 18, 2018, the firearms arrived at the Palmdale Sheriff's Station where Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary-Brown, Roach, Roth and Saylor booked them into custody.  *(FAC, ¶ 53-54).*  It is alleged that the firearms were in March 2019, all  of the seized firearms were transferred to the LASD warehouse in Whittier for Storage where defendants O'Leary-Brown and "Doe 8" were responsible for the storage, handling and safeguarding the firearms, but failed to do so.  *(FAC, ¶ 56-57).*  It is alleged that despite

written LASD policies regarding the proper storage of the firearms the plaintiffs contend that each of these defendants failed to properly and safely store the firearms.  *(FAC, ¶ 55)*. It is further alleged that in determining whether the firearms were legal to own, Deputy Roth and/or "Doe 9" examined the firearms and in the course of handling them, damaged them.  *(FAC, ¶ 60)*.

California Penal Code § 33880 (formerly § 12021.3), permits the County of Los Angeles to recover its administrative costs related to taking possession, storing, and releasing of any firearm, ammunition feeding device, or ammunition seized under the circumstances alleged here.  Under the California Penal Code, any fee set by local authorities to recover these costs, shall not exceed the actual costs incurred for the expenses directly related to the taking possession of a firearm, storing a firearm, and surrendering the firearm to a licensed firearms dealer or to the owner.  *(FAC, ¶ 29-30)*

On November 22, 2005, the Los Angeles County Board of Supervisors adopted a $54 per firearm administrative fee to recover the costs of seizure, storage and return of a firearm.  *(FAC, ¶ 31)*.  In a letter to the Board, then-Sheriff Leroy D. Baca stated that several different classifications of LASD personnel are involved in the processing of firearms.  According to the then-Sheriff's cost breakdown, this work added up to 90 minutes of LASD staff time per firearm, or $54.45 per firearm when taking the hourly pay of each employee into account.  *(FAC, ¶ 32-37)*.

In passing the fee, the Board of Supervisors expected that about 500 firearms in total would be subject to the fee annually.  *(FAC, ¶ 38)*.  The Plaintiff contends that it is thus clear that the County's administrative fee, as calculated, was never intended to apply to a firearm collection if hundreds of firearms seized from a single owner.  Plaintiffs conclude that the LASD mainly contemplated the seizure of either individual firearms or small collections from many different sources.  *(FAC, ¶ 39)*.

On September 27, 2018, Manuel Fernandez passed away after his firearms were seized, but before his trial began.  *(FAC, ¶ 74)*.  Title to the firearms passed to the Plaintiff, Ana Fernandez as the trustee off the Fernandez Trust.  *(FAC, ¶ 76)*.

The LASD assessed a fee of $ 54 per firearm for the return of the firearms seized from Manuel Fernandez for a total of $24,354.00.  *(FAC, ¶ 77)*.  The Plaintiff attempted to negotiate a reduced fee, but the County would not reduce the fee.  *(FAC, ¶ 78)*.

On December 9, 2019, the Plaintiff agreed to pay the fee to have the firearms released to a licensed firearms dealer to be sold at auction.  *(FAC, ¶ 88)*.  Upon receipt of the firearms, the Plaintiff contends that the firearms were poorly stored, resulting in a diminished value of the  firearms.  *(FAC, ¶ 61-63)*.

The defendants, County of Los Angeles, its Sheriff's Department and Sheriff Villanueva hereby move to dismiss all claims and causes of action alleged against them.

<u>**MEMORANDUM OF LAW**</u>

**I.**

**THE COURT SHOULD DISMISS THE PLAINTIFF'S FIRST AMENDED COMPLAINT AS IT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE FEDERAL CIVIL RIGHTS ACT**

In order to comply with the pleading requirements of the Federal Rules of Civil Procedure, the plaintiff has an "obligation to provide the grounds of his entitlement to relief" by stating facts as opposed to "labels and conclusions and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).  "The factual allegations must be enough to raise a right to relief above the speculative level" and the plain statement must "possess enough heft to show that the pleader is entitled to relief." <u>Id</u>. at pp. 555-557.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v Iqbal*, 129 S.Ct. 1937, 1949 (2009).

In the instant case, the complaint  must be dismissed as the facts alleged state no cognizable claim under the Federal Civil Rights Act and no claim for declaratory relief against the County of Los Angeles, its Sheriff's Department or Sheriff Villanueva.

