C.D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
Konstadinos T. Moros – SBN 306610
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiff Ana Patricia Fernandez

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA PATRICIA FERNANDEZ, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>LOS ANGELES COUNTY, THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, WYATT WALDRON, an individual, JOHN ROTH, an individual, SUSAN O'LEARY BROWN, an individual, ALEX VILLANUEVA, in his Official Capacity as Sheriff of Los Angeles County, RICHARD LEON, an individual, MURRAY JACOB, an individual, DAVID ROACH, an individual, SALVADOR MORENO IV, an individual, JASON AMES, an individual, KYLE DINGMAN, an individual, NICHOLAS SAYLOR, an individual, and DOES 8-10,<br><br>                    Defendants. | Case No.: 2:20-cv-09876 DMG (PDx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS LOS ANGELES COUNTY, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND SHERIFF ALEX VILLANUEVA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Hearing Date:   January 14, 2022<br>Hearing Time:   9:30 a.m.<br>Courtroom:      8C<br>Judge:          Hon. Dolly M. Gee<br><br>Action Filed: October 27, 2020 |

1

# TABLE OF CONTENTS

2
**Page**

3
Table of Contents ...................................................................................................... i

4
Table of Authorities ................................................................................................. ii

5
Introduction .............................................................................................................. 1

6
Statement of Facts .................................................................................................... 2

7
I.    California Penal Code Section 33880 and the Adoption of Los Angeles County's
Administrative Fee for the Storage and Processing of Seized Firearms ................... 2

8
II.   The Seizure of Manuel Fernandez's Extensive Firearm Collection and Patricia
9
Fernandez's Attempts to Recover It ......................................................................... 4

10
Argument ................................................................................................................... 5

11
I.    Legal Standard ................................................................................................. 5

II.   Fernandez Properly States an Eighth Amendment Claim ................................. 6
12
        A.    As Applied to Fernandez, the Complaint Alleges that the Per-firearm "Fee"
13
               Led to the County Recovering Far More Than Its Administrative Costs,
Making it a Punitive Fine ...................................................................... 7

14
        B.    As Applied Here, the County's Per-firearm "Fee" Was "Excessive" ........... 11

15
III.  Fernandez Properly States a Fourth Amendment Claim ......................................... 11

16
        A.    The County's Continued Seizure of Fernandez's Firearms Without
Reasonable (or Legal) Justification Violates the Fourth Amendment .......... 12

17
        B.    The County's Abysmal Handling of Fernandez's Firearms Led to
Permanent Damage to the Seized Property Giving More Support to
18
               Fernandez's Fourth Amendment Claim ............................................................ 16

19
IV.  Fernandez Properly Brings an As-applied Challenge under *Monell* to Policies
and Customs Enacted by the County and LASD and Enforced by the Sheriff ........ 17

20
        A.    The County's Strict Enforcement of Its $54 Per-firearm "Fee" Is the Official
21
               Policy that Caused Fernandez's Harm Under Her Eighth Amendment Claim
and Under Her Claim that the County's Failure to Timely Release Her
22
               Property Violates the Fourth Amendment ....................................................... 18

        B.    The County's Unwritten Policy or Custom of Ignoring Guidance on the
23
               Proper Storage of Firearms Resulted in Substantial Damage to
Fernandez's Property in Violation of the Fourth Amendment ...................... 20

24
        C.    Defendant LASD Is Not Immune from *Monell* Liability .............................. 21

25
V.   Fernandez's Properly States a Failure to Train Claim ............................................ 22

26
VI.  Fernandez States Valid Federal Claims for Declaratory Relief, So the Court
Has Supplemental Jurisdiction ............................................................................. 23

27
Conclusion .............................................................................................................. 24

28

i
TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
  781 F.2d 1393 (9th Cir. 1986) ................................................................ 24

*Arch Ins. Co. v. Scottsdale Ins. Co.*,
  No. C09-0602 RSM, 2010 U.S. Dist. LEXIS 115256 (W.D. Wash. Oct. 27, 2010) ....... 9

*Austin v. United States*,
  509 U.S. 602 (1993) .......................................................... 7, 8, 11

*Bauer v. Becerra*,
  858 F.3d 1216 (9th Cir. 2017) ................................................................ 15

*Bd. of Comm'rs of Bryan Cnty. v. Brown*,
  520 U.S. 397 (1997) ................................................................ 17

*Benavidez v. Cnty. of San Diego*,
  993 F.3d 1134 (9th Cir. 2021) ................................................................ 20

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) ................................................................ 23

*Bonds v. Cox*,
  20 F.3d 697 (6th Cir. 1994) ................................................................ 16

*Brewster v. Beck*,
  859 F.3d 1194 (9th Cir. 2017) ................................................ 12, 13, 14

*Cal. Sportfishing Prot. All. v. Pac. States Indus., Inc.*,
  No. 15-cv-01482, 2015 WL 5569073 (N.D. Cal. Sept. 22, 2015) ................................ 8

*Carey v. Maricopa Cnty.*,
  602 F. Supp. 2d 1132 (D. Ariz. 2009) ................................................................ 24

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ................................................................ 23

*Cox v. New Hampshire*,
  312 U.S. 569 (1941) ................................................................ 15

*Dahl v. Palo Alto*,
  372 F. Supp. 647 (N. D. Cal. 1974) ................................................................ 13

*Doe v. United States*,
  419 F.3d 1058 (9th Cir. 2005) ................................................................ 6

*E. Conn. Citizens Action Grp. v. Powers*,
  723 F.2d 1050 (2d Cir. 1983) ................................................................ 15

TABLE OF AUTHORITIES

*Foman v. Davis*,
    371 U.S. 178 (1962) ........................................................................................ 24

*Hervey v. Estes*,
    65 F.3d 784 (9th Cir. 1995) ........................................................................... 21

*Jessop v. City of Fresno*,
    918 F.3d 1031 (9th Cir. 2019) ....................................................................... 13

*Kokesh v. SEC*,
    137 S. Ct. 1635 (2017) ..................................................................................... 8

*Lavan v. City of Los Angeles*,
    693 F.3d 1022 (9th Cir. 2012) ....................................................................... 12

*Manuel v. City of Joliet*,
    -- U.S. --, 137 S. Ct. 911 (2017) ................................................................... 12

*Monell v. Dep't of Soc. Serv.*,
    436 U.S. 658 (1978) ..................................................................... 17, 18, 20, 21

*Newsome v. Erwin*,
    137 F. Supp. 2d 934 (S. D. Ohio 2000) ....................................................... 16

*O'Neal v. San Bernardino Sheriff's Dep't*,
    No. 09-cv-2297, 2010 U.S. Dist. LEXIS 143671 (C.D. Cal. Dec. 6, 2010) .................. 22

*Payne v. Cnty. of Calaveras*,
    No. 17-cv-00906, 2018 U.S. Dist. LEXIS 211336 (E.D. Cal. Dec. 13, 2018) ............... 22

*Porter v. Jones*,
    319 F.3d 483 (9th Cir. 2003) ........................................................................... 6

*Quinones-Ruiz v. United States*,
    864 F. Supp. 983 (S.D. Cal. 1994) ................................................................... 7

*Rabinovitz v. City of Los Angeles*,
    287 F. Supp. 3d 933 (C.D. Cal. 2018) .......................................................... 22

*Rivera v. Cnty. of Los Angeles*,
    745 F.3d 384 (9th Cir. 2014) ......................................................................... 22

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) ........................................................................... 5

