C.D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
Konstadinos T. Moros – SBN 306610
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiff Ana Patricia Fernandez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA PATRICIA FERNANDEZ, an individual,<br><br>               Plaintiff,<br><br>     v.<br><br>LOS ANGELES COUNTY, THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, WYATT WALDRON, an individual, JOHN ROTH, an individual, SUSAN O'LEARY BROWN, an individual, ALEX VILLANUEVA, in his Official Capacity as Sheriff of Los Angeles County, RICHARD LEON, an individual, MURRAY JACOB, an individual, DAVID ROACH, an individual, SALVADOR MORENO IV, an individual, JASON AMES, an individual, KYLE DINGMAN, an individual, NICHOLAS SAYLOR, an individual, and DOES 8-10,<br><br>               Defendants. | Case No.: 2:20-cv-09876 DMG (PDx)<br><br>**PLAINTIFF'S OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Hearing Date:   January 14, 2022<br>Hearing Time:   9:30 a.m.<br>Courtroom:      8C<br>Judge:           Hon. Dolly M. Gee<br><br>Action Filed: October 27, 2020 |

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................. i

Table of Authorities ........................................................................................... iii

Introduction ........................................................................................................ 1

Statement of Facts .............................................................................................. 2

I.    California Penal Code Section 33880 and the Adoption of Los Angeles County's Administrative Fee for the Storage and Processing of Seized Firearms ................... 2

II.    The Seizure of Manuel Fernandez's Extensive Firearm Collection and Ana Patricia Fernandez's Attempts to Recover It ................................................. 3

Argument ............................................................................................................ 6

I.    Legal Standard ............................................................................................ 6

II.    The Court Should Not Dismiss This Action Based on County Employee Defendants' Qualified Immunity Claims .................................................... 6

    A.    The Court Should Not Decide the Fact-based Qualified Immunity Issue on the Barebones Record of a Motion to Dismiss ....................... 7

    B.    The Employee Defendants Are Not Entitled to Qualified Immunity ............. 8

        1.    Qualified Immunity Does Not Protect the Property Custodian Defendants from Liability Because Their Duties Were Ministerial ...... 8

        2.    Even If Their Actions Were Not Purely Ministerial, the Employee Defendants Are Not Entitled to Qualified Immunity Because Fernandez Alleges the Violation of a Clearly Established Right ........ 10

            a.    The Damage to Fernandez's Firearms and the Delay in Releasing Them Violated the Fourth Amendment ................... 10

                i.    The Employee Defendants' failure to release the Fernandez firearms once probable cause to continue the seizure evaporated violates the Fourth Amendment ....... 11

                ii.    County Employee Defendants' handling of Fernandez's firearms permanently damaged the seized property giving more support to Fernandez's Fourth Amendment claim ................................................ 15

i

b.     The Employee Defendants Knew or Reasonably Should Have Known that Recklessly Storing, Unreasonably Withholding, and Seriously Damaging Seized Property Under Their Control Violates Clearly Established Fourth Amendment Rights ........................................................................................ 16

III.     Fernandez States Valid Federal Claims for Declaratory Relief, So the Court Has Supplemental Jurisdiction ................................................................ 20

Conclusion ............................................................................................................... 20

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
781 F.2d 1393 (9th Cir. 1986) ................................................................. 21

*Anderson v. Creighton*,
483 U.S. 635 (1987) ................................................................................ 18

*Ashcroft v. al-Kidd*,
562 U.S. 731 (2011) ................................................................................ 16

*Bauer v. Becerra*,
858 F.3d 1216 (9th Cir. 2017) ................................................................ 14

*Bonds v. Cox*,
20 F.3d 697 (6th Cir. 1994) ............................................................. 15, 16

*Brewster v. Beck*,
859 F.3d 1194 (9th Cir. 2017) .......................................................... passim

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ................................................................................ 17

*Cal. Sportfishing Prot. All. v. Pac. States Indus., Inc.*,
No. 15-cv-01482, 2015 WL 5569073 (N.D. Cal. Sept. 22, 2015) .................... 16

*City of Garden Grove v. Super. Ct.*,
157 Cal. App. 4th 355 (2007) ................................................................... 9

*Dahl v. Palo Alto*,
372 F. Supp. 647 (N. D. Cal. 1974) ........................................................ 11

*Davis v. Scherer*,
468 U.S. 183 (1984) .................................................................................. 8

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) .............................................................. 6, 14

*E. Conn. Citzs. Action Grp. v. Powers*,
723 F.2d 1050 (2d Cir.1983) ................................................................... 14

*F.E. Trotter, Inc. v. Watkins*,
869 F.2d 1312 (9th Cir. 1989) .................................................................. 8

*Figueroa v. Gates*,
120 F. Supp. 2d 917 (C.D. Cal. 2000) ....................................................... 7

*Florida v. Jimeno*,
500 U.S. 248 (1991) .................................................................................. 8

iii

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................. 21

*Galbraith v. Cnty. of Santa Clara*,
  307 F.3d 1119 (9th Cir. 2002) ............................................................... 7

*Gooden v. Howard Cnty., Md.*,
  917 F.2d 1355 (4th Cir. 1990) ............................................................... 7

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ....................................................................... 6, 10

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ............................................................................. 19

*Hunter v. Hydrick*,
  556 U.S. 1256 (2009) ............................................................................. 7

*Hydrick v. Hunter*,
  500 F.3d 978 (9th Cir. 2007) ............................................................. 7, 8

*Jessop v. City of Fresno*,
  918 F.3d 1031 (9th Cir. 2019) ....................................................... 11, 19

*K.B. v. Waddle*,
  764 F.3d 821 (8th Cir. 2014) ................................................................. 8

*Kisela v. Hughes*,
  -- U.S. --, 138 S. Ct. 1148 (2018) ....................................................... 17

*L.A. Police Protective League v. Gates*,
  995 F.2d 1469 (9th Cir. 1993) ............................................................... 6

*Lavan v. City of Los Angeles*,
  693 F.3d 1022 (9th Cir. 2012) ............................................................. 11

*Liston v. Cnty. of Riverside*,
  120 F.3d 965 (9th Cir. 1997) ............................................................... 17

