Henry Patrick Nelson, CSB #32249
Amber A. Logan, CSB #166395
*Nelson & Fulton*
Equitable Plaza, Suite 2800
3435 Wilshire Boulevard
Los Angeles, CA 90010-2014
Tel. (213) 365-2703 / Fax (213) 201-1031
nelson-fulton@nelson-fulton.com
amberlogan@nelson-fulton.com

Attorneys for Defendants, County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Villanueva, Los Angeles County Employees Ames, O'Leary Brown, Dingham, Jacob, Leon, Moreno IV, Roach, Roth, Saylor, Waldron

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANA PATRICIA FERNANDEZ,

    Plaintiff,

vs.

LOS ANGELES COUNTY; et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:20-cv-09876-DMG (PD)

**DEFENDANTS, COUNTY OF LOS ANGELES EMPLOYEES AMES, O'LEARY BROWN, DINGMAN, JACOB, LEON, MORENO IV, ROACH, ROTH, SAYLOR AND WALDRON'S REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
[F.R.C.P. 12(b)(6)]

Date:   January 14, 2022
Time:  9:30 a.m.
Place:  Courtroom 8C
Judge: Hon. Dolly M. Gee

TO THE COURT, TO ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:

    Defendants, JASON AMES,  SUSAN O'LEARY BROWN, KYLE DINGMAN,

MURRAY JACOB, RICHARD LEON, SALVADOR MORENO IV, DAVID ROACH,

JOHN ROTH,  NICHOLAS SAYLOR and WYATT WALDRON (sued in their individual

capacities as employees of the COUNTY OF LOS ANGELES), hereby reply to the

Plaintiff's opposition to their Motion to Dismiss the First Amended Complaint.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii-iii

MEMORANDUM OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

I.   THE APPLICATION OF QUALIFIED IMMUNITY CAN AND
     SHOULD BE DECIDED ON MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . .  1

II.  THE MINISTERIAL DUTY EXCEPTION TO QUALIFIED
     IMMUNITY DOES NOT APPLY IN THIS CASE.. . . . . . . . . . . . . . . . . . . . . . . . .  1

A.   The Ministerial/Discretionary Distinction is "Dead Law."  . . . . . . . . . . . . . . . . .  2

B.   The Ministerial Duty Exception Does Not Apply in this Case. . . . . . . . . . . . . . .  3

III. THE COUNTY EMPLOYEES COULD REASONABLY BELIEVE
     THEY WERE ENTITLED TO RETAIN LAWFULLY SEIZED
     WEAPONS UNTIL THE FEE UNDER PENAL CODE SECTION
     33880 HAD BEEN PAID.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

IV.  THE COUNTY'S EMPLOYEES ARE ENTITLED TO QUALIFIED
     IMMUNITY FOR THE PLAINTIFF'S FOURTH AMENDMENT
     DESTRUCTION OF PROPERTY CLAIM**.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

# TABLE OF AUTHORITIES

**CASES**                                                                                   **Page(s)**

Anderson v. Creighton, 483 U.S. 635, 640 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 6, 8

Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis,
   (8th Cir. 2019) 934 F.3d 876, 884   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

Bonds v. Cox, 20 F.3d 697, 702 (6th Cir 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Brewster v Beck, 859 F.3d 1194, 1197 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . 7-8

Coleman v. Frantz, 754 F.2d 719, 727 (7th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . .  2

Collins v. City of Harker Heights, 503 U.S. 115 (1992)  . . . . . . . . . . . . . . . . . . . . . . .  6

Cupp v Harris, 2021 WL 4443099 *4, slip copy filed September 28, 2021,
(E.D. Cal. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Davis v. Scherer, 468 U.S. 183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

F.E. Trotter, Inc. v. Watkins 869 F.2d 1312, 1314 (9th Cir. 1989) . . . . . . . . . . . . . . . .  3

Gagne v. City of Galveston, 805 F.2d 558, 560 (5th Cir.1986) . . . . . . . . . . . . . . . . . . 2-3

Horta v. Sullivan, 4 F.3d 2, 12 (1st Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Lavan v. City of Los Angeles, 693 F.3d 1022, 1024 (9th Cir. 2012) . . . . . . . . . . . . . .  10

