Amber A. Logan, CSB #166395
**LOGAN MATHEVOSIAN & HUR, LLP**
Equitable Plaza, Suite 2740
3435 Wilshire Boulevard
Los Angeles, California 90010-1901
(213) 365-2703
lmh@lmhfirm.com
amberlogan@lmhfirm.com

Attorney for Defendants, County of Los Angeles
Deputy John Roth and Deputy Wyatt Waldron

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA PATRICIA FERNANDEZ,<br><br>Plaintiff,<br><br>vs.<br><br>LOS ANGELES COUNTY; et al.,<br><br>Defendants. | CASE NO. 2:20-cv-9876-DMG-PDx<br><br>**DEFENDANTS COUNTY OF LOS ANGELES, DEPUTIES ROTH AND WALDRON'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Date: May 10, 2024<br>Time: 2:00 p.m.<br>Place: Courtroom 8C<br>Judge: Hon. Dolly M. Gee |

In accordance with C.D. Cal. Local Rule 56-1, Defendants COUNTY OF

LOS ANGELES, JOHN ROTH and WYATT WALDRON ("Defendants"), hereby

submit the following statement of uncontroverted facts and conclusions of law in

support of Defendants' Motion for Summary Judgment in this action.

-1-

## DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

**I.   THE COUNTY OF LOS ANGELES DID NOT VIOLATE THE PLAINTIFF'S FOURTH AMENDMENT RIGHTS AS THE FIREARM FEE ASSESSED BY THE SHERIFF'S DEPARTMENT WAS REASONABLE.**

**II.   THE PLAINTIFF WILL OFFER NO EVIDENCE TO PROVE HER CLAIM FOR TRESPASS TO CHATTELS IN CONNECTION WITH THE ASSESSMENT OF THE FIREARM FEE.**

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE | |
|---|---|
| 1.   In the year 2009, Plaintiff Ana Patricia Fernandez contends that her husband Manuel Fernandez was a convicted felon prohibited from owning firearms, ammunition, magazines and speed loaders. *Declaration of Amber A. Logan dated March 6, 2024, para. 3; Plaintiff's First Amended Complaint, para 41-45 (Ex. 1).* | |
| **Initial Search Warrant for Caprock Lane #1** | |
| 2.   In June 2018, Los Angeles County Sheriff's Deputy Wyatt Waldron received a tip indicating that Manuel Fernandez was in possession of a large collection of firearms. Waldron checked the Automated Firearms System (AFS) database and discovered that Manuel Fernandez had 42 firearms registered to him. | |

| | |
|---|---|
| *Declaration of Amber A. Logan dated March 6, 2024, para. 5, 7; Deposition of Wyatt Waldron, p. 44:3-19 and   photos attached thereto. (Ex. 3 and Ex.5)* | |
| 3.   Waldron conducted an investigation in order to obtain a warrant for the seizure of the firearms from Manuel Fernandez. Waldron's investigation included researching Fernandez's criminal history; researching title to Fernandez's home; checking the DMV database for Fernandez's driver's license, then comparing that license to the AFS database to confirm that he was the correct person; reading historical court documents during Fernandez's 2009 conviction wherein Judge Carlos Chung admonished Manuel Fernandez that he was not to own or possess any firearms or dangerous weapons; conducting surveillance of Fernandez's residence with Deputy Livingston and Deputy Murray Jacob on June 11, 2018; preparing the warrant affidavit and statement of probable cause; and appearing at the courthouse to obtain the warrant.<br><br>*Declaration of Amber A. Logan, para. 5, 6, 9 and 13; Deposition of Wyatt Waldron, p. 44:4-10 (Ex. 3); Search Warrant Caprock Lane dated June 13, 2018 (Ex. 4); Declaration of Wyatt Waldron dated March 1, 2024, para. 3-6* | |

| | |
|---|---|
| *(Ex. 7); Deposition of Deputy John Roth, p.31:1 – p. 38:14 (Ex. 11).* | |
| 4.   It took approximately fourteen (14) LASD manhours from sworn peace officer personnel in order to obtain the warrant for the first search and seizure of the Fernandez's residence at Caprock Lane. **Workhours = 14** *Declaration of Amber A. Logan, para. 9; Declaration of Wyatt Waldron dated March 1, 2024, para. 7 (Ex. 7)* | |
| 5.   In total, the Sheriff's Department participated in four (4) searches of Fernandez's residence or property associated with Manuel Fernandez. *Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 46:22 though p. 48:5 (Ex. 11).* | |
| **Search at Caprock Lane #1** | |
| 6.   On June 14, 2018, a team of thirteen (13) deputies served the search warrant on the Fernandez residence at 34710 Caprock Road in Agua Dulce, California. *Declaration of Amber A. Logan, para. 5, 9, 10; Deposition of Wyatt Waldron, p. 44:20-24. (Ex. 3); Declaration of Wyatt Waldron dated March 1, 2024, para. 8 (Ex. 7); Incident Report of June 14, 2018 Caprock Search (Ex. 8).* | |
| 7.   The deputies were prepared to find the 42 firearms listed in the AFS database as belonging to Manuel | |

