C.D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
Konstadinos T. Moros – SBN 306610
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiff Ana Patricia Fernandez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ANA PATRICIA FERNANDEZ, an individual,

    Plaintiff,

v.

LOS ANGELES COUNTY, et al.,

    Defendants.

Case No.: 2:20-cv-09876 DMG (PDx)

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Hearing Date:    May 10, 2024
Hearing Time:    2:00 p.m.
Courtroom:       8C
Judge:           Hon. Dolly M. Gee

Pursuant to C.D. Cal. Local Rule 56-2, Plaintiff Ana Patricia Fernandez hereby submits this Statement of Genuine Disputes of Material Facts in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Disputed Facts and Supporting Evidence |
|---|---|
| 1. In the year 2009, Plaintiff Ana Patricia Fernandez contends that her husband Manuel Fernandez was a convicted felon prohibited from owning firearms, ammunition, magazines and speed loaders. *Declaration of Amber A. Logan dated March 6, 2024, para. 3; Plaintiff's First Amended Complaint, para 41-45 (Ex. 1).* | 1. Undisputed. |
| **Initial Search Warrant for Caprock Lane #1** | |
| 2. In June 2018, Los Angeles County Sheriff's Deputy Wyatt Waldron received a tip indicating that Manuel Fernandez was in possession of a large collection of firearms. Waldron checked the Automated Firearms System (AFS) database and discovered that Manuel Fernandez had 42 firearms registered to him. *Declaration of Amber A. Logan dated March 6, 2024, para. 5, 7; Deposition of Wyatt Waldron, p. 44:3-19 and photos attached thereto. (Ex. 3 and Ex.5)* | 2. Undisputed. |
| 3. Waldron conducted an investigation in order to obtain a warrant for the seizure of the firearms from Manuel Fernandez. Waldron's investigation included researching Fernandez's criminal history; researching title to Fernandez's home; checking the DMV database for Fernandez's driver's license, then comparing that license to | 3. Disputed. Objection: Relevance, hearsay. *See* Pl.'s Sep. State. Evidentiary Obj. No. 1. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| the AFS database to confirm that he was the correct person; reading historical court documents during Fernandez's 2009 conviction wherein Judge Carlos Chung admonished Manuel Fernandez that he was not to own or possess any firearms or dangerous weapons; conducting surveillance of Fernandez's residence with Deputy Livingston and Deputy Murray Jacob on June 11, 2018; preparing the warrant affidavit and statement of probable cause; and appearing at the courthouse to obtain the warrant.<br><br>*Declaration of Amber A. Logan, para. 5, 6, 9 and 13; Deposition of Wyatt Waldron, p. 44:4-10 (Ex. 3); Search Warrant Caprock Lane dated June 13, 2018 (Ex. 4); Declaration of Wyatt Waldron dated March 1, 2024, para. 3-6 (Ex. 7); Deposition of Deputy John Roth, p.31:1 – p. 38:14 (Ex. 11).* | |
| 4. It took approximately fourteen (14) LASD manhours from sworn peace officer personnel in order to obtain the warrant for the first search and seizure of the Fernandez's residence at Caprock Lane.<br><br>**Workhours = 14**<br><br>*Declaration of Amber A. Logan, para. 9; Declaration of Wyatt Waldron dated March 1, 2024, para. 7 (Ex. 7)* | 4. Disputed.<br><br><u>Objection</u>: Relevance, hearsay. *See* Pl.'s Sep. State. Evidentiary Obj. No. 2. |
| 5. In total, the Sheriff's Department participated in four (4) searches of Fernandez's residence or property associated with Manuel Fernandez.<br><br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 46:22 though p. 48:5 (Ex. 11).* | 5. Disputed.<br><br>LASD personnel initiated and participated in two (2) searches of the Fernandez residence at Caprock. Those searches took place on June 14, 2018, and June 20, 2018.<br><br>LASD personnel also participated in a search of the residence of Carey Moisan, 34965 Sweetwater Drive, Agua Dulce, California, on June 14, 2018. The Sweetwater property |

3

| | belonged to Moisan and was not "associated" with Manuel Fernandez. |
|---|---|
| | On June 21, 2018, the California Department of Justice, Bureau of Firearms, also searched the Caprock residence. Though several LASD personnel assisted the DOJ during that search, LASD did not seize firearms or other property during that search. |
| | Evidence: Logan Depo., Ex. 4 [6/13/18 Warrant to Search Residence at Caprock Road], Ex. 6 [6/14/18 Warrant to Search Residence at Sweetwater Drive], Ex. 7 [Waldron Decl.], Ex. 8 [Incident Report Re: 6/14/18 Search at Caprock Road], Ex. 9 [Incident Report Re: 6/14/18 Search at Sweetwater Drive], Ex. 10 [Roth Dec.], Ex. 11 [Roth Dep.] at 46:22-48:8, Ex. 12 [6/15/18 Warrant to Search Residence at Caprock Road], Ex. 13 [Incident Report Re: 6/20/18 Search at Caprock Road]; Barvir Decl., Ex. F [Investigation Report Re: 6/21/18 DOJ Search of Caprock Residence]. |
| **Search at Caprock Lane #1** | |
| 6. On June 14, 2018, a team of thirteen (13) deputies served the search warrant on the Fernandez residence at 34710 Caprock Road in Agua Dulce, California.<br><br>*Declaration of Amber A. Logan, para. 5, 9, 10; Deposition of Wyatt Waldron, p. 44:20-24. (Ex. 3); Declaration of Wyatt Waldron dated March 1, 2024, para. 8 (Ex. 7); Incident Report of June 14, 2018 Caprock Search (Ex. 8).* | 6. Disputed in part.<br><br>It is undisputed that LASD officers served a search warrant on the Fernandez residence at 34710 Caprock Road, Agua Dulce, California on June 14, 2017.<br><br>But, according to the police report, a team of twelve (12) deputies and sergeants served the warrant: "The following personnel were present during the execution of the search warrant: Deputy Wyatt Waldron #521031, Deputy Jonathan Livingston #527888, Deputy Richard Leon #424956, Deputy David Roach #513432, Deputy Murray Jacob #513465, Deputy Christopher May #532344, Deputy Christopher Morris #527190, Deputy Joshua Nemeth #531796, Deputy Cesar Villanova #546551, Sergeant Allen Dollens #408547, Sergeant Nathan Grimes #468754, Sergeant Theodore Knott #454251." |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| | Evidence: Logan Decl., Ex. 8 [Incident Report Re: 6/14/18 Search at Caprock Road] at 0107.<br><br>About two hours before the end of the first search of the Caprock residence, Deputy Roth arrived on the scene in his capacity as the detective who would be assigned the case to gather information, confirm reports that hundreds of guns had been found, and assist officers on the scene.<br><br>Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 51:1-20. |
| 7. The deputies were prepared to find the 42 firearms listed in the AFS database as belonging to Manuel Fernandez. It quickly became clear to the deputies that Fenandez had hundreds of firearms. During the course of this first search, deputies recovered nearly 400 firearms from Fernandez's residence.<br><br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 37:18-24) (Ex. 3)* | 7. Plaintiff cannot confirm because the evidence cited does not support Defendants' contention, and on that basis, disputes.<br><br>Deputy Wyatt Waldron testifies only that LASD deputies and detectives found "somewhere close to 500 firearms, ammunition, magazines, gun parts, things like that" in "different locations" of the Caprock residence. He does not testify about what deputies were prepared to find.<br><br>Evidence: Logan Decl., Ex. 3 [Roth Dep.] at 37:18-24. |
| 8. Deputy Roth arrived at the scene of the Caprock Lane search on June 14, 2018, in his capacity as a detective who would be responsible for preparing the criminal case.<br><br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 51:1-20 (Ex. 11).* | 8. Plaintiff cannot confirm because the evidence cited does not support Defendants' contention, and on that basis, disputes.<br><br>Deputy John Roth testified only that he "was sent down [to the first Caprock search] to gather information on the scene, see if there was validity with what we were hearing at the station, and then provide assistance to those on the scene from an investigator perspective on routes to go, what to do and so forth."<br><br>Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 51:1-20. |
| 9. Although not listed in the Incident Report, Deputy Roth spent | 9. Undisputed. |

| | |
|---|---|
| approximately 2 hours on the scene on June 14, 2018.<br><br>**Workhours = 2**<br><br>*Declaration of Amber A. Logan, para. 12; Declaration of John Roth, para. 4 (Ex. 10)* | |
| 10. Sheriff's Department's protocol for a seizure of this magnitude is to have the Central Property and Evidence unit (CPE) in Whittier, CA, arrive, take possession of the evidence and process it at the warehouse.<br><br>*Declaration of Amber A. Logan, para. 5, 13, 17, 23; Deposition of Wyatt Waldron, p. 91:8 through 92:4 (Ex. 3); Deposition of John Roth, p:111:25 through 113:13 (Ex. 11); Declaration of Susan Brown, para. 6 (Ex. 14); Declaration of Cris Argonza, para. 5 (Ex. 15)* | 10. Undisputed. |
| 11. When contacted by the Palmdale Station, CPE did not have the time or the manpower to retrieve the guns and process them on June 14, 2018, so the deputies and staff at Palmdale Station had to transport and process the weapons at the station.<br><br>*Declaration of Amber A. Logan, para. 5, 16, 23; Deposition of Wyatt Waldron, 125:11 through p. 126:9 (Ex. 3); Declaration of Susan Brown, para. 6-7 (Ex. 14); Declaration of Cris Argonza, para. 5-7 (Ex. 15)* | 11. Undisputed. |
| 12. Because CPE would not be coming out to take possession of the firearms, Deputy Waldron came up with the best game plan that they could - start cataloging and processing the firearms at the scene. | 12. Disputed in part.<br><br>It is undisputed that CPE did not arrive at the scene of the first search of the Caprock residence to take immediate possession of the seized firearms. It is also undisputed that LASD deputies began to catalog and process firearms at the scene of the first search of the |

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 49:5- p. 50:4 (Ex. 3).* | Caprock residence.<br><br>It is a disputed matter of opinion that the "game plan" Deputy Wyatt Waldron devised was the "best" he could think of or was reasonably compliant with duties concerning the seizure and processing of firearms or other valuable property.<br><br><u>Evidence</u>: *Compare* Logan Decl., Ex. 3 [Waldron Dep.] at 49:5-50:4, *with* Logan Decl., Ex. 11 [Roth Dep.] at 79:24-80:13 *and* Barvir Decl., Ex. L [Manual of Policy & Procedures of LASD] at 513-14, 531, 534-36. |
| 13. Deputy Waldron handled about 20-30 firearms passing them over to other deputies to write out the serial numbers, makes, models and other information. He also went through the stacks of firearms in the garage recovering them and passing them to other deputies were delegated to identify the firearms and load them into the back seats of the patrol cars and the station-owned pick-up truck for transport to the Palmdale Station.<br><br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p.49:8 –50:11 (Ex. 3).* | 13. Undisputed. |
| 14. Firearms were loaded into multiple black and white patrol vehicles and in the back of a pickup truck and driven in a convoy for the 15-20 minute drive from Caprock Lane directly to the Palmdale station.<br><br>**Workhours = 3.25**<br><br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 51:19 –52:16 (Ex. 3).* | 14. Undisputed. |
| 15. The first Caprock Lane search began with the station briefing at 7:00 am and ended at 12:40 pm. The search | 15. Disputed.<br><br>A team of twelve (12) officers participated in |