*/////*

A.    THE FAC FAILS TO ALLEGE AN EIGHTH AMENDMENT
VIOLATION AS THE ADMINISTRATIVE FEES ARE NOT PUNITIVE.

The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The second clause — the Excessive Fines Clause — "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Pimentel v. City of Los Angeles,* 974 F.3d 917, 921 (9th Cir. 2020), *citing*, *Austin v. United States*, 509 U.S. 602, 609–610.  The Eighth Amendment's limitations apply to both criminal and civil proceedings, so long as the fines "can be characterized as punitive...." *United States v. Sabhnani*, 599 F.3d 215, 263 n. 19 (2d Cir. 2010).

"Two questions are pertinent when determining whether the Excessive Fines Clause has been violated: (1) Is the statutory provision a fine, i.e., does it impose  punishment? and (2) If so, is the fine excessive . . . the first question determines whether the Eighth Amendment applies; the second determines whether the Eighth Amendment is violated." *Wright v. Riveland*, 219 F.3d 905, 915 (2000) (internal citations omitted).  The defendants contend that the Eighth Amendment does not apply to the allegations of this case.

A civil sanction is punitive if, "it can only be explained as serving in part to punish." *United States v Bajakajian,* 524 U.S. 321, 327 (1998).  "In making this determination the court considers factors such as the language of the statute creating the sanction, the sanction's purposes, the circumstances in which the sanction can be imposed, and the historical understanding of the sanction.  *Louis v. Commissioner of Internal Revenue,* 170 F.3rd 1232, 1236 (9th Cir. 1999).

California Penal Code § 33880 is entitled, "Seizure, impounding, storage, or release of firearm, ammunition feeding device, or ammunition; imposition of charge to recover administrative costs; waiver; post storage hearing or appeal," provides, in pertinent part:

"(a) City, county or city and county, or a state agency may adopt a regulation, ordinance, or resolution imposing a charge equal to its administrative costs relating to the seizure, impounding, storage, or release of

any firearm, ammunition feeding device, or ammunition.

(b) The fee under subdivision (a) shall not exceed the actual costs incurred for the expenses directly related to the taking possession of any firearm, ammunition feeding device, or ammunition, storing it, and surrendering possession of it to a licensed firearms dealer to be delivered to the owner.

The statutory language does not indicate that the administrative fee is punitive in nature.  The purpose of the statute, according to Senate Bill 746, is to "prescribe a procedure for a court or law enforcement agency in possession of a seized firearm to return the firearm to its lawful owner, as specified."  *Weapons-Surrender-Criminal History Record Information (Stats.2018, c. 780 (S.B.746), § 22, eff. Jan. 1, 2019, operative July 1, 2020).*  The costs assessed pursuant to this statute are remedial in nature.  The administrative fee is assessed for the purpose of preventing the government from bearing the costs relating to the seizure, impounding, storage or release of firearms, ammunition feeding devices, and/or ammunition.  Cal. Penal Code § 33880 (a).  The fee can be imposed regardless of whether the person from whom the items were seized, is convicted of a crime.  The fees are not imposed as part of the imposition of  a criminal sentence.

In considering the historical understanding of the sanction, it has been held that the objective of California's Law Enforcement Gun Release ("LEGR") process "is one of public safety: keeping firearms out of  the hands of those who – under California law – are not eligible to possess them."  *Cupp v Harris, 2021 WL 4443099 *4, slip copy filed September 28, 2021, (E.D. Cal. 2021), citing, Wilson v Lynch,* 835 F.3d 1083, 1097 (9th Cir. 2016).  The government has a "long-recognized ability to impose fees relating to the exercise of constitutional rights when those fees are designed to defray the administrative costs of regulating protected activity."  *Id., citing, Kwong v Bloomberg, 723 F.3d 160, 165 (2nd Cir. 2013).*

Based on the foregoing the First Amended Complaint fails to allege sufficient facts to support the contention that the fee assessed by the Sheriff's Department to  recover the administrative costs of the seizure, impounding, storage and release of the more than 400

firearms in this case was punitive. The plain language of the statute indicates no intent to punish. The purpose of the statute is remedial and not punitive in nature. The circumstances in which the fee can be imposed is not limited to or in any way connected with the imposition of a criminal conviction or sentence. And the historical objective of California's LEGR is one of public safety, not as a form of punishment.