*Rucker v. Davis*,
    203 F.3d 627 (9th Cir. 2000) ........................................................................... 6

*Sandoval v. Cnty. of Sonoma*,
    72 F. Supp. 3d 997 (N.D. Cal. 2014) ............................................................ 12

*Somers v. Dig. Realty Tr., Inc.*,
    119 F. Supp. 3d 1088 (N.D. Cal. 2015) .......................................................... 8

iii

TABLE OF AUTHORITIES

*Streit v. Cnty. of Los Angeles*,
  236 F.3d 552 (9th Cir. 2001) ........................................................................ 22

*Timbs v. Indiana*,
  -- U.S. --, 139 S. Ct. 682 (2019) .................................................................. 6

*Tsc Indus. v. Northway*,
  426 U.S. 438 (1976) ...................................................................................... 13

*United States v. Jacobsen*,
  466 U.S. 109 (1984) ......................................................................... 11, 12, 16

*United States v. $405,089.23 U.S. Currency*,
  33 F.3d 1210 (9th Cir. 1994) .......................................................................... 7

*United States v. Bajakajian*,
  524 U.S. 321 (1998) ................................................................................. 6, 11

*United States v. City of Redwood City*,
  640 F.2d 963 (9th Cir. 1981) .......................................................................... 5

*United States v. Dubose*,
  146 F.3d 1141 (9th Cir. 1998) ...................................................................... 10

*United States v. Halper*,
  490 U.S. 435 (1989) ........................................................................................ 7

*United States v. Kama*,
  394 F.3d 1236 (9th Cir. 2005) ................................................................. 21, 22

*United States v. Sperrazza*,
  804 F.3d 1113 (11th Cir. 2015) ...................................................................... 6

*Wright v. Riveland*,
  219 F.3d 905 (9th Cir. 2000) ................................................................... 6, 11

**Statutes**

28 U.S.C. § 1367 ........................................................................................... 24

42 U.S.C. § 1983 .................................................................................. 1, 21, 24

Cal. Pen. Code § 33880 ........................................................................... passim

**Other Authorities**

Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release Application 3,
  *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ ler.pdf (last
  accessed Jan. 8, 2021) ..................................................................................... 3

City of Redondo Beach, Recover Firearms, *available at* https://www.redondo.org/depts/
  police/police_services/property_and_evidence/recover_firearms.asp (last accessed Jan.
  8, 2021) ........................................................................................................... 3

*Convicted U.S. Felon Arrested with More Than 500 Guns in California Home*, BBC News
  (June 19, 2018), https://www.bbc.com/news/world-us-canada-

iv

TABLE OF AUTHORITIES

44537028#:~:text=The%20Los% 20Angeles%20County%20Sheriff's,
revealed%20the%20massive%20illegal%20arsenal (last accessed Dec. 20, 2021) ...... 10

**Rules**

Fed. R. Civ. Proc. 8 ................................................................................. 6

Fed. R. Civ. Proc. 12 ............................................................................... 5

TABLE OF AUTHORITIES

### INTRODUCTION

In June 2018, Defendant Los Angeles Sheriff's Department seized well over 400 firearms from Plaintiff Ana Patricia Fernandez's now-deceased husband, Manuel Fernandez. At the time of the seizure, Mr. Fernandez was prohibited from owning firearms and, on an anonymous tip, Defendant LASD Officer Wyatt Waldron and Detective John Roth executed a warrant to search Mr. Fernandez's properties and dispossess him of his firearm collection. They arrested Mr. Fernandez and charged him with unlawful possession of firearms. But sadly, Mr. Fernandez passed away, and the charges against him were dropped. Upon his passing, Mrs. Fernandez, became the sole owner of the firearms, which remained in LASD's custody under the care of various LASD employees, including Defendants Waldron, Roth, Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, and Saylor.

When Mrs. Fernandez tried to retrieve her firearms to sell at auction, she learned that she would have to pay $54 *per firearm*—a fee that Defendant County of Los Angeles enacted to cover its "administrative costs." Because such a fee would amount to *tens of thousands of dollars*, an amount likely exceeding the costs incurred in seizing, processing, and storing the firearms (in violation of state law), Mrs. Fernandez tried to negotiate a more reasonable fee that would reimburse LASD's *actual* costs. Defendants refused. So Mrs. Fernandez paid the "fee" under protest to ensure that Defendants would promptly return her property and to prevent the firearms' lawful destruction under state law. After paying over $24,000, Mrs. Fernandez discovered that while her firearms were in the Defendants' custody, they were handled and stored so poorly that significant damage was done to them—leading to nearly $100,000 in lost value when the firearms were sold. Mrs. Fernandez alleges that the firearms were mishandled both in their seizure and in their processing and storage by each of the individually named employee defendants.

Mrs. Fernandez sued the County, LASD, Sheriff Villanueva, and several LASD employees under 42 U.S.C. § 1983, alleging that Defendants' conduct violated her rights under the Fourth and Eighth Amendments. She also brought several supplemental state-

law claims. The County, LASD, and Sheriff Villanueva now bring their second motion to dismiss, claiming that Fernandez has not stated any valid federal claim. If the federal claims against them are dismissed, they continue, the Court should refuse to exercise supplemental jurisdiction to hear Fernandez's related state claims.

The County's motion should be denied because the amended complaint has alleged enough, for purposes of a motion to dismiss, to show that the County's purported "fee" was an excessive fine as applied to Fernandez. She has also properly pleaded that the unjustifiable delay in returning her firearms, as well as the damage done to them while in Defendants' custody, are each distinct Fourth Amendment violations. And because Mrs. Fernandez has properly pleaded her federal claims, the Court should exercise supplemental jurisdiction over the related state-law claims. But if the Court disagrees that Mrs. Fernandez's amended complaint pleads sufficient facts, Mrs. Fernandez respectfully requests leave to amend—especially as to those issues the County could have raised in its first motion to dismiss but did not.

## STATEMENT OF FACTS

### I.   CALIFORNIA PENAL CODE SECTION 33880 AND THE ADOPTION OF LOS ANGELES COUNTY'S ADMINISTRATIVE FEE FOR THE STORAGE AND PROCESSING OF SEIZED FIREARMS

State law authorizes California cities, counties, and state agencies to impose, at their discretion, a charge "equal to its administrative costs relating to the seizure, impounding, storage, or release of any firearm, ammunition feeding device, or ammunition." Cal. Penal Code § 33880(a) (former Cal. Penal Code § 12021.3). Any fee set by local authorities to recover these costs, however, "shall not exceed the actual costs incurred for the expenses directly related to taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner." *Id.* § 33880(b). If localities choose to impose such a fee, however, they may waive it for those with proof that the firearm sought had been reported stolen by the time law enforcement had taken control of the firearm. *Id.* § 33880(c).

In 2005, under this authority, Defendant Los Angeles County adopted a "fee" of

$54 per firearm seized—purportedly to recover the costs of processing and storing the seized property. FAC ¶ 31. In a letter supporting enactment of the "fee," then-Sheriff Baca submitted a cost breakdown alleging that for each firearm seized, LASD personnel devoted about 90 minutes of work, costing the department about $54. *Id.* ¶¶ 33-37. Sheriff Baca added: "an analysis of firearms evidence processing over a four-year period revealed that potentially 500 guns per year would be eligible for the administrative fee" and the fee "would yield additional revenue of approximately $27,000 each year." *Id.* ¶ 38.