*Manuel v. City of Joliet*,
  -- U.S. --, 137 S. Ct. 911 (2017) ......................................................... 11

*Newsome v. Erwin*,
  137 F. Supp. 2d 934 (S. D. Ohio 2000) ........................................... 15, 16

*Ohio v. Robinette*,
  519 U.S. 33 (1996) ................................................................................. 8

*Porter v. Jones*,
  319 F.3d 483 (9th Cir. 2003) ................................................................. 6

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984) ................................................................. 6

iv
TABLE OF AUTHORITIES

*Romero v. Kitsap Cnty.*,
  931 F.2d 624 (9th Cir. 1991) ............................................................... 7

*Sandoval v. Cnty. of Sonoma*,
  72 F. Supp. 3d 997 (N.D. Cal. 2014) ................................................. 11

*Saucier v. Katz*,
  533 U.S. 194 (2001) ................................................................... 10, 16

*Segura v. United States*,
  468 U.S. 796 (1984) ......................................................................... 18

*Soldal v. Cook Cnty.*,
  506 U.S. 56 (1992) ........................................................................... 18

*Somers v. Dig. Realty Tr., Inc.*,
  119 F. Supp. 3d 1088 (N.D. Cal. 2015) .............................................. 16

*Tarpley v. Greene*,
  684 F.2d 1 (D.C. Cir. 1982) .............................................................. 17

*Thompson v. Souza*,
  111 F.3d 694 (9th Cir. 1997) .............................................................. 8

*Tsc Indus. v. Northway*,
  426 U.S. 438 (1976) ......................................................................... 12

*United States v. City of Redwood City*,
  640 F.2d 963 (9th Cir. 1981) .............................................................. 6

*United States v. Jacobsen*,
  466 U.S. 109 (1984) ............................................... 11, 15, 16, 17

*United States v. Place*,
  462 U.S. 696 (1983) ................................................................. 11, 18

*Wood v. Strickland*,
  420 U.S. 308 (1975) ......................................................................... 10

**Statutes**

28 U.S.C. § 1367 ............................................................................... 20

42 U.S.C. § 1983 ................................................................................. 1

Cal. Pen. Code § 33880 .................................................................. 2, 13

**Other Authorities**

Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release Application 3,
  *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ ler.pdf (last
  accessed Jan. 8, 2021) .................................................................... 3

City of Redondo Beach, Recover Firearms, *available at* https://www.redondo.org/depts/
  police/police_services/property_and_evidence/recover_firearms.asp (last accessed
  Jan. 8, 2021) ................................................................................... 3

**Rules**

Fed. R. Civ. Proc. 8 ................................................................................................ 6

Fed. R. Civ. Proc. 12 .............................................................................................. 6

TABLE OF AUTHORITIES

# INTRODUCTION

In June 2018, Defendant Los Angeles Sheriff's Department seized well over 400 firearms from Plaintiff Ana Patricia Fernandez's now-deceased husband, Manuel Fernandez. At the time of the seizure, Mr. Fernandez was prohibited from owning firearms and, on an anonymous tip, Defendant LASD Officer Wyatt Waldron and Detective John Roth executed a warrant to search Mr. Fernandez's properties and dispossess him of his firearm collection. They arrested Mr. Fernandez and charged him with unlawful possession of firearms. But sadly, Mr. Fernandez passed away, and the charges against him were dropped. Upon his passing, Mrs. Fernandez became the sole owner of the firearms, which remained in LASD's custody under the care of various LASD employees, including Defendants Waldron, Roth, Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, and Saylor ("the Employee Defendants").

When Mrs. Fernandez tried to retrieve her firearms to sell at auction, she learned that she would have to pay $54 *per firearm*—a fee that Defendant County of Los Angeles enacted to cover its "administrative costs." Because such a fee would amount to *tens of thousands of dollars*, an amount likely exceeding the costs incurred in seizing, processing, and storing the firearms (in violation of state law), Mrs. Fernandez tried to negotiate a more reasonable fee that would reimburse LASD's *actual* costs. Defendants refused. So Mrs. Fernandez paid the "fee" under protest to ensure that Defendants would promptly return her property and to prevent the firearms' lawful destruction under state law. After paying over $24,000, Mrs. Fernandez discovered that, while her firearms were in Defendants' custody, they were handled and stored so poorly that significant damage was done to them—leading to nearly $100,000 in lost value when the firearms were sold. Mrs. Fernandez alleges that the firearms were mishandled both in their seizure and in their processing and storage by each of the Employee Defendants.

Fernandez sued in this Court under 42 U.S.C. § 1983, alleging that (as relevant to this motion) the conduct of the Employee Defendants violated her rights under the Fourth Amendment. She also raised several supplemental state-law claims. The Employee

OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS

Defendants now bring a motion to dismiss, claiming that the doctrine of qualified immunity protects them from liability for violating Fernandez's constitutional rights. If the federal claim against her is dismissed, they continue, the Court should refuse to exercise supplemental jurisdiction to hear Fernandez's related state claims.

The motion should be denied because the Employee Defendants' role toward the seized property was purely ministerial, not discretionary, and qualified immunity does not protect the performance of ministerial functions. But even if the conduct is discretionary, Fernandez's complaint has sufficiently alleged, for purposes of a motion to dismiss, that the Employee Defendants' conduct violated her "clearly established" Fourth Amendment rights. And because Mrs. Fernandez has properly pleaded her federal claim, the Court should exercise supplemental jurisdiction over the related state-law claims. But if the Court harbors any concern over the specificity of the allegations pleaded in the amended complaint against the individual defendants, Mrs. Fernandez requests leave to amend.