Liston v County of Riverside, 120 F.3d 965 (9th Cir 1997) . . . . . . . . . . . . . . . . . . . 10-11

Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Pearson v. Callahan, (2009) 555 U.S. 223, 232 . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

Saucier v. Katz, 533 U.S. 194, (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Sellers By and Through Sellers v. Baer,
   28 F.3d 895, 902 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

United States v. Jacobsen, 466 U.S. 109, 124–25 (9184) . . . . . . . . . . . . . . . . . . . . . 9-10

1

# TABLE OF AUTHORITIES

2

3

**CASES**                                                                                    **Page(s)**

4

West v City of Caldwell , 931 F.3d 978 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . .   11

5

Wilson v Lynch, 835 F.3d 1083, 1097 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . .   8

6

**STATUTES**

7

Penal Code § 33875   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

8

Penal Code § 33880   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5-8, 12

9

Vehicle Code § 14602.6(a)(1)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## MEMORANDUM OF LAW

### I.      THE APPLICATION OF QUALIFIED IMMUNITY CAN AND SHOULD BE DECIDED ON MOTION TO DISMISS.

Qualified immunity is "an immunity from suit rather than a mere defense to liability.  It is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, (1985).  The Supreme Court has made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton,* 483 U.S. 635, 640, (1987).  Accordingly, the Supreme Court "repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan,* 555 U.S. 223, 231–232 (2009).

The County defendants contend that they are entitled to qualified immunity for the alleged violations of the Fourth Amendment set forth by the Plaintiff.  Contrary to other grounds set forth on motion to dismiss, qualified immunity is an immunity from suit, not merely a defense to the action.  Where, as here, the application of qualified immunity can be resolved on the facts alleged by the Plaintiff, the case can and should be resolved at the earliest possible stage of litigation, on motion to dismiss.

### II.      THE MINISTERIAL DUTY EXCEPTION TO QUALIFIED IMMUNITY DOES NOT APPLY IN THIS CASE.

In opposition to the County employees' Motion to Dismiss, the Plaintiff contends that qualified immunity is inapplicable because the County's employees were performing ministerial duties as opposed to discretionary functions.  The Plaintiff cannot prevail on this theory.

1

2

3        **A.        The Ministerial/Discretionary Distinction is "Dead Law."**

4            In *Sellers By and Through Sellers v. Baer,* 28 F.3d 895, 902 (8th Cir. 1994), the

5    Eighth Circuit analyzed the ministerial-duty exception to qualified immunity and held:

6    "[a]dditionally, we note our belief that the ministerial-duty exception to the qualified

7    immunity defense is dead letter.  First, we have been unable to find any post-*Davis* (*Davis*

8    *v. Scherer,* 468 U.S. 183) cases in which a court has denied qualified immunity because

9    the official was performing a ministerial task.  Furthermore, in light of the limitations

10    placed on the exception by *Davis,* we are unable to imagine the case in which the

11    ministerial-duty exception ever could apply.  Other circuits also have expressed skeptical

12    views of the distinction between discretionary and ministerial duties.  *See Horta v.*

13    *Sullivan,* 4 F.3d 2, 12 (1st Cir.1993) ("[I]nsofar as the concept of discretionary function is

14    relevant at all in the immunity sphere, . . . "); *Gagne v. City of Galveston,* 805 F.2d 558,

15    560 (5th Cir.1986), ("Thus allegations about the breach of a statute or regulation are

16    simply irrelevant to the question of an official's eligibility for qualified immunity in a suit

17    over the deprivation of a constitutional right.") *cert. Denied,* 483 U.S. 1021 (1987);

18

19    *Coleman v. Frantz,* 754 F.2d 719, 727 (7th Cir.1985) ("[A]s a matter of public policy, it

20    would be unwise to engage in a case by case determination of Section 1983 immunity

21    based upon the ministerial versus discretionary nature of the particular official act

22    challenged").  The court reasoned that nearly all decisions made by government officials

23    involve some exercise of discretion.