| | |
|---|---|
| Fernandez. It quickly became clear to the deputies that Fenandez had hundreds of firearms. During the course of this first search, deputies recovered nearly 400 firearms from Fernandez's residence. *Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 37:18-24) (Ex. 3)* | |
| 8.   Deputy Roth arrived at the scene of the Caprock Lane search on June 14, 2018, in his capacity as a detective who would be responsible for preparing the criminal case. *Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 51:1-20 (Ex. 11).* | |
| 9.   Although not listed in the Incident Report, Deputy Roth spent approximately 2 hours on the scene on June 14, 2018. **Workhours = 2** *Declaration of Amber A. Logan, para. 12; Declaration of John Roth, para. 4 (Ex. 10)* | |
| 10.   Sheriff's Department's protocol for a seizure of this magnitude is to have the Central Property and Evidence unit (CPE) in Whittier, CA arrive, take possession of the evidence and process it at the warehouse. *Declaration of Amber A. Logan, para. 5, 13, 17, 23; Deposition of Wyatt Waldron, p. 91:8 through 92:4 (Ex. 3); Deposition of John Roth, p:111:25 through 113:13 (Ex. 11); Declaration of* | |

| | |
|---|---|
| *Susan Brown, para. 6 (Ex. 14); Declaration of Cris Argonza, para. 5 (Ex. 15)* | |
| 11.   When contacted by the Palmdale Station, CPE did not have the time or the manpower to retrieve the guns and process them on June 14, 2018, so the deputies and staff at Palmdale Station had to transport and process the weapons at the station. <br> *Declaration of Amber A. Logan, para. 5,, 16, 23; Deposition of Wyatt Waldron, 125:11 through p. 126:9 (Ex. 3); Declaration of Susan Brown, para. 6-7 (Ex. 14); Declaration of Cris Argonza, para. 5-7 (Ex. 15)* | |
| 12.   Because CPE would not be coming out to take possession of the firearms, Deputy Waldron came up with the best game plan that they could - start cataloging and processing the firearms at the scene. <br> *Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 49:5- p. 50:4 (Ex. 3).* | |
| 13.   Deputy Waldron handled about 20-30 firearms passing them over to other deputies to write out the serial numbers, makes, models and other information. He also went through the stacks of firearms in the garage recovering them and passing them to other deputies were delegated to identify the firearms and load them into the back seats of the patrol cars and the station-owned pick- | |

| | |
|---|---|
| up truck for transport to the Palmdale Station.<br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p.49:8 – 50:11 (Ex. 3).* | |
| 14.   Firearms were loaded into multiple black and white patrol vehicles and in the back of a pickup truck and driven in a convoy for the 15-20 minute drive from Caprock Lane directly to the Palmdale station.<br>**Workhours = 3.25**<br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 51:19 – 52:16 (Ex. 3).* | |
| 15.   The first Caprock Lane search began with the station briefing at 7:00 am and ended at 12:40 pm. The search took 5 hours and 40 minutes for each of the thirteen (13) deputies involved.<br>**Workhours = Approx 74**<br>*Declaration of Amber A. Logan, para. 9, 10; Declaration of Wyatt Waldron dated March 1, 2024, para 8 (Ex. 5); Incident Report of the June 14, 2018 search at Caprock Lane (Ex. 8)* | |
| 16.   Once at the station, approximately 20-25 deputies and detectives from the Palmdale Station took approximately four (4) to six (6)   hours to unload the firearms.<br>**Workhours = 80 – 150 hours** | |

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 63:25 – 64:10; p. 71:17-25. (Ex. 3).* | |
| 17.   The magnitude of the search and seizure at Caprock Lane on June 14, 2018 was greater than any seizure the deputies or staff had experienced. *Declaration of Amber A. Logan, para. 5, 13, 16, 23; Deposition of Wyatt Waldron, p. 47:3-5 (Ex. 3). Deposition of John Roth, p. 54:19 - P. 55:9-12 (Ex. 11); Susan Brown Declaration, para 34 (Ex. 14) ; Cris Argonza Declaration, para. 24 (Ex. 15).* | |
| 18.   To seize that magnitude of firearms from a single source was a unique set of circumstances for the deputies. Prior to the Fernandez seizure, the second largest seizure Deputy Waldron experienced was 15 firearms. *Declaration of Amber A. Logan, para. 5, 13; Deposition of John Roth, p. 54:19 through 55:15; Waldron deposition, p. 47:3-12. (Ex. 11).* | |
| **Search and Seizure at Sweetwater Address** | |
| 19.   At the time of the first Caprock Lane search, deputies were informed that Manuel Fernandez's wife Ana Fernandez had recently taken some of Manuel Fernandez's firearms to the home of his business partner, Carey Moisan, at 34965 Sweetwater in Agua Dulce, California. | |