7

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| took 5 hours and 40 minutes for each of the thirteen (13) deputies involved.<br><br>**Workhours = Approx 74**<br><br>*Declaration of Amber A. Logan, para. 9, 10; Declaration of Wyatt Waldron dated March 1, 2024, para 8 (Ex. 5); Incident Report of the June 14, 2018 search at Caprock Lane (Ex. 8)* | the first search of the Caprock residence.<br><br>The evidence does not establish that each of the 12 officers involved was present for the entire 5 hours and 40 minutes of the search. On the contrary, Ana Patricia Fernandez testified that she observed officers coming and going during the course of the search.<br><br><u>Evidence</u>: Logan Decl., Ex. 2 [Fernandez Dep.] at 28:17-29:5, Ex. 7 [Waldron Decl.] at ¶ 8, Ex. 8 [Incident Report Re: 6/14/18 Search at Caprock Road] at 0107.<br><br><u>Objection</u>: Relevance, hearsay. *See* Pl.'s Sep. State. Evidentiary Obj. No. 3. |
| 16. Once at the station, approximately 20-25 deputies and detectives from the Palmdale Station took approximately four (4) to six (6) hours to unload the firearms.<br><br>**Workhours = 80 - 150 hours**<br><br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 63:25 –64:10; p. 71:17-25. (Ex. 3).* | 16. Disputed.<br><br>A jury could reasonably find that Deputy Wyatt Waldron's testimony that it took 20-25 deputies and detectives 4-6 hours just to unload the firearms is unreliable. For instance, if 20 people helped to unload about 400 firearms, each person handled an average of only 20 guns. If 25 people held to unload about 400 firearms, each person only handled<br><br>A trier of fact, having reviewed live testimony, could reasonably disbelieve that it would take each officer 4-6 hours to unload just 20 guns each.<br><br><u>Evidence</u>: Logan Decl., Ex. 3 [Waldron Dep.] at 63:25-64:10, 71:17-25.<br><br><u>Objection</u>: Lacks personal knowledge; unduly prejudicial. *See* Pls.' Sep. State. Evidentiary Obj. No. 4. |
| 17. The magnitude of the search and seizure at Caprock Lane on June 14, 2018 was greater than any seizure the deputies or staff had experienced.<br><br>*Declaration of Amber A. Logan, para. 5, 13, 16, 23; Deposition of Wyatt Waldron, p. 47:3-5 (Ex. 3). Deposition of John Roth, p. 54:19 - p. 55:9-12 (Ex.* | 17. Plaintiff cannot confirm because the evidence cited does not support Defendants' contention, and on that basis, disputes.<br><br>Deputy Wyatt Waldron testified that the second largest seizure of firearms he had participated in was 15. He did not testify that the magnitude of the first Caprock search was |

| | |
|---|---|
| *11); Susan Brown Declaration, para 34 (Ex. 14); Cris Argonza Declaration, para. 24 (Ex. 15).* | greater than any seizure the *other* deputies or staff had experienced. |
| | Deputy John Roth testified only that he had never participated in a seizure as large as the first seizure at the Caprock residence, and that he doubted anyone in the county or anyone present at the search had either. |
| | Neither Property Custodian Susan O'Leary Brown nor LASD Evidence & Property Custodian Cris Argonza were present at the execution of search of the Caprock Road residence on June 14, 2018, so they have no personal knowledge of its "magnitude" or the experience of other deputies and staff. |
| | <u>Evidence</u>: Logan Decl., Ex. 3 [Waldron Dep.] at 47:3-12, Ex. 8 [Incident Report Re: 6/14/18 Search at Caprock Road] at 107, Ex. 11 [Roth Dep.] at 54:19-55:15, Ex. 14 [Brown Decl.], Ex. 15 [Argonza Decl.]. |
| | <u>Objection</u>: Lacks personal knowledge; hearsay. *See* Pls.' Sep. State. Evidentiary Obj. Nos. 5-6. |
| 18. To seize that magnitude of firearms from a single source was a unique set of circumstances for the deputies. Prior to the Fernandez seizure, the second largest seizure Deputy Waldron experienced was 15 firearms.<br><br>*Declaration of Amber A. Logan, para. 5, 13; Deposition of John Roth, p. 54:19 through 55:15; Waldron deposition, p. 47:3-12. (Ex. 11).* | 18. Disputed in part.<br><br>It is undisputed that Deputy Wyatt Waldron testified that the second largest seizure of firearms he had participated in was about 15 firearms.<br><br>Neither Waldron nor Deputy John Roth could personally know, however, whether "seiz[ing] that magnitude of firearms from a single source was a unique set of circumstances for" the other deputies that participated in the search and seizure effort.<br><br><u>Evidence</u>: Logan Decl., Ex. 3 [Waldron Dep.] at 47:3-12' Ex. 11 [Roth Dep.] at 54:19-55:15.<br><br><u>Objection</u>: Lacks personal knowledge; hearsay. *See* Pls.' Sep. State. Evidentiary Obj. Nos. 7, 7. |

9

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Search and Seizure at Sweetwater Address | |
|---|---|
| 19. At the time of the first Caprock Lane search, deputies were informed that Manuel Fernandez's wife Ana Fernandez had recently taken some of Manuel Fernandez's firearms to the home of his business partner, Carey Moisan, at 34965 Sweetwater in Agua Dulce, California.<br><br>*Declaration of Amber A. Logan, para. 4, 5, 9, 10; Deposition of Wyatt Waldron, p. 74:16-25, p. 76:16 – p. 77:11 (Ex. 3); Declaration of Wyatt Waldon, para 11 (Ex. 7); Incident Report of the June 14, 2018 search at Caprock Lane (Ex. 8); Deposition of Ana Fernandez, p. 39:19 through p. 40:22. (Ex. 2)* | 19. Disputed as to accuracy.<br><br>During the first search of the Caprock residences, Ana Patricia Fernandez informed Deputy Cesar Vilanova that she had taken several of Manuel Fernandez's firearms to the residence of Carey Moisan (34965 Sweetwater Drive, Agua Dulce, California) in or around June 2017, about a year before the June 2018 search.<br><br>Evidence: Logan Decl., Ex. 8 [Incident Report Re: 6/14/18 Search at Caprock Road] at 108. |
| 20. Because they had not recovered all of the original 42 firearms that we were originally seeking, Deputy Vilanova with [sic] swore out another warrant for a search of the Sweetwater address under the supervision of Deputy Waldron.<br><br>**Workhours = unknown**<br><br>*Declaration of Amber A. Logan, para. 5, 8; Deposition of Wyatt Waldron, p. 76:16 – p. 77:11; p. 84:16 – p. 85:3 (Ex. 3); Warrant for the Search of Sweetwater dated June 14, 2018 (Ex. 6).* | 20. Disputed.<br><br>Objection: Relevance. *See* Pls.' Sep. State. Evidentiary Obj. No. 8. |
| 21. A team of ten (10) deputies conducted a 2-hour search of the Sweetwater address in the evening of June 14, 2018.<br><br>**Workhours = 20** | 21. Disputed.<br><br>Objection: Relevance. *See* Pls.' Sep. State. Evidentiary Obj. No. 9. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 9; Declaration of Wyatt Waldron, para. 11 (Ex. 7)* | |
| 22. Deputies recovered an additional 26 firearms and other evidence from the Sweetwater location.<br><br>*Declaration of Amber A. Logan, para. 9, 11; Declaration of Wyatt Waldron, para. 11 (Ex. 7); LASD Incident Report dated June 14, 2018 (Ex. 9)* | 22. Disputed as to accuracy.<br><br>Deputies recovered an additional 20 firearms, 3 firearm parts or accessories, 3 boxes of 5.56 ammunition, a yellow box containing 9 rounds of 9mm Luger ammunition, and miscellaneous documents belonging to Carey Moisan from the Sweetwater location.<br><br>Evidence. Logan Decl., Ex. 9 [6/14/18 LASD Incident Report Re: Search of Sweetwater Residence] at 0121-27. |
| 23. The Sweetwater firearms were loaded into the back seat of a cargo van and transported back to the Palmdale Station to be processed with the other firearms and evidence seized from Mr. Fernandez's residence at Caprock Lane.<br><br>**Workhours = 2.50**<br><br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 84:6-10, p.86:2-14 (Ex. 3)* | 23. Undisputed. |
| **Seizure From Caprock Lane #2** | |
| 24. Based on information that Deputy Roth received indicating that Mr. Fernandez may have engaged in the illegal sale of firearms, Deputy Roth applied for the warrant for the second search of the Caprock Lane residence.<br><br>*Declaration of Amber A. Logan, para. 13, 14; Deposition of John Roth p. 65:8-23, p. 67:17 ( Ex. 11); Search Warrant dated June 15, 2018 (Ex. 12).* | 24. Disputed as to accuracy.<br><br>Deputy John Roth testified that "based on the information that I had obtained from the initiating officers of the first search warrant" and "the evidence seized," he believed he "had probable cause to believe that Manuel Fernandez was engaged in the illicit transfer, sales, possible trafficking of firearms. He thus applied for a second warrant to search the Caprock residence for "electronic evidence."<br><br>Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 65:15-66:6. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| 25. It took Deputy Roth approximately three (3) hours to prepare and obtain the warrant from the judge at the Antelope Valley Courthouse.<br><br>**Workhours = 3**<br><br>*Declaration of Amber A. Logan, para. 12; Declaration of John Roth para. 5 (Ex. 10)* | 25. Disputed.<br><br>Objection: Relevance. *See* Pls.' Sep. State. Evidentiary Obj. No. 10. |
| 26. Nine (9) deputies were involved in the second Caprock Lane search which occurred on or about June 20, 2018.<br><br>*Declaration of Amber A. Logan, para. 12, 13 15; Declaration of John Roth para. 6 (Ex. 10); Deposition of John Roth, p. 88:2- 18 (Ex. 11); LASD Supplemental Report dated June 20, 2018 (Ex. 13).* | 26. Undisputed. |
| 27. In addition to electronic components, deputies seized nearly 100 additional firearms from locations that were bombarded with layers of debris and were missed during the first search.<br><br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 69:25 through p. 71:9 (Ex. 11)* | 27. Plaintiff cannot confirm because the evidence cited does not support Defendants' contention, and on that basis, disputes in part.<br><br>It is undisputed that deputies seized nearly 100 additional firearms during the second search of the Caprock residence.<br><br>But Deputy John Roth did not testify that the firearms seized during the second Caprock Road search were "missed during the first search" or that they were retrieved from locations that were "bombarded with layers of debris." Roth testified only that, during the second Caprock Road search, LASD deputies and detectives found about 20 guns in a closet in the foyer and that they "were not really even concealed. They were just there." And, when asked whether the foyer closet had been searched during the first search of the Caprock residence, Roth said: "I don't know if it was. I don't know if it was not."<br><br>Once again, Plaintiff disputes the Defendants' derisive and offensive references to the Fernandez's personal property—property found inside their home—as "layers of |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| | debris." Roth's self-serving statements about the condition of the Caprock residence are not corroborated by the video footage of the Caprock residence taken on June 14, 2018, before the search. The video confirms only that Manuel and Ana Patricia Fernandez kept many items of varying value, age, and sentimental value in their home. At best, the condition of the home is a disputed matter of opinion best decided by a jury.<br><br>Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 69:25-71:17. |
| 28. The evidence was transported to the Palmdale Station to be booked with the other evidence seized from Caprock 1 and the Sweetwater seizures.<br><br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 73:24 – 74:4). (Ex. 11)* | 28. Undisputed. |
| 29. The nine-person search team took four (4) hours to conduct the second search art [sic] Caprock Lane and to seize the additional evidence. (Roth dec. para 6)<br><br>**Workhours = 36**<br><br>*Declaration of Amber A. Logan, para. 12; Declaration of John Roth para. 6 (Ex. 10)* | 29. Disputed.<br><br>Objection: Relevance. *See* Pls.' Sep. State. Evidentiary Obj. No. 11. |
| **Processing the Firearms at the Palmdale Station** | |
| 30. In total, the Sheriff's Department seized 517 items of evidence from locations associated with Manuel Fernandez, 493 were firearms, ammunition or firearm parts.<br><br>*Declaration of Amber A. Logan, para 16, 18; Declaration of Susan Brown, para. 10 (Ex. 14); PRELIMS printout (Ex. 14 B).* | 30. Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| 31. At the Palmdale Station, the firearms were moved a few at a time from the patio and taken into the evidence room to start the process of booking them into evidence.<br><br>*Declaration of Amber A. Logan, para 5, 16; Declaration of Susan Brown, para. 9 (Ex. 14); Deposition of Wyatt Waldron, p. 89:5-21 (Ex. 3 )* | 31. Undisputed. |
| 32. Processing each firearm entailed the following: Clearing the weapon to make sure that there are no live rounds in the chamber and no magazines with ammunition inside the weapon. After the weapon was cleared the process of entering information into the various databases began. First, the deputies completed the "Firearm Entry Forms" with the data necessary for entry into the Sheriff's Department's computer system known as PRELIMS (Property Evidence and Lab Information System), which is also the Sheriff's Department's chain-of-custody system for evidence.<br><br>*Declaration of Amber A. Logan, para 16, 18; Declaration of Susan Brown, para. 11-12 (Ex. 14); PRELIMS printout (Ex. 14 B)* | 32. Disputed.<br><br>Objection: Lacks personal knowledge; hearsay. *See* Pls.' Sep. State. Evidentiary Obj. No. 12. |
| 33. The deputies were required to measure each firearm. The database requires that the size, model, make, manufacturer, and serial number of each firearm be entered.<br><br>*Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 13 (Ex. 14)* | 33. Undisputed. |
| 34. Approximately 100 of the Fernandez firearms came from other countries and contained writing in Arabic, German, Spanish and various other languages that the staff | 34. Disputed.<br><br>There is no evidence except the self-serving statements of Property Custodian Susan O'Leary Brown and Deputy Wyatt Waldron that the evidence custodian spent "hours |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| processing the firearms could not understand. Several of these foreign weapons did not have traditional serial numbers, which is a required entry for the Department of Justice's database. For each of these "problem" weapons, the evidence custodian spent hours researching the weapons online by their physical characteristics. For those that were still unidentifiable, the evidence custodian contacted personnel at the Sheriff's Department's Crime Lab and the Department of Justice (DOJ) to assist with the identifying the weapon and/locating identifiable serial numbers.<br><br>*Declaration of Amber A. Logan, para. 5 16, 19; Declaration of Susan Brown, para. 14-15 (Ex. 14); Susan Brown emails of June 2018 (Ex. 14 C); Deposition of Wyatt Waldron, p. 106:21 through 107:1. (Ex. 3)* | researching the weapons online by their physical characteristics" to aid in entering the required information for "problem weapons" from foreign countries.<br><br>On the other hand, the PRELIMS report was so full of errors regarding the make, model, length, and country of origin of the seized firearms that it was nearly useless to Carol Watson's Orange Coast Auctions for purposes of identifying and evaluating the firearms. If any research had been done at all, it was not very successful.<br><br>Evidence: Watson Decl., ¶¶ 10-11 & Ex. D [Watson Expert Report]. |
| 35. After the PRELIMS entry was complete, a barcode was assigned to each item of evidence. From there, an evidence label with the barcode was generated and affixed to the particular item of evidence separately.<br><br>*Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 16 (Ex. 14)* | 35. Undisputed. |
| 36. The process of entering the information into the PRELIMS system was done by the property custodian with the assistance of the following deputy personnel: Deputy Richard Leon (June 14, 18 and August 16, 2018); Kyle Dingman (June 14, 2018); Deputy Nicholas Saylor (June 15, 2018); Deputy Murray Jacob (June 18 and July 11, 2018); Deputy David Roach (June 19, 2018); Deputy Salvador Moreno (June 22, 2018); Deputy Jason Ames (June 22, and 25, | 36. Disputed.<br><br>At most, LASD personnel spent **less than 33 work hours** entering information into the PRELIMS system for firearms that would be released to Ana Patricia Fernandez's agent.<br><br>The LASD Chain of Custody/PRELIMS report shows that, on June 14, 2018, **Deputy Kyle Dingman** processed only 3 firearms. Based on the timestamp, the first gun Dingman booked (Item No. 195) was entered at 22:42:30. Less than three minutes later, he |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