The Plaintiff's quarrel with the amount of the fee in this case, does not change the fee from administrative to punitive. Because the Eighth Amendment only applies to fees that are punitive, the First Claim for Relief in this case states no cause of action under the Eighth Amendment.

**B.     THE FAC FAILS TO ALLEGE A FOURTH AMENDMENT VIOLATION FOR RETENTION OF SEIZED PROPERTY.**

The Plaintiff's Second Claim for Relief is alleged under the Fourth Amendment. The Fourth Amendment provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967).

The Plaintiff does not challenge the LASD's seizures of the firearms and other items from her husband, Miguel Fernandez, which were made pursuant to several warrants during a period of four days in June 2018. Instead, the Plaintiff alleges that the LASD continued retention of the weapons from the dismissal of the criminal case to until the payment of the fee pursuant to California's Law Enforcement Gun Retention law (Penal Code ¶ 33880), violated the Fourth Amendment. The FAC alleges no Fourth Amendment violation for the retention of the seized firearms.

The Fourth Amendment prohibits "unreasonable searches and seizures," thus protecting citizens against government seizures of property without legal process. U.S. Const. amend. IV; *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992). A "seizure of property ... occurs when there is some meaningful interference with an individual's possessory interests in that

property." Id. (quoting, _United States v. Jacobsen_, 466 U.S. 109 (1984). When assessing whether a Fourth Amendment violation has occurred, "the ultimate touchstone" of the inquiry "is 'reasonableness.'" _Brigham City v. Stuart_, 547 U.S. 398, 403, (2006).

A reasonable seizure of property does not violate the Fourth Amendment.  The defendants concede that a lawful seizure of property may violate the Fourth Amendment if the justification for the seizure ends.  "A seizure is justified under the Fourth Amendment only to the extent that he government's justification holds force.  Thereafter, the government must cease the seizure or secure a new justification." _Brewster v Beck_, 859 F.3d 1194, 1197 (9th Cir. 2017).

Here, the Plaintiff does not allege that the LASD's seizure of the firearms and other items from Miguel Fernandez pursuant to warrants violated the Fourth Amendment.  The Plaintiff contends that the LASD's retention of the firearms after the criminal case against Miguel Fernandez was dismissed and until release pursuant to the payment of the fee under Penal Code § 33880, violated  the Fourth Amendment.

The LASD's retention of the lawfully seized firearms until the Plaintiff paid the fee for their transfer to a licensed firearms dealer was not unreasonable under the Fourth Amendment.  In the First Amendment context, the Supreme Court has held that governmental entities may impose licensing fees relating to the exercise of constitutional rights when the fees are designed "to meet the expense incident to the administration of the [licensing statute] and to the maintenance of public order in the matter licensed." _Cox v. New Hampshire,_ 312 U.S. 569, 577 (1941) (quotation marks omitted).  Imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity. _E. Conn. Citizens Action Grp. v. Powers,_ 723 F.2d 1050, 1056 (2d Cir.1983).

In _Bauer v Becerra_, 858 F.3d 1216 (9th Cir. 2017), the Ninth Circuit applied First Amendment "fee jurisprudence" analysis to a claim that California's use of a portion of firearm transfer fees to fund enforcement efforts against illegal firearm purchasers violated the Second Amendment. Id. at 1218.  The court recognized that public safety is advanced

by keeping guns out of the hands of people who are most likely to misuse them and that the State has "a significant, substantial, or important interest in" in laws designed for those purposes. Id. at 1223.  The court held that there was a "reasonable fit" between the State's important interest in promoting public safety and disarming prohibited persons and the fees intended to fund "costs associated with funding Department of Justice firearms-related regulatory and enforcement activities related to the sale, purchase, possession, loan or transfer of firearms" under Cal. Penal Code § 28225 (b)(11).

In this same vein, California Penal Code § 33880 (formerly § 12021.3), permits the County of Los Angeles to recover its administrative costs related to taking possession, storing, and releasing of any firearm, ammunition feeding device, or ammunition seized under the circumstances alleged here.  A set forth above, the intended purpose of the statute is to permit the law enforcement agency to recoup the administrative costs associated with the seizure, impounding, storage, or release of firearms, ammunition feeding devices, or ammunition.  The Plaintiff does not contend that Penal Code § 33880 is itself, unconstitutional.  The statute provides a reasonable justification for the LASD's retention of the firearms in question until the payment for the fee was provided.