Expecting that about 500 firearms would be subject to the fee annually, the County likely did not consider the actual costs related to seizing a collection of hundreds of firearms from a single firearm owner at once. *Id.* ¶ 83. More probable, it was contemplating the seizure of either individual firearms or small collections from many different sources, requiring unique processing and data entry for each gun. *Id.* When police seize hundreds of firearms from the same source, however, much of the data (and consequently work) is the same for each firearm, significantly reducing the time necessary to process each firearm. *Id.* ¶¶ 79-84. Other localities, likely recognizing this reality, have adopted a fee structure where the fee per firearm is reduced for every firearm but the first. *Id.* ¶ 41. For example, the city of Redondo Beach, following the lead of the California Department of Justice's Law Enforcement Gun Release Program, charges $20 for the first firearm and just $3 for each additional firearm. *Id* ¶ 42. If the city releases the firearms directly to a licensed firearm dealer, it waives the fee altogether. *Id.*[1] The County, however, opted not to adopt a fee structure that reflects the reduced time it takes when multiple firearms are seized from a single person. *Id.* ¶ 31.

---

[1] *See* City of Redondo Beach, Recover Firearms, https://www.redondo.org/depts/police/police_services/property_and_evidence/recover_firearms.asp (last accessed Jan. 8, 2021); *see also* Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release Application 3, *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ler.pdf (last accessed Jan. 8, 2021).

3

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

## II. THE SEIZURE OF MANUEL FERNANDEZ'S EXTENSIVE FIREARM COLLECTION AND PATRICIA FERNANDEZ'S ATTEMPTS TO RECOVER IT

Plaintiff Ana Patricia Fernandez's late husband, Manuel Fernandez was prohibited from owning firearms because of a felony conviction stemming from 2009. FAC ¶ 43. In the summer of 2018, acting on an anonymous tip, Defendant LASD, including Defendants Wyatt Waldron and John Roth, executed multiple search warrants, seizing Mr. Fernandez's valuable collection of over 400 firearms, as well as several ammunition magazines and speed loaders. *Id.* ¶¶ 44-49. According to a report by Detective Roth, 458 of the seized firearms were legal to possess in California so long as the person in possession was not otherwise prohibited from possessing firearms. *Id.* ¶ 59.

After Mr. Fernandez was charged for his unlawful possession of firearms, but before any trial, he passed away and the charges against him were dismissed. *Id.* ¶ 74. Ownership of the firearms then passed to his wife, the plaintiff. *Id.* ¶ 76. When Mrs. Fernandez tried to retrieve her property, however, she learned that she would have to pay the County's $54 *per-firearm* "fee" to recover the firearms, and the firearms would not be released to her until she did. *Id* ¶ 77. Applying the County's per-firearm "fee" to Mrs. Fernandez's extensive collection would result in a total "fee" of tens of thousands of dollars. That "fee," Mrs. Fernandez alleges, far exceeds the actual costs the County incurred because the total "fee" did not account for the fact that a single person owned all the seized firearms and a single person requested their return, thus requiring less time per firearm to process. *Id.* ¶¶ 79-84.

Mrs. Fernandez thus offered to negotiate with Defendants to pay an amount more accurately reflecting the County's actual costs. *Id.* ¶ 86. Defendants would not budge, refusing to negotiate and demanding that Mrs. Fernandez pay *$24,354* to recover her property. *Id* ¶ 87. Fearing the destruction of the firearms, she paid the "fee" under protest, informing attorneys for the County that she was paying "to stop any claim that the continued storage of the firearms justifie[d] the current or any additional storage fees." *Id.* ¶ 88. But she remained open to negotiating a reasonable lower fee with the County. *Id.*

After paying the "fee," Mrs. Fernandez requested that the County release the

4

firearms to Carol Watson's Orange Coast Auctions, a properly licensed firearm dealer, to be sold at auction. *Id* ¶ 61. The firearms had been stored at the Palmdale Sheriff's Station, under the care, at various times, of Defendants Roth, Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, Saylor, Waldron, and Does 8-20. *Id.* ¶ 63. Upon release of the firearms, Mrs. Fernandez discovered significant damage to her property resulting from them being in the defendants' custody. *Id*. Photographs taken by auction house personnel at the police station reflect how poorly the defendants handled and stored the firearms. *Id.* ¶ 64. For instance, dozens of long guns were packed together tightly in plastic bins. *Id.* Handguns were thrown haphazardly on top of each other. *Id.* And they were not stored in separate envelopes or boxes that would have protected them from damage. *Id.* Ultimately, the auction house estimated that the damage to the firearms led them to sell for about $96,000 less than they would have had the defendants not damaged them. *Id.* ¶ 65.

Mrs. Fernandez submitted a timely Government Tort Claim to the County on February 24, 2020. *Id.* ¶ 4. The County served its rejection of Mrs. Fernandez's claim on April 28, 2020, giving her until October 28, 2020, to sue under Government Code section 945.6. *Id.* Mrs. Fernandez then sued in this Court. Defendants Los Angeles County, LASD, and Sheriff Villanueva (collectively, "the County") now bring their second motion to dismiss each of the claims alleged in the First Amended Complaint.

## ARGUMENT

## I. LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is very rare. Indeed, it is "only the *extraordinary* case in which dismissal is proper" for failure to state a claim. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (emphasis added). A court may dismiss a claim only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). To survive a Rule 12(b)(6) motion to dismiss, then, "a complaint generally must satisfy only the

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). That is, a plaintiff need provide just a short and plain statement showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2). What's more, courts must view the complaint "in the light most favorable to the plaintiff, taking all allegations as true, and drawing all reasonable inferences from the complaint in [her] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Doing so here, leads to the unmistakable conclusion that dismissal (especially with prejudice) is improper.

## II.   FERNANDEZ PROPERLY STATES AN EIGHTH AMENDMENT CLAIM

The Eighth Amendment protects the people from, among other things, the imposition of excessive fines. U.S. Const. amend. VIII. Claims brought under the Excessive Fines Clause have typically come in the context of civil forfeiture, *see, e.g.*, *United States v. Sperrazza*, 804 F.3d 1113, 1127 (11th Cir. 2015), but the principles of an excessive fines claim apply broadly, where the Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). As the Supreme Court recently acknowledged, "the protection against excessive fines guards against abuses of government's punitive or criminal-law enforcement authority" and "has been a constant shield throughout Anglo-American history[.]" *Timbs v. Indiana*, -- U.S. --, 139 S. Ct. 682, 686, 689 (2019) (incorporating the Excessive Fines Clause against the states).

For a fee or other monetary charge implemented by the government to come under the purview of the Eighth Amendment, it must be punitive because the Excessive Fines Clause only limits the government's power to extract payments as punishment. *Rucker v. Davis*, 203 F.3d 627, 648 (9th Cir. 2000). "Two questions are pertinent when determining whether the Excessive Fines Clause has been violated: (1) is the statutory provision a fine, i.e., does it impose punishment? and (2) if so, is the fine excessive?" *Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000). The answer to both questions here, as alleged in Fernandez's complaint, is yes. The Court should deny the County's motion to dismiss Fernandez's Eighth Amendment claim.