## STATEMENT OF FACTS

I. **CALIFORNIA PENAL CODE SECTION 33880 AND THE ADOPTION OF LOS ANGELES COUNTY'S ADMINISTRATIVE FEE FOR THE STORAGE AND PROCESSING OF SEIZED FIREARMS**

State law authorizes California cities, counties, and state agencies to impose, at their discretion, a charge "equal to its administrative costs relating to the seizure, impounding, storage, or release of any firearm, ammunition feeding device, or ammunition." Cal. Penal Code § 33880(a) (former Cal. Penal Code § 12021.3). Any fee set by local authorities to recover these costs, however, "shall not exceed the actual costs incurred for the expenses directly related to taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner." *Id.* § 33880(b). Interestingly, if localities choose to impose such a fee, they may waive it for those with proof that the firearm had been reported stolen by the time law enforcement had taken control of it. *Id.* § 33880(c).

In 2005, under this authority, Defendant Los Angeles County adopted a "fee" of $54 per firearm seized—purportedly to recover the costs of processing and storing the

seized property. FAC ¶ 31. In a letter supporting the "fee's" enactment, then-Sheriff Baca submitted a cost breakdown alleging that for each firearm seized, LASD personnel devoted about 90 minutes of work, costing the department about $54. *Id.* ¶¶ 33-37. Sheriff Baca added: "an analysis of firearms evidence processing over a four-year period revealed that potentially 500 guns per year would be eligible for the administrative fee" and the fee "would yield additional revenue of approximately $27,000 each year." *Id.* ¶ 38.

Expecting that about 500 firearms would be subject to the fee annually, the County likely did not consider the actual costs related to seizing a collection of about that many firearms from a single firearm owner at once. *Id.* ¶ 83. More probable, it was contemplating the seizure of either individual firearms or small collections from many different sources, requiring unique processing and data entry for each gun. *Id.* When police seize hundreds of firearms from the same source, however, much of the data (and consequently work) is the same for each firearm, significantly reducing the time necessary to process each firearm. *Id.* ¶¶ 79-84. Other localities, likely recognizing this reality, have adopted a fee structure where the fee per firearm is reduced for every firearm but the first. *Id.* ¶ 41.[1] For example, the city of Redondo Beach, following the lead of the California Department of Justice's Law Enforcement Gun Release Program, charges $20 for the first firearm and just $3 for each additional firearm. *Id* ¶ 42. If the municipality releases the firearms directly to a licensed firearm dealer, it waives the fee altogether. *Id.* The County, however, opted not to adopt a fee structure that considers the reduced time it takes when police seize multiple firearms from a single person. *Id.* ¶ 31.

## II.   THE SEIZURE OF MANUEL FERNANDEZ'S EXTENSIVE FIREARM COLLECTION AND ANA PATRICIA FERNANDEZ'S ATTEMPTS TO RECOVER IT

Plaintiff Ana Patricia Fernandez's late husband, Manuel Fernandez, was prohibited

---

[1] *See* City of Redondo Beach, Recover Firearms, https://www.redondo.org/depts/police/police_services/property_and_evidence/recover_firearms.asp (last accessed Jan. 8, 2021); *see also* Cal. Dep't of Justice, Bureau of Firearms, Law Enforcement Release Application 3, *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/ler.pdf (last accessed Jan. 8, 2021).

OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS

from owning firearms because of a felony conviction stemming from 2009. FAC ¶ 43. In the summer of 2018, acting on an anonymous tip, Defendant LASD, including Defendants Wyatt Waldron and John Roth, executed multiple search warrants, seizing Mr. Fernandez's valuable collection of over 400 firearms as well as several ammunition magazines and speed loaders. *Id.* ¶¶ 44-49. According to a report by Detective Roth, 458 of the seized firearms were legal to possess in California so long as the person in possession was otherwise not prohibited from possessing firearms generally. *Id.* ¶ 59. Defendant Roth's investigation required that he handle the firearms, and at some point in that process, Mrs. Fernandez alleges, he damaged Fernandez's property. *Id.* ¶ 10, 59.

The First Amended Complaint alleges that the Employee Defendants each helped seize, process, or store the firearms, damaging them in the process. *Id.* ¶ 9-19. Between June 14, 2018, and June 28, 2018, the Fernandez firearms arrived at the Palmdale Sheriff's Station, where Defendants Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, and Saylor booked them into LASD custody. *Id.* ¶ 53. Each of the Employee Defendants were property custodians employed by Defendant LASD, either at the Palmdale Station or the Whittier Warehouse, during the time that the Fernandez firearms were in LASD custody, or they were otherwise responsible for seizing, transporting, processing, storing, handling, maintaining, or safeguarding the firearms. *Id.* ¶ 55-57.

After Mr. Fernandez was charged for his unlawful possession of firearms, but before any trial, he passed away and the charges against him were dismissed. *Id.* ¶ 74. Ownership of the firearms then passed to his wife, the plaintiff. *Id.* ¶ 76. When Mrs. Fernandez tried to retrieve her property, however, she learned from Defendant O'Leary Brown that she would have to pay the County's $54 *per-firearm* "fee" to recover the firearms, and the firearms would not be released to her until she did. *Id* ¶ 11, 77. Applying the County's per-firearm "fee" to Mrs. Fernandez's extensive collection would result in a total "fee" of tens of thousands of dollars. That "fee," Mrs. Fernandez alleges, far exceeds the actual costs the County incurred because the total "fee" did not consider that a single

person owned all the seized firearms and a single person requested their return, thus requiring less time per firearm to process. *Id.* ¶¶ 790-84.

Mrs. Fernandez thus offered to negotiate with Defendants to pay an amount more accurately reflecting the County's actual costs. *Id.* ¶ 86. Defendants would not budge, refusing to negotiate and demanding that Mrs. Fernandez pay *$24,354* to recover her property. *Id* ¶ 87. Fearing the destruction of the firearms, she paid the "fee" under protest, informing attorneys for the County that she was paying "to stop any claim that the continued storage of the firearms justifie[d] the current or any additional storage fees." *Id.* ¶ 88. But she remained open to negotiating a reasonable lower fee with the County. *Id.*

After paying the "fee," Mrs. Fernandez requested that the County release the firearms to Carol Watson's Orange Coast Auctions, a properly licensed firearm dealer, to be sold at auction. *Id* ¶ 61. The firearms had been stored at the Palmdale Sheriff's Station, under the care, at various times, of the Employee Defendants. *Id.* ¶ 63. Upon release of the firearms, Mrs. Fernandez discovered significant damage to her property resulting from them being in defendants' custody. *Id.* ¶. Photographs taken by auction house personnel at the police station show how poorly defendants handled and stored the firearms. *Id.* ¶ 64. For instance, dozens of long guns were packed together tightly in plastic bins. *Id.* Handguns were thrown haphazardly on top of each other. *Id.* And they were not stored in separate envelopes or boxes that would have protected them from damage. *Id.* Ultimately, the auction house estimated that the damage to the firearms led them to sell for about $96,000 less than they would have had the Defendants not damaged them. *Id.* ¶ 65.