24

25            While the Ninth Circuit has not specifically abrogated the ministerial duty

26    exception, it has ruled that its application is extremely narrow and if an official were

27    required to exercise his or her judgment even rarely or to a small degree, the ministerial

duty exception to qualified immunity would be inapplicable. *F.E. Trotter, Inc. v. Watkins* 869 F.2d 1312, 1314 (9th Cir. 1989).

As the Plaintiff has cited to no post-*Davis* cases denying the application of qualified immunity for so called ministerial duties, the defendants contend that the law is "dead law," and the exception is inapplicable here.

**B.     The Ministerial Duty Exception Does Not Apply in this Case.**

Even if the "ministerial/discretionary" duty exception is still good law, the exception is inapplicable in this case.

The exception to qualified immunity for functions that are "ministerial" rather than "discretionary" is quite narrow.  For qualified immunity purposes, a duty is "ministerial" only where the statute or regulation leaves no room for discretion—that is, it specif[ies] the precise action that the official must take in each instance.  "A law that fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused." *Watkins*, 869 F.2d at 1315, citing *Davis,* 468 U.S. at 196 n. 14.  In all other circumstances, the official is performing a discretionary function for purposes of the qualified immunity analysis.

A duty is discretionary if "an official is required to exercise his judgment, even if rarely or to a small degree." *Watkins*, 869 F.2d at 1314; quoting, *Gagne v. City of Galveston*, 805 F.2d 558, 560.  Even if some parts of the defendant's duties were ministerial, "[p]arsing discretionary acts into their discretionary and ministerial components and protecting only the former would sharply curtail the protection for discretionary duties that qualified immunity is meant to furnish." *Watkins,* 869 F.2d at 1315.

In addition, the ministerial-duty exception applies only where it is the violation of the ministerial duty than gives rise to the cause of action for damages.  _Davis_, 468 U.S. at 194 n. 12, 196 n. 14, see also, _Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis,_ (8th Cir. 2019) 934 F.3d 876, 884.  That is not the case here.

In this case, the Plaintiff contends that the ministerial duties performed by the County employees  emanate from the Los Angeles County Sheriff's Department's Policies and Procedures Manual.  It is alleged that the policy commands that "all property/evidence items shall be stored in a secure manner in a secure facility.  Further, high value items must be stored in a safe, and large collections that cannot be safely stored at the station must be immediately transferred to Central Property and Evidence."  (Opposition, page 9:2-10).

The Plaintiff's position fails for several reasons.  First, even the opposing papers concede that pursuant to these duties outlined by the LASD policy manual, "the Defendants had at most 'limited discretion' over how they seized, transported and kept the property on behalf of the court."  (Opposition, p. 9:2-3).  As set forth clearly in _Watkins_, even if a duty requires, a minimal or rare exercise of the use of discretion, the duty is discretionary.  Parsing the defendants' acts into minute components of what is and is not discretionary, sharply curtails the application of qualified immunity.  Where any degree of discretion is involved, the "ministerial duty" exception is inapplicable.

Second, the LASD policy manual as cited by the Plaintiff does not describe  ministerial duties.  A law that fails to specify the precise action that the official must take in each instance creates only discretionary authority.  The LASD policy manual states only that the property must be stored in a secure manner, in a secure facility.  What is determined to be a "secure manner" is not specifically described in the policy and is therefore left to the discretion of the

persons seizing and storing the property.  This is likely true because one would have to store different items of property (i.e., firearms, and explosives), differently that other items (such as narcotics or stolen personal property).  Again, if the storage decision involves any manner of discretion, and the Plaintiff concedes that it does, the duties involved are discretionary and the "ministerial-duty" exception does not apply.

Third, with regard to assessing the fee for the return of the firearms, the First Amended Complaint itself contends that the defendants' duties allegedly undertaken to enforce Penal Code § 33880, were discretionary.  "Under both the original California Penal Code section 12021.3 and the newer section 33880, enactment and enforcement of the administrative fee is discretionary."  (FAC; p.10: ¶ 40).

Finally, in the case before us the Plaintiff does not claim that she is entitled to damages simply because the County defendants violated LASD policy.  The Plaintiff seeks damages based on a claim that the Fourth Amendment was.  Thus, the issue before the court is whether the County employees' conduct violated any clearly established constitutional rights, not whether they may have violated departmental regulations.  Even assuming that the officers violated the departmentally imposed duties and that the duties were purely ministerial, the officers are still entitled to qualified immunity.  *Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis,* 934 F.3d 876, 884, (8th Cir. 2019), *see also Sellers*, 28 F.3d at 902.