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 4, 5, 9, 10; Deposition of Wyatt Waldron, p. 74:16-25, p. 76:16 – p. 77:11 (Ex. 3); Declaration of Wyatt Waldon, para 11 (Ex. 7); Incident Report of the June 14, 2018 search at Caprock Lane (Ex. 8); Deposition of Ana Fernandez, p. 39:19 through p. 40:22. (Ex. 2)* | |
| 20.   Because they had not recovered all of the original 42 firearms that we were originally seeking, Deputy Vilanova with swore out another warrant for a search of the Sweetwater address under the supervision of Deputy Waldron.<br>**Workhours = unknown**<br>*Declaration of Amber A. Logan, para. 5, 8; Deposition of Wyatt Waldron, p. 76:16 – p. 77:11; p. 84:16 – p. 85:3 (Ex. 3); Warrant for the Search of Sweetwater dated June 14, 2018 (Ex. 6).* | |
| 21.   A team of ten (10) deputies conducted a 2 hour search of the Sweetwater address in the evening of June 14, 2018.<br>**Workhours = 20**<br>*Declaration of Amber A. Logan, para. 9; Declaration of Wyatt Waldron, para. 11 (Ex. 7)* | |
| 22.   Deputies recovered an additional 26 firearms and other evidence from the Sweetwater location.<br>*Declaration of Amber A. Logan, para. 9, 11; Declaration of Wyatt Waldron, para. 11 (Ex. 7); LASD Incident Report dated June 14, 2018 (Ex. 9)* | |

| | |
|---|---|
| 23.   The Sweetwater firearms were loaded into the back seat of a cargo van and transported back to the Palmdale Station to be processed with the other firearms and evidence seized from Mr. Fernandez's residence at Caprock Lane. **Workhours = 2.50** *Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 84:6-10, p.86:2-14 (Ex. 3)* | |
| **Seizure From Caprock Lane #2** | |
| 24.   Based on information that Deputy Roth received indicating that Mr. Fernandez may have engaged in the illegal sale of firearms, Deputy Roth applied for the warrant for the second search of the Caprock Lane residence. *Declaration of Amber A. Logan, para. 13, 14; Deposition of John Roth p. 65:8-23, p. 67:17 ( Ex. 11); Search Warrant dated June 15, 2018 (Ex. 12).* | |
| 25.   It took Deputy Roth approximately three (3) hours to prepare and obtain the warrant from the judge at the Antelope Valley Courthouse. **Workhours = 3** *Declaration of Amber A. Logan, para. 12; Declaration of John Roth para. 5 (Ex. 10)* | |
| 26.   Nine (9) deputies were involved in the second Caprock Lane search which occurred on or about June 20, 2018. *Declaration of Amber A. Logan, para. 12, 13 15; Declaration of John Roth* | |

| | |
|---|---|
| *para. 6 (Ex. 10); Deposition of John Roth, p. 88:2-18 (Ex. 11); LASD Supplemental Report dated June 20, 2018 (Ex. 13).* | |
| 27.   In addition to electronic components, deputies seized nearly 100 additional firearms from locations that were bombarded with layers of debris and were missed during the first search. *Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 69:25 through p. 71:9 (Ex. 11)* | |
| 28.   The evidence was transported to the Palmdale Station to be booked with the other evidence seized from Caprock 1 and the Sweetwater seizures. *Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 73:24 – 74:4). (Ex. 11)* | |
| 29.   The nine-person search team took four (4) hours to conduct the second search art Caprock Lane and to seize the additional evidence. (Roth dec. para 6) **Workhours = 36** *Declaration of Amber A. Logan, para. 12; Declaration of John Roth para. 6 (Ex. 10)* | |
| **Processing the Firearms at the Palmdale Station** | |
| 30.   In total, the Sheriff's Department seized 517 items of evidence from locations associated with Manuel Fernandez, 493 were firearms, ammunition or firearm parts. | |

| | |
|---|---|
| *Declaration of Amber A. Logan, para 16, 18; Declaration of Susan Brown, para. 10 (Ex. 14); PRELIMS printout (Ex. 14 B).* | |
| 31.   At the Palmdale Station, the firearms were moved a few at a time from the patio and taken into the evidence room to start the process of booking them into evidence. *Declaration of Amber A. Logan, para 5, 16; Declaration of Susan Brown, para. 9 (Ex. 14); Deposition of Wyatt Waldron, p. 89:5-21 (Ex. 3 )* | |
| 32.   Processing each firearms entailed the following: Clearing the weapon to make sure that there are no live rounds in the chamber, and no magazines with ammunition inside the weapon. After the weapon was cleared the process of entering information into the various databases began. First, the deputies completed the "Firearm Entry Forms" with the data necessary for entry into the Sheriff's Department's computer system known as PRELIMS (Property Evidence and Lab Information System), which is also the Sheriff's Department's chain-of-custody system for evidence. *Declaration of Amber A. Logan, para 16, 18; Declaration of Susan Brown, para. 11-12 (Ex. 14); PRELIMS printout (Ex. 14 B)* | |
| 33.   The deputies were required to measure each firearm. The database requires that the size, model, make, | |

manufacturer and serial number of each firearm be entered.

*Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 13 (Ex. 14)*

34.   Approximately 100 of the Fernandez firearms came from other countries and contained writing in Arabic, German, Spanish and various other languages that the staff processing the firearms could not understand. Several of these foreign weapons did not have traditional serial numbers, which is a required entry for the Department of Justice's database. For each of these "problem" weapons, the evidence custodian spent hours researching the weapons online by their physical characteristics. For those that were still unidentifiable, the evidence custodian contacted personnel at the Sheriff's Department's Crime Lab and the Department of Justice (DOJ) to assist with the identifying the weapon and/or locating identifiable serial numbers.

*Declaration of Amber A. Logan, para. 5 16, 19; Declaration of Susan Brown, para. 14-15 (Ex. 14); Susan Brown emails of June 2018 (Ex. 14 C); Deposition of Wyatt Waldron, p. 106:21 through 107:1. (Ex. 3)*

35.   After the PRELIMS entry was complete, a barcode was assigned to each item of evidence. From there, an evidence label with the barcode was

| | |
|---|---|
| generated and affixed to the particular item of evidence separately. *Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 16 (Ex. 14)* | |
| 36.   The process of entering the information into the PRELIMS system was done by the property custodian with the assistance of the following deputy personnel: Deputy Richard Leon (June 14, 18 and August 16, 2018); Kyle Dingman (June 14, 2018); Deputy Nicholas Saylor (June 15, 2018); Deputy Murray Jacob (June 18 and July 11, 2018); Deputy David Roach (June 19, 2018); Deputy Salvador Moreno (June 22, 2018); Deputy Jason Ames (June 22, and 25, 2018); Deputy John Roth (June 28, 2018); Deputy Joshua Nemeth (June 15 and 18, 2018); Deputy Kevin Bowes (June 15 and 16, 2018). On each of these days, the deputies worked their entire 8 hour shifts processing the weapons. **Workhours = 128** *Declaration of Amber A. Logan, para 16, 18; Declaration of Susan Brown, para. 12, 17, 18 (Ex. 14); PRELIMS printout (Ex. 14 B)* | |
| 37.   The property custodian then reviewed each PRELIMS entry made by deputy personnel for and corrected the inaccurate or incorrect entries made. *Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 19 (Ex. 14)* | |

-14-

| | |
|---|---|
| 38.   After the information was entered into PRELIMS, the station personnel then had to enter the information into the AFS (Automated Firearm System) computer system which is a computer system maintained by the Department of Justice (DOJ). *Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 20 (Ex. 14)* | |
| 39.   After the information was entered into the AFS system, a printout was generated with data regarding each firearm. The printout informs the Department and all law enforcement agencies across the country whether the firearm had been reported as having been used in a crime, was stolen, or was otherwise unlawful. *Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 21 (Ex. 14)* | |
| 40.   A hard copy of each AFS return computer return was then affixed to each "Firearm Entry Form" in order to confirm that each firearm had been verified through AFS. *Declaration of Amber A. Logan, para 16, 20; Declaration of Susan Brown, para. 22-23 (Ex. 14); Firearm Entry Forms (Ex. 14D)* | |
| 41.   Six staff (6) members at the Palmdale station took approximately 10 minutes per firearm to enter the | |

| | |
|---|---|
| Fernandez firearms into the AFS database.<br>**Workhours = approx. 82 hours**<br>*Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 24 (Ex. 14)* | |
| 42.   In addition to the work done by the deputies to enter the Fernandez firearms into PRELIMS, and the work done by the station personnel to enter the Fernandez firearms into AFS, evidence custodian Susan Brown spent approximately 6 weeks clearing, entering, researching, correcting computer entries, reviewing crime returns and storing the Fernandez weapons. Beginning June 14, 2018, at the start of each 8 hour shift, Brown spent approximately 1-2 hours per day on her other duties and 6 hours per day processing the Fernandez firearms before their release to the CPE warehouse on July 25, 2018.<br>**Workhours = 180**<br>*Declaration of Amber A. Logan, para. 16; Declaration of Susan Brown, para. 26 (Ex. 14)* | |
| **Transfer of Firearms to the Central Property and Evidence Warehouse (CPE)** | |
| 43.   On July 25, 2018, four Evidence and Property Custodians from CPE made the two-hour drive, each way, between Whittier to the Palmdale Station in two box trucks to retrieve the evidence and | |

| | |
|---|---|
| bring it back to the CPE warehouse for processing and storage.<br>**Work hours = 16 hours**<br>*Declaration of Amber A. Logan, para. 17, 23; Declaration of Cris Argonza, para. 9 (Ex. 15)* | |
| 44.   CPE custodians made two additional trips to the Palmdale Station to retrieve property from this seizure on August 16 and August 18, 2018.<br>**Work Hours = Approx 32**<br>*Declaration of Amber A. Logan, para. 17, 23; Declaration of Cris Argonza, para. 13 (Ex. 15)* | |
| 45.   In order to recover and transport weapons from a station, CPE custodians are required to have to weapons specialists trained in the handling of firearms, accompany them to the station and take control of the transport. Such specialists are not required for the handling of non-lethal property.<br>*Declaration of Amber A. Logan, para 23; Declaration of Cris Argonza, para. 7 (Ex. 15)* | |
| 46.   The verification process at CPE required staff to review the size, model, make and serial number serial numbers and other identifying information entered by Palmdale into the Automated Firearm System ("AFS"), comparing that information against the actual weapon, then reviewing AFS returns to verify than none of the weapons were stolen. | |