2018); Deputy John Roth (June 28, 2018); Deputy Joshua Nemeth (June 15 and 18, 2018); Deputy Kevin Bowes (June 15 and 16, 2018). On each of these days, the deputies worked their entire 8 hour shifts processing the weapons.

**Workhours = 128**

*Declaration of Amber A. Logan, para 16, 18; Declaration of Susan Brown, para. 12, 17, 18 (Ex. 14); PRELIMS printout (Ex. 14 B)*

booked Item No. 197 (22:45:00). Last, he booked Item No. 200 at 22:53:44. Far from spending his entire 8-hour shift booking the Fernandez firearms, Dingman spent at most **18 minutes** on the project.

Evidence: Logan Decl., Ex. 14B [LASD Chain of Custody Report / PRELIMS] at 0267-69; Barvir Decl., Ex. G [LASD Evidence & Property Page – Palmdale Station] at 366-67.

The LASD Chain of Custody/PRELIMS report shows that, on June 15, 2018, **Deputy Nicholas Saylor** processed only 3 firearms. Based on the timestamp, the first gun Saylor booked (Item No. 201) was entered at 12:47:25. Minutes later, he booked Item No. 202 (13:03:17). Last, he booked Item No. 203 at 13:09:31. Far from spending his entire 8-hour shift booking the Fernandez firearms, Saylor spent **less than 30 minutes** on the project.

Evidence: Logan Decl., Ex. 14B [LASD Chain of Custody Report / PRELIMS] at 0270-71; Barvir Decl., Ex. G [LASD Evidence & Property Page – Palmdale Station] at 368.

The LASD Chain of Custody/PRELIMS report shows that, on June 22, 2018, **Deputy Jason Ames** processed only 34 firearms. Based on the timestamp, the first gun Ames booked (Item No. 460) was entered at 13:36:07. Less than 2 hours later, he booked Item No. 493, the last firearm that he would enter (15:31:32). Far from spending his entire 8-hour shift booking the Fernandez firearms, Ames spent **about 2 hours** on the project.

On June 25, 2018, Ames did not enter *any* firearms or property that was released to Fernandez's agent subject to the payment of the $54 administrative fee. Instead, he booked electronics and ammunition magazines.

Evidence: Logan Decl., Ex. 14B [LASD Chain of Custody Report / PRELIMS] at

16

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**

0423-43, 0444-50.

The LASD Chain of Custody/PRELIMS report shows that, on June 18, 2018, **Deputy Murray Jacob** processed only 45 firearms. Only 31 of those firearms would later be released to Fernandez's agent. Based on the timestamp, the first gun Jacob booked (Item No. 206) was entered at 9:04:58. **Just over 5 hours** later, he booked Item No. 332, the last firearm that he would enter (14:23:15). Like the other deputies, Jacob did not spend his entire 8-hour shift on June 18, 2018, booking the Fernandez firearms.

On July 11, 2018, Jacob did not enter *any* firearms subject to the payment of the $54 administrative fee. Instead, he booked three bags containing gun cases, empty casings, and the like. The property was destroyed and never returned to Fernandez.

Evidence: Logan Decl., Ex. 14B [LASD Chain of Custody Report / PRELIMS] at 0272-325, 451, Ex. 14E [Evidence Transfer Receipts]; Watson Decl., Ex. D [Watson Expert Report].

The LASD Chain of Custody/PRELIMS report shows that, on June 19, 2018, **Deputy David Roach** processed only 32 firearms. Only 30 of those firearms would later be released to Fernandez's agent. Based on the timestamp, the first gun Roach booked (Item No. 333) was entered at 9:02:59. About 2 ½ hours later, he booked Item No. 401, the last firearm that he would enter (11:30:23). Far from spending his entire 8-hour shift booking the Fernandez firearms, Roach spent **about 2 ½ hours** on the project.

Evidence: Logan Decl., Ex. 14B [LASD Chain of Custody Report / PRELIMS] at 0326-77, Ex. 14E [Evidence Transfer Receipts]; Watson Decl., Ex. D [Watson Expert Report].

On June 22, 2018, **Deputy Salvador Moreno**, booked only 44 guns that would be

17

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

returned to Fernandez, through her agent
(Item Nos. 410-413, 415-417, 419-430, 432-
439, 442-447, 449-59). Based on the
timestamp, the first returned gun Moreno
booked (Item No. 410) was entered at
11:09:03. Less than 2 hours later, Moreno
booked Item No. 459, the last returned
firearm that he would enter (13:02:02). Far
from spending his entire 8-hour shift booking
the Fernandez firearms, Moreno spent **less
than 2 hours** on the project.

Evidence: Logan Decl., Ex. 14B [LASD
Chain of Custody Report / PRELIMS] at 383-
422, Ex. 14E [Evidence Transfer Receipts];
Barvir Decl., Ex. G [LASD Evidence &
Property Page – Palmdale Station] at 430-43;
Watson Decl., Ex. D [Watson Expert Report].

The LASD Chain of Custody/PRELIMS
report shows that **Deputy Kevin Bowes** did
not enter *any* firearms subject to the $54
administrative fee. Instead, he booked only
non-firearm property seized from the
Sweetwater residence, including magazines,
firearm parts, ammunition, and documents.
Far from spending two 8-hour shifts
processing the Fernandez firearms, **he spent
no time** on the project.

Evidence: Logan Decl., Ex. 9 [Incident
Report Re: 6/14/18 Search of Sweetwater
Property and PRELIMS Report] at 0127.

The LASD Chain of Custody/PRELIMS
report shows that **Deputy John Roth** did not
enter *any* firearms subject to the $54
administrative fee. Instead, he booked only
electronics, including tablets, computers, an
external hard drive, and a cell phone. Far
from spending an entire 8-hour shifts
processing the Fernandez firearms, **he spent
no time** on the project.

Evidence: Logan Decl., Ex. 14B [LASD
Chain of Custody Report / PRELIMS] at
0446-51.

The LASD Chain of Custody/PRELIMS

18
PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

report shows that Deputy Joshua Nemeth was not responsible for booking *any* of the Fernandez firearms subject to the $54 administrative fee. Instead, he booked the 20 firearms seized from the Sweetwater residence that were not released to Fernandez's agent. Far from spending two 8-hour shifts processing the Fernandez firearms, he **spent no time** on the project.

Evidence: Logan Decl., Ex. 9 [Incident Report Re: 6/14/18 Search of Sweetwater Property and PRELIMS Report] at 0125-27.

The LASD Chain of Custody/ PRELIMS report shows that **Property Custodian Susan O'Leary Brown** booked a total of 100 firearms. Only 99 of those firearms would later be released to Fernandez's agent.

On June 14, 2018, she entered 98 guns in about 6 hours (for an average of 3.67 minutes per gun). She entered the first gun (Item No. 6) at 16:52:41 and the last gun (Item No. 196) at 22:43:02.

On June 18, 2018, Brown entered Item No. 302 at 13:13:43. And she entered Item No. 403 on June 19, 2018, at 12:22:41.

On August 16, 2018, Brown entered only non-firearm property (not subject to the administrative fee) into PRELIMS.

Far from spending 3 entire 8-hour shifts booking the Fernandez firearms, the records show that, at most, she spent **about 6 ½ hours** on the project.

Evidence: Logan Decl., Ex. 14B [LASD Chain of Custody Report / PRELIMS] at 0189-268, 0379, 0451-52, Ex. 14E [Evidence Transfer Receipts]; Watson Decl., Ex. D [Watson Expert Report].

The LASD Chain of Custody/PRELIMS report shows that **Deputy Richard Leon** booked 217 firearms. Only 207 of those firearms would later be released to

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | Fernandez's agent. |
|---|---|
| | On June 14, 2018, he entered 95 firearms over the course of about 6 hours (for an average of 3.8 minutes per gun). He entered the first gun (Item No. 5) at 16:51:31 and the last gun (Item No. 199) at 22:48:59. |
| | On June 18, 2018, Leon entered 84 firearms over the course of about 5 ½ hours (for an average of 3.93 minutes per gun). He entered the first gun (Item No. 204) at 8:57:31 and the last gun (Item No. 331) at 14:20:21. |
| | On June 19, 2018, Leon entered 38 firearms over the course of about 2 ½ hours (for an average of 3.95 minutes per gun). He entered the first gun (Item No. 334) at 9:06:36 and the last gun (Item No. 400) at 11:26:44. |
| | Leon did not enter any firearms into the system on August 16, 2018. |
| | Far from spending 3 entire 8-hour shifts booking the Fernandez firearms, the records show that, at most, Leon spent about **14 hours** on the project. |
| | <u>Evidence</u>: Logan Decl., Ex. 14B [LASD Chain of Custody Report / PRELIMS] at 0187-377, Ex. 14E [Evidence Transfer Receipts]; Watson Decl., Ex. D [Watson Expert Report]. |
| | <u>Objection</u>: Lacks personal knowledge; hearsay. *See* Pls.' Sep. State. Evidentiary Obj. No. 12. |
| 37. The property custodian then reviewed each PRELIMS entry made by deputy personnel for and corrected the inaccurate or incorrect entries made.<br><br>*Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 19 (Ex. 14)* | 37. Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| 38. After the information was entered into PRELIMS, the station personnel then had to enter the information into the AFS (Automated Firearm System) computer system which is a computer system maintained by the Department of Justice (DOJ). *Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 20 (Ex. 14)* | 38. Undisputed. |
| 39. After the information was entered into the AFS system, a printout was generated with data regarding each firearm. The printout informs the Department and all law enforcement agencies across the country whether the firearm had been reported as having been used in a crime, was stolen, or was otherwise unlawful. *Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 21 (Ex. 14)* | 39. Undisputed. |
| 40. A hard copy of each AFS return computer return was then affixed to each "Firearm Entry Form" in order to confirm that each firearm had been verified through AFS. *Declaration of Amber A. Logan, para 16, 20; Declaration of Susan Brown, para. 22-23 (Ex. 14); Firearm Entry Forms (Ex. 14D)* | 40. Undisputed. |
| 41. Six staff (6) members at the Palmdale station took approximately 10 minutes per firearm to enter the Fernandez firearms into the AFS database. **Workhours = approx. 82 hours** *Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 24 (Ex. 14)* | 41. Disputed. A jury could reasonably find that Property Custodian Susan O'Leary Brown's testimony that it took staff 10 minutes per firearm to enter the Fernandez firearms into AFS—more time than it took to enter the same information into PRELIMS—after the firearms had already been measured and identified is unreliable. Considering that the deputies responsible for entering the seized firearms in PRELIMS spent an average of |

| | |
|---|---|
| | less than 5-6 minutes booking each gun (*see* Response to SUMF No. 36, *supra*), a trier of fact, having reviewed live testimony, could reasonably disbelieve Brown's otherwise unsupported claim.

Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 108:15-18 ("It takes a few minutes to [enter] one gun" into PRELIMS"), Ex. 14 [Brown Decl.] at ¶ 24, Ex. 14B [LASD Chain of Custody Report / PRELIMS]; *see also* Pls.' Resp. to SUMF No. 36, *supra*.

Objection: Lacks personal knowledge; hearsay. *See* Pls.' Sep. State. Evidentiary Obj. No. 13. |
| 42. In addition to the work done by the deputies to enter the Fernandez firearms into PRELIMS, and the work done by the station personnel to enter the Fernandez firearms into AFS, evidence custodian Susan Brown spent approximately 6 weeks clearing, entering, researching, correcting computer entries, reviewing crime returns and storing the Fernandez weapons. Beginning June 14, 2018, at the start of each 8-hour shift, Brown spent approximately 1-2 hours per day on her other duties and 6 hours per day processing the Fernandez firearms before their release to the CPE warehouse on July 25, 2018.

**Workhours = 180**

*Declaration of Amber A. Logan, para. 16; Declaration of Susan Brown, para. 26 (Ex. 14)* | 42. Disputed.

A jury could reasonably find that Property Custodian Susan O'Leary Brown's testimony that it took her six straight weeks and 180 hours to clear the firearms, conduct research and correct computer entries, review crime returns, and store the Fernandez firearms—i.e., work that had already been completed by Brown and other LASD personnel and work that Sheriff Baca estimated would take no more than 5 minutes per gun. Further, Brown's last email about the identification of a gun that was particularly difficult to identify was dated 27, 2018—just days after the last seizure.

Evidence: Logan Decl., Ex. 14C [Brown Emails from June 2018] at 0470; Barvir Decl., Ex. E [LA Cnty. BOS File Re: Resolution to Adopt Administrative Fee] at 295.

Moreover, the PRELIMS report was so full of errors regarding the make, model, length, and country of origin of the seized firearms that it was nearly useless to Carol Watson's Orange Coast Auctions for purposes of identifying and evaluating the firearms. If Brown conducted any research at all, she was not very successful. A trier of fact, having reviewed live testimony, could reasonably |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| | disbelieve Brown's otherwise unsupported claims.<br><br>Evidence: Waston Decl., ¶¶ 10-11.<br><br>Objection: Failure to disclose. *See* Pls.' Sep. State. Evidentiary Obj. No. 14. |
| **Transfer of Firearms to the Central Property and Evidence Warehouse (CPE)** | |
| 43. On July 25, 2018, four Evidence and Property Custodians from CPE made the two-hour drive, each way, between Whittier to the Palmdale Station in two box trucks to retrieve the evidence and bring it back to the CPE warehouse for processing and storage.<br><br>**Work hours = 16 hours**<br><br>*Declaration of Amber A. Logan, para. 17, 23; Declaration of Cris Argonza, para. 9 (Ex. 15)* | 43. Disputed.<br><br>Objection: Lacks personal knowledge; hearsay. *See* Pls.' Sep. State. Evidentiary Obj. No. 15. |
| 44. CPE custodians made two additional trips to the Palmdale Station to retrieve property from this seizure on August 16 and August 18, 2018.<br><br>**Work Hours = Approx 32**<br><br>*Declaration of Amber A. Logan, para. 17, 23; Declaration of Cris Argonza, para. 13 (Ex. 15)* | 44. Disputed.<br><br>The LASD Chain of Custody/PRELIMS report that Property Custodian Argonza relies on (*see* Argonza Decl., ¶ 13) does not show that CPE custodians made two additional trips to the Palmdale Station to retrieve property from the Fernandez seizure on August 16, 2018, and August 18, 2018. The PRELIMS report shows *no* entries dated August 18, 2018, suggesting that no trip (at least relating to the transfer of Ana Patricia Fernandez's property) was made that day.<br><br>Also disputed to the extent that Defendants include 32 work hours to the calculation of the total hours related to the processing of the Fernandez firearms because *not one* of the items transferred to CPE on August 16, 2018, was a firearm subject to the administrative fee and released to Fernandez's agent. Instead, only boxes of ammunition, magazines, upper and lower receivers, jigs, stocks, and similar |

| | |
|---|---|
| | accessories were transferred that day. None of those items were released to Fernandez through her agent or subject to the administrative fee. |
| | Evidence: Logan Decl., Ex. 15 [Argonza Decl.] at ¶ 13, Ex. 14B [LASD Chain of Custody Report / PRELIMS] at 0187-88, 0451-52. |
| | Objection: Lacks personal knowledge; hearsay. *See* Pls.' Sep. State. Evidentiary Obj. No. 16. |
| 45. In order to recover and transport weapons from a station, CPE custodians are required to have to [sic] weapons specialists trained in the handling of firearms, accompany them to the station and take control of the transport. Such specialists are not required for the handling of non-lethal property.<br><br>*Declaration of Amber A. Logan, para 23; Declaration of Cris Argonza, para. 7 (Ex. 15)* | 45. Disputed.<br><br>Property Custodian Cris Argonza's self-serving statement that transportation of firearms requires trained weapons specialists is not corroborated by any evidence of a LASD policy requiring such—though LASD maintains at least one policy regarding items requiring special handling. Nor did the transportation of hundreds of guns from the Caprock residence to the Palmdale Station require or include weapons specialists trained in the handling of firearms.<br><br>Evidence: *See* Barvir Decl., Ex. L [Manual of Policy & Procedures of LASD]. |
| 46. The verification process at CPE required staff to review the size, model, make and serial number serial numbers and other identifying information entered by Palmdale into the Automated Firearm System ("AFS"), comparing that information against the actual weapon, then reviewing AFS returns to verify than none of the weapons were stolen.<br><br>*Declaration of Amber A. Logan, para. 17, 23; Declaration of Cris Argonza, para. 15 (Ex. 15); PRELIMS printout (Ex. 14B)* | 46. Disputed.<br><br>The "verification process" at CPE was only necessary because CPE personnel could not be bothered to comply with LASD Policy No. 5-04/070.30 when Palmdale staff requested that CPE take the bulk property seized during the first search of the Caprock residence. Had CPE taken "immediate" possession of the seized firearms at the time they were seized, as required by policy, CPE staff would not have been "required" to engage in the duplicative work of "verifying" work that had already been done multiple times by personnel at the Palmdale Station, including reviewing the size, make, model, serial numbers and other identifying information entered by Palmdale into AFS and verifying |

| | |
|---|---|
| | via AFS that the firearms were not stolen.<br><br>Evidence: Barvir Decl., Ex. L [Manual of Policy & Procedures of LASD] at 562; Logan Decl., Ex. 11 [Roth Dep.] at 114:19-115:25, Ex. 15 [Argonza Decl.] at ¶ 6 [explaining that, in line with policy, Palmdale Station requested CPE retrieve the unusually large number of seized items immediately, but CPE did not have the time to do so and instructed Palmdale personnel to being verifying the weapons].<br><br>Objection: Lacks personal knowledge; hearsay. *See* Pls.' Sep. State. Evidentiary Obj. No. 17. |
| 47. The custodians at CPE processed nearly 1,000 pieces of evidence including nearly 500 firearms, computers, and ammunition as follows: Each item was counted. The weapons were cleared of ammunition and magazines. Even if cleared before, for safety reasons, each time a weapon is handled, it must be cleared of all ammunition and magazines. Bar codes which had been placed on the evidence at Palmdale were scanned one-by-one into the computer system where labels were generated. The handguns were placed into individual envelopes with the matching label secured to the envelope and sealed. The long guns were affixed with matching labels and placed into wheeled bins. As each banker's box was full of handgun envelopes, and as each wheeled bin had a sufficient number of long guns, the guns were placed into the firearm vault – a locked vault within the secured property warehouse.<br><br>*Declaration of Amber A. Logan, para. 23; Declaration of Cris Argonza, para. 16-17 (Ex. 15)* | 47. Disputed in part.<br><br>It is undisputed that CPE custodians processed nearly 1,000 pieces of evidence, including firearms, computers, and ammunition.<br><br>Evidence: Logan Decl., Ex. 15 [Argonza Decl.] at ¶¶ 16-17.<br><br>Objection: Lacks personal knowledge; hearsay. *See* Pls.' Sep. State. Evidentiary Obj. Nos. 18-19. |