There can be no Fourth Amendment violation where the justification for the retention of the seized property is reasonable.  While the justification for the seizure of Miguel Fernandez's firearms under the warrants had ended with his death and the dismissal of the criminal case, California Penal Code § 33880 provided a new justification for the LASD's retention of the firearms until the payment of the fee had been paid.  The law permits the LASD to recover its administrative costs before the transfer of the firearms from its custody.

As there is a reasonable justification for the retention of the firearms after Miguel Fernandez's death, the Plaintiff's First Amended Complaint fails to state a claim under the Fourth Amendment.

/////

## II.

## THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR

## MUNICIPAL LIABILITY AGAINST THESE DEFENDANTS

Even if the Plaintiff could allege a viable claim under the Fourth or Eighth Amendment, the FAC fails to allege facts sufficient to impose municipal liability upon these defendants.

A claim alleging violation of a right guaranteed by the United States Constitution must be brought under Title 42 U.S.C. § 1983, known as the federal civil rights act, as the constitutional amendments themselves, contain no remedial measures. *Chapman v. Houston Welfare Rights Organization* 441 U.S. 600 (1979). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v Atkins*, 487 U.S. 42, 48 (1988). In order to allege municipal liability under section 1983, the plaintiff must allege that the constitutional deprivation he suffered was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Serv's. of City of New York*, 436 U.S. 658, 690-691 (1978). It is not enough, however, that the plaintiff identify conduct attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

In assigning municipal liability under *Monell,* the courts distinguish an act of a municipal agent without independent authority to establish policy from the act of one authorized to set policy under local law. Municipal liability under 42 U.S.C. § 1984, hinges upon the act of the municipality's authorized policymaker or of an employee following the policymakers lead. "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Id. at 417.

There must also be enough factual allegations to establish what the relevant policy is, rather than merely stating that a policy caused the violation in question.  *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)  (finding failure to state claim because complaint only asserted that defendant maintained a policy, custom, or practice of knowingly permitting the violation, but did not provide additional facts regarding the nature of the policy, custom, or practice).

The same standard applies to the Sheriff of Los Angeles County.  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

In an official-capacity suit under § 1983, the governmental entities "policy or custom" must have played a part in the violation of federal law.  42 U.S.C. § 1983.  Id. at 166.

The Plaintiff's First Amended Complaint alleges three theories of liability against the County of Los Angeles, its Sheriff's Department and the Sheriff in his official capacity: (1) the employees of the LASD violated LASD policies when handling and releasing the firearms under California's Law Enforcement Gun Release law (FAC, ¶ 66); (2) that the Los Angeles County Sheriff's Department had a longstanding  (though unwritten) policy or custom of failing to discipline employees who store firearms haphazardly without care for any damage that may result notwithstanding any written policy or guidance on the subject *(FAC, para 73);* (3) that the County of Los Angeles, its Sheriff's Department and Sheriff Villanueva failed to train and supervise its employees in the Department's policies and California's Commission on Peace Officer Standards and Training  procedures for handling and storage of firearms.  *(FAC, para 142);* and (4) that the municipal defendants failed to discipline their employees------

The Plaintiff's complaint must be dismissed as it fails to state a claim for relief against the County, its Sheriff's Department, and the Sheriff of Los Angeles County under *Monell*.

/////

/////

## A.   THE PLAINTIFF CANNOT MAINTAIN A _MONELL_ CLAIM AGAINST THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT.

Municipal police departments not considered "persons" within meaning of section 1983.  *See* United States v. Kama, 394 F.3d 1236, 1239–40 (9th Cir. 2005). Rabinovitz, 287 F.Supp.3d at 963.  Plaintiffs cannot maintain a _Monell_ claim against the Los Angeles County Sheriff's Department as a matter of law.

## B.   THE FAC ALLEGES NO  VIOLATION OF AN OFFICIAL POLICY OF THE COUNTY OF LOS ANGELES.

The FAC contains no factual allegations to support a claim that  an official policy of the County of Los Angeles lead to a violation of Plaintiff's Constitutional rights.  The Plaintiff alleges that the relevant "policy" was  County of Los Angeles' assessment of the $54 per firearm fee and their employees' lack of discretion to reduce the  administrative costs "as applied to the Plaintiff."  The Complaint contends that this refusal resulted in the Plaintiff differently from others whose weapons were seized, because of the large number of weapons seized from the Plaintiff's husband.  *(FAC, ¶¶ 96, 100)*.  The Complaint further alleges that the manner of the storage and retention of the firearms was in violation of LASD policies described in the Department's "Manual of Policies and Procedures," not in compliance with unconstitutional policies created by these defendants.  *(FAC, ¶¶ 66-70)*.  There is no allegation that the policies, themselves were unconstitutional.  The Plaintiff alleges that the County's employees failed to implement policies in place or misapplied California law as it applied to them.