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

1
2

**A.    As Applied to Fernandez, the Complaint Alleges that the Per-firearm "Fee" Led to the County Recovering Far More Than Its Administrative Costs, Making it a Punitive Fine**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

In its motion to dismiss, the County argues that the Eighth Amendment does not apply to the "fee" assessed against Fernandez because the costs assessed under section 33880 are merely the administrative costs related to the seizure, impounding, storage, and release of firearms, and were not intended to be punitive.[2] Defs.' Mot. to Dismiss ("Cnty. Mot.") 4-6. To be sure, section 33880—the statute from which the County's authority to charge a fee originates—does command that the fee must not exceed the County's actual costs. So, on its face, section 33880 (and any local fee that complies with its mandate) would not likely offend the Eighth Amendment. And even the County's fee, on its face, might not offend the Eighth Amendment. That is, if the County can show that processing the seizure of individual firearms or small collections *actually* costs the County about $54 per firearm. *See* FAC ¶¶ 31-38. But, *as applied to Fernandez*, the complaint alleges, the "fee" far exceeds the County's administrative costs. *Id.* ¶¶ 84, 90, 100, 109. The County cannot simply declare that its "fee" is non-punitive and avoid application of the Eighth Amendment. To the contrary, "the labels attached by [the County] on a particular sanction are not of 'paramount importance' in determining whether a sanction constitutes punishment.…" *Quinones-Ruiz v. United States*, 864 F. Supp. 983, 987 (S.D. Cal. 1994) (citing *United States v. $405,089.23 United States Currency*, 33 F.3d 1210 (9th Cir. 1994)). The relevant question is, instead, whether the "fee" can be fairly said to be solely remedial and not also serving some punitive purpose. *Austin v. United States*, 509 U.S. 602, 610 (1993) (citing *United States v. Halper*, 490 U.S. 435, 448 (1989)).

23
24

While the County attempts to explain that its "fee" is solely focused on assessing remedial costs, this is an as-applied challenge. And the County makes no effort to show

25
26
27
28

---

[2] Of course, this necessarily raises a question of fact that the Court cannot decide against Fernandez on a motion to dismiss. Whether the purported fee assessed against Fernandez covered only the County's actual costs can be determined only after discovery and is, as explained below, relevant to whether the County's fee is wholly remedial.

7

that the entire "fee" Fernandez paid (i.e., *about $24,000*) was attributable to the County's actual costs to process and store her firearms. This is critical. Because exceeding those actual costs suggests the "fee" is, in truth, a fine—even if the plain language of the statute reflects no apparent intent to punish. For "a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as *also* serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* (emphasis added). So even if some portion of the collected amount is used to cover administrative costs, if another portion cannot be explained as reimbursing a cost incurred, the administrative "fee" may be a punitive fine. *Austin*, 509 U.S. at 610 ("We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving in part to punish.");[3] *see also Kokesh v. SEC*, 137 S. Ct. 1635, 1645 (2017) (holding that a modern statutory forfeiture is a "fine" for Eighth Amendment purposes if it constitutes punishment *even in part*).

Here, because Fernandez has alleged that the County's "fee" exceeds the actual administrative cost of processing her firearms, FAC ¶ 97, Fernandez has alleged enough to show the "fee" she had to pay was not just a remedial *fee*, but a punitive *fine*, and thus to survive a motion to dismiss. Even at this early stage, however, the claim that the "fee" has only covered administrative costs seems ridiculous on its face. Sure, Fernandez admits that processing her 451 firearms likely did take a lot of work—that is why she offered to work with the defendants to negotiate a fee that would reflect the County's actual costs.

---

[3] The First Amended Complaint expressly relied on this very precedent for this very point, FAC ¶¶ 28, 85, 99, but the County chose not to address it. Because the County failed to address this key precedent in its motion to dismiss even though it was featured prominently in Fernandez's operative complaint, the County should be barred from addressing that caselaw for the first time on reply. Any attempt by the County to make its case for the first time on reply offends the "general principle [that] arguments raised for the first time in a reply brief are waived." *Somers v. Dig. Realty Tr., Inc.*, 119 F. Supp. 3d 1088, 1106 (N.D. Cal. 2015). Indeed, "[r]aising new arguments in a reply brief is classic sandbagging, and the Court [should] not tolerate it." *Cal. Sportfishing Prot. All. v. Pac. States Indus., Inc.*, No. 15-cv-01482, 2015 WL 5569073, at *2 (N.D. Cal. Sept. 22, 2015).

8

*Id.* ¶ 86. But Fernandez disputes that processing the collection took more than *675* employee hours, which is what the County would have to show for the "fee" to reflect its actual costs. *Id.* ¶ 82. Indeed, imagine if a single County employee were assigned to handle the processing of all the Fernandez firearms from start to finish. Assuming the typical 2,080-hour full-time work-year, for the "fee" to not exceed the County's costs, that employee would have to spend just under one-third of their entire year—*about 4 solid months of employment*—processing the Fernandez firearms and *nothing else*. While former-Sheriff Baca's estimates of time and cost involved for processing a single seized firearm may be correct, *see* FAC ¶¶ 33-38, Fernandez alleges that those estimates do not properly account for the reduction in time it takes to process each firearm when hundreds of guns are seized from a single source, FAC ¶¶ 39, 81, 83, 97. So she alleges that the amount of the "fee" derived from Baca's estimates, as applied to Fernandez, exceeds the County's administrative costs.

The County protests that Fernandez's "quarrel with the amount of the fee in this case, does not change the fee from administrative to punitive." Cnty. Mot. 6. To be sure, her complaints, in and of themselves, would not convert the County's administrative fee to a punitive fine. But the County does not even attempt to show that the entire "fee" Fernandez paid was remedial. Fernandez alleges that they cannot and that the "fee" is, at least in part, meant to punish or deter. FAC ¶¶ 28, 85. In any case, the County's actual costs, whatever they may be, is a question of fact not appropriately disposed of by a motion to dismiss. *Cf. Arch Ins. Co. v. Scottsdale Ins. Co.*, No. C09-0602 RSM, 2010 U.S. Dist. LEXIS 115256, at *16 (W.D. Wash. Oct. 27, 2010) ("The reasonableness of fees and costs is a question of fact that cannot be determined on motion for summary judgment.").

In short, the County's per-firearm "fee," as applied to the large number of firearms seized and processed at once and amounting to more than *$24,000*, transforms what might have been intended to be a nominal, non-punitive fee into a substantial fine hard to characterize as anything but punishment. Defendant LASD's actions in particular show that the purpose behind the enforcement of the "fee" against Fernandez was "not only

9

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

1    remedial, but also deterrent, rehabilitative, and retributive." *United States v. Dubose*, 146

2    F.3d 1141, 1144 (9th Cir. 1998). At the time of the seizure, LASD relished the media

3    coverage of this large firearm seizure, apparently wanting to make an example of Mr.

4    Fernandez. Then-Sheriff Jim McDonnell told the BBC that "this case is a testament to the

5    community's involvement in reducing crime and taking guns out of the hands of

6    criminals."[4] When Mr. Fernandez passed away and the firearms passed to his wife, the

7    County did not try to accommodate her and instead demanded that she pay the full amount

8    of its purported "fee" even as she offered to negotiate an amount reflecting the County's

9    actual costs. FAC ¶¶ 86-87. All this even though section 33880(c) is clear that levying the

10   "fee" is discretionary in the first place and that, even if adopted, it may be waived if the

11   claimant had reported the firearm stolen. Because the "fee" can be waived for innocent

12   parties when their firearms are stolen, it seems it is not solely about recovering costs but

13   about the perceived innocence or guilt of the party seeking return of the firearm. After all,

14   the costs the County incurs are the same whether the claimant was convicted of a crime or

15   an innocent third party. If the County waives the "fee" when the firearm is reported stolen,

16   it makes the "fee" look all the more punitive.