Mrs. Fernandez submitted a timely Government Tort Claim to the County on February 24, 2020. *Id.* ¶ 4. The County served its rejection of Mrs. Fernandez's claim on April 28, 2020, giving her until October 28, 2020, to sue under Government Code section 945.6. *Id.* Mrs. Fernandez then sued in this Court. Defendants Waldron, Roth, Ames, Dingman, Jacob, Leon, Moreno, O'Leary Brown, Roach, Roth, and Saylor now bring this motion to dismiss the claims brought against them in the First Amended Complaint.

/ / /

# ARGUMENT

## I.   LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is very rare. Indeed, it is "only the *extraordinary* case in which dismissal is proper" for failure to state a claim. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (emphasis added). A court may dismiss a claim only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). To survive a Rule 12(b)(6) motion to dismiss, then, "a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). That is, a plaintiff need provide just a short and plain statement showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2). What's more, courts must view the complaint "in the light most favorable to the plaintiff, taking all allegations as true, and drawing all reasonable inferences from the complaint in [her] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Doing so here leads to the unmistakable conclusion that dismissal (especially with prejudice) is improper.

## II.   THE COURT SHOULD NOT DISMISS THIS ACTION BASED ON COUNTY EMPLOYEE DEFENDANTS' QUALIFIED IMMUNITY CLAIMS

The doctrine of qualified immunity shields "government officials performing *discretionary* functions . . . from liability for *civil damages*[2] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). In analyzing the Employee Defendants' claim of qualified immunity, the Court

---

2 "Qualified immunity . . . does not bar actions for declaratory or injunctive relief." *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993) (quotations omitted). It protects only against personal liability for money damages. *Id.* Because Fernandez seeks both damages *and* equitable relief, FAC, Prayer for Relief ¶¶ 2, 4-5, if qualified immunity attaches at all, it does not justify dismissing the Employee Defendants from the suit altogether.

OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS

should identify: (1) "the specific right allegedly violated; (2) . . . whether that right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters; and (3) . . . whether a reasonable officer could have believed lawful the particular conduct at issue." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991) (citing *Gooden v. Howard Cnty., Md.*, 917 F.2d 1355, 1361 (4th Cir. 1990)).

For the reasons discussed below, the Court should not decide these highly fact-specific issues at this stage. But if the Court holds that it is proper to decide them now, it should hold that qualified immunity does not shield the Employee Defendants from liability. At least as to the Employee Defendants, who are each alleged to be property custodians at the stations where the firearms were stored or to have been responsible for properly storing, handling, and safeguarding the firearms, FAC ¶ 57, the conduct that Fernandez alleges violated her rights was undertaken in the exercise of a ministerial, not discretionary, function. But even if the Employee Defendants were engaged in discretionary acts, a reasonable person would have understood that the conduct would violate Fernandez's clearly established rights under the Fourth Amendment.

### A. The Court Should Not Decide the Fact-based Qualified Immunity Issue on the Barebones Record of a Motion to Dismiss

To begin with, "a motion to dismiss on qualified immunity grounds puts the court in the difficult position of deciding far-reaching constitutional questions on a non-existent factual record." *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007) (internal quotations omitted), *vacated on other grounds by Hunter v. Hydrick*, 556 U.S. 1256 (2009). Courts should thus be "cautious not to eviscerate the notice pleading standard in suits where qualified immunity is at issue." *Id.* at 985-86 (citing *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002)). They should also be careful when asked to decide the issue of qualified immunity on motion to dismiss because it is, in large part, a fact-based inquiry. *See Figueroa v. Gates*, 120 F. Supp. 2d 917, 920-21 (C.D. Cal. 2000) (holding that the issue of city officials' "good faith compliance" with the law, an element of qualified immunity, should not be decided on motion to dismiss).

This is especially true here, where Fernandez has alleged the Employee Defendants have violated her rights under the Fourth Amendment, " 'the touchstone of [which] is reasonableness.' " *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). For "the 'reasonableness' of a search or seizure[] is a fact-intensive inquiry that cannot be determined at this stage." *Hydrick*, 500 F.3d at 993 (citing *Thompson v. Souza*, 111 F.3d 694 (9th Cir. 1997)). Indeed, "[i]t is impossible to make such a fact-specific determination when the precise circumstances of the searches or seizures are not before the court and when the [d]efendants have not yet had a chance to justify the alleged searches or seizures." *Id.*

In short, deciding whether the Employee Defendants knew or reasonably should have known that their conduct would violate Fernandez's constitutional rights is not appropriate on a motion to dismiss. The Court should thus reject the Employee Defendants' qualified immunity defense at this state and deny their motion to dismiss.

**B.    The Employee Defendants Are Not Entitled to Qualified Immunity**

**1.    Qualified Immunity Does Not Protect the Property Custodian Defendants from Liability Because Their Duties Were Ministerial**

The Employee Defendants, each of whom is alleged to be property custodians with LASD or to have been responsible for storing, handling, and safeguarding the Fernandez firearms, FAC ¶ 57, argue that qualified immunity bars Fernandez's federal claim against them. Cnty. Employee Defs.' Mot. to Dismiss ("Employee Mot.") 4-12. But qualified immunity shields only actions taken under discretionary functions. *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989). Indeed, the doctrine "grants qualified immunity to officials in the performance of discretionary, but not ministerial, functions." *Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984). A ministerial function is one "which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [her] own judgment or opinion concerning the propriety of the act to be performed." *K.B. v. Waddle*, 764 F.3d 821, 825 (8th Cir. 2014). It is this precise sort of function the Employee Defendants are

alleged to have performed here.