**III.   THE COUNTY EMPLOYEES COULD REASONABLY BELIEVE THEY WERE ENTITLED TO RETAIN LAWFULLY SEIZED WEAPONS UNTIL THE FEE UNDER PENAL CODE SECTION 33880 HAD BEEN PAID.**

The Plaintiff fails to show that the County employees violated any clearly established law by retaining the firearms in question until the Plaintiff paid the administrative fee pursuant to Penal Code §33880.

In *Anderson v. Creighton*, 483 U.S. 635, 636–37, (1987), the plaintiffs sued a federal law enforcement officer who participated in a search of the plaintiffs' residence that allegedly violated the Fourth Amendment.  Qualified immunity was denied by the lower court which held that in the absence of probable cause and exigent circumstances, an individual has a clearly established right to be free in his or her home from a warrantless search. *Id.* at 640.  The Supreme Court reversed, concluding that the lower court had formulated its statement of the constitutional right at too high a level of generality. Instead, the Court explained, the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . .  [I]n the light of pre-existing law the unlawfulness must be apparent. *Id.*  Thus, the Court held, the proper inquiry was the objective, fact-specific question "whether a reasonable officer [in the defendant's position] could have believed [the] warrantless search to be lawful, in light of clearly established law and the information  the searching officers possessed." *Id.* at 641.  *See, Collins v. City of Harker Heights*, 503 U.S. 115 (1992).

As was the case in *Anderson*, the Plaintiff here has stated the constitutional right allegedly violated at too high a level of generality.  As set forth in the moving papers, the defendants agree with the general Fourth Amendment proposition that property seized pursuant to a warrant can lose its protection under the amendment if unreasonably retained

thereafter.  Here, the opposing papers make no showing that the County's employees could not reasonably rely upon the California Penal Code by retaining possession of the firearms until the administrative fees were paid.

Plaintiff's citation to *Brewster v Beck*, 859 F.3d 1194 (9th Cir. 2017), is not instructive.  There, the Plaintiff sued the LAPD challenging California Vehicle Code § 14602.6(a)(1) which permitted law enforcement agencies to retain an impounded vehicle for a period of 30 days.  The plaintiff appeared three days after the vehicle impound with proof of ownership and payment of the towing and storage fees for the three days that the car was held.  The LAPD refused to return the vehicle until the 30-day period had lapsed, and the storage fees for that period had been paid. *Id.* at 1195.  The court found the seizure and retention to be unlawful under the circumstances.

In this case, the County Employees did not retain the firearms for some arbitrary period of time requiring the Plaintiff to pay additional fees for that extended time period. California Penal Code does not require that seized firearms be retained for an arbitrary period of time driving up the fees the owner must pay in order to recover their property. Penal Code § 33875, in fact, requires that the owner seeking to recover seized firearms must recover them within 180 days after notification that they are available for return, or they will be destroyed.  So, there are no arbitrary dates that the firearms must be held before their return as in *Brewster*.  Moreover, Penal Code § 33880 does not assess a daily fee for the return of firearms which accumulates on end for the arbitrary number of days the firearms must be held as in *Brewster*.  The fee under Penal Code § 33880 is not assessed daily, and the County's employees were not required to retain, and did not retain, the firearms for an arbitrary number of days under the statute.

Also, the fee under Penal Code § 33880 is not arbitrary as the fee in *Brewster*.  The *Brewster* court found no reasonable basis to continue holding Brewster's vehicle and assessing the daily impound fees where the owner has provided proof of ownership of the vehicle.  The objective of California's Law Enforcement Gun Release ("LEGR") process "is one of public safety: keeping firearms out of the hands of those who – under California law – are not eligible to possess them."  *Cupp v Harris, 2021 WL 4443099 *4, slip copy filed September 28, 2021, (E.D. Cal. 2021), citing, Wilson v Lynch,* 835 F.3d 1083, 1097 (9th Cir. 2016).  In the Plaintiffs' case, the Penal Code permits the law enforcement agency to recover the costs of seizure, impound, storage and release of firearms so that said fees are not borne by the taxpayers.