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 17, 23; Declaration of Cris Argonza, para. 15 (Ex. 15); PRELIMS printout (Ex. 14B)* | |
| 47.   The custodians at CPE processed nearly 1,000 pieces of evidence including nearly 500 firearms, computers, and ammunition as follows: Each item was counted. The weapons were cleared of ammunition and magazines. Even if cleared before, for safety reasons, each time a weapon is handled, it must be cleared of all ammunition and magazines. Bar codes which had been placed on the evidence at Palmdale were scanned one-by-one into the computer system where labels were generated. The handguns were placed into individual envelopes with the matching label secured to the envelope and sealed. The long guns were affixed with matching labels and placed into wheeled bins. As each banker's box was full of handgun envelopes, and as each wheeled bin had a sufficient number of long guns, the guns were placed into the firearm vault – a locked vault within the secured property warehouse.<br>*Declaration of Amber A. Logan, para. 23; Declaration of Cris Argonza, para. 16-17 (Ex. 15)* | |
| 48.   The movement of each firearm was entered into the PRELIMS computer system which is an internal Sheriff's Department evidence tracking/chain of | |

| | |
|---|---|
| custody computer system. The identifying information for each firearm was also entered by CPE staff into JDIC (Justice Data Interface Controller) which is the computer system used by the Sheriff's Department to interface with other local and national law enforcement agencies.<br><br>*Declaration of Amber A. Logan, para 18 22; Declaration of Cris Argonza, para. 19, 22 (Ex. 15); PRELIMS printout (Ex. 14 B)* | |
| 49.   CPE staff processed (placed data into the PRELIMS) at a rate of about 7 items of evidence per hour (517 items total).<br>**Workhours = approx. 74**<br>*Declaration of Amber A. Logan, para 22; Declaration of Cris Argonza, para. 18 (Ex. 15)* | |
| 50.   On December 11, 2019, CPE received a request to transport the firearms back to the Palmdale Station for release. CPE Staff made the entries into PRELIMS to reflect the change in the chain of custody of each item back to the Palmdale Station. Approximately 3-5 staff members were involved in the processing, data entry, and storage of the evidence from the involved seizure. CPE did not calculate the number of hours spent by all staff who were involved in this endeavor, however there were many overtime hours incurred to assist with this volume of firearms. | |

| | |
|---|---|
| **Workhours = unknown** <br> *Declaration of Amber A. Logan, para. 17 22; Declaration of Cris Argonza, para. 19, 22 (Ex. 15); PRELIMS printout (Ex. 14 B)* | |
| 51.   In December 2019 approximately 4-6 CPE staff members were involved in transferring the evidence back to the Palmdale Station for its release. <br> **Workhours = 16 - 20** <br> *Declaration of Amber A. Logan, para. 17, 23; Declaration of Cris Argonza, para. 19, 22 (Ex. 15)* | |
| **Handguns Transferred to NIBIN For Ballistics Testing** | |
| 52.   The LASD's Firearms Identification Section is a participant in the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Integrated Ballistic Information Network (NIBIN). NIBIN maintains a database of fired cartridge case images. The purpose of the system is to discover whether the firearms tested have similar markings on the fired cartridge cases to those evidence cartridge case images in the database. This will assist in determining whether a firearm has been used in a crime or if two fired cartridge cases from different crime scenes were fired from the same firearm. The database is an instrumental tool in assisting to solve firearm related crimes throughout the country. | |

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 24, 25, 26 Declaration of Catherine L. Navetta, para. 7 (Ex. 16); LASD Firearm and NIBIN testing procedures (Ex. 16 A and 16 B)* | |
| 53.   A total of 98 of the firearms seized from Fernandez were transferred from the Central Property Unit to LASD Scientific Services for ballistics testing. **Workhours = unknown** *Declaration of Amber A. Logan, para. 17, 24, 27; Declaration of Catherine L. Navetta, para. 7 (Ex. 16); NIBIN Log for Fernandez Firearms (Ex. 16 C); PRELIMS printout (Ex. 14 B)* | |
| 54.   Eleven of the 98 firearms were not fired due to prior malfunctions with the firearm. One (1) firearm was not fired because it was deemed unsuitable for NIBIN. *Declaration of Amber A. Logan, para. 24; Declaration of Catherine L. Navetta, para. 8 (Ex. 16)* | |
| 55.   At the time of the testing of these weapons, it took Deputy John Carter between 30 minutes to one hour per firearm, totaling between 48 and 97 hours to complete the ballistics testing of the firearms from the Fernandez seizure. **Work hours = 48 - 97** *Declaration of Amber A. Logan, para. 24; Declaration of Catherine L. Navetta, para. 9 (Ex. 16)* | |