| | |
|---|---|
| 48. The movement of each firearm was entered into the PRELIMS computer system which is an internal Sheriff's Department evidence tracking/chain of custody computer system. The identifying information for each firearm was also entered by CPE staff into JDIC (Justice Data Interface Controller) which is the computer system used by the Sheriff's Department to interface with other local and national law enforcement agencies.<br><br>*Declaration of Amber A. Logan, para 18 22; Declaration of Cris Argonza, para. 19, 22 (Ex. 15); PRELIMS printout (Ex. 14 B)* | 48. Disputed.<br><br><u>Objection</u>: Lacks personal knowledge; hearsay; failure to disclose. *See* Pls.' Sep. State. Evidentiary Obj. Nos. 19-21. |
| 49. CPE staff processed (placed data into the PRELIMS) at a rate of about 7 items of evidence per hour (517 items total).<br><br>**Workhours = approx. 74**<br><br>*Declaration of Amber A. Logan, para 22; Declaration of Cris Argonza, para. 18 (Ex. 15)* | 49. Disputed.<br><br><u>Objection</u>: Lacks personal knowledge; hearsay; failure to disclose. *See* Pls.' Sep. State. Evidentiary Obj. No. 22. |
| 50. On December 11, 2019, CPE received a request to transport the firearms back to the Palmdale Station for release. CPE Staff made the entries into PRELIMS to reflect the change in the chain of custody of each item back to the Palmdale Station. Approximately 3-5 staff members were involved in the processing, data entry, and storage of the evidence from the involved seizure. CPE did not calculate the number of hours spent by all staff who were involved in this endeavor, however there were many overtime hours incurred to assist with this volume of firearms.<br><br>**Workhours = unknown** | 50. Disputed in part.<br><br>It is undisputed that CPE received a request to transport the firearms back to the Palmdale Station for release in December 2019.<br><br><u>Objection</u>:  Lacks personal knowledge; hearsay; failure to disclose. *See* Pls.' Sep. State. Evidentiary Obj. Nos. 20-21, 23. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 17 22; Declaration of Cris Argonza, para. 19, 22 (Ex. 15); PRELIMS printout (Ex. 14 B)* | |
| 51. In December 2019 approximately 4-6 CPE staff members were involved in transferring the evidence back to the Palmdale Station for its release.<br><br>**Workhours = 16 - 20**<br><br>*Declaration of Amber A. Logan, para. 17, 23; Declaration of Cris Argonza, para. 19, 22 (Ex. 15)* | 51. Disputed.<br><br>The claim that between 4-6 CPE staff members were involved in the transfer back to the Palmdale Station conflicts with Argonza's verified response, made in discovery, that only "[f]our custodians made the two-hour drive back to the Palmdale Station where the firearms were unloaded and delivered to the property and evidence room at the station."<br><br><u>Evidence</u>: Logan Decl., Ex. 15 [Argonza Decl.] at ¶¶ 19, 22; Barvir Decl., Ex. J [Def. Cnty.'s Suppl. Resp. to Pl.'s Interrogs., Set 1] at 495.<br><br><u>Objection</u>: Lacks personal knowledge; hearsay; failure to disclose. *See* Pls.' Sep. State. Evidentiary Obj. Nos. 20-21. |
| **Handguns Transferred to NIBIN For Ballistics Testing** | |
| 52. The LASD's Firearms Identification Section is a participant in the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Integrated Ballistic Information Network (NIBIN). NIBIN maintains a database of fired cartridge case images. The purpose of the system is to discover whether the firearms tested have similar markings on the fired cartridge cases to those evidence cartridge case images in the database. This will assist in determining whether a firearm has been used in a crime or if two fired cartridge cases from different crime scenes were fired from the same firearm. The database is an instrumental tool in assisting to solve | 52. Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| firearm related crimes throughout the country. *Declaration of Amber A. Logan, para. 24, 25, 26 Declaration of Catherine L. Navetta, para. 7 (Ex. 16); LASD Firearm and NIBIN testing procedures (Ex. 16 A and 16 B)* | |
| 53. A total of 98 of the firearms seized from Fernandez were transferred from the Central Property Unit to LASD Scientific Services for ballistics testing. **Workhours = unknown** *Declaration of Amber A. Logan, para. 17, 24, 27; Declaration of Catherine L. Navetta, para. 7 (Ex. 16); NIBIN Log for Fernandez Firearms (Ex. 16 C); PRELIMS printout (Ex. 14 B)* | 53. Disputed in part. It is undisputed that the LASD Chain of Custody/PRELIMS report shows that a total of 98 of the firearms seized from Manuel Fernandez were transferred from the Central Property Unit to LASD Scientific Services for ballistics testing. Disputed to the extent that Defendants claims any number of hours spent on this transfer is related to the administrative fee. <u>Evidence</u>: Logan Decl., Ex. 16 [Navetta Decl.] at ¶ 7, Ex. 16C [NIBIN Log]. <u>Objection</u>: Relevance, lacks personal knowledge, hearsay, failure to disclose. *See* Pls.' Sep. State. Evidentiary Obj. Nos. 24-25. |
| 54. Eleven of the 98 firearms were not fired due to prior malfunctions with the firearm. One (1) firearm was not fired because it was deemed unsuitable for NIBIN. *Declaration of Amber A. Logan, para. 24; Declaration of Catherine L. Navetta, para. 8 (Ex. 16)* | 54. Disputed. <u>Objection</u>: Relevance, lacks authentication, lacks personal knowledge, hearsay, failure to disclose. *See* Pls.' Sep. State. Evidentiary Obj. Nos. 25-26. |
| 55. At the time of the testing of these weapons, it took Deputy John Carter between 30 minutes to one hour per firearm, totaling between 48 and 97 hours to complete the ballistics testing of the firearms from the Fernandez seizure. **Work hours = 48 - 97** | 55. Disputed. <u>Objection</u>: Relevance, lacks authentication, lacks personal knowledge, hearsay, failure to disclose. *See* Pls.' Sep. State. Evidentiary Obj. Nos. 25, 27. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 24; Declaration of Catherine L. Navetta, para. 9 (Ex. 16)* | |
| **Transfer Back to Palmdale for Release to Plaintiff** | |
| 56. In 2019, the LASD received notice that the Fernandez firearms were not to be destroyed as the staff originally believed but were to be returned to Ms. Ana Fernandez via an agent with a Federal Firearms License. Thus, the process of entering the firearms in PRELIMS and AFS had to be reversed, to reflect the change in custody status.<br><br>*Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 27 (Ex. 14)* | 56. Undisputed. |
| 57. The staff at the Palmdale Sheriff's Station confirmed the credentials of Carol Watson, the agent designated by Ms. Fernandez to retrieve the firearms. The firearms were delivered back to Palmdale from the CPE warehouse on December 18, 2019, and unloaded.<br><br>**Workhours = unknown**<br><br>*Declaration of Amber A. Logan, para 16; Declaration of Susan Brown, para. 28-29 (Ex. 14)* | 57. Undisputed. |
| 58. The property custodian and station staff began the process of updating the PRELIMS entries on December 18, 2019 to release the firearms. The release process continued on December 19, 2019 when the LASD released a total of 451 firearms to Ana Fernandez's agent.<br><br>*Declaration of Amber A. Logan, para 16, 21, 22; Declaration of Susan Brown, para. 29-30 (Ex. 14); Evidence Transfer Receipts dated December 19,* | 58. Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| *2019. (Ex. 14E); Brown email dated December 19, 2019 (Ex. 14 F).* | |
| 59. Due to the sheer volume of firearms, it took two 8-hour shifts for the property custodian and staff to enter the change of custody into PRELIMS, verify each firearm, and prepare the receipts.<br><br>**Work hours = 16**<br><br>*Declaration of Amber A. Logan, para 16, 21, 22; Declaration of Susan Brown, para. 29-30 (Ex. 14); Evidence Transfer Receipts dated December 19, 2019. (Ex. 14E); Brown email dated December 19, 2019 (Ex. 14 F).* | 59. Undisputed. |
| 60. After the firearms were released on December 19, 2019, two staff members at the Palmdale station spent another two weeks updating the AFS system to inform the DOJ and all law enforcement agencies that the Fernandez firearms had been released from Sheriff's Department custody.<br><br>**Workhours = unknown**<br><br>*Declaration of Amber A. Logan, para 16, 21, 22; Declaration of Susan Brown, para. 31 (Ex. 14);* | 60. Disputed.<br><br><u>Objection</u>: Lacks personal knowledge, hearsay, failure to disclose. *See* Pls.' Sep. State. Evidentiary Obj. No. 28. |
| 61. The employees involved with the seizure, storage, impounding, and release of the Fernandez firearms earned between $28.25 per hour (civilian) and $81.05 per hour (deputies) in June 2018 and December 2019 with sworn deputy personnel earning higher hourly rates.<br><br>*Declaration of Amber A. Logan, para 28, 28; Declaration of Anel Frederick dated February 29, 2024, p. 1-2 (Ex. 17); LASD Wage and Hour Information (Ex. 17A)* | 61. Disputed.<br><br>Lt. Brian Gillis (#406821), who allegedly earned $81.05 per hour in June 2018, was never identified as an employee responsible for the functions related to the seizure, impounding, storage, or release of firearms of the Fernandez firearms. The highest-paid employee identified as being responsible for the administrative functions related to the seizure, impounding, storage, or release of the Fernandez firearms at issue in this lawsuit was Sgt. Richard Leon (#424956), who made just $52.31 per hour in June 2018. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| | SUMF No. 62 also excludes the significantly lower rates of six Sheriff Station Clerks, who made between $20.58 and $22.91 per hour in June 2018.<br><br>Evidence: Logan Decl., 8 [Incident Report Re: 6/14/18 Search at Caprock Road] at 0107, Ex. 9 [Incident Report Re: 6/14/18 Search of Sweetwater Property] at 0129, Ex. 13 [Roth Incident Report Re: 6/20/18 Search of Caprock Road] at 174, Ex. 14B [LASD Chain of Custody Report/ PRELIMS], Ex. 17 [Frederick Dec.] at 5613-14, Ex. 17A [LASD Wage & Hour Info]; Barvir Decl., Ex. I [Cnty. Def.'s Resp. to Pl.'s Interrogs., Set 1]. |
| 62. The LASD assessed a fee of $54 per firearm for the return of the firearms seized from Manuel Fernandez for a total of $24,354.00.<br><br>*Declaration of Amber A. Logan, para. 3; Plaintiff's First Amended Complaint, para. 11 (Ex. 1).* | 62. Undisputed. |
| 63. Ana Fernandez has no knowledge of how many handguns or long guns were in her husband's possession in June 2018.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 13:17-22 (Ex. 2)* | 63. Disputed.<br><br>The PRELIMS Evidence Report and incident reports generated by LASD personnel at or around the time of the seizures indicate that 491 firearms were seized from Manuel Fernandez at the Caprock residence on June 14, 2018, and June 20, 2018. The California Department of Justice, Bureau of Firearms, seized another 66 firearms from the Caprock residence on June 21, 2018.<br><br>Based on these records, Ana Patricia Fernandez is aware that Manuel Fernandez had at least 557 firearms in his possession in June 2018. This does not include the firearms seized from Carey Moisan at the Sweetwater residence on June 14, 2018.<br><br>Evidence: Logan Decl., Ex. 8 [Incident Report Re: 6/14/18 Search at Caprock Road] at 0108-09, Ex. 9 [Incident Report Re: 6/14/18 Search of Sweetwater Property] at 0119-31, Ex. 13 [Roth Incident Report Re: |

31

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| | 6/20/18 Search of Caprock Road] at 0174, Ex. 14B [LASD Chain of Custody Report / PRELIMS]; Barvir Decl., Ex. F [Investigation Report Re: 6/21/18 DOJ Search of Caprock Residence]. |
| 64. Ana Fernandez has no knowledge of how much Manuel Fernandez spent on his firearms prior to June 2018.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 15:3-6. (Ex. 2)* | 64. Undisputed. |
| 65. Ana Fernandez does not have receipts for the value of Manuel Fernandez's firearms at the time of the seizure in June 2018.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. p. 15:15-22 (Ex. 2)* | 65. Undisputed. |
| 66. Ana Fernandez has no evidence that the firearms were insured, and she did not file any insurance claim for loss to the firearms.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 19:14-25 (Ex. 2)* | 66. Undisputed. |
| 67. Ana Fernandez has no evidence of any appraisal of the firearms prior to June 2018.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 20:1-3 (Ex. 2)* | 67. Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| 68. Ana Fernandez has no documentation of the estimated value of the firearms prior to June 2018.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 20:1-11 (Ex. 2)* | 68. Undisputed. |
| 69. *Defendants mistakenly skipped SUMF No. 69.* | |
| 70. Manuel Fernandez would shoot the firearms in his collection.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 23:8-14 (Ex. 2)* | 70. Disputed as to accuracy.<br><br>Ana Patricia Fernandez testified that, when Manuel Fernandez was younger, he would go shooting weekly. But as he got older, he went shooting only a few times per year, at most. Because it is unclear when Manuel Fernandez acquired the majority of the guns in his collection, it is unclear that most or even a large minority of the firearms in the collection were ever fired by Manuel Fernandez.<br><br><u>Evidence</u>: Logan Decl., Ex. 2 [Fernandez Dep.] at 23:8-16; Fernandez Decl., ¶ 4. |
| 71. Many of the firearms were kept in the garage without air conditioning in Agua Dulce, California.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 17:13-16, p. 23:1-2 (Ex. 2)* | 71. Disputed in part.<br><br>Ana Patricia Fernandez testified only that Manuel Fernandez kept his gun collection "in his office, in the garage," and in their bedroom.<br><br>It is not disputed that the garage of the Agua Dulce residence was without air conditioning.<br><br><u>Evidence</u>: Logan Decl., Ex. 2 [Fernandez Dep.] at 17:13-16, 23:1-2. |
| 72. Ana Fernandez is unaware of the condition of the firearms prior to the [sic] June 2018. And is unaware of whether her husband's collection of firearms was new or used.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 27:8-14 (Ex. 2)* | 72. Disputed.<br><br>Ana Patricia Fernandez knows that her late husband, Manuel Fernandez, carefully stored the majority of his firearms in either the boxes (including Styrofoam and/or plastic) that they came in, gun cases, or gun safes, or he otherwise wrapped them in cloths, towels, or similar materials to prevent damage. She testified that her late husband cared for |

| | |
|---|---|
| | his firearms by cleaning them immediately (or as soon as possible) after taking them shooting and returning them to their storage place.<br><br>Evidence: Fernandez Decl., ¶ 5; Logan Decl., Ex. 2 [Fernandez Dep.] at 27:8-23. |
| 73. Ana [Patricia] Fernandez has no documentation showing the condition of the firearms prior to June 2018.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 26:25- p. 27:7 (Ex. 2)* | 73. Undisputed. |
| 74. Ana Fernandez cannot identify which, if any, of the seized firearms were allegedly damaged by the sheriff's department.<br><br>*Declaration of Amber A. Logan, para. 4; Deposition of Plaintiff Ana Fernandez, p. 44:19-145; p. 46:19 – 48:10 (Ex. 2)* | 74. Plaintiff cannot confirm because the evidence cited does not support Defendants' contention, and on that basis, disputes.<br><br>Ana Patricia Fernandez testified only that, just by looking at a 145-page document that she had no recollection of seeing before her deposition, she could not identify which weapons on that list were damaged by LASD personnel.<br><br>Later, when shown a series of three photographs of firearms that she had never seen before her deposition, she testified only that she did not know who had taken the photographs and did not know who made the scratches or marks on the photographed firearms.<br><br>Evidence: Logan Decl., Ex. 2 [Fernandez Dep.] at 44:1-23, 46:19-48:10. |
| 75. The weapons seized from Mr. Fernandez were not in pristine condition when we received them at the station. The overwhelming majority of the long guns and rifles had damage (scratches/nicks) to the barrels and stocks, some of the stocks were split. Many of the guns were covered with packing grease and gauze. The property custodian often had to clear | 75. Disputed.<br><br>Ana Patricia Fernandez does not claim that all of the firearms seized from Manuel Fernandez were in "pristine condition" when they were seized. And, given the age and type of many of the firearms, the expert valuation report assumes that they were not in "pristine" condition." |