These contentions fail to identify any policy created by the County of Los Angeles or its Sheriff's Department which lead to a violation of the Plaintiff's Constitutional rights. The Plaintiff is required to plead facts sufficient to show that the municipality, and municipal officials sued in their official capacities, were the actual constitutional offenders.  The FAC fails to do so.

/////

/////

## C.    THE FAC FAILS TO ALLEGE *MONELL* LIABILITY BASED ON A LONG STANDING CUSTOM AND PRACTICE.

Absent a formal governmental policy, a Section 1983 Plaintiff can allege a *Monell* violation due to a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996).  The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell.,* 436 U.S. at 691.  Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.  Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino,* 99 F.3d at 918.  "Consistent with the commonly understood meaning of custom, proof of random acts or isolated events [is] insufficient to establish custom." *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1443–44 (9th Cir.1989).

The Plaintiff cannot satisfy the requirement of a longstanding practice or custom, because she alleges that county officials have singled her out for unique treatment.  The First Amended Complaint states in specific detail the uniqueness of the facts of this case.  On November 22, 2005, the Los Angeles County Board of Supervisors adopted a $54 per firearm administrative fee to recover the costs of seizure, storage and return of a firearm based upon a letter from then-Sheriff Leroy D. Baca about the number of hours of staff time involved in the seizure, retention, storage and transfer of firearms.  The Board of Supervisors expected that about 500 firearms in total would be subject to the fee annually.  *(FAC, ¶¶ 38).*  In this particular case, the County of Los Angeles seized more than 400 firearms, "as well as ammunition, magazines and speed loaders" from a single person in the execution of a series of warrants, over a period of just four days.  *(FAC, ¶¶ 49-51).*  The seizure of a collection of firearms of this magnitude was obviously not contemplated by the Sheriff's Department when establishing policies for  the seizure, storage, retention

and release of firearms under the Fourth Amendment and pursuant to Cal. Penal Code § 33880.

A mere allegation that a municipality maintains a custom and practice of violating the Plaintiff's constitutional rights is insufficient.  The law requires allegations of a longstanding custom so pervasive as to constitute the standard operating procedure of the municipality.  Frequency and consistency, rather than isolated incidents based on unique facts must be alleged in order to state a claim for municipal liability under this theory.

The First Amended Complaint does not identify any custom or practice of the County of Los Angeles which caused a deprivation of Plaintiff's Fourth or Eighth Amendment rights.

**D.     THE FAC FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM FOR FAILURE TO TRAIN AND SUPERVISE UNDER _MONELL_.**

The FAC alleges that these defendants can be liable for an alleged policy of inaction, which is the failure "to properly screen, train and/or supervise their officers and personnel . . . with regard to the applicable written policies, guidelines and laws" leading to the application of an excessive fine and damage due to the storage of the seized firearms. *(FAC, ¶¶ 101, 102, 112).*  The allegations state no claim for municipal liability.  In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. _Connick v. Thompson_ (2011) 563 U.S. 51, 61–62 (2011), *citing*, _Oklahoma City v. Tuttle_, 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in _Monell_ ").

To establish a claim under § 1983 for a failure to train its employees, the Plaintiff must allege facts to show: "(1) he was deprived of a constitutional right; (2) the municipality had a training policy that amounts to deliberate indifference to the

constitutional rights of the persons with whom its police officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the municipality properly trained those officers." *Blankenhorn v City of Orange,* 485 F.3d 463 at 484 (9th Cir. 2017) omitted); *see also Connick,* 563 U.S. at 61 (a municipality's policy of not training its employees is only actionable where it "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact' " (quoting *City of Canton, Ohio v Harris,* 489 U.S. 378, 388 (1988).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.,* 520 U.S. at 407.  Thus, when municipal policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the municipality may be deemed deliberately indifferent if the policymakers choose to retain that program. Id.  A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.  Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.  *Connick,* 563 U.S. at 62.