17        In its ruling on the County's first motion to dismiss, the Court ordered Fernandez to

18   "allege facts to show that the per-firearm fee as applied to her was punitive in nature and

19   that the County Defendants had an official municipal policy, longstanding practice or

20   custom" that caused the harm. Order Re Defs.' Mots. to Dismiss, Dkt. No. 30, at 7.

21   Fernandez has sufficiently alleged, for purposes of a motion to dismiss, that the "fee" the

22   County imposed on her through its personnel (who cited the County's official policy to

23   claim they had no discretion to reduce the "fee," FAC ¶¶ 84, 87, 98), far exceeded the

24   County's administrative costs. *Id*. ¶ 97. In such a situation, precedent tells us that such

25

26

27        [4] *Convicted U.S. Felon Arrested with More Than 500 Guns in California Home*,
     BBC News (June 19, 2018), https://www.bbc.com/news/world-us-canada-
28   44537028#:~:text=The%20Los%20Angeles%20County%20Sheriff's,
     revealed%20the%20massive%20illegal%20arsenal (last visited Dec. 20, 2021).

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

"fees" can only be meant to punish. *See Austin*, 509 U.S. at 610. Under that precedent, even though the County denies its "fee" is intended to penalize, and even though some portion of the "fee" may cover the County's administrative costs, Fernandez has made a valid claim that the County's "fee" was punitive.

### B.   As Applied Here, the County's Per-firearm "Fee" Was "Excessive"

"Once a statute is deemed to be punitive and is thus a 'fine' within the meaning of the Excessive Fines Clause, [the Court] must turn to the question of whether the fine is excessive." *Wright*, 219 F.3d at 916. The Supreme Court has ruled that a fine violates the Eighth Amendment's excessiveness standard if it is grossly disproportional to the crime committed. *Bajakajian*, 524 U.S. at 337. This guidance from the high court somewhat simplifies the analysis, which rests on a series of relevant factors. *Id.* at 337-340 (listing four factors, including the nature of the harm caused by defendant's conduct). But it is unclear how the Court should apply the *Bajakajian* factors here because Fernandez has not been charged with any crime and has harmed no one. The County cannot dispute this fact. And its motion does not even address whether the County's "fee," if it is a fine, was excessive as applied to Fernandez. Cnty. Mot. 4-6. In the end, any fine levied against Fernandez would necessarily be "grossly disproportional to the crime committed," *id.*, because she has committed no crime.[5]

### III.   FERNANDEZ PROPERLY STATES A FOURTH AMENDMENT CLAIM

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures[.]" U.S. Const. amend. IV. Because a "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property," *United States v. Jacobsen*, 466 U.S. 109, 113 (1984), and because refusing to return and causing significant damage to Fernandez's seized property necessarily interferes with that interest,

---

[5] Even if a fine for any crime allegedly committed by the late Mr. Fernandez could be levied against his estate, the facts that Mr. Fernandez was never convicted and the charges were dropped should likewise be dispositive.

she has properly pleaded a Fourth Amendment claim.

In its second motion to dismiss, the County now concedes that a lawful seizure may violate the Fourth Amendment if the justification for the seizure ends but argues, for the first time, that Fernandez fails to state a claim because the retention of her seized property was reasonable. Cnty. Mot. 7-8. Even if it were appropriate to decided that question on a motion to dismiss, the County's defense fails because it has not even tried to show that its refusal to release Fernandez's property was reasonable. The County's motion also misses the point of Fernandez's theory that the extensive damage done to the Fernandez firearms constitutes a related, but separate, violation of her Fourth Amendment rights. Indeed, the County hardly bothers to counter the claim at all. *Compare id.* at 6-8, *with* FAC ¶¶ 23, 43-73, 91, 106.

### A. The County's Continued Seizure of Fernandez's Firearms Without Reasonable (or Legal) Justification Violates the Fourth Amendment

The Fourth Amendment protects against searches made "unreasonable" by the government's refusal to return property validly seized. The Supreme Court has long held that "[a] seizure lawful at its inception can nevertheless violate the Fourth Amendment because the manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[.]" *Jacobsen*, 466 U.S. at 124 (citing *United States v. Place*, 462 U.S. 696, 707-10 (1983)).[6] And the Ninth Circuit has held that "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) (citing *Jacobsen*, 466 U.S. at 123 & n.25; *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030-31 (9th Cir. 2012); *Manuel v. City of Joliet*, -- U.S. --, 137 S. Ct. 911, 914, 920 (2017)). To the contrary, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. *Thereafter,*

---

[6] *See also Sandoval v. Cnty. of Sonoma*, 72 F. Supp. 3d 997, 1004 (N.D. Cal. 2014) (holding that the Fourth Amendment "is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual").

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

*the government must cease the seizure or secure a new justification.*" *Brewster*, 859 F.3d at 1197 (emphasis added). If it does neither, a seizure reasonable at its inception becomes unreasonable. *Id.*; *but see Jessop v. City of Fresno*, 918 F.3d 1031, 1036 (9th Cir. 2019) (holding that plaintiff had no established right under the Fourth Amendment to not have seized property stolen by police officers).

The relevant question, then, is whether the County reasonably refused to return the seized firearms to Fernandez when she demanded them. *See Place*, 462 U.S. at 703. But a motion to dismiss is generally an inappropriate avenue to determine questions of reasonableness. *See Dahl v. Palo Alto*, 372 F. Supp. 647, 648 (N. D. Cal. 1974) ("The determination of reasonableness is a factual one encompassing the interests of the public, the appropriateness of the means, and the oppressiveness of the action. Such a determination is inappropriate in a motion to dismiss."). Indeed, such a question is ordinarily the function of the trier of fact applying the "reasonable person" standard. *Tsc Indus. v. Northway*, 426 U.S. 438, 450 n.12 (1976). Deciding this question against Fernandez now, would require the Court to view the complaint in a manner unfavorable to her without the benefit of an evidentiary record supporting such a view, turning the well-settled standard for deciding motions to dismiss on its head. But even if the Court could make this determination at this stage, evaluating the allegations in the light most favorable to Fernandez as the non-moving party, it is clear the County's refusal to release Fernandez's property unless she paid a $24,000 "fee" was unreasonable.

The Ninth Circuit's reasoning in *Brewster v. Beck* is instructive. There, the plaintiff brought a Fourth Amendment challenge to a California law mandating a 30-day hold for all vehicles impounded on the grounds that the driver had a suspended license. *Brewster*, 859 F.3d at 1195. Plaintiff Brewster had (unwisely) loaned her vehicle to her brother, from whom law enforcement seized the car when they pulled him over and discovered he was driving on a suspended license. *Id.* Shortly after the initial seizure, Brewster presented proof that the vehicle was registered to her and that her license was valid. *Id.* She also "offered to pay all towing and storage fees that had accrued, but the LAPD refused to

release the vehicle before the 30-day holding period had lapsed." *Id.* The court correctly held that the non-discretionary 30-day impound, enforced even after the initial justification for the seizure had lapsed, "constitute[s] a seizure that require[s] compliance with the Fourth Amendment." 859 F.3d at 1197. Thus, the government had to "cease the seizure or secure a new justification." *Id.* The court rejected the government's claim that "the state legislature's intent to impose a penalty on unlicensed drivers" was sufficient justification to continue the seizure and held that the government had no reasonable justification to withhold Brewster's property. *Id.* The court then cited another state law authorizing impoundment *without a mandatory 30-day hold* that would serve the same goal without offending the Fourth Amendment. *Id.* at 1197-98.