As for the Fernandez firearms, the Employee Defendants had, at most, limited discretion over how they seized, transported, and kept the property on behalf of the court under the policies they are mandated to follow. Those policies are made clear in LASD's "Manual of Policy and Procedures." Volume 5, chapter 4, section 070.00 of the manual describes LASD's policies for storage of property and evidence, specifically commanding that "all property/evidence items shall be stored in a secure manner in a secure facility." FAC ¶ 66-68. Further, high value items must be stored in a safe, and large collections that cannot be safely stored at the station must be immediately transferred to Central Property and Evidence. *Id.*[3] What's more, in California, a police department's role "with respect to seized property" "is primarily one of custodian for the court." *City of Garden Grove v. Super. Ct.*, 157 Cal. App. 4th 355, 366 (2007). "[I]ts duties insofar as *looking after the property and ensuring its **safe** transfer* are plainly ministerial. No special discretion, judgment or skill is called for. . .." *Id.* at 367 (double emphasis added).

Fernandez has alleged that all of this was disregarded, leading to the extensive damage to her firearms resulting in a nearly $100,000 loss when they were sold at auction. *Id.* ¶ 65, 91, 110, 119. There is no room for discretion here; the Employee Defendants were supposed to safeguard the seized firearms, *see id.*, storing Fernandez's property to a certain standard set by written policy and they failed to do so—and likely didn't even *attempt* to do so. Similarly, they were bound to release the firearms once probable cause for their seizure dissipated and no reasonable and lawful justification for the further retention of the property remained, but they did not. For these reasons, the Employee Defendants cannot claim qualified immunity as a defense to their failure to safeguard and then to timely release Fernandez's firearms.

---

[3] Yet it is clear from the total shamelessness in which Defendants returned the firearms in such poor condition, with the long guns all together in bins and stacked pistols on top of each other, FAC ¶ 118, that the County, LASD, and Sheriff Villanueva maintained a custom of ignoring written policies on property storage. *Id*. ¶ 108.

9

**2.     Even If Their Actions Were Not Purely Ministerial, the Employee Defendants Are Not Entitled to Qualified Immunity Because Fernandez Alleges the Violation of a Clearly Established Right**

Again, qualified immunity protects government officials from liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Thus, a defense of "qualified immunity will be defeated if an official '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury[.]" *Id.* at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). So even if the Court determines that the Employee Defendants were engaged in discretionary acts, to establish their immunity, the Employee Defendants must show that Fernandez has either failed to allege the violation of a constitutional right or failed to show that the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under a faithful application of this test, a reasonable jury could find that the Employee Defendants violated Fernandez's "clearly established" Fourth Amendment rights. Dismissal on this ground is thus improper.

**a.     The Damage to Fernandez's Firearms and the Delay in Releasing Them Violated the Fourth Amendment**

Oddly, the Employee Defendants contend that they had nothing to do with the enforcement of the administrative "fee" against Fernandez, Employee Mot. 9, but Fernandez does not allege that they had, given that her Eighth Amendment cause of action names only Los Angeles County, LASD, and Sheriff Villanueva. FAC ¶ 103. Fernandez alleges just one federal claim against the Employee Defendants—violation of the Fourth Amendment right to be secure from unreasonable seizures. FAC ¶¶ 104-115. In support of that claim, she alleges that the Employee Defendants, who consist of the officers who seized the firearms, personnel who processed them, and the property custodians who were responsible for their storage, are responsible for both the delay in returning the firearms following Mr. Fernandez's death, as well as the damage done to the firearms while they

were under their custody and control. *Id.* ¶¶ 91, 104-15. As explained below, Fernandez has sufficiently alleged that the Employee Defendants' conduct violated her Fourth Amendment rights.

### i. The Employee Defendants' failure to release the Fernandez firearms once probable cause to continue the seizure evaporated violates the Fourth Amendment

The Fourth Amendment protects against searches made "unreasonable" by the government's refusal to return property validly seized. The Supreme Court has long held that "[a] seizure lawful at its inception can nevertheless violate the Fourth Amendment because the manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[.]" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984) (citing *United States v. Place*, 462 U.S. 696, 707-10 (1983)).[4] And the Ninth Circuit has confirmed that "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) (citing *Jacobsen*, 466 U.S. at 123 & n.25; *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030-31 (9th Cir. 2012); *Manuel v. City of Joliet*, -- U.S. --, 137 S. Ct. 911, 914, 920 (2017)). To the contrary, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. *Thereafter, the government must cease the seizure or secure a new justification*." *Brewster*, 859 F.3d at 1197. If it does neither, a seizure reasonable at its inception becomes unreasonable. *Id.* (emphasis added).[5]

The relevant question, then, is whether the Employee Defendants reasonably refused to return the seized firearms to Fernandez when she demanded them. *See Place*, 462 U.S. at 703. But a motion to dismiss is generally an inappropriate avenue to determine questions of reasonableness. *See Dahl v. Palo Alto*, 372 F. Supp. 647, 648 (N. D. Cal.

---

[4]  *See also Sandoval v. Cnty. of Sonoma*, 72 F. Supp. 3d 997, 1004 (N.D. Cal. 2014) (holding that the Fourth Amendment "is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual").

[5]  *But cf. Jessop v. City of Fresno*, 918 F.3d 1031, 1036 (9th Cir. 2019) (holding that plaintiff did not have an established right under the Fourth Amendment to not have seized property stolen by police officers).

OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS

1974) ("The determination of reasonableness is a factual one encompassing the interests of the public, the appropriateness of the means, and the oppressiveness of the action. Such a determination is inappropriate in a motion to dismiss."). Indeed, such a question is ordinarily the function of the trier of fact applying the "reasonable person" standard. *Tsc Indus. v. Northway*, 426 U.S. 438, 450 n.12 (1976). Deciding this question against Fernandez now would require the Court to view the complaint in a manner unfavorable to her without the benefit of an evidentiary record supporting such a view, turning the well-settled standard for deciding motions to dismiss on its head. But even if the Court could make this determination at this stage, evaluating the evidence in the light most favorable to Fernandez as the non-moving party, it is clear the Employee Defendants' refusal to release Fernandez's property unless she paid a $24,000 "fee" was unreasonable.