As such, *Brewster* does not demonstrate that the County's employees violated clearly established law by retaining possession of the seized firearms until the administrative fee under the Penal Code was paid.  There was no clear indication that they were violating the Fourth Amendment by doing so.

"Clearly established" for qualified immunity purposes means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  His very action need not previously have been held unlawful, but in the light of pre-existing law its unlawfulness must be apparent.  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

**IV.    THE COUNTY'S EMPLOYEES ARE ENTITLED TO QUALIFIED IMMUNITY FOR THE PLAINTIFF'S FOURTH AMENDMENT DESTRUCTION OF PROPERTY CLAIM.**

1
2
3
4

In opposition to the Motion to Dismiss, the Plaintiff takes issue with the fact that the County defendants did not argue the Constitutional violation in the alleged destruction of property under the Fourth Amendment.  They are not required to do so.

5
6
7
8
9
10
11
12

In _Pearson v. Callahan_, 555 U.S. 223, 241, (2009), the Supreme Court held that in resolving government officials' qualified immunity claims, courts need not first determine whether facts alleged or shown by plaintiff make out violation of constitutional right, receding from _Saucier v. Katz,_ 533 U.S. 194, (2001).  This court may undertake the analysis of either prong of the qualified immunity analysis.  If there is no violation of the clearly established law, despite a Constitutional violation, the defendants are entitled to qualified immunity.

13
14
15
16
17
18

Again, "clearly established" for qualified immunity purposes means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  The right alleged to have been violated cannot be stated at a high level of generality.  _Anderson_, 483 U.S. at 640.  An official must be clear that his or her acts violate the constitution.

19
20
21
22

The opposing papers still provide no support for the Plaintiff's contention that the alleged "grossly negligent" damage to personal property following a lawful seizure, violates clearly established law under the Fourth Amendment.

23
24
25
26
27

The defendants do not dispute the general holdings in _Bonds v. Cox_, 20 F.3d 697, 702 (6th Cir 1994) and _United States v. Jacobsen_, 466 U.S. 109, 124–25 (9184), that destruction of personal property during a search constitutes a seizure under the Fourth Amendment.  In _Bonds_, the question of whether the damage to Bonds' house, which included broken doors, mutilated vinyl siding, a cracked commode, holes in walls, broken

dishes, and trampled personal belongings, did not establish clearly established law on which the County defendants could rely.  In _Jacobsen_, the destruction of a quantity of cocaine during testing, an act for which the officer was entitled to qualified immunity, also failed to set forth clearly established law for the County employees in this case.

Plaintiff's opposition cites to _Lavan v. City of Los Angeles,_ 693 F.3d 1022, 1024 (9th Cir. 2012).  In that case, a class of homeless persons sued the LAPD for enforcing regulations requiring them to seize and immediately destroy unabandoned personal property on the public street.  _Id_ at 1024-25.  The court concluded that the Fourth and Fourteenth Amendments protect homeless persons from government seizure and summary destruction of their unabandoned, but momentarily unattended, personal property.  _Id._ at 1030.  The facts set forth in _Lavan_ do not assist in the determination of the clearly established law to be applied in this case.  The _Lavan_ case did not involve a seizure of property pursuant to a warrant.  The _Lavan_ case did not involve the seizure or storage of firearms and ammunition, but instead involved the personal effects that the plaintiffs required for daily living.  Finally, the _Lavan_ case involved a municipal order to destroy, not damage, the plaintiff's personal property.  In this case, there was no order requiring the summary destruction of the Plaintiff's property.

The matter of _Liston v County of Riverside_, 120 F.3d 965 (9th Cir 1997) is also not instructive here.  In _Liston_, officers damaged property including use of a battering ram, when executing a search warrant on the wrong house.  There, the Ninth Circuit expressly held that "officers executing a search warrant must damage some property in order to perform their duty."  _Id_. at 979.  Thus, the court remanded  for a determination of when the property damage occurred because, until the officers learned they were in the wrong house,

they could have reasonably believed "that the way they conducted the search was lawful." *Id. Liston* recognizes that property damage can occur during a lawful search.