| | |
|---|---|
| **Transfer Back to Palmdale for Release to Plaintiff** | |
| 56.   In 2019, the LASD received notice that the Fernandez firearms were not to be destroyed as the staff originally believed but were to be returned to Ms. Ana Fernandez via an agent with a Federal Firearms License. Thus, the process of entering the firearms in PRELIMS and AFS had to be reversed, to reflect the change in custody status. *Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 27 (Ex. 14)* | |
| 57.   The staff at the Palmdale Sheriff's Station confirmed the credentials of Carol Watson, the agent designated by Ms. Fernandez to retrieve the firearms. The firearms were delivered back to Palmdale from the CPE warehouse on December 18, 2019, and unloaded. **Workhours = unknown** *Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 28-29 (Ex. 14)* | |
| 58.   The property custodian and station staff began the process of updating the PRELIMS entries on December 18, 2019 to release the firearms. The release process continued on December 19, 2019 when the LASD released a total of 451 firearms to Ana Fernandez's agent. *Declaration of Amber A. Logan, para 16, 21, 22; Declaration of Susan Brown, para. 29-30 (Ex. 14); Evidence Transfer* | |

| | |
|---|---|
| *Receipts dated December 19, 2019. (Ex. 14E); Brown email dated December 19, 2019 (Ex. 14 F).* | |
| 59.   Due to the sheer volume of firearms, it took two 8-hour shifts for the property custodian and staff to enter the change of custody into PRELIMS, verify each firearm, and prepare the receipts. **Work hours = 16** *Declaration of Amber A. Logan, para 16, 21, 22; Declaration of Susan Brown, para. 29-30 (Ex. 14); Evidence Transfer Receipts dated December 19, 2019. (Ex. 14E); Brown email dated December 19, 2019 (Ex. 14 F).* | |
| 60.   After the firearms were released on December 19, 2019, two staff members at the Palmdale station spent another two weeks updating the AFS system to inform the DOJ and all law enforcement agencies that the Fernandez firearms had been released from Sheriff's Department custody. **Workhours = unknown** *Declaration of Amber A. Logan, para 16, 21, 22; Declaration of Susan Brown, para. 31 (Ex. 14);* | |
| 61.   The employees involved with the seizure, storage, impounding, and release of the Fernandez firearms earned between $28.25 per hour (civilian) and $81.05 per hour (deputies) in June 2018 and December 2019 with sworn (deputy personnel earning higher hourly rates. | |

| | |
|---|---|
| *Declaration of Amber A. Logan, para 28, 28; Declaration of Anel Frederick dated February 29, 2024, p. 1-2 (Ex. 17); LASD Wage and Hour Information (Ex. 17 A)* | |
| 62.   The LASD assessed a fee of $ 54 per firearm for the return of the firearms seized from Manuel Fernandez for a total of $24,354.00. *Declaration of Amber A. Logan, para. 3; Plaintiff's First Amended Complaint, para. 11 (Ex. 1).* | |

**Conclusions of Law:**

1.   Fourth Amendment prohibits unreasonable seizures. The Plaintiff's contention that the imposition of the firearm fee under Cal. Penal Code section 33880(a) was unreasonable under the Fourth Amendment is without merit. The fee imposed upon the Plaintiff was significantly less than the amount paid by the County to seize, impound, store and return the firearms in this case.

2.   State of California permits law enforcement agencies to collect a firearm fee equivalent to the costs of the amount expenses to seize, store, impound and release firearms. Penal Code Section 33880(a).

3.   County entitled to summary judgment where there is no evidence that the fee assessed was unreasonable under the Fourth Amendment.

4.   The Plaintiff cannot prove the elements of her Trespass to Chattels claim based on the imposition of the firearm fee.

**III.   DEPUTIES ROTH AND WALDRON ARE ENTITLED TO QUALIFIED IMMUNITY ON THE PLAINTIFF'S FOURTH AMENDMENT CLAIM FOR DAMAGE TO HER PROPERTY AT THE TIME OF THE SEIZURES.**

**IV.   THE PLAINTIFF WILL OFFER NO EVIDENCE TO PROVE THAT THE DEFENDANTS ARE LIABLE TO HER FOR NEGLIGENCE.**

**V.   THE PLAINTIFF WILL OFFER NO EVIDENCE TO PROVE THAT THE DEFENDANTS ARE LIABLE TO HER FOR BREACH OF A BAILMENT.**

**VI.   THE PLAINTIFF WILL OFFER NO EVIDENCE OF A TRESPASS TO CHATTELS BASED UPON ALLEGED DAMAGE TO THE FIREARMS.**

| UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | |
|---|---|
| 63.   Ana Fernandez has no knowledge of how many handguns or long guns were in her husband's possession in June 2018. *Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 13:17-22 (Ex. 2)* | |
| 64.   Ana Fernandez has no knowledge of how much Manuel Fernandez spent on his firearms prior to June 2018 *Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 15:3-6. (Ex. 2)* | |

| | |
|---|---|
| 65.   Ana Fernandez does not have receipts for the value of Manuel Fernandez's firearms at the time of the seizure in June 2018.<br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. p. 15:15-22 (Ex. 2)* | |
| 66.   Ana Fernandez has no evidence that the firearms were insured, and she did not file any insurance claim for loss to the firearms.<br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 19:14-25 (Ex. 2)* | |
| 67.   Ana Fernandez has no evidence of any appraisal of the firearms prior to June 2018.<br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 20:1-3 (Ex. 2)* | |
| 68.   Ana Fernandez has no documentation of the estimated value of the firearms prior to June 2018.<br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 20:1-11 (Ex. 2)* | |
| 70.   Manuel Fernandez would shoot the firearms in his collection.<br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 23:8-14 (Ex. 2)* | |
| 71.   Many of the firearms were kept in the garage without air conditioning in Agua Dulce, California. | |