34

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| off debris or other things affixed to a firearm in order to find the serial number or other identifying information.<br><br>*Declaration of Amber A. Logan, para. 16, Declaration of Susan Brown, para. 32. (Ex 14).* | Fernandez has, however, testified in deposition and can testify at trial that her late husband took great care to protect his treasured firearm collection from the very sort of damage the firearms had sustained by the time they were released from LASD custody to employees of Carol Watson's Orange Coast Auctions.<br><br>Evidence: Logan Decl., Ex. 2 [Fernandez Dep.] at 16:20-18:17, 22:16-24:10, 27:8-22; Barvir Decl., Ex. N [Collection of All Photographs Produced by Defendants]; Fernandez Decl., ¶ 5; Watson Decl., Ex. D [Watson Expert Report].<br><br>Objection: Lacks personal knowledge; unduly prejudicial. *See* Pls.' Sep. State. Evidentiary Obj. No. 29. |
| 76. The majority of the firearms were old, not well cared for, and simply strewn about.<br><br>*Deposition of Amber A. Logan, para. 13; Deposition of John Roth, p. 91:16 through 92:4) (Ex. 11)* | 76. Disputed.<br><br>Manuel Fernandez "loved" his firearms. Collecting them was "his passion." He carefully stored the majority of his firearms in either the boxes (including Styrofoam and plastic) that they came in, gun cases, or gun safes, or he otherwise wrapped them in cloths, towels, or similar materials to prevent damage. He also cared for them by cleaning them immediately (or as soon as possible) after taking them shooting and returning them to their storage place.<br><br>Evidence: Logan Decl., Ex. 2 [Fernandez Dep.] at 24:1-3, 27:8-23; Fernandez Decl., ¶¶ 3, 5.<br><br>Objection: Lacks personal knowledge. *See* Pls.' Sep. State. Evidentiary Obj. No. 30. |
| 77. Deputy Waldron observed that most of the guns, especially the older wood grain stocks, all contained scratches or dings in them prior to transport to the Palmdale Station. | 77. Disputed.<br><br>There is no admissible evidence—including photographs, video, or police reports drafted at the time of the seizure—supporting Deputy Wyatt Waldron's self-serving claim that most (or "all") of the older wood grain stocks guns contained scratches or dings in them prior to |

| | |
|---|---|
| *Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p.119:1-7 (Ex. 3)* | transport to the Palmdale Station. Further, Waldron admitted that he personally handled only about 25-35 firearms of the nearly 400 firearms seized during the first search of the Caprock residence. He admits that he then handed them off to other personnel for tagging, loading, and transporting, which violates LASD Policy 5-04/020.10 requiring "Deputy personnel conducting a preliminary investigation [to] keep all physical evidence in his/her possession until it is properly marked, labeled, packaged appropriately and ready for transportation."<br><br>Evidence: Logan Decl., Ex. 3 [Waldron Dep.] at 49:8-50:11, 119:1-7; Barvir Decl., Ex. L [Manual of Policy & Procedures of LASD] at 534-35.<br><br>Objection: Lacks personal knowledge. *See* Pls.' Sep. State. Evidentiary Obj. No. 31. |
| 78. During the first Caprock Lane search, deputies recovered nearly 400 firearms from Fernandez's residence. There were waist-high piles of boxes, shoes, scopes, clothing, papers, collectors' items, knives and guns (concealed and unconcealed) in every crevice, corner and compartment. The firearms were haphazardly stored, thrown about in different piles, and buried under piles and layers of debris, household items. As the deputies removed layers of debris, they uncovered more and more firearms.<br><br>*Declaration of Amber A. Logan, para. 5, 9, 13, 30; Deposition of Wyatt Waldron, p. 38:20 through p. 39:13 (Ex. 3); Deposition of John Roth, p. 51:2-53:9 (Ex. 11); Declaration of Wyatt Waldron, para 10 (E. 7); June 14, 2018 -Pre-search video of Caprock Lane (Ex. 17)* | 78. Disputed.<br><br>Plaintiff disputes the Defendants' derisive and offensive references to the Fernandez's personal property—property found inside their home—as "piles and layers of debris." The self-serving statements of Deputies Waldron and Roth about the condition of the Caprock residence are not corroborated by the video footage of the Caprock residence taken on June 14, 2018, before the search. The video confirms only that Manuel and Ana Patricia Fernandez kept many items of varying value, age, and sentimental value in their home. At best, the condition of the home is a disputed matter of opinion best decided by a jury.<br><br>Moreover, Ana Patricia Fernandez testified at deposition and can testify at trial that her late husband carefully stored the majority of his firearms in either the boxes (including Styrofoam and plastic) that they came in, gun cases, or gun safes, or he wrapped them in cloths, towels, or similar materials to prevent damage. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| | Evidence: Logan Decl., Ex. 2 [Fernandez Dep.] at 16:20-18:17, 22:16-24:10, 27:8-22, Ex. 5 [Photograph Taken at First Search of Caprock Residence Showing Condition of the Home] at 0086, Ex. 18 [6/14/2018 Pre-Search Video of Caprock Residence]; Fernandez Decl., ¶ 5. |
| 79. Dozens of guns and gun parts were stored in the garage by being stacked inside of Rubbermaid trash cans.<br><br>*Declaration of Amber A. Logan, para. 5, 7, 9, 30; Deposition of Wyatt Waldron, p. 69:6-24 (Ex. 3); Photos of Caprock search, pages 3-4 (Ex. 5); Declaration of Wyatt Waldron, para 10 (Ex. 7); June 14, 2018 - Pre-search video of Caprock Lane (Ex. 17)* | 79. Plaintiff cannot confirm because the evidence cited does not support Defendants' contention, and on that basis, disputes.<br><br>Deputy Wyatt Waldron did not testify to any number of guns or gun parts being "stored inside the garage by being stacked inside of Rubbermaid trash cans." He testified only that "some" of the guns were found by LASD personnel inside trash bins, and others were placed there by LASD personnel "just to get them out of the garage." Waldron also testified that he could not recall whether the trash bins were found in the house or in the garage.<br><br>Evidence: Logan Decl., Ex. 3 [Waldron Dep.] at 69:6-24, Ex. 5 [Photographs Taken at First Search of Caprock Residence], Ex. 7 [Waldron Decl.]. |
| 80. Ninety percent of the firearms retrieved were not stored in a box, safe or any other kind of protective case.<br><br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 82:25 - 83:20 (Ex. 3)* | 80. Disputed.<br><br>Manuel Fernandez carefully stored the majority of his firearms in either the boxes (including Styrofoam and plastic) that they came in, gun cases, or gun safes, or he wrapped them in cloths, towels, or similar materials to prevent damage.<br><br>Evidence: Logan Decl., Ex. 2 [Fernandez Dep.] at 16:20-18:17, 22:16-24:10, 27:8-22; Fernandez Decl., ¶ 5.<br><br>Objection: Lacks personal knowledge. *See* Pls.' Sep. State. Evidentiary Obj. No. 32. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| 81. Outside of the garage were numerous inoperable vehicles, and the garage was packed from floor to ceiling with so many items that one could not park or even traverse in the area.<br><br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p.51:1 - 52:7 (Ex. 11).* | 81. Disputed in part.<br><br>It is undisputed that there were several vehicles outside of the garage. There is no evidence, however, that those vehicles were "inoperable."<br><br>It is also undisputed that Manuel and Ana Patricia Fernandez used their garage to store personal property and did not park their cars in the garage—as many Americans do.<br><br>It is disputed, however, that one could not even traverse in the area. Pre-search videos clearly show the deputies traversing the area in and around the garage.<br><br><u>Evidence</u>: Logan Decl., Ex. 18 [6/14/2018 Pre-Search Video of Caprock Residence]. |
| 82. Deputy Waldron pulled firearms from the debris, cleared them and passed them off to other deputies to load them for transport.<br><br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p:50:5-11 (Ex. 3)* | 82. Disputed as to accuracy.<br><br>Plaintiff disputes the Defendants' derisive and offensive references to the Fernandez's personal property—property found inside their home—as "debris." Deputy Wyatt Waldron's self-serving statements about the condition of the Caprock residence are not corroborated by the video footage of the Caprock residence taken on June 14, 2018, before the search. The video confirms only that Manuel and Ana Patricia Fernandez kept many items of varying value, age, and sentimental value in their home. At best, the condition of the home is a disputed matter of opinion best decided by a jury.<br><br>Otherwise, it is undisputed that Waldron cleared about 25-35 firearms and passed them off to other deputies to load them for transport.<br><br><u>Evidence</u>: Logan Decl., Ex. 3 [Waldron Dep.] at 49:8-50:11. |
| 83. Roth observed the deputies making their way systematically through the piles of clothes, shoes, papers, clothes, knives and guns. The deputies were | 83. Disputed as to accuracy.<br><br>Plaintiff disputes the Defendants' derisive and offensive references to the Fernandez's |

| | |
|---|---|
| pulling firearms from the layers of trash, rubbish and collectable [sic] items.<br><br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 52:8-53:9, 56:23-57:25. (Ex. 11).* | personal property—property found inside their home—as "layers of trash" and "rubbish." Deputy John Roth's self-serving statements about the condition of the Caprock residence are not corroborated by the video footage of the Caprock residence taken on June 14, 2018, before the search. The video confirms only that Manuel and Ana Patricia Fernandez kept many items of varying value, age, and sentimental value in their home. At best, the condition of the home is a disputed matter of opinion best decided by a jury.<br><br>Roth admitted that he was only present "on the back end of the – the tail part of the initial [Caprock] search, and the vast majority of firearms had already been seized." Because he only arrived on the scene after the "vast majority of the firearms had already been seized," he could have only observed a small minority of the seized Fernandez firearms being removed.<br><br>Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 77:4-9. |
| 84. During the seizure, Deputy Waldron handled the Fernandez firearms in the same way as any other property. The firearms were cleared to make sure they were loaded and walked to the person to load them. For handguns, a zip tie was placed through the magazine well and the slide and then the handgun was placed in an envelope. The firearm was stored in a trunk for transport back to the station.<br><br>*Declaration of Amber A. Logan, para. 5, 9, 13, 30; Deposition of Wyatt Waldron, p. 60:16 through 61:24; 117:23 – p. 118:11. (Ex. 3)* | 84. Disputed.<br><br>Under the supervision and direction of Deputy Wyatt Waldron, LASD personnel put "a couple hundred" or "the majority of firearms" in the bed of a pickup truck for transport to the Palmdale Station. When they ran out of room in the pickup truck, they "us[ed] the back seats and trunks of different L.A. County patrol vehicles." Waldron also admitted that there were no "measures taken to prevent damage" "during the transportation of this large collection of firearms."<br><br>This is not standard procedure or policy for the handling of firearms or other property at the scene. LASD Policy No. 5-041-/010.60 – Packaging of Evidence dictates that "Unloaded firearms should be packaged in cardboard boxes designed for this purpose. If a cardboard box is not available, a manila-type envelope or other form of paper |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

packaging may be used. If the firearm was loaded when recovered and subsequently unloaded, the ammunition removed from the firearms should be placed in an appropriately sized manila-type envelope and included within the same package as the firearm. If a magazine was present in the firearm when recovered, that magazine should be included within the same package as the firearm."

Evidence: Logan Decl., Ex. 3 [Waldron Dep.] at 51:19-25, 52:17-25, 62:3-7, Ex. 5 [Photograph of Green Truck Taken at First Search of Caprock Residence] at 0087; Barvir Decl., Ex. L [Manual of Policy & Procedures of LASD] at 531, Ex. N [Add'l Photographs Taken at First Search of Caprock Residence] at 641-42.

It is also a matter of disputed opinion whether such conduct is even reasonable. As Deputy John Roth testified, "as a professional, I'm not going to take a bunch of guns and just dump them in the trunk of my car and bounce them back to my station for booking." Roth also explained that "[l]ong guns, whether it's a shotgun or a rifle, or muzzleloaders for that case, they would be placed in a manner that they would be laid down, not bouncing or riding on top of each other. There would have been towels or blankets or cardboard placed between them to prevent incurring damage."

Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 79:24-80:13.