The FAC in this case does not allege facts sufficient to state a claim for municipal inaction by a failure to train or supervise.  The complaint does not allege facts related to the training policy alleged to be in question.  The complaint does allege that the County was deliberately indifferent to the Plaintiff's constitutional rights under either the Fourth or Eighth Amendments by refusing to supervise or train their employees based upon a pattern of similar constitutional defects known to the County of Los Angeles.  These elements are essential to prevent the municipality from being held liable under a respondeat superior theory.

The First Amended Complaint fails to allege a theory of municipal liability based on the failure to train or supervise its employees.

### E.     THE FAC FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY UNDER A THEORY OF FAILURE TO DISCIPLINE.

"Where a plaintiff alleges that a municipality's conduct runs afoul of section 1983 for the municipalities' failure to discipline its employees, the claim is understood as one for ratification." *Rabinovitz*, 287 F.Supp.3d at 967–968.  To show ratification, a plaintiff alleges facts sufficient to show that "authorized policymakers approved a subordinate's decision and the basis for it." *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014).  Neither a policymaker's mere knowledge of, nor the policymaker's mere refusal to overrule or discipline, a subordinate's unconstitutional act suffices to show ratification.  *Christie v IOPA*, 176 F.3d 1231, 1239 (9th Cir. 2009).  "To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law ...." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 781–82 (9th Cir. 1997) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).

The Plaintiff alleges that the County of Los Angeles can be held liable under this theory because the "LASD has neither investigated nor disciplined any of its employees who handled the firearms for violating any of its written storage policies." *(FAC, ¶¶ 72, 73)*.  This allegation is insufficient to allege a claim for municipal liability based on a failure to discipline.  The elements to state a claim for ratification are not apparent on the face of the FAC.  As such, the complaint states no claim for municipal liability under a theory of failure to discipline.

### III.

### THE FAC FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF

Although not listed as a separate claim for relief, the Complaint contends that the Plaintiff is entitled to a declaratory judgment in this case.  The Declaratory Judgment Act, codified as 28 U.S.C. § 2201(a), provides in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240, (1937).  A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns,* 15 F.3d 142, 143–144 (9th Cir.1994).  The pleadings must show a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273.  The controversy must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *Haworth,* 300 U.S. at 240–241, 57 S.Ct. at 464 (citations omitted).  Furthermore, in order to obtain prospective relief, the Complaint must state a claim under *Monell.* *Los Angeles County, Cal. v. Humpheries,* 562 U.S. 29, 38-39 (2010).

Here, the defendants contend that the FAC fails to identify an actual controversy between the County, its Sheriff's Department  and Sheriff Villanueva and the Plaintiff under the Federal Civil Rights Act.  The Plaintiff complains that the California law permitting an assessment of administrative costs was unfairly applied to her after having paid the costs, and the contention that her property was damaged and suffered a diminution in value, states no viable claims under the Federal Civil Rights Act.  There is also no factual support for a claim against these defendants under *Monell.*

There is no declaration of rights to be had, as there is no federal controversy between these parties regarding the issues alleged.  As such, this claim must also be dismissed.

/////

/////

**IV.**

**THE COURT SHOULD REFUSE TO EXERCISE SUPPLEMENTAL**

**JURISDICTION OVER THE STATE CLAIMS**

The plaintiff's 3rd Claim (negligence), 4th Claim (Breach of Bailment), 5th (Trespass to Chattels) and 6th (Failure to Train) are alleged under California law. The complaint alleges that jurisdiction over these claims is proper under 28 U.S.C. § 1367 because they are supplemental to the federal "causes of action."  As set forth above, there are no federal statutes or law implicated by the facts alleged in this case.  Once the conclusory allegations are removed, the bare essence of this case sounds in tort law.  Thus, this court should refuse to exercise supplemental jurisdiction over these claims as the state claims predominate.  28 U.S.C. § 1367 (c)(2).  This court should also refuse to exercise supplemental jurisdiction where each of the "federal" claims should be dismissed. 28 U.S.C. § 1367 (c)(3).

**CONCLUSION**

For the foregoing reasons, Defendants COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, and SHERIFF VILLANUEVA, hereby respectfully request that this Court dismiss Plaintiff's entire First Amended Complaint and all claims alleged against them.

DATED: November 22, 2021          Respectfully submitted,

**NELSON & FULTON**


By: s / Amber A. Logan
    AMBER A. LOGAN
    Attorneys for Defendants,
    County of Los Angeles, et al.