Here, the only justification the County had for the initial seizure was to dispossess Mr. Fernandez of his firearms because, as a prohibited person, he possessed them in violation of state and federal law. Cnty. Mot. 6-7. When Mr. Fernandez died, the County dismissed the charges against him and ownership of the seized firearms passed to Mrs. Fernandez, who was *not* prohibited from owning or possessing firearms. FAC ¶¶ 75-76. At that point, the initial justification for the seizure expired, requiring the County to secure a new justification to continue the seizure. *See Brewster*, 859 F.3d at 1197. But the only justification for the continued retention of the seized firearms was that Mrs. Fernandez had not yet paid an administrative "fee" of *$24,354* to secure their release. FAC ¶¶ 77-78; Cnty. Mot. 8. To be sure, much like a law authorizing impoundment to penalize a driver with a suspended license only until the vehicle owner provides proof of valid license and registration likely avoids a Fourth Amendment violation, *id.* at 1198, continuing a seizure until the property claimant pays a fee reflecting the actual costs incurred by the government *may* be permissible. But holding a citizen's property hostage until she agrees to pay the government tens of thousands of dollars—a "fee" Fernandez alleges is unlawful

because it far exceeds the County's administrative costs[7]—is patently *un*reasonable. Indeed, the government profiting off seized property it no longer has probable cause to hold is plainly repugnant to the constitutional protection against unreasonable seizures.

Still, the County argues that its continued retention of Fernandez's property, even after Mr. Fernandez's death, was "reasonable" because the government may lawfully "impos[e] fees on the exercise of constitutional rights . . . when the fees are designed to defray (and not exceed) the administrative costs of regulating the protected activity." Cnty. Mot. 7 (citing *E. Conn. Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983); *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941)). But, as applied to Fernandez, the County's argument fails twice over.

First, as the County acknowledges, the cases it relies on involve challenges to government fees imposed on the affirmative exercise of First Amendment freedoms. Cnty. Mot. 6. A third case the County cites, *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017), was a Second Amendment challenge to firearm transfer fees. In short, all three cases cited involve citizens seeking to exercise their rights to engage in some protected conduct and being met with fees related to that exercise. But this is not a case in which the government has charged a fee to defray the costs it has incurred incident to one's exercise of their rights. To the contrary, Fernandez did not seek to exercise any constitutional right at all. And she doesn't claim that her property interest outweighs the County's interest in recovering the costs associated with the seizure of her property. Rather, she claims that the County unjustifiably refused to end its seizure of her property unless she paid an excessive (and unlawful) "fee" over $24,000. In that sense, the County has not simply "imposed fees on the exercise of [Fernandez's] constitutional rights," *E. Conn. Citizens*, 723 F.2d at 1056, *it has imposed a "fee" that she must pay before it will end its violation of her rights.*

---

[7] Recall, Penal Code section 33880, the state law under which the County may levy a charge for "the seizure, impounding, storage, or release of any firearm," makes clear that the fee "shall not exceed the actual costs incurred for the expenses directly related to taking possession of any firearm . . . , storing it, and surrendering possession of it to a licensed firearms dealer or to the owner."

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

Second, even if the County's precedents did apply in the Fourth Amendment context, the County does not even try to show that its "fee," as applied to Fernandez, simply defrays (and does not exceed) the administrative costs incurred incident to the seizure. *Id.* Nor would it be appropriate for the Court to find, at this stage, that it does. For Fernandez alleges that the County's "fee" exceeds those costs, FAC ¶¶ 39, 84-85, 90, and on a motion to dismiss, the Court must "tak[e] all allegations as true, and draw[] all reasonable inferences from the complaint in [her] favor." *See Doe*, 419 F.3d at 1062.

In short, even if the challenged "fee" is not an excessive fine, Fernandez has alleged that the County lacked justification to continue the seizure of the Fernandez firearms after Mr. Fernandez's death because the "fee" it demanded be paid as a condition of their release was unreasonable and unlawful because it exceeded the County's actual administrative costs. FAC ¶¶ 2, 39, 84-85, 90-91. Under these circumstances, the County's refusal to end the seizure is actionable under the Fourth Amendment.

**B.    The County's Abysmal Handling of Fernandez's Firearms Led to Permanent Damage to the Seized Property Giving More Support to Fernandez's Fourth Amendment Claim**

The destruction of property by the government is "meaningful interference" constituting a seizure under the Fourth Amendment. *Jacobsen*, 466 U.S. at 124-25; *see also Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir. 1994). Indeed, "[l]aw enforcement activities that unreasonably damage or destroy personal property, thereby 'seizing' it within the meaning of the Fourth Amendment, may give rise to liability under [section] 1983.'" *Newsome v. Erwin*, 137 F. Supp. 2d 934, 941 (S. D. Ohio 2000).

Here, after being forced to pay over $24,000 for the return of her property, Fernandez discovered that the County's exorbitant "fee" apparently did not include following proper handling and storage procedures for her firearms. The operative complaint alleges that Fernandez was dismayed to find that the horrendous way the County stored and handled her firearms led to permanent damage, greatly diminishing the value of her collection. FAC ¶¶ 63-65. Auction house personnel took photographs of the firearms upon their release from the County, revealing dozens of long guns improperly

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

packed together in plastic bins, handguns thrown haphazardly on top of each other, and firearms otherwise damaged by the County's poor handling of them. *Id.* ¶ 64. The result was nearly $100,000 in lost value when the guns were sold at auction. *Id.* ¶ 65.

For purposes of a motion to dismiss, Fernandez has sufficiently alleged that her firearms were extensively damaged sometime during their seizure by the County. *Id.* ¶¶ 63-65. The County does not argue otherwise. In fact, its motion to dismiss is limited to claims that the initial seizure was lawful and that their retention of Fernandez's property until she paid its "fee" was reasonable. Cnty. Mot. 6-8. Neither position is relevant to Fernandez's theory that the County is liable under the Fourth Amendment for the damage to her firearm collection. Like the unjustified delay in returning Fernandez's property, but separate from it, the damage to her property during the seizure is actionable under the Fourth Amendment.

## IV. FERNANDEZ PROPERLY BRINGS AN AS-APPLIED CHALLENGE UNDER *MONELL* TO POLICIES AND CUSTOMS ENACTED BY THE COUNTY AND LASD AND ENFORCED BY THE SHERIFF

The County correctly argues that, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Fernandez must allege that the constitutional deprivation she suffered was caused by the implementation or execution of a policy statement, ordinance, regulation, decision, or custom officially adopted and promulgated by that body's officers and that the municipality was the moving force behind the injury alleged. Cnty. Mot. 9 (citing *Monell*, 436 U.S. at 690-91; *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). But there can be no serious question that Fernandez has sufficiently identified an offending official policy or custom sufficient to establish municipal liability under *Monell*.

As should be clear by now, Fernandez alleges that the County Defendants violated her Eighth Amendment rights under the County's official policy, adopted by county ordinance under Penal Code section 33880, of releasing seized firearms only after the property claimant pays a $54 per-firearm "fee." FAC ¶¶ 77-78, 86-90. Strict adherence to that policy was, as the amended complaint alleges, also the force behind Defendants'

refusal to terminate the seizure and release Fernandez's property once Mr. Fernandez died and the original justification for the seizure ended in violation of her Fourth Amendment rights. *Id.* ¶¶ 91, 109. Fernandez also alleges that the County Defendants violated her Fourth Amendment rights under a longstanding, though unwritten, policy or custom of ignoring any written policy on the proper storage of firearms and valuable property and instead haphazardly storing such property without care for any damage or loss that might result. *Id.* ¶¶ 107-108. All three allegations meet the standards set in *Monell*.