The Ninth Circuit's reasoning in *Brewster v. Beck* is instructive. There, the plaintiff brought a Fourth Amendment challenge to a California law mandating a 30-day hold for all vehicles impounded on the grounds that the driver had a suspended license. *Brewster*, 859 F.3d at 1195. Plaintiff Brewster had (unwisely) loaned her vehicle to her brother, from whom law enforcement seized the car when they pulled him over and discovered he was driving on a suspended license. *Id.* Shortly after the initial seizure, Brewster presented proof that the vehicle was registered to her and that her license was valid. *Id.* She also "offered to pay all towing and storage fees that had accrued, but the LAPD refused to release the vehicle before the 30-day holding period had lapsed." *Id.* The court correctly held that the non-discretionary 30-day impound, enforced even after the initial justification for the seizure had lapsed, "constitute[s] a seizure that require[s] compliance with the Fourth Amendment." 859 F.3d at 1197. Thus, the government had to "cease the seizure or secure a new justification." *Id.* The court rejected the government's claim that "the state legislature's intent to impose a penalty on unlicensed drivers" was sufficient justification to continue the seizure and held that the government had no reasonable justification to withhold Brewster's property. *Id.* The court then cited another state law authorizing impoundment *without a mandatory 30-day hold* that would serve the same

goal without offending the Fourth Amendment. *Id.* at 1197-98.

Here, the only justification the County had for the initial seizure was to dispossess Mr. Fernandez of his firearms because, as a prohibited person, he possessed them in violation of state and federal law. Cnty. Mot. 6-7. When Mr. Fernandez died, the County dismissed the charges against him and ownership of the seized firearms passed to Mrs. Fernandez, who was *not* prohibited from owning or possessing firearms. FAC ¶¶ 75-76. At that point, the initial justification for the seizure expired, requiring the County to secure a new justification to continue the seizure. *See Brewster*, 859 F.3d at 1197. But the only justification for the continued retention of the seized firearms was that Mrs. Fernandez had not yet paid an administrative "fee" of *$24,354* to secure their release. FAC ¶¶ 77-78; Cnty. Mot. 8. To be sure, much like a law authorizing impoundment to penalize a driver with a suspended license only until the vehicle owner provides proof of valid license and registration likely avoids a Fourth Amendment violation, *id.* at 1198, continuing a seizure until the property claimant pays a fee reflecting the actual costs incurred by the government *may* be permissible. But holding a citizen's property hostage until she agrees to pay the government tens of thousands of dollars—a "fee" Fernandez alleges is unlawful because it far exceeds the County's administrative costs[6]—is patently *un*reasonable.

In short, based on no more than Defendants' unlawful demand that Fernandez pay a "fee" that she alleges far exceeded the actual costs incurred consequent to the seizure of her property, Fernandez unreasonably endured a prolonged wait to retrieve her property. The Employee Defendants who were property custodians should have released the firearms to their new rightful owner immediately, but they delayed. That delay is actionable under the Fourth Amendment.

The Employee Defendants rely on the fact that the original seizure was lawful to

---

[6] Recall, Penal Code section 33880, the state law under which the County may levy a charge for "the seizure, impounding, storage, or release of any firearm," makes clear that the fee "shall not exceed the actual costs incurred for the expenses directly related to taking possession of any firearm . . . , storing it, and surrendering possession of it to a licensed firearms dealer or to the owner."

13

OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS

justify the continued possession of the firearms—even once that justification had evaporated with Mr. Fernandez's passing. And they bizarrely argue that "[t]here can be no Fourth Amendment violation where the justification for the retention of the seized property is reasonable," before then conceding that requiring payment of the $24,354 "fee" served as the only new justification to withhold Fernandez's firearms. Employee Mot. 8. But, in the Defendants' own words, this issue turns on whether the "fee" was *reasonable* in the first place. Even if it were proper to decide fact-specific issues of reasonableness on a motion to dismiss (it is not), one can hardly say with a straight face that demanding an innocent citizen pay the government tens of thousands of dollars to recover her own property is "reasonable."

Still, the Employee Defendants point to *Bauer v. Becerra*, 858 F.3d 1216, 1220 (9th Cir. 2017), which upheld a fee charged incident to most firearm purchases in California, to support their claim that it was reasonable to demand that Fernandez pay a "fee" to recover her property. But the portion of the fee at issue in *Bauer* amounted to $5. *Id.* at 1220. In other words, that case involved a $5 burden on exercising the Second Amendment right to purchase a firearm. The burden on Fernandez to recover her property is orders of magnitude greater—over 4800 times more, to be precise. On this issue, then, *Bauer* lends only the weakest of support to the Defendants' claims.

Far more importantly, the Employee Defendants concede that imposing fees on the exercise of constitutional rights is permissible only when the fees are designed to defray administrative costs *but do not exceed* those costs. Employee Mot. 7 (citing *E. Conn. Citzs. Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir.1983)). But the Defendants do not even try to show that the "fee," as applied to Fernandez, simply defrays (and does not exceed) the costs incurred incident to the seizure. Nor would it be appropriate for the Court to find, at this stage, that it does. For Fernandez alleges that the "fee" exceeds those costs, FAC ¶¶ 39, 84-85, 90, and on a motion to dismiss, the Court should "tak[e] all allegations as true, and draw[] all reasonable inferences from the complaint in [her] favor." *See Doe*, 419 F.3d at 1062.

### ii. County Employee Defendants' handling of Fernandez's firearms permanently damaged the seized property giving more support to Fernandez's Fourth Amendment claim

Even if the "fee" does not exceed the costs incurred, however, that still leaves the $96,000 in damage done to Fernandez's property while it was in the Defendants' custody. FAC ¶ 65. Government destruction of property is "meaningful interference" constituting a seizure under the Fourth Amendment. *Jacobsen*, 466 U.S. at 124-25; *see also Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir. 1994). Indeed, "[l]aw enforcement activities that unreasonably damage or destroy personal property, thereby 'seizing' it within the meaning of the Fourth Amendment, may give rise to liability under [section] 1983.'" *Newsome v. Erwin*, 137 F. Supp. 2d 934, 941 (S. D. Ohio 2000).