In *West v City of Caldwell* , 931 F.3d 978 (9ᵗʰ Cir. 2019), Plaintiffs sued the police department alleging, among other things, violation of the Fourth Amendment for causing extensive damage to property during the search.  *Id* at 982.  The court held that no Supreme Court or circuit court case clearly established that the procedure SWAT used to gain entry into the home was unreasonable, thus, the officers were entitled to qualified immunity. *Id.* at 987-988.  In that case, the court held that it need not decide whether the destruction of the Plaintiffs' home was excessive under the Fourth Amendment, and proceeded directly to the issue of whether the officers' actions violated clearly established law. *Id*. at 986.

The court held: "[g]iven the unusual circumstances of the case, the need for specificity of precedent in the Fourth Amendment context and controlling cases establishing that officers sometimes can damage a home during a search without violating the occupant's Fourth Amendment rights, this is not an obvious case in which to deny qualified immunity." *Id* at 987.

Based on the analysis in the *West* case, the defendants are entitled to qualified immunity.  As set forth in the moving papers there is no precedent for the factual circumstances set forth in the Plaintiffs' FAC.  In fact, the FAC adeptly describes the unusual circumstances of the property seizure in this case.

Law enforcement personnel arrived at the scene on June 11, 2018, with a warrant expecting to confiscate 41 firearms from a felon prohibited from possessing firearms and other associated items.  (FAC, ¶ 45).  Instead, they arrived and discovered a large cache of

weapons prompting three additional searches on June 15, 21, and 29, 2018.  (FAC, ¶ 51).
The searches yielded more than 400 firearms, ten times the number anticipated, including
pistols, long guns, ammunition magazines and speed loaders.  (FAC, ¶¶ 49, 51).

The weapons had to be transported from their original locations to the Palmdale
Sheriff's Station for cataloging.  (FAC, ¶ 53).  From there, and pursuant to LASD policy
the "large collection" of firearms then had to be transferred from the Palmdale station to
Central Property in Whittier, CA for storage.  (FAC, ¶¶ 56, 68).  From there, the weapons
were transferred back to the Palmdale Station from Central Property in Whittier to
effectuate the transfer to the Plaintiff.  (FAC., ¶ 61).  The weapons were then transferred to
"Carol Watson's Orange Coast Auctions" at plaintiff's request for sale.  (FAC, ¶¶ 61, 62).

The Plaintiff contends that "Orange Coast Auctions" estimated the damage to the
firearms they received to be $96,000.  The FAC does not allege how "Orange Coast
Auctions" could possibly value damage to property having first seen it *after* the alleged
damage occurred.

The FAC also contends that the LASD, in determining the fee to assess under Penal
Code § 33880, then Sheriff Leroy Baca revealed that potentially 500 per year would be
eligible for the fee.  (FAC, ¶ 38).  Here, the County's employees seized from Miguel
Fernandez, alone, the number of weapons estimated to be seized in a year, and that seizure
occurred in a period of four days.

Given the law recognized that some degree of damage to property will occur when
executing a warrant; given the unprecedented number of pistols, long guns, ammunition,
and speed loaders seized from Miguel Fernandez; given the dangerous nature of the seized
property itself; given the number of transfers of the large cache of weapons from areas all

over Los Angeles County; and given no precedent establishing that the damage to property under the same or similar circumstances violates the Fourth Amendment, the County employees are entitled to qualified immunity on this claim as well.

## CONCLUSION

For the foregoing reasons, the Defendants County of Los Angeles employees JASON AMES, SUSAN O'LEARY BROWN, KYLE DINGMAN, MURRAY JACOB, RICHARD LEON, SALVADOR MORENO IV, DAVID ROACH, JOHN ROTH, NICHOLAS SAYLOR and WYATT WALDRON hereby respectfully request that this Court dismiss Plaintiff's entire FAC, and all claims alleged against them.

DATED: December 20, 2021                  Respectfully submitted,

                                         **NELSON & FULTON**


                                         By: s / Amber A. Logan
                                             AMBER A. LOGAN
                                             Attorneys for Defendants,
                                             County Employees Jason Ames, et al.