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 4;* *Deposition of Plaintiff Ana Fernandez,* *p. 17:13-16, p. 23:1-2 (Ex. 2)* | |
| 72.   Ana Fernandez is unaware of the condition of the firearms prior to the June 2018. And is unaware of whether her husband's collection of firearms was new or used. *Declaration of Amber A. Logan, para. 4;* *Deposition of Plaintiff Ana Fernandez,* *p. 27:8-14 (Ex. 2)* | |
| 73.   Ana Fernandez has no documentation showing the condition of the firearms prior to June 2018. *Declaration of Amber A. Logan, para. 4;* *Deposition of Plaintiff Ana Fernandez,* *p. 26:25- p. 27:7 (Ex. 2)* | |
| 74.   Ana Fernandez cannot identify which, if any, of the seized firearms were allegedly damaged by the sheriff's department. *Declaration of Amber A. Logan, para. 4;* *Deposition of Plaintiff Ana Fernandez,* *p. 44:19-145; p. 46:19 – 48:10 (Ex. 2)* | |
| 75.   The weapons seized from Mr. Fernandez were not in pristine condition when we received them at the station. The overwhelming majority of the long guns and rifles had damage (scratches/nicks) to the barrels and stocks, some of the stocks were split. Many of the guns were covered with packing grease and gauze. The property custodian often had to clear off debris or other things affixed to a firearm in order | |

| | |
|---|---|
| to find the serial number or other identifying information. *Declaration of Amber A. Logan, para. 16, Declaration of Susan Brown, para. 32. (Ex 14).* | |
| 76.   The majority of the firearms were old, not well cared for, and simply strewn about. *Deposition of Amber A. Logan, para. 13; Deposition of John Roth, p. 91:16 through 92:4 (Ex. 11)* | |
| 77.   Deputy Waldron observed that most of the guns, especially the older wood grain stocks, all contained scratched or dings in them prior to transport to the Palmdale Station. *Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p.119:1-7 (Ex. 3)* | |
| **No evidence that the firearms were damaged during the Caprock #1 seizure** | |
| 78.   During the first Caprock Lane search, deputies recovered nearly 400 firearms from Fernandez's residence. There were waist-high piles of boxes, shoes, scopes, clothing, papers, collectors' items, knives and guns (concealed and unconcealed)   in every crevice, corner and compartment. The firearms were haphazardly stored, thrown about in different piles, and buried under piles and layers of debris, household items. As the deputies removed layers of debris, they uncovered | |

| | |
|---|---|
| more and more firearms. *Declaration of Amber A. Logan, para. 5, 9, 13, 30; Deposition of Wyatt Waldron, p. 38:20 through p. 39:13 (Ex. 3); Deposition of John Roth, p. 51:2-53:9 (Ex. 11); Declaration of Wyatt Waldron, para 10 (E. 7); June 14, 2018 -Pre-search video of Caprock Lane (Ex. 17)* | |
| 79.   Dozens of guns and gun parts were stored in the garage by being stacked inside of Rubbermaid trash cans. *Declaration of Amber A. Logan, para. 5, 7, 9, 30; Deposition of Wyatt Waldron, p. 69:6–24 (Ex. 3); Photos of Caprock search, pages 3-4 (Ex. 5); Declaration of Wyatt Waldron, para 10 (Ex. 7); June 14, 2018 -Pre-search video of Caprock Lane (Ex. 17)* | |
| 80.   Ninety percent of the firearms retrieved were not stored in a box, safe or any other kind of protective case. *Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 82:25 - 83:20 (Ex. 3)* | |
| 81.   Outside of the garage were numerous inoperable vehicles, and the garage was packed from floor to ceiling with so many items that one could not park or even traverse in the area. *Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p.51:1 – 52:7 (Ex. 11).* | |

| | |
|---|---|
| 82.   Deputy Waldron pulled firearms from the debris, cleared them and passed the, off to other deputies to load them for transport.<br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p:50:5-11 (Ex. 3)* | |
| 83.   Roth observed the deputies making their way systematically through the piles of clothes, shoes, papers, clothes, knives and guns. The deputies were pulling firearms from the layers of trash, rubbish and collectable items.<br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 52:8-53:9, 56:23-57:25. (Ex. 11).* | |
| 84.   During the seizure, Deputy Waldron handled the Fernandez firearms in the same way as any other property. The firearms were cleared to make sure they were loaded and walked to the person to load them. For handguns, a zip tie was placed through the magazine well and the slide and then the handgun was placed in an envelope. The firearm was stored in a trunk for transport back to the station.<br>*Declaration of Amber A. Logan, para. 5, 9, 13, 30; Deposition of Wyatt Waldron, p. 60:16 through 61:24; 117:23 – p. 118:11. (Ex. 3)* | |
| 85.   Because of the volume of long guns, they had to be transported in a truck and in a convoy of patrol cars. It took two hours to load the firearms into | |