Further, Deputy Wyatt Waldron did not testify that he, himself, handled firearms in the manner described in SUMF No. 84. He testified that he pulled firearms from the home and passed them off to other deputies to process and place in the trucks and patrol cars for transport though this appears to violate LASD Policy 5-04/020.10 requiring "Deputy personnel conducting a preliminary investigation [to] keep all physical evidence in his/her possession until it is properly marked, labeled, packaged appropriately and

| | ready for transportation." |
|---|---|
| | Evidence: Logan Decl., Ex. 3 [Waldron Dep.] at 49:8-50:11; Barvir Decl., Ex. L [Manual of Policy & Procedures of LASD] at 534-35. |
| 85. Because of the volume of long guns, they had to be transported in a truck and in a convoy of patrol cars. It took two hours to load the firearms into the truck and vehicles. The firearms were transported to the station in a convoy with patrol cars behind the truck to ensure nothing would happen to them.<br><br>*Declaration of Amber A. Logan, para. 5; Deposition of Wyatt Waldron, p. 51:19 through p. 52:25; p. 72:1-2. (Ex. 3)* | 85. Disputed in part.<br><br>It is undisputed that LASD did transport "a couple hundred" or "the majority of firearms" in the bed of a pickup truck, but there is no evidence that they "had" to do so or that they had no other available option for more securely transporting them.<br><br>Evidence: Logan Decl., Ex. 3 [Waldron Dep.] at 52:17-25, Ex. 5 [Photograph of Green Truck Taken at First Search of Caprock Residence] at 0087.<br><br>It is undisputed that the firearms were transported to the Palmdale Station in a convoy of patrol cars and a pickup truck.<br><br>Plaintiff cannot dispute or confirm the remainder of this SUMF because it is unclear whether Defendants are claiming the two hours it took to load the firearms into the truck and patrol cars was *in addition* to the duration of the first search of the Caprock residence. |
| **No evidence that the firearms were damaged during the Sweetwater seizure** | |
| 86. The Sweetwater location was also kept in "hoarder-like conditions" with weapons haphazardly stored and maintained.<br><br>*Declaration of Amber A. Logan, para. 5, 9 31; Deposition of Wyatt Waldron, p. 79:7- 16, p. 82:12-21 (Ex. 3); Declaration of Wyatt Waldron, para 12. (Ex. 7) Pre-search video footage of the Sweetwater search on June 14, 2018. (Ex. 18)* | 86. Disputed.<br><br>The Sweetwater residence was not kept in "hoarder-like conditions." Deputy Wyatt Waldron's self-serving statements otherwise are not corroborated by the video footage of the Sweetwater residence taken on June 14, 2018, before the search. The video confirms only that Carey Moisan had many items of varying value, age, and sentimental value in her home. At best, the condition of the home is a disputed matter of opinion best decided |

41

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| | by a jury. |
| | Evidence: Logan Decl., Ex. 19 [6/14/2018 Pre-Search Video of Sweetwater Residence]. |
| **No evidence that items were damaged during the Caprock #2 seizure** | |
| 87. During the second Caprock Lane search, deputies seized nearly 100 additional firearms from locations which were so bombarded with layers of debris that they were missed during the first search.<br><br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 69:25 through 71:9 (Ex. 11).* | 87. Plaintiff cannot confirm because the evidence cited does not support Defendants' contention, and on that basis, disputes.<br><br>Deputy John Roth did not testify that the approximately 100 firearms seized during the second Caprock Road search were "missed during the first search" or that they were retrieved from locations that were "bombarded with layers of debris."<br><br>Roth testified only that, during the second Caprock Road search, LASD deputies and detectives found about 20 guns in a closet in the foyer and that they "were not really even concealed. They were just there." And, when asked whether the foyer closet had been searched during the first search of the Caprock residence, Roth said: "I don't know if it was. I don't know if it was not."<br><br>Once again, Plaintiff disputes the Defendants' derisive and offensive references to the Fernandez's personal property—property found inside their home—as "debris." Roth's self-serving statements about the condition of the Caprock residence are not corroborated by the video footage of the Caprock residence taken on June 14, 2018, before the search. The video confirms only that Manuel and Ana Patricia Fernandez kept many items of varying value, age, and sentimental value in their home. At best, the condition of the home is a disputed matter of opinion best decided by a jury.<br><br>Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 69:25-71:17; Ex. 18 [6/14/2018 Pre-Search Video of Caprock Residence]. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| 88. Every item that Deputy Roth handled was handled with care and due regard for the property seized.<br><br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p.76:5-24, p. 69:25 through 71:9 (Ex. 11).* | 88. Plaintiff cannot confirm because the evidence cited does not support Defendants' contention, and on that basis, disputes.<br><br>Deputy John Roth did not testify that "[e]very item that [he] handled was handled with care and due regard for the property seized." Roth's testimony on pages 69:25-71:9 merely explains *what* LASD personnel found during the second search of the Caprock residence and where they found it, not how that property was handled.<br><br>Roth's testimony on page 76:5-24 refers only to the firearms he handled during the <u>first</u> search of the Caprock residence. And Roth has admitted that he was only present "on the back end of the – the tail part of the initial [Caprock] search, and the vast majority of firearms had already been seized."<br><br><u>Evidence</u>: Logan Decl., Ex. 11 [Roth Dep.] at 69:25-71:9, 76:5-24, 77:4-9. |
| 89. In order to transport the firearms Deputy Roth placed the handguns into manilla envelopes, then into a receptacle to prevent them from sliding or moving around. Long guns were laid down with towels, blankets or cardboard placed between them to prevent damage.<br><br>*Declaration of Amber A. Logan, para. 13; Deposition of John Roth, p. 79: 12 through 80: 13, p. 80:25 through 81:16) (Ex. 11).* | 89. Plaintiff cannot confirm because the evidence cited does not support Defendants' contention, and on that basis, disputes.<br><br>Deputy John Roth testified only that the handguns that he himself transported after the second search of the Caprock residence "would have placed them in a box. [He] would have placed them in a crate. [He] would have placed them in some manner to prevent incurring damage" and that handguns "would have been placed in a manila envelope."<br><br>Roth testified only that any long guns he himself transported after the second search of the Caprock residence would have been transported "on their side, not on top of each other, between blankets and such."<br><br><u>Evidence</u>: Logan Decl., Ex. 11 [Roth Dep.] at 79:12-81:19. |

43
PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| **No evidence that firearms were damaged when received at the Palmdale Station** | |
| 90. At Palmdale station: The firearms were carefully removed from the patrol cars and the pick-up truck, then carefully laid out on the station outside covered patio which was the only location large enough to encompass all of the evidence. Each weapon was placed on the ground and facing in a direction were [sic] one could observe that there was no live ammunition round in the chamber. The firearms were arranged by category and photographed. The firearms were all uniform, all even and were set down with care.<br><br>*Declaration of Amber A. Logan, para 5, 13, 16, 17; Declaration of Susan Brown, para 8 (Ex. 14). Photo of firearms at Palmdale Station (Ex. 14 A)); Deposition of Wyatt Waldron p.73:25 – p. 74:14. (Ex. 3); Deposition of John Roth p. 104:1-8 (Ex. 11)* | 90. Disputed in part.<br><br>It is undisputed that, before booking the firearms into evidence at the Palmdale Station, LASD deputies and detectives (including Deputies Roth and Waldron) sprawled the seized Fernandez firearms out on hard, bare cement without anything to protect the firearms from scratches, dents, or other damage.<br><br>It is also undisputed that the firearms were arranged on the ground in this manner to be photographed to show others the size of the seizure.<br><br>It is wholly a matter of opinion over which reasonable minds could differ, however, whether such treatment establishes that the firearms were carefully handled or laid out at the Palmdale Station.<br><br>Evidence: Logan Decl., Ex. 14A [Photographs of Firearms on Patio of Palmdale Station] at 0185, Ex. 3 [Waldron Dep.] at 70:12-71:16, Ex. 11 [Roth Dep.] at 101:9-104:18: Barvir Decl., Ex. N-4 [Add'l Photographs of Firearms at Palmdale Station] at 620-23, 644-49. |
| 91. The firearms were then moved a few at a time from the patio and taken into the evidence room to start the process of booking them into evidence. The evidence room at the station is a pretty small room, so the deputies stored the firearms as best they could with the secured space that they had.<br><br>*Declaration of Amber A. Logan, para 5, 16, 17; Declaration of Susan Brown, para 8 (Ex. 14). Photo of firearms at Palmdale Station (Ex. 14 A);* | 91. Disputed in part.<br><br>It is undisputed that the firearms were moved from the patio of the Palmdale Station and taken into the evidence room of the Palmdale Station to be booked into evidence.<br><br>It is a matter of opinion over which reasonable minds could differ, however, whether the deputies stored the firearms as best they could with the secured space they had.<br><br>Evidence: Barvir Decl., Ex. N-4 [Photographs of Firearms in Bins at Palmdale Station] at |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| *Deposition of Wyatt Waldron, p. 89:5-21; p. 90:18- p. 92:4 (Ex. 3)* | 617-23, 634-36, 638-39, 644-49. |
| 92. For an unprecedented seizure of this magnitude adjustments were made to LASD's standard procedure based on the totality of the circumstances.<br><br>*Declaration of Amber A. Logan, para 13; Declaration of John Roth, p.116: 1-22 (Ex. 11)* | 92. Undisputed. |

## PLAINTIFF'S ADDITIONAL UNCONTROVERTED FACTS

Plaintiff contends that the following additional material facts are not in dispute.

| Opposing Party's Uncontroverted Facts and Supporting Evidence | Moving Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 93. In 2004, California adopted Assembly Bill 2431 (AB 2431) AB 2431 created a procedure for the return of firearms in the custody of a law enforcement agency or court. Among other things, the bill authorized cities, counties, or city and counties, state agencies to "adopt a regulation, ordinance, or resolution imposing a charge equal to its administrative costs relating to the seizure, impounding, storage, or release of firearms."<br><br>Evidence: Req. Jud. Ntc., Ex. A [Assembly Bill 2431 (2003-2004 Reg. Sess.)]. | |
| 94.  The local authority to adopt an administrative fee enacted via AB 2431 was originally codified at California Penal Code section 12028(j). Laws governing firearms have since been renumbered, and section 12028(j) is now codified at California Penal Code section 33880.<br><br>Evidence: Req. Jud. Ntc., Ex. A [Assembly Bill 2431 (2003-2004 Reg. Sess.)]; Cal. Penal Code § 33880. | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

95. The full text of Penal Code § 33880 (formerly Penal Code § 12028(j)) currently reads:

(a) A city, county, or city and county, or a state agency may adopt a regulation, ordinance, or resolution imposing a charge equal to its administrative costs relating to the seizure, impounding, storage, or release of a firearm.

(b) The fee under subdivision (a) shall not exceed the actual costs incurred for the expenses directly related to taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner.

(c) The administrative costs described in subdivisions (a) and (b) may be waived by the local or state agency upon verifiable proof that the firearm was reported stolen at the time the firearm came into the custody or control of the law enforcement agency.

(d) The following apply to any charges imposed for administrative costs pursuant to this section:

(1) The charges shall only be imposed on the person claiming title to the firearm.

(2) Any charges shall be collected by the local or state authority only from the person claiming title to the firearm.

(3) The charges shall be in addition to any other charges authorized or imposed pursuant to this code.

(4) No charge may be imposed for any hearing or appeal relating to the removal, impound, storage, or release of a firearm, unless that hearing or appeal was requested in writing by the legal owner of the firearm. In addition, the charge may be imposed only upon the person requesting

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

that hearing or appeal.

(e) No costs for any hearing or appeal related to the release of a firearm shall be charged to the legal owner who redeems the firearm, unless the legal owner voluntarily requests the post-storage hearing or appeal. No city, county, city and county, or state agency shall require a legal owner to request a post-storage hearing as a requirement for release of the firearm to the legal owner.

<u>Evidence</u>: Cal. Penal Code § 33880.

96. The legislative intent behind Penal Code § 33880 (formerly Penal Code § 12028(j)) was to allow local law authorities to recover the actual administrative costs associated with taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner "and *not* for the overall costs of law enforcement or the court for taking possession or custody of the firearm(s) *outside of the usual 'storage' environment* while still including the transfer of the firearm to a licensed dealer if appropriate."

<u>Evidence</u>: Req. Jud. Ntc., Ex. B [6/8/04 Senate Bill Analysis of AB 2431] at 18, Ex. C [8/25/04 Assembly Floor Analysis of AB 2431: Concurrence in Senate Amendments] at 23 ("The Senate amendments … allow[] the imposition of a *storage fee*; however, it may be waived by the local or state agency upon proof that the firearm was stolen, and limits the storage fee, as specified.").

97. At a meeting of the Board of Supervisors of the County of Los Angeles on November 22, 2005, the County "adopted a resolution to create a $54 administrative fee for the release of properly seized, stored or impounded firearms to a licensed dealer or owner by

the Los Angeles County Sheriff's Department for the purpose of fully recovering personnel costs associated with the release of seized, stored, or impounded firearms.…"

Evidence: Barvir Decl., Ex. E [LA Cnty. BOS File Re: Resolution to Adopt Administrative Fee].

98. In support of the adoption of the administrative fee, then-Sheriff Lee Baca wrote a letter to the L.A. County Board of Supervisors.

Evidence: Barvir Decl., Ex. E [LA Cnty. BOS File Re: Resolution to Adopt Administrative Fee] at 290-92, 295.

99. In his letter to the L.A. County Board of Supervisors, Baca explained that "an analysis of firearms evidence processing over a four-year period revealed that potentially 500 guns per year would be eligible for the administrative fee" and the fee "would yield additional revenue of approximately $27,000 each year."

Evidence: Barvir Decl., Ex. E [LA Cnty. BOS File Re: Resolution to Adopt Administrative Fee] at 291.

100. Baca's letter in support of the firearm storage fee also provided a table of administrative tasks associated with the seizure, impounding, storage, and release of firearms in LASD custody and an estimate of the costs associated with those tasks. The relevant administrative tasks were: booking, entering information into AFS, verifying information and storing, updating records, transferring to CPE, and (at CPE) verifying information, storing firearms, entering information into databases, verifying release of firearm to owner and updating records, and updating the evidence database and AFS.