A.     **The County's Strict Enforcement of Its $54 Per-firearm "Fee" Is the Official Policy that Caused Fernandez's Harm Under Her Eighth Amendment Claim and Under Her Claim that the County's Failure to Timely Release Her Property Violates the Fourth Amendment**

As to Fernandez's Eighth Amendment claim, the County concedes that Fernandez has alleged that the relevant policy was the County's "assessment of the $54 per firearm fee and their employees' lack of discretion to reduce the administrative costs'" Cnty. Mot. 11. That's exactly right. Enforcement of the County's official policy of refusing to release firearm property until the property claimant pays a "fee" of $54 per firearm, as applied to Fernandez, constituted an unconstitutional excessive fine for all the reasons discussed in the amended complaint and earlier in this brief. *See* Section II.A-B, *supra*. That same policy is also the cause of the harm under Fernandez's related Fourth Amendment theory that the County's refusal to end the seizure of her property until she paid the County's unreasonable "fee" demand constituted an unlawful seizure. *See* Section III.A., *supra*.

Given the County's seeming clarity on this point, it is unclear why the County later asserts that "there is no allegation that the policies, themselves [sic] were unconstitutional." Cnty. Mot. 11. The operative complaint clearly alleges just that. Indeed, as to the Eighth Amendment claim, paragraph 90 reads, in relevant part:

> Plaintiff contends that Defendant LASD's per-firearm fee of $54, imposed under Penal Code section 33880, constitutes an excessive fine as applied to a large collection of firearms all seized from a single owner who was never convicted of any charges. Plaintiff thus desires a judicial declaration that California Penal Code section 33880, as applied here by Defendants, violates Plaintiff's rights under the Eighth Amendment.

18

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

And, as to the Fourth Amendment claim, paragraph 91 reads, in relevant part:

> Regardless of the legality of the original search and seizure, Defendants had no probable cause to continue the seizure of Plaintiffs' property after Mr. Fernandez's death because the fee they sought to extract from Plaintiffs [sic] was unreasonably excessive under all the circumstances…. Plaintiff thus desires a judicial declaration that Defendants violated Plaintiff's rights under the Fourth Amendment.

Fernandez has properly alleged an as-applied challenge to the County's $54 per-firearm "fee" adopted under section 33880. Indeed, she has gone further than most plaintiffs—not only identifying the policy she challenges as applied to her circumstances, but also its legislative history. FAC ¶¶ 29-42. As the complaint makes clear, the County adopted a fee that did not contemplate the seizure of a firearm collection of this size, given then-Sheriff Baca's statements that it would apply to about 500 guns and yield a total revenue of about $27,000 annually. *Id.* ¶ 38. The seizure of Fernandez's collection alone nearly fulfilled those estimates. Yet despite these extraordinary circumstances, Defendants LASD and Villaneuva refused to accommodate Fernandez and negotiate a fee that reflected the actual administrative costs associated with seizing, processing, and storing her property, instead choosing blind adherence to the "fee" adopted by Defendant County, claiming they had no discretion to lower it because it was set by local ordinance. *Id.* ¶ 87.[8] To put it in the County's terms, the County's official policy was the "moving force" behind the injury alleged by Fernandez. *See* Cnty. Mot. 9.

---

[8] Nor are Fernandez's claims based on an equal protection theory that she was treated "differently" than others whose firearms have been seized. Cnty. Mot. 11. Instead, Fernandez contends that the "fee," as applied to uniquely large firearm collections (like hers), is an unconstitutionally excessive fine. Fernandez does not challenge section 33880 on its face or even the County's fee as it might apply most of the time. She merely contends that, as applied to her likely unusual circumstances, the County's "fee" implemented under the authority of section 33880 is unconstitutional.

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

1

2

3

**B.     The County's Unwritten Policy or Custom of Ignoring Guidance on the Proper Storage of Firearms Resulted in Substantial Damage to Fernandez's Property in Violation of the Fourth Amendment**

4

        In its ruling on the County's first motion to dismiss, this Court observed that the

5

original complaint failed to allege sufficient facts that the County Defendants are liable for

6

any alleged Fourth Amendment violation under *Monell*. The Court noted that the damage

7

to the firearms went against LASD's written policies and conflicted with guidelines for

8

their handling. Order Re Defs.' Mots. to Dismiss, Dkt. No. 30, at 7. Fernandez has now

9

clarified her position in her amended complaint to allege more clearly that, regardless of

10

any written policy, it is actually "Defendants' longstanding (though unwritten) policy or

11

custom to store firearms haphazardly without care for any damage that may result

12

notwithstanding any written policy or guidance on the subject." FAC ¶ 73; *see also* ¶¶ 1,

13

6, 108, 111, 137. Under *Monell*, this is enough. *Benavidez v. Cnty. of San Diego*, 993 F.3d

14

1134, 1153 (9th Cir. 2021) ("The Supreme Court in *Monell* held that municipalities may

15

only be held liable under section 1983 for constitutional violations resulting from official

16

county policy *or custom*.") (emphasis added).

17

        The County first argues that Fernandez has not alleged that the County's written

18

firearm storage *policies* violated the Fourth Amendment. Cnty. Mot. 11. And, concededly,

19

she has not. Instead, Fernandez has alleged in her amended complaint that, regardless of

20

those written policies, the County has a well-established (though unwritten) policy or

21

custom of storing firearms haphazardly in violation of any written guidance and without

22

due regard to any damage improper storage or handling might cause and the basic duty of

23

care. And *that* is the policy or custom that caused the harm under Fernandez's Fourth

24

Amendment claim. FAC ¶ 73; *see also id.* ¶¶ 1, 6, 108, 111, 137. In part to support her

25

claim that such is the policy or custom of the County, Fernandez alleges that "Defendant

26

LASD has neither investigated nor disciplined any of it employees who handled the

27

firearms for violating any of its written storage policies or other guidance regarding the

28

proper storage of property in LASD custody, including firearms and property of

20

significant value." *Id.* ¶ 72.

Oddly, the County then spends an entire section arguing that the $54 per-firearm "fee" is not an unconstitutional custom. Cnty. Mot. 12-13. But Fernandez never alleged such a thing. That said, if the County is trying to make a point about the need for "frequency and consistency" in a *Monell* claim based on an alleged custom (as opposed to a written policy), *id.* at 13, Fernandez has alleged enough to show that the County's storage and handling practices were indeed a constant. Her experience was no outlier. Indeed, given the reckless way the firearms were stored with total disregard to the high risk of damaging them, it is clear the County had an unwritten policy or custom of disregarding its duty to safeguard the property in its care—not just as regards the Fernandez firearms, but as to all seized firearms. Recall that the firearms were shamelessly presented to auction house personnel for pickup in their poor storage conditions. FAC ¶ 63. The County did not even attempt to hide the slapdash way they stored Fernandez's property on the day they had arranged for that property to be picked up. *See id.* This betrays a custom within the County of ordinarily ignoring its own written policy guidelines related to storage and handling of impounded firearms and high-value property, *id.* ¶ 71, as well as its basic duty of care. The County's custom cost Fernandez $96,000 in lost property value, and Fernandez has properly alleged her Fourth Amendment claim, in part, on this basis.