Here, after being forced to pay over $24,000 for the return of her property, Fernandez discovered that the County's exorbitant "fee" apparently did not include following proper storage procedures for her firearms—procedures the Employee Defendants were directly responsible for carrying out. The operative complaint alleges that Fernandez was dismayed to find that the horrendous way Defendants stored and handled her firearms led to permanent damage, greatly diminishing the value of the collection. FAC ¶¶ 63-65. Auction house personnel took photographs of the firearms upon their release from Defendants' control, revealing dozens of long guns improperly packed together in plastic bins, handguns thrown haphazardly on top of each other, and firearms otherwise damaged by defendants' poor handling of them. *Id.* ¶ 63. The result was nearly $100,000 in lost value when the guns were sold at auction. *Id.* ¶ 65. For purposes of a motion to dismiss, Fernandez has sufficiently alleged that her firearms were extensively damaged sometime during their seizure by Defendants and that the Employee Defendants were directly responsible for the firearms while they were seized, processed, and haphazardly stored. *Id.* ¶¶ 9-18, 47-65, 63, 91, 113. Like the unjustified delay in returning Fernandez's property, the damage to the firearms is independently actionable under the Fourth Amendment.

It is telling that the Employee Defendants hardly even try to counter the contention

OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS

that the property damage alleged in Fernandez's amended complaint, if proven, would be a Fourth Amendment violation. Their entire argument to that effect is this: "There is no support for the Plaintiff's contention that the … alleged 'grossly negligent' damage to personal property following a lawful seizure violates the Fourth Amendment." Employee Mot. 9-10. The Employee Defendants cite no case to support the claim that damaging seized property does not violate the Fourth Amendment, and instead immediately shift to discussing cases about whether such laws are clearly established. *Id.* Fernandez, for her part, cited three cases holding that such property damage does violate her Fourth Amendment rights. FAC ¶ 23 (citing *Jacobsen*, 466 U.S. at 124-25; *Bonds*, 20 F.3d at 701-02; *Newsome*, 137 F. Supp. 2d at 941). The Employee Defendants (whether intentionally or mistakenly) opted not to address these authorities in their motion.[7]

### b. The Employee Defendants Knew or Reasonably Should Have Known that Recklessly Storing, Unreasonably Withholding, and Seriously Damaging Seized Property Under Their Control Violates Clearly Established Fourth Amendment Rights

Having shown that she had alleged the violation of a constitutional right, Fernandez next turns to whether the Employee Defendants knew, or should have known, that their conduct violated a "clearly established" constitutional right. *Saucier*, 533 U.S. at 201. "[Q]ualified immunity is lost when plaintiffs point either to 'cases of controlling authority *in their jurisdiction at the time of the incident*' or to 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Ashcroft v. al-Kidd*, 562 U.S. 731, 746 (2011) (Kennedy, J., concurring) (citation

---

[7] Either way, because Fernandez included these authorities in her amended complaint, the Employee Defendants' reasonably should have known that these precedents were relevant to (and indeed contradict) their claim that no authority supports the claim that the Fourth Amendment is implicated when the government damages a person's property. Thus, the Employee Defendants should be barred from addressing these precedents for the first time on reply. Any attempt to make their case for the first time on reply offends the "general principle [that] arguments raised for the first time in a reply brief are waived." *Somers v. Dig. Realty Tr., Inc.*, 119 F. Supp. 3d 1088, 1106 (N.D. Cal. 2015). Indeed, "[r]aising new arguments in a reply brief is classic sandbagging, and the Court [should] not tolerate it.*" Cal. Sportfishing Prot. All. v. Pac. States Indus., Inc.*, No. 15-cv-01482, 2015 WL 5569073, at *2 (N.D. Cal. Sept. 22, 2015).

OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS

omitted). But the Supreme Court "has long rejected the notion than "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful[.]" *Kisela v. Hughes*, -- U.S. --, 138 S. Ct. 1148, 1158 (2018) (Sotomayor, J., dissenting). Instead, the "inquiry boils down to whether [the officer] had 'fair notice' that he acted unconstitutionally." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). This is not an "onerous" standard. *Id.* Fernandez has no trouble meeting it here.

The binding authorities existing when the Employee Defendants interfered with Fernandez's property interests provided fair notice that unjustified continued seizure (and substantial damage) implicated the Fourth Amendment. What matters here are the straightforward Supreme Court and Ninth Circuit authorities existing when the Employee Defendants acted. Those authorities hold that:

(1)   "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[]," *United States v. Jacobsen*, 466 U.S. 109, 124 (1984);

(2)   A seizure occurs when there is some "meaningful interference with an individual's possessory interest in [their] property," *id.* at 113, and unjustified damage or destruction to seized property can thus support Fourth Amendment liability, *Liston v. Cnty. of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997);

(3)   "A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification," *Brewster*, 859 F.3d at 1197; and

(4)   An "unreasonable refusal to release [lawfully] seized property or an unreasonable decision to dispose of the property," *Jacobsen*, 466 U.S. at 113, 123-24 & n.25, implicates the right to be secure in one's property.

As for Fernandez's claims that the damage to her property violated her constitutional rights, it has long been understood that unnecessarily destructive behavior violates the Fourth Amendment during an initial seizure. *Liston*, 120 F.3d at 979. In *Tarpley v. Greene*, 684 F.2d 1 (D.C. Cir. 1982), a case cited as persuasive authority by the Ninth Circuit in *Liston*, the D.C. Circuit held that police officers were unnecessarily destructive in conducting a search. The court found that "The touchstone . . . is reasonableness; destruction of property that is not reasonably necessary to effectively

17

execute a search warrant may violate the Fourth Amendment." *Id.* at 9. Fernandez alleges that her firearms were handled and stored extremely poorly and contrary to established department guidelines, causing the firearms significant damage. FAC ¶¶ 47-65. Such reckless damage to property was not reasonably necessary to seizing, transferring, or storing the firearms, and Fernandez has alleged as much in her complaint.