| | |
|---|---|
| the truck and vehicles. The firearms were transported to the station in a convoy with patrol cars behind the tuck to ensure nothing would happen to them. *Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 51:19 through p. 52:25; p. 72:1-2. (Ex. 3)* | |
| **No evidence that the firearms were damaged during the Sweetwater seizure** | |
| 86.   The Sweetwater location was also kept in "hoarder-like conditions" with weapons haphazardly stored and maintained. *Declaration of Amber A. Logan, para. 5, 9 31; Deposition of Wyatt Waldron, p. 79:7-16, p. 82:12-21 (Ex. 3); Declaration of Wyatt Waldron, para 12. (Ex. 7) Pre-search video footage of the Sweetwater search on June 14, 2018. (Ex. 18)* | |
| **No evidence that items were damaged during the Caprock #2 seizure** | |
| 87.   During the second Caprock Lane search, deputies seized nearly 100 additional firearms from locations which were so bombarded with layers of debris that they were missed during the first search. *Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 69:25 through 71:9 (Ex. 11).* | |
| 88.   Every item that Deputy Roth handled was handled with care and due regard for the property seized. | |

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 13; Deposition of John Roth,* p.*76:5-24, p. 69:25 through 71:9 (Ex. 11).* | |
| 89.   In order to transport the firearms Deputy Roth placed the handguns into manilla envelopes, then into a receptacle to prevent them from sliding or moving around. Long guns were laid down with towels, blankets or cardboard placed between them to prevent damage. *Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 79: 12 through 80: 13, p. 80:25 through 81:16) (Ex. 11).* | |
| **No evidence that firearms were damaged when received at the Palmdale Station** | |
| 90.   At Palmdale station: The firearms were carefully removed from the patrol cars and the pick-up truck, then carefully laid out on the station outside covered patio which was the only location large enough to encompass all of the evidence. Each weapon was placed on the ground and facing in a direction were one could observe that there was no live ammunition round in the chamber. The firearms were arranged by category and photographed. The firearms were all uniform, all even and were set down with care. *Declaration of Amber A. Logan, para 5, 13, 16, 17; Declaration of Susan Brown, para 8 (Ex. 14). Photo of firearms at Palmdale Station (Ex. 14 A)); Deposition* | |

| | |
|---|---|
| *of Wyatt Waldron p.73:25 – p. 74:14. (Ex. 3); Deposition of Rohn Roth p. 104:1-8 (Ex. 11)* | |
| 91.   The firearms were then moved a few at a time from the patio and taken into the evidence room to start the process of booking them into evidence. The evidence room at the station is a pretty small room, so the deputies stored the firearms as best they could with the secured space that they had. *Declaration of Amber A. Logan,   para 5, 16, 17; Declaration of Susan Brown, para 8 (Ex. 14). Photo of firearms at Palmdale Station (Ex. 14 A); Deposition of Wyatt Waldron, p. 89:5-21; p. 90:18-p. 92:4 (Ex. 3)* | |
| 92.   For an unprecedented seizure of this magnitude adjustments were made to LASD's standard procedure based on the totality of the circumstances. *Declaration of Amber A. Logan, para 13; Declaration of John Roth, p.116: 1-22 (Ex. 11)* | |

**Conclusions of Law:**

    1.   Deputies are entitled to qualified immunity as the Plaintiff has no

evidence to prove that either caused unreasonable damage to the firearms in light of

the totality of the circumstances facing the deputies during the initial seizure.

    2.   The County of Los Angeles cannot be held liable to the Plaintiff for

negligence absent a statute setting forth a mandatory duty of care owed to the Plaintiff.

3.   Nether the County nor Deputies Roth or Waldron can be held liable to the Plaintiff for negligence as the Plaintiff will offer no evidence to prove that the defendants breached a duty of care owed to her, nor that they were the proximate cause of any damages she alleges.

4.   Neither the County, Deputy Roth nor Deputy Waldron can be held liable to the Plaintiff for breach of a bailment as the Plaintiff will offer no admissible evidence to prove that claim.

5.   Neither the County, Deputy Roth nor Deputy Waldron can be held liable to the Plaintiff for trespass to chattels for alleged damage to the firearms as the Plaintiff will offer no admissible evidence to prove that claim.

**VII.   THE PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF.**

**Conclusion of Law:**

Because her declaratory relief claims are derivative of her other claims, this claim fails as a matter of law.

**VIII.  THE PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES AGAINST THE COUNTY OF LOS ANGELES MUST BE STRICKEN.**

**Conclusions of Law:**

1.   The Plaintiff cannot recover punitive damages against a public entity under Section 1983.

2.   The Plaintiff cannot recover punitive damages against a public entity under California law.


DATED: March 22, 2024                Respectfully submitted,

LOGAN MATHEVOSIAN & HUR LLP


By: s / Amber A. Logan
AMBER A. LOGAN
Attorneys for Defendants,
County of Los Angeles, et al.

-35-