Evidence: Barvir Decl., Ex. E [LA Cnty.

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| BOS File Re: Resolution to Adopt Administrative Fee] at 291, 295. | |
| 101. Baca's letter in support of the firearm storage fee also provided a table of the rank or title of each LASD employee involved in the administrative tasks associated with the seizure, impounding, storage, and release of firearms in LASD custody. Those employees were: Deputies, Evidence & Property Custodian II, Evidence & Property Custodian III, Int. Typist Clerk, Law Enforcement Tech, and SH Station Clerk II.<br><br>Evidence: Barvir Decl., Ex. E [LA Cnty. BOS File Re: Resolution to Adopt Administrative Fee] at 295. | |
| 102. Neither the County nor LASD conducts a regular review of the $54 administrative fee for the release of firearms to determine whether the fee reflects "the actual administrative costs associated with taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner."<br><br>Evidence: Barvir Decl., Ex. E [LA Cnty. BOS File Re: Resolution to Adopt Administrative Fee], Ex. M [LASD POS Item Price List], Ex. I [Cnty.'s Resp. to Interrogs., Set 1] at 480, 485, Ex. J [Def. Cnty.'s Suppl. Resp. to Interrogs., Set 1]. | |
| 103. The County does not know the actual "administrative costs associated with taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner."<br><br>Evidence: SUMF No. 50 (citing Logan Decl., Ex. 15 [Argonza Decl.] at ¶¶ 19, 22, Ex. 14B [LASD Chain of Custody Report/ PRELIMS); SUMF No. 57 (citing Logan Decl., Ex. 14 [Brown Decl.] at ¶¶ 28-29); | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| SUMF No. 60 (citing Logan Decl., Ex. 14 [Brown Decl.] at ¶ 31); RSUMF No. 42 (citing Logan Decl., Ex. 14C [Brown Emails from June 2018] at 0470; Barvir Decl., Ex. E [LA Cnty. BOS File Re: Resolution to Adopt Administrative Fee] at 295; Waston Decl., ¶¶ 10-11); RSUMF No. 36 (citing Logan Decl., Ex. 14B [LASD Chain of Custody Report / PRELIMS], Ex. 14E [Evidence Transfer Receipts]; Barvir Decl., Ex. G [LASD Evidence & Property Page – Palmdale Station]; Watson Decl., Ex. D [Watson Expert Report]. *See* Pls.' Sep. State. Evidentiary Obj. No. 12.  *See also* Barvir Decl., Ex. I [Cnty.'s Resp. to Pl.'s Interrogs., Set 1] at 483-84, Ex. J [Def. Cnty.'s Suppl. Resp. to Pl.'s Interrogs., Set 1] at p. 495. | |
| 104. The County has not changed the amount of the $54 administrative fee for the release of firearms since the fee was adopted in 2005.<br><br>Evidence: Barvir Decl., Ex. E [LA Cnty. BOS File Re: Resolution to Adopt Administrative Fee], Ex. M [LASD POS Item Price List], Ex. I [Cnty.'s Resp. to Pl.'s Interrogs., Set 1] at 480, 485, Ex. J [Def. Cnty.'s Suppl. Resp. to Pl.'s Interrogs., Set 1]. | |
| 105. LASD Policy No. 5-04/180.30 – Release of Property/Evidence to Owner – Firearms reads, in part: "The owner pays the storage/processing fees required by our Department for each firearm released at the station where the firearm was confiscated."<br><br>Evidence: Barvir Decl., Ex. L [Manual of Policy & Procedures of LASD] at 575. | |
| 106. LASD Policy No. 5-04/070.30 – Storage of Bulk Property/Evidence reads: "When property / evidence involved in a case is of such bulk or quantity that it is | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

not feasible to store at a station/unit and the items is essential to an investigation, the watch commander shall contact Central Property and Evidence (CPE) and arrange for *immediate* transfer. Contact the Sheriff's Headquarters Bureau after regular business hours. The investigating officer or designee is responsible for booking such property/ evidence in PRELIMS no later than the close of business on the next business day following transport of items to CPE. Upon case assignment, the investigating officer shall contact the Central Property custodian to arrange for continued storage or release. The originating unit shall be responsible for complying with 11108 PC [re: stolen property]."

Evidence: Barvir Decl., Ex. L [Manual of Policy & Procedures of LASD] at 562.

107. Deputy Wyatt Waldron is and, at all times relevant to this litigation, was employed by the Los Angeles County Sheriff's Department.

Evidence: Logan Decl., Ex. 3 [Waldron Dep.] at 13:23-17:13.

108. Deputy John Roth is and, at all times relevant to this litigation, was employed by the Los Angeles County Sheriff's Department.

Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 17:22-21:20.

109. Deputy Wyatt Waldron was the lead (or investigating officer) during the search of the Fernandez residence at 34710 Caprock Road in Agua Dulce, California, on June 14, 2018.

Evidence: Logan Decl., Ex. 3 [Waldron Dep.] at 35:8-36:13.

110. Deputy John Roth was the lead detective in the investigation of Manuel

| | |
|---|---|
| Fernandez as an unlawful felon-in-possession of firearms. He managed the service of the warrant and execution of the search of the Fernandez residence at 34710 Caprock Road in Agua Dulce, California, on June 20, 2018.<br><br>Evidence: Logan Decl., Ex. 10 [Roth Decl.], ¶¶ 2, 5-6, Ex. 11 [Roth Dep.] at 68:17-25. | |
| 111. In compliance with LASD Policy No. 5-04/070.30 - Storage of Bulk Property/Evidence, various LASD officers contacted CPE and requested that CPE custodians come to Palmdale to retrieve the unusually large number of seized items immediately. But CPE personnel "did not have the time or manpower" to comply with the policy. Instead, CPE personnel directed Palmdale Station personnel to begin the process of verifying the seized property.<br><br>Evidence: Barvir Decl., Ex. L [Manual of Policy & Procedures of LASD] at 562; Logan Decl., Ex. 11 [Roth Dep.] at 114:19-115:25, Ex. 15 [Argonza Decl.] at ¶ 6. | |
| 112. After Manuel Fernandez passed away, the charges against him were dropped.<br><br>Evidence: Logan Decl., Ex. 3 [Waldron Dep.] at 126:17-127:5, Ex. 11 [Roth Dep.] at 134:3-23. | |
| 113. After Manuel Fernandez passed away, his firearm collection became the property of his wife, Ana Patricia Fernandez.<br><br>Evidence: Barvir Decl., Ex. T [Fernandez Estate Plan] at 676-87. | |
| 114. At all times relevant to this case, Ana Patricia Fernandez was not prohibited from owning or possessing firearms.<br><br>Evidence: Logan Decl., Ex. 11 [Roth Dep.] | |

| | |
|---|---|
| at 135:11-21. | |
| 115. Ana Patricia Fernandez, through her attorney, offered to pay an administrative fee, lower than $54 per firearm, that reflected the County's actual costs. The County would not agree to a lower fee, demanding that Ms. Fernandez pay the full $24,354 to recover her firearms.<br><br>Evidence: Barvir Decl., Ex. Q [12/9/2019 Email to LASD Lt. Bardon], Ex. R [12/9/2019 Letter to Deputy County Counsel Choi]. | |
| 116. Ms. Fernandez agreed to pay the fee under protest, and informed county staff that "[a] representative from Carol Watson's Orange Coast Auctions, a state and federally licensed firearms dealer, will work with LASD Palmdale Station staff to retrieve the firearms on behalf Mrs. Fernandez."<br><br>Evidence: Barvir Decl., Ex. Q [12/9/2019 Email to LASD Lt. Bardon], Ex. R [12/9/2019 Letter to Deputy County Counsel Choi]. | |
| 117. LASD released a total of 451 firearms to Ana Patricia Fernandez, through her agent, Carol Watson.<br><br>Evidence: Logan Decl., Ex. 14B [[LASD Chain of Custody Report / PRELIMS], Ex. Ex. 14E [Evidence Transfer Receipts]; Watson Decl., Ex. D [Watson Expert Report]. | |
| 118. When Carol Watson and her staff from Carol Watson's Orange Coast Auctions picked up the Fernandez firearms from the Palmdale Station, Watson noticed that the firearms had not been carefully handled or stored by LASD personnel. Rifles were stored in trash cans, plastic tubs, and similar containers. They were not individually wrapped or boxed to prevent dings, scratches, and other damage while | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

being carried or transported in those plastic bins. Because of this poor handling, there was visible damage, breakage, and scratches to the gun stocks.

Evidence: Watson Decl., ¶ 7, Ex. D [Watson Expert Report] at 31-33, Ex. N-4 [Photographs of Firearms at Palmdale Station] at 617-19, 634-39.

119. Upon release of the firearms to Carol Watson and her staff from Carol Watson's Orange Coast Auctions, Carol Watson and her staff began the process of preparing the firearms for auction. This process includes, among other things, creating descriptions of the make, model, condition, and appraisal value of each gun.

Evidence: Watson Decl., ¶¶ 5-12, 15, Ex. D [Watson Expert Report] at 31-32.

120. Absent significant damage to the Fernandez firearms, the total fair market value of the firearms seized from and later released to Carol Watson's Orange Coast Auctions would have been between $203,700 and $288,075.

Evidence: Watson Decl., ¶ 15, Ex. D [Watson Expert Report] at 31.

121. In the damaged condition that many of the Fernandez firearms were in when they were released to Carol Watson's Orange Coast Auctions by LASD, the the total fair market value of the collection was between $160,210 and $240,365 in 2020, when the firearms were appraised to be sold at auction. That is, the firearms lost between $43,490 and $47,710 in value as a result of being in defendants' custody.

Evidence: Watson Decl., ¶ 15, Ex. D [Watson Expert Report] at 32.

122. Defendants have no photographs documenting the condition of the vast majority of the firearms at the time of their

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| seizure.<br><br>Evidence: Logan Decl., Ex. 11 [Roth Dep.] at 123:13-125:21; Barvir Decl. Ex. N (N-1, N-2, N-3, N-4) [Photographs of Firearms Produced by Defendants]. | |
| 123. Ana Patricia Fernandez submitted a timely Government Tort Claim form to the county of Los Angeles on February 27, 2020. The County rejected the claim on or about April 28, 2020.<br><br>Evidence: Barvir Decl., Ex. S. | |
| 124. Defendants do not know how long it actually took LASD personnel to process, store, and release the 451 firearms returned to Ana Patricia Fernandez through her agent.<br><br>Evidence: SUMF No. 50 (citing Logan Decl., Ex. 15 [Argonza Decl.] at ¶¶ 19, 22, Ex. 14B [LASD Chain of Custody Report/ PRELIMS); SUMF No. 57 (citing Logan Decl., Ex. 14 [Brown Decl.] at ¶¶ 28-29); SUMF No. 60 (citing Logan Decl., Ex. 14 [Brown Decl.] at ¶ 31); RSUMF No. 42 (citing Logan Decl., Ex. 14C [Brown Emails from June 2018] at 0470; Barvir Decl., Ex. E [LA Cnty. BOS File Re: Resolution to Adopt Administrative Fee] at 295; Waston Decl., ¶¶ 10-11); RSUMF No. 36 (citing Logan Decl., Ex. 14B [LASD Chain of Custody Report / PRELIMS], Ex. 14E [Evidence Transfer Receipts]; Barvir Decl., Ex. G [LASD Evidence & Property Page – Palmdale Station]; Watson Decl., Ex. D [Watson Expert Report]. *See* Pls.' Sep. State. Evidentiary Obj. No. 12.  *See also* Barvir Decl., Ex. I [Cnty.'s Resp. to Pl.'s Interrogs., Set 1] at 483-84, Ex. J [Def. Cnty.'s Suppl. Resp. to Pl.'s Interrogs., Set 1] at p. 495. | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

Dated: April 12, 2024

**MICHEL & ASSOCIATES, P.C.**

*s/ Anna M. Barvir*
Anna M. Barvir
Attorneys for Plaintiff

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

1
2

## CERTIFICATE OF SERVICE
### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

3
4

Case Name: *Fernandez, v. Los Angeles County, et al.*
Case No.:    2:20-cv-09876 DMG (PDx)

5

IT IS HEREBY CERTIFIED THAT:

6
7

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

8
9

I am not a party to the above-entitled action. I have caused service of:

10

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

11
12

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

13
14

Amber A. Logan
amberlogan@lmhfirm.com
lmh@lmhfirm.com

15
16

Logan Mathevosian & Hur LLP
3435 Wilshire Blvd., Suite 2740
Los Angeles, CA 90010

17

*Attorneys for Defendants Los Angeles County, Wyatt Waldron, and John Roth*

18
19

I declare under penalty of perjury that the foregoing is true and correct.

20

Executed April 12, 2024.

21
22

Laura Palmerin

23
24
25
26
27
28