## C.    Defendant LASD Is Not Immune from *Monell* Liability

Presenting an argument that it did not present in its first motion to dismiss, the County now argues that municipal police departments are not considered "persons" under section 1983. Cnty. Mot. 11 (citing *United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005) ["Moreover, municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983"].) But *Kama* cited only one Ninth Circuit case, *Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995), which merely affirmed a lower court dismissal as to an intergovernmental association, *not* a municipal or local government actor. *Id.* at 792 ("Hervey did not sue the component members of TNET;

1   rather, she sued TNET as a separate legal entity. TNET is not a municipality or local

2   governmental entity, it is an intergovernmental association.") And the only other case the

3   County cites also relies solely on *Kama* and *Hervey*. *See Rabinovitz v. City of Los

4   Angeles*, 287 F. Supp. 3d 933, 963 (C.D. Cal. 2018).

5          If these authorities purport to stand for the broad proposition that a local sheriff's

6   department cannot be sued under section 1983, the County's caselaw is simply wrong. For

7   Ninth Circuit precedent definitively holds that "municipalities, including counties *and

8   their sheriff's departments*" can be liable under section 1983 "if an unconstitutional action

9   'implements or executes a policy statement, ordinance, regulation, or decision officially

10  adopted and promulgated by that body's officers.'" *Rivera v. Cnty. of Los Angeles*, 745

11  F.3d 384, 389 (9th Cir. 2014) (emphasis added). Moreover, the Ninth Circuit has held

12  that, "under California law, a sheriff's department is a separately suable entity. Thus, a

13  sheriff's department can be separately sued under Section 1983 in federal court." *O'Neal

14  v. San Bernardino Sheriff's Dep't*, No. 09-cv-2297, 2010 U.S. Dist. LEXIS 143671 at *12

15  (C.D. Cal. Dec. 6, 2010) (citing *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 565 (9th Cir.

16  2001)). Simply put, the County's argument that LASD cannot be sued here "is squarely

17  contradicted by binding Ninth Circuit precedent." *Payne v. Cnty. of Calaveras*, No. 17-cv-

18  00906, 2018 U.S. Dist. LEXIS 211336 at *8 (E.D. Cal. Dec. 13, 2018).

19  **V.    FERNANDEZ'S PROPERLY STATES A FAILURE TO TRAIN CLAIM**

20         As is becoming a pattern, the County raises another issue in its second motion to

21  dismiss that it could have raised in the first but did not. That is, the County now argues,

22  for the first time, that Fernandez has not sufficiently stated a claim for failure to train.

23  Cnty. Mot. 13-15. The County's argument lacks merit.

24         A plaintiff claiming the inadequacy of police training as the basis for municipal or

25  official-party liability must allege that: "(1) [s]he was deprived of a constitutional right,

26  (2) the City had a training policy that "'amounts to deliberate indifference to the

27  [constitutional] rights of the persons' with whom [its police officers] are likely to come

28  into contact"; and (3) [her] constitutional injury would have been avoided had the City

properly trained those officers." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989). For purposes of surviving a motion to dismiss, the First Amended Complaint plainly alleges enough to establish each of the *Blankenhorn* elements.

As discussed above, Fernandez has alleged she was deprived of her constitutional rights under the Fourth and Eighth Amendments. *See* Sections II-III, *supra*. She has also alleged that County personnel caused her harm, both in enforcing the per-firearm "fee" without exception, FAC ¶ 87, and in storing her firearms so poorly that extensive damage was done to them, *id.* ¶ 64. Despite the imposition of an astoundingly high "fee" of over $24,000, and photographic evidence that the firearms were stored in violation of the County's purported policies on storage of firearms and other valuable property, Fernandez alleges that "Defendant LASD has neither investigated nor disciplined any of it employees who handled the firearms for violating any of its written storage policies or other guidance regarding the proper storage of property in LASD custody, including firearms and property of significant value." *Id.* ¶ 72.[9] Fernandez also alleges that Defendants County, LASD, and Sheriff Villanueva failed to properly screen, train, or supervise their officers and personnel. *Id.* ¶¶ 101, 102, 112, 113, 114, 136-143. And she alleged that as a result of these failures to train, she suffered violations of her rights under the Eighth and Fourth Amendments. *Id.* ¶ 143. Fernandez has thus sufficiently plead all the elements described in *Blankenhorn*. But if the Court believes that the amended complaint is insufficient in this regard, it should grant leave to amend, given that the County could have raised this issue in their first motion to dismiss but did not.

**VI.   FERNANDEZ STATES VALID FEDERAL CLAIMS FOR DECLARATORY RELIEF, SO THE COURT HAS SUPPLEMENTAL JURISDICTION**

Fernandez has established the validity of her federal claims in the amended

---

[9] The County states that "[t]he complaint **does** allege that the County was deliberately indifferent to the Plaintiff's constitutional rights..." Cnty. Mot. 14 (emphasis added). Given the context, Fernandez assumes the County meant to say, "does **not**."

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

complaint, and she has reaffirmed them throughout this brief. At minimum, she has sufficiently alleged federal causes of action under section 1983 to enable her to proceed beyond the pleadings and into discovery. For this reason, the County's conclusory claims that Fernandez cannot identify an actual controversy under the Federal Civil Rights Act, Cnty. Mot. 16, can be dismissed summarily. If this Court agrees with Fernandez that *either* of the constitutional claims survives this motion, then Fernandez has indeed properly stated a claim for declaratory relief.

Similarly, the County argues this Court should not exercise supplemental jurisdiction over the claims arising from state law because Fernandez does not state a valid federal claim. Cnty. Mot. 17. Again, if either of Fernandez's federal claims are valid, then this Court may exercise supplemental jurisdiction over the state claims as well. 28 U.S.C. § 1367. Indeed, "[o]ne federal claim is sufficient to support federal court jurisdiction over a case involving both federal and state law claims." *Carey v. Maricopa Cnty.*, 602 F. Supp. 2d 1132, 1136 (D. Ariz. 2009) (citing 28 U.S.C. § 1367).

**CONCLUSION**

For these reasons, the Court should deny the County's second motion to dismiss. But if the Court believes Fernandez has failed to allege sufficient facts supporting her claims, Fernandez should be given a chance to amend her complaint to address the Court's concerns—especially as concerns any arguments the County should have raised in its first motion to dismiss but did not. Indeed, leave to amend should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962). And there is no undue delay, bad faith, or undue prejudice that would be grounds for denying such leave here. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).

Dated: December 23, 2021                    MICHEL & ASSOCIATES, P.C.

                                            *s/ Anna M. Barvir*
                                            Anna M. Barvir
                                            *Counsel for Plaintiff Ana Patricia Fernandez*

OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Fernandez, v. Los Angeles County, et al.*
Case No.:    2:20-cv-09876 DMG (PDx)

IT IS HEREBY CERTIFIED THAT:

      I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

      I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS LOS ANGELES COUNTY, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND SHERIFF ALEX VILLANUEVA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Henry Patrick Nelson
nelson-fulton@nelson-fulton.com
Amber Logan
amberlogan@nelson-fulton.com
Nelson & Fulton
3435 Wilshire Blvd., Suite 2800
Los Angeles, CA 90010
   *Attorneys for Defendants Los Angeles County,*
   *The Los Angeles County Sheriff's Department,*
   *and Alex Villanueva*

      I declare under penalty of perjury that the foregoing is true and correct.

Executed December 23, 2021.

                *s/ Laura Palmerin*
                Laura Palmerin