There is also no reason to believe that unnecessarily destructive behavior is suddenly acceptable once the property is in the custody of police at the station. Again, it is generally unnecessary to find a controlling decision declaring the "very action in question . . . unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Instead, "in the light of pre-existing law the unlawfulness must be *apparent*." *Id*. (emphasis added). Thus, it stands to reason that if unnecessarily destructive behavior at the initial seizure is unlawful, so too is such behavior after the initial seizure runs its course.

Similarly, as established above, just because an initial seizure may have been lawful, that does not mean all subsequent action is justified—especially if probable cause is lost. *Brewster*, 859 F.3d at 1197. If no subsequent probable cause is established, a seizure reasonable at its inception *must* cease or it becomes an unreasonable one. *Id*. at 1196-97. Indeed, one cannot square clear directives about the type of seizures the Fourth Amendment protects against the insistence that the government may keep seized property with no justification as long as justification existed for the initial seizure. *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992). Ultimately, the idea that the Fourth Amendment's protections dissipate after the initial seizure has no authoritative foundation. For when the justification for a seizure expires, so too does the justification for continued possession. *See United States v. Place*, 462 U.S. 696, 707-10 (1983); *see also Segura v. United States*, 468 U.S. 796, 812 (1984). Further retention of the property then becomes unreasonable, implicating clearly established rights under the Fourth Amendment.

Here, continuing to withhold the guns after Mr. Fernandez's death was unjustified. Indeed, the Employee Defendants knew or should have known that their conduct was unlawful, as the firearms were held under their care long after Mr. Fernandez had passed

away and the charges against him dropped. FAC ¶ 74. Yet they continued to refuse to release the firearms based solely on Defendants' unlawful demand that Mrs. Fernandez pay a $24,354 fine to secure their return. *Id.* ¶ 77. There is nothing reasonable about the refusal to end the seizure under these circumstances.

The Ninth Circuit's decision in *Jessop v. City of Fresno*, 918 F.3d 1031 (9th Cir. 2019), does not alter that conclusion. *See* Employee Mot. 10. To be sure, as in *Jessop*, the initial seizure of Fernandez's property was conducted under a lawful warrant. FAC ¶ 49. But when Mr. Fernandez died and the charges against him were dismissed, that initial lawful seizure ended. *Id.* ¶ 76. Fernandez contends that the Employee Defendants' refusal to release her property *after* that point amounted to an unreasonable seizure because defendants no longer harbored reasonable justification to continue the seizure. *Id.* ¶ 91. This fact is critical. Mr. Fernandez's death and the dismissal of all charges, triggered defendants' obligation to return the property to Mrs. Fernandez, the firearm's new lawful owner. The failure to do so is a Fourth Amendment "seizure" because it constitutes a "meaningful interference with [Fernandez's] possessory interests." *Jacobsen*, 466 U.S. at 113. The *Jessop* plaintiffs could make no similar argument. The police stole their property while probable cause under the initial seizure still existed. *Jessop*, 918 F.3d at 1035. So, unlike this case, in *Jessop* there was no obligation to return the property when the ultimate dispossession occurred.

Ultimately, precedent existing at the time provided "fair notice [to defendants] that their conduct was unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Fernandez has thus sufficiently alleged that County Employee Defendants knew or should have known that their conduct violated Fernandez's clearly established Fourth Amendment rights. Qualified immunity is not a defense to Fernandez's claim.

/ / /

/ / /

/ / /

OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS

### III.   FERNANDEZ STATES VALID FEDERAL CLAIMS FOR DECLARATORY RELIEF, SO THE COURT HAS SUPPLEMENTAL JURISDICTION

Fernandez has established the validity of her federal claims in the amended complaint, and she has reaffirmed throughout this brief and in her brief opposing the County's motion to dismiss. At minimum, she has sufficiently alleged federal causes of action under section 1983 to enable her to proceed beyond the pleadings and into discovery. The Employee Defendants argue that this Court should not exercise supplemental jurisdiction over the claims arising from state law because Fernandez does not state a valid federal claim. Employee Mot. 11. But if either of Fernandez's federal claims are valid, then this Court should exercise supplemental jurisdiction over the related state causes of action. 28 U.S.C. § 1367.

What's more, Fernandez has similar claims pending against Los Angeles County, LASD, and Sheriff Villanueva. Even if the Court finds that the Employee Defendants are entitled to qualified immunity as to Fernandez's Fourth Amendment claim, if the Court hears Fernandez's federal claims against the other defendants, the Court retains supplemental jurisdiction over the state law claims against the Employee Defendants as well. Indeed, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional partie*s." 28 U.S.C.S. § 1367 (2020) (emphasis added).

### CONCLUSION

For these reasons, the Court should deny the Employee Defendants' motion to dismiss. But if the Court believes Fernandez has failed to allege sufficient facts supporting her claims, Fernandez should be given a chance to amend her complaint to address the Court's concerns—especially as concerns any arguments the County should have raised in its first motion to dismiss but did not. Indeed, leave to amend should be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). And there is no undue delay, bad faith, or undue prejudice that would be grounds for denying such leave here. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).

Dated: December 23, 2021                                MICHEL & ASSOCIATES, P.C.

                                                        *s/ Anna M. Barvir*
                                                        Anna M. Barvir
                                                        *Counsel for Plaintiff Ana Patricia*
                                                        *Fernandez*

OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Fernandez, v. Los Angeles County, et al.*
Case No.:     2:20-cv-09876 DMG (PDx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFF'S OPPOSITION TO COUNTY EMPLOYEE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Henry Patrick Nelson
nelson-fulton@nelson-fulton.com
Amber Logan
amberlogan@nelson-fulton.com
Nelson & Fulton
3435 Wilshire Blvd., Suite 2800
Los Angeles, CA 90010
   *Attorneys for Defendants Los Angeles County,*
   *The Los Angeles County Sheriff's Department,*
   *and Alex Villanueva*

I declare under penalty of perjury that the foregoing is true and correct.

Executed December 23, 2021.

s/ Laura Palmerin
Laura Palmerin