C.D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
Konstadinos T. Moros – SBN 306610
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiff Ana Patricia Fernandez

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANA PATRICIA FERNANDEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES COUNTY, et al.,<br><br>Defendants. | Case No.: 2:20-cv-09876 DMG (PDx)<br><br>**PLAINTIFF'S SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: May 10, 2024<br>Hearing Time: 2:00 p.m.<br>Courtroom: 8C<br>Judge: Hon. Dolly M. Gee |

Pursuant to paragraph 5(d)(iii) of this Court's Initial Standing Order, Plaintiff Ana Patricia Fernandez hereby submits this Separate Statement of Evidentiary Objections in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. Plaintiff respectfully requests that the Court rule on the following objections before ruling on Defendants' motion.

| EVIDENCE OBJECTED TO | GROUNDS FOR OBJECTION |
| --- | --- |
| 1. Declaration of Wyatt Waldron (attached as Ex. 7 to the Declaration of Amber Logan) at ¶¶ 3-6, in their entirety, discussing the steps Deputies Waldron and other spent investigating a tip that Manuel Fernandez was in possession of firearms, including researching his criminal history, checking DMV records, reading historical court documents, conducting surveillance of his home with Deputies Livingston and Jacob, preparing a warrant affidavit and statement of probable cause, and appearing at the courthouse to obtain a warrant. | 1. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating a crime, conducting surveillance, and preparing a warrant affidavit are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402.<br><br>**Hearsay.** Declarant offers this out-of-court document to prove the truth of the matters asserted in the document, i.e., that other individuals in addition to Deputy Waldron worked a total of fourteen hours.<br><br>Fed. R. Evid. 801. |
| 2. Declaration of Wyatt Waldron (attached as Ex. 7 to the Declaration of Amber Logan) at ¶ 7:<br><br>"The aforementioned actions took approximately fourteen (14) LASD manhours for sworn peace officer personnel." | 2. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating a crime, conducting surveillance, and preparing a warrant affidavit are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402.<br><br>**Hearsay.** Declarant offers this out-of-court document to prove the truth of the matters asserted in the document, i.e., that other individuals in addition to Deputy Waldron worked a total of fourteen hours.<br><br>Fed. R. Evid. 801. |
| 3. Declaration of Wyatt Waldron (attached as Ex. 7 to the Declaration of Amber Logan) at ¶ 8 and Deputy Kyle Dingman's Incident Report Re: June | 3. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to |

2
PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE

| | |
|---|---|
| 14, 2018 Search of Caprock Residence (attached as Ex. 8 to the Declaration of Amber Logan), which describe the length of the first search of the Caprock residence on June 14, 2018. | actual administrative costs. Time spent investigating a crime and participating in a search are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402.<br><br>**Hearsay.** Declarant offers this out-of-court drafted by another person to prove the truth of the matters asserted in the document, i.e., how long it took to conduct the first search of the Caprock residence on June 14, 2018.<br><br>Fed. R. Evid. 801. |
| 4. Deposition of Wyatt Waldron (attached as Ex. 3 to the Declaration of Amber Logan) at 63:25-64:10:<br><br>"Q: And do you know who handled the firearms when they arrived at the Palmdale station?<br><br>A: It would have been at least 15 to – actually, more than that. There was probably 20 to 25 different deputies and detectives assigned to Palmdale station. Obviously, we had been on the phone letting people know like, Hey, we're going to have a lot of evidence to start going through. So we were trying to get as much help as we could to get all this stuff unloaded and placed out so we can start cataloging and organizing it all."<br><br>and 71:17-25:<br><br>"Q: And how much time did it take to lay out these firearms this neatly? It is a very organized picture.<br><br>A: A couple hours. If I had to guess, I would say four hours. I remember being there up until probably 1:00 o'clock in the morning the next day, but I think we got them all laid out before it was dark. So I would imagine four to six hours, something like that." | 4. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Wyatt does not have personal knowledge about the amount of time other officers spent unloading the firearms after the first Caprock search on June 14, 2018. This is evidenced by the fact that he does not know how many deputies and detectives were involved in the unloading of the guns or how many hours it took them.<br><br>Fed. R. Evid. 602.<br><br>**Unfairly prejudicial.** This evidence should be excluded because its probative value is substantially outweighed by its unfair prejudice that confuses the issue. Specifically, Defendant is using this excerpt to suggest it took "four to six hours" to unload a truck. In reality, LASD personnel were laying out the firearms for a photo op. Nor is it believable that it would take 20 or more deputies up to six hours to unload the firearms from a truck.<br><br>Fed. R. Evid. 403. |
| 5. Deposition of John Roth (attached as Ex. 11 to the Declaration of Amber Logan) at 54:19-25:<br><br>"Q: Have you ever participated in a firearms seizure that large before in | 5. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Roth does not have personal knowledge about the experiences of other deputies on the scene of the first Caprock |

3
PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE

| | |
|---|---|
| your position – in any position that you've held with LASD?<br><br>A: Ma'am to be perfectly honest, I don't think anybody in the county has seized that many firearms or been present at the seizure of that many firearms in the history of the County of Los Angeles." | search, let alone the experiences of all deputies in the history of the County of Los Angeles.<br><br>Fed. R. Evid. 602. |
| 6. Declaration of Susan Brown (attached as Ex. 14 to the Declaration of Amber Logan) at ¶ 34:<br><br>"I have been informed and believe that it was possibly the largest in Sheriff's Department history." | 6. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Brown was not present at the execution of the search of the Caprock Road residence on June 14, 2018, nor does she identify who "informed" her.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Defendants offer this out-of-court statement to prove the truth of the matters asserted in the document, i.e., that this was the largest seizure of firearms in the Sheriff's Department's history.<br><br>Fed. R. Evid. 801. |
| 7. Deposition of John Roth (attached as Ex. 11 to the Declaration of Amber Logan) at 55:9-15:<br><br>"Q: So is it -- so is it common for LASD to search -- to seize hundreds of firearms from a single source?<br><br>A: No, ma'am.<br><br>Q: So would you say this was a pretty unique experience?<br><br>A: This was a very, very unique experience." | 7. **Hearsay.** Defendants offer this out-of-court statement to prove the truth of the matters asserted in the document, i.e., that this "was a unique set of circumstances for the deputies."<br><br>Fed. R. Evid. 801. |
| 8. Deposition of Wyatt Waldron (attached as Ex. 3 to the Declaration of Amber Logan) at 76:16-77:11 and 84:16-85:3, discussing the reason LASD swore out another warrant affidavit to conduct a search of Carey Moisan's residence on Sweetwater. | 8. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating a crime and preparing a warrant affidavit are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402. |

| | |
|---|---|
| 9. Declaration of Wyatt Waldron (attached as Ex. 7 to the Declaration of Amber Logan) at ¶ 11:<br><br>"In the late afternoon of June 14, 2018, we served a warrant at the residence of Manuel Fernandez's business partner Carey Moisan, on Sweetwater Drive in Agua Dulce. That search took approximately two hours and involved the following ten (10) Deputy personnel: me and deputies Vilanova, Dingman, Grimes, Nemeth, Dollens, Allen, Knott, Winter, and Grussing." | 9. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating a crime and executing a warrant affidavit are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402. |
| 10. Declaration of John Roth (attached as Ex. 10 to the Declaration of Amber Logan) at ¶ 5:<br><br>"On or about June 15, 2018, I swore out the warrant affidavit for the second search of Manuel Fernandez's residence on Caprock Lane, and obtained the warrant. To the best of my recollection, I spent approximately three (3) to prepare and obtain the warrant from the judge." | 10. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating a crime, preparing a warrant affidavit, and obtaining a warrant form a judge are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402. |
| 11. Declaration of John Roth (attached as Ex. 10 to the Declaration of Amber Logan) at ¶ 6:<br><br>"On or about June 20, 2018, my team and I participated in the execution of the second search at Caprock Lane or about June 20, 2018. The search team consisted of the following nine (9) deputies: me, Eitner, Ames, Grimes, Morris, Nemeth, Bowes, Thompson and Mejia. To the best of my recollection, the search team took approximately four (4) hours to search and seize the items from the Caprock Lane residence and return them to the Palmdale Station for booking." | 11. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating a crime and executing a warrant are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402. |
| 12. Declaration of Susan Brown (attached as Ex. 14 to the Declaration of Amber Logan) at ¶¶ 11-12, 17-18, in their entirety, discussing the tasks related to and the total time spent entering firearms into PRELIMS. | 12. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Brown could have no personal knowledge that Deputies Richard Leon, Kyle Dingman, Nicholas Saylor, Murray Jacob, David Roach, Salvador Moreno, Jason Ames, John Roth, Joshua Nemeth, or Kevin Bowes spent their entire shifts processing the |

| | |
|---|---|
| | Fernandez firearms and nothing else.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., that other individuals besides her worked for so many hours entering information into the PRELIMS system.<br><br>Fed. R. Evid. 801. |
| 13. Declaration of Susan Brown (attached as Ex. 14 to the Declaration of Amber Logan) at ¶ 24:<br><br>"The station personnel took approximately 10 minutes per firearm to enter the Fernandez firearms into the AFS database." | 13. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Brown does not have personal knowledge that six (6) unidentified staff members took approximately 10 minutes per firearm to enter the Fernandez firearms into AFS. Defendants do not provide the declarations or testimony of the six staff members who allegedly entered the firearms into AFS, nor or do they cite any documentary evidence from AFS to support Brown's claims.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., that it took ten minutes per firearm to enter the Fernandez firearms into AFS.<br><br>Fed. R. Evid. 801. |
| 14. Declaration of Susan Brown (attached as Ex. 14 to the Declaration of Amber Logan) at ¶ 26:<br><br>"In addition to the work done by the deputies to enter the Fernandez firearms into PRELIMS, and the work done by the station personnel to enter the Fernandez firearms into AFS, I personally spent approximately 6 weeks clearing, entering, researching, correcting computer entries, reviewing crime returns and storing the Fernandez weapons. Beginning June 14, 2018, at the start of each 8 hour shift, I spent approximately 1-2 hours per day on my other duties and 6 hours per day processing the Fernandez firearms | 14. **Failure to disclose.** In discovery, Defendants failed to disclose that Brown allegedly spent 180 hours over the course of approximately six weeks clearing, entering, researching, correcting computer entries, reviewing crime returns, and storing the Fernandez weapons. Nor did Defendants explain that "beginning June 14, 2018, at the start of each 8-hour shift, Brown spent approximately 1-2 hours per day on her other duties and 6 hours per day processing the Fernandez firearms before their release to the CPE warehouse on July 25, 2018."<br><br>To the contrary, when asked to "[d]escribe, in reasonable detail, every step taken by the COUNTY, its employees, OR contractors when seizing, storing, AND returning the FERNANDEZ FIREARMS." Defendants did |

| | | |
|---|---|---|
| 1, 2, 3, 4 | before their release to the CPE warehouse on July 25, 2018." | not describe this work at all. *See* Barvir Decl., Ex. I [Def. Cnty.'s Resp. to Pl.'s Interrogs., Set 1] at 183-83, Ex. J [Def. Cnty.'s Supp. Resp. to Pl.'s Interrogs., Set 1] at 493-95.<br><br>Fed. R. Civ. P. 37(c)(1); Fed. R. Evid. 403. |
| 5–15 | 15. Declaration of Chris Argonza (attached as Ex. 15 to the Declaration of Amber Logan) at ¶ 9:<br><br>"On July 25, 2018, Supervising Evidence and Property Custodian Regalado O. Javate (retired), along with Evidence and Property Custodians Manuel Nuyda, Romeo F. Uy, Jose Lingat, Jr. made the two-hour drive, each way, between Whittier to the Palmdale Station in two box trucks to retrieve the evidence." | 15. **Lacks personal knowledge**. There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Argonza does not declare that they were present when the four other CPE property custodians allegedly made the drive to and from the Palmdale Station. Nor does Argonza provide any other foundation for how they could know who made the drive, when it was made, or how long it took them to travel between destinations.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., that other individuals traveled for a combined total of 16 man-hours.<br><br>Fed. R. Evid. 801. |
| 16–28 | 16. Declaration of Chris Argonza (attached as Ex. 15 to the Declaration of Amber Logan) at ¶ 13:<br><br>"I am informed and believe based on the entries into PRELIMS, that CPE made two additional trips to the Palmdale Station to retrieve property from this seizure on August 16 and August 18, 2018." | 16. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Argonza does not have personal knowledge that an unknown number of unidentified Evidence and Property Custodians from CPE made two additional trips to retrieve property from the Fernandez seizures on August 16, 2018, and August 18, 2018. Argonza does not declare that they were present when the CPE staff allegedly made the drive to and from the Palmdale Station. Nor does Argonza provide any other foundation for how they could know who made the drive, when it was made, or how long it took them.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., that other individuals two trips to the Palmdale Station to retrieve property from the Fernandez seizure on August 16 and August 18, 2018. |

| | |
|---|---|
| | Fed. R. Evid. 801. |
| 17. Declaration of Chris Argonza (attached as Ex. 15 to the Declaration of Amber Logan) at ¶ 15:<br><br>"The firearms were verified by reviewing the size, model, make and serial number serial numbers and other identifying information entered by Palmdale into the Automated Firearm System ("AFS"), comparing that information against the actual weapon, then reviewing AFS returns to verify than none of the weapons were stolen." | 17. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Argonza does not have personal knowledge about what steps other, unidentified CPE personnel took with regard to the Fernandez firearms. Argonza does not declare that they themselves made the entries into AFS or that they were present when the CPE staff allegedly made the entries. Nor does Argonza provide any other foundation for how they could know who did the work, when it was done, or how long it took them to complete the work.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., work done by other CPE personnel.<br><br>Fed. R. Evid. 801. |
| 18. Declaration of Chris Argonza (attached as Ex. 15 to the Declaration of Amber Logan) at ¶ 16:<br><br>"The custodians at CPE processed nearly 1,000 pieces of evidence including nearly 500 firearms, computers, and ammunition as follows: Each item was counted. The weapons were cleared of ammunition and magazines. Even if cleared before, for safety reasons, each time a weapon is handled, it must be cleared of all ammunition and magazines. Bar codes which had been placed on the evidence at Palmdale were scanned one-by-one into the computer system where labels were generated. The handguns were placed into individual envelopes with the matching label secured to the envelope and sealed. The long guns were affixed with matching labels and placed into wheeled bins. As each banker's box was full of handgun envelopes, and as each wheeled bin had a sufficient number of long guns, the guns were placed into the firearm vault – a locked vault within the secured property warehouse. | 18. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Argonza does not have personal knowledge about what steps other, unidentified CPE personnel took with regard to the Fernandez firearms. Argonza does not declare that they themselves processed the Fernandez firearms or that they were present when the CPE staff allegedly did so. Nor does Argonza provide any other foundation for how they could know who did the work, when it was done, or how long it took them to complete the work.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., work done by other CPE personnel.<br><br>Fed. R. Evid. 801. |

8

PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE

| | |
|---|---|
| 19. Declaration of Chris Argonza (attached as Ex. 15 to the Declaration of Amber Logan) at ¶ 17:<br><br>"The movement of each weapon was entered into the PRELIMS computer system which is an internal Sheriff's Department evidence tracking/chain of custody computer system. The identifying information for each firearm was also entered by CPE staff into JDIC (Justice Data Interface Controller) which is the computer system used by the Sheriff's Department to interface with other local and national law enforcement agencies." | 19. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Argonza does not have personal knowledge about what steps other, unidentified CPE personnel took with regard to the Fernandez firearms. Argonza does not declare that they themselves entered the Fernandez firearms in PRELIMS or JDIC or that they were present when the CPE staff allegedly did so. Nor does Argonza provide any other foundation for how they could know who did the work, when it was done, or how long it took them to complete the work.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., work done by other CPE personnel.<br><br>Fed. R. Evid. 801. |
| 20. Declaration of Chris Argonza (attached as Ex. 15 to the Declaration of Amber Logan) at ¶ 19:<br><br>"Overall, approximately 4-6 CPE warehouse personnel were involved in the movement of the evidence from the Palmdale Station to the CPE warehouse in July and August 2018. Another 4-6 personnel were involved in transferring the evidence back to the Palmdale Station in December 2019." | 20. **Lacks personal knowledge:** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Argonza has no personal knowledge about the time other, unidentified CPE staff members spent traveling between the CPE warehouse to the Palmdale Station. Argonza does not declare that they themselves participated in the movement of the property between CP Palmdale, nor do they provide any foundation for how they could know the time it took other CPE staff members to do so. This is evidenced by the fact that Argonza does not know how many CPE staff members were involved in the transfer.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., work done by other CPE personnel.<br><br>Fed. R. Evid. 801.<br><br>**Failure to disclose.** Defendants did not disclose that "4-6 CPE warehouse personnel were involved in the movement of the evidence from the Palmdale Station to the CPE warehouse in July and August 2018" or that "4-6 personnel were involved in |

| | |
|---|---|
| | transferring the evidence back to the Palmdale Station in December 2019." <br><br> To the contrary, when asked to "[d]escribe, in reasonable detail, every step taken by the COUNTY, its employees, OR contractors when seizing, storing, AND returning the FERNANDEZ FIREARMS," Argonza reported that just 4 CPE property custodians made the trips. *See* Barvir Decl., Ex. J [Def. Cnty.'s Suppl. Resp. to Pl.'s Interrogs., Set 1] at 494-95. <br><br> Fed. R. Civ. P. 37(c)(1); Fed. R. Evid. 403. |
| 21. Declaration of Chris Argonza (attached as Ex. 15 to the Declaration of Amber Logan) at ¶ 22: <br><br> "On December 11, 2019, CPE received a request to transport the firearms back to the Palmdale Station. On December 18, 2019, the staff loaded the firearms back onto the two box trucks. Four custodians made the two-hour drive back to the Palmdale Station where the firearms were unloaded and delivered to the property and evidence room at the station." | 21. **Lacks personal knowledge:** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Argonza has no personal knowledge about the time other, unidentified CPE staff members spent moving the Fernandez evidence from the CPE warehouse to the Palmdale Station. Argonza does not declare that they themselves participated in the movement of the property back to Palmdale, nor do they provide any foundation for how they could know the time it took other CPE staff members to do so. This is evidenced by the fact that Argonza does not know how many CPE staff members were involved in the transfer. <br><br> Fed. R. Evid. 602. <br><br> **Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., work done by other CPE personnel. <br><br> Fed. R. Evid. 801. |
| 22. Declaration of Chris Argonza (attached as Ex. 15 to the Declaration of Amber Logan) at ¶ 18: <br><br> "CPE staff would work on the firearms intermittently during lighter evidence receipt days. On average, CPE property and evidence personnel processed (placed data into the PRELIMS) at a rate of about 7 firearms per hour." | 22. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Argonza does not have personal knowledge about what steps other, unidentified CPE personnel took with regard to the Fernandez firearms. Argonza does not declare that they themselves entered the Fernandez firearms in PRELIMS or that they were present when the CPE staff allegedly did so. Nor does Argonza provide any other foundation for how they could know who did the work, when it was done, or how long it took them to complete the work. |

| | |
|---|---|
| | Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., work done by other CPE personnel.<br><br>Fed. R. Evid. 801.<br><br>**Failure to disclose.** Defendants failed to disclose that CPE property and evidence personnel processed (placed data into the PRELIMS) at a rate of about 7 firearms per hour.<br><br>Instead, in a verified response to Plaintiffs' Interrogatory No. 14, Argonza flatly declared that it took CPE staff "approximately 7-8 hours per firearm [f]or processing and storage of the FERNANDEZ FIREARMS." For 451 total guns, that would be at least 3,157 work hours, which is not consistent with the statements Argonza now makes. *See* Barvir Decl., Ex. I [Def. Cnty.'s Resp. to Pls.' Interrogs., Set 1] at 483-84 [p. 12-13], Ex. J [Def. Cnty.'s Suppl. Resp. to Pls.' Interrogs., Set 1] at 492-97, Ex. K [Def. Cnty.'s Resp. to Pls.' Req. Prod. Docs., Set 1], Ex. P [Def. Cnty.'s Suppl. Resp. to Pls.' Req. Prod. Docs., Set 1].<br><br>Fed. R. Civ. P. 37(c)(1); Fed. R. Evid. 403. |
| 23. Declaration of Chris Argonza (attached as Ex. 15 to the Declaration of Amber Logan) at ¶ 20:<br><br>"Approximately 3-5 staff members were involved in the processing, data entry, and storage of the evidence from the involved seizure. CPE did not calculate the number of hours spent by all staff who were involved in this endeavor, however there were many overtime hours incurred to assist with this volume of firearms." | 23. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Argonza does not have personal knowledge about what steps other, unidentified CPE personnel took with regard to the Fernandez firearms. Argonza does not declare that they themselves were involved in processing, data entry, or storage of the Fernandez firearms or that they were present when the CPE staff allegedly did so. Nor does Argonza provide any other foundation for how they could know who did the work, when it was done, or how long it took them to complete the work.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court statement to prove the truth of the matters asserted in the document, i.e., work done by other CPE personnel. |

| | | |
|---|---|---|
| | | Fed. R. Evid. 801.<br><br>**Failure to disclose.** Defendants failed to disclose that "3-5 staff members were involved in the processing, data entry, and storage of the evidence from the involved seizure" or that "there were many overtime hours incurred to assist with this volume of firearms."<br><br>In fact, what was presented in discovery directly contradicts this statement. Here, Argonza suggests CPE did not calculate the number of hours spent by staff, but in prior discovery responses he verified, they claimed: "At Central Property and Evidence, it took the staff approximately 7-8 hours per firearm on processing and storage of the FERNANDEZ FIREARMS." That would come out to a minimum of well over 3,000 hours of work at CPE alone *See* Barvir Decl., Ex. I [Def. Cnty.'s Resp. to Pls.' Interrogs., Set 1] at 483-84 [p. 12-13], Ex. J [Def. Cnty.'s Suppl. Resp. to Pls.' Interrogs., Set 1] at 492-97.<br><br>Fed. R. Civ. P. 37(c)(1); Fed. R. Evid. 403. |
| | 24. Declaration of Catherine L. Navetta (attached as Ex. 16 to the Declaration of Amber Logan) at ¶ 7:<br><br>"According to the PRELIMS computer entries, the LASD record of evidence chain of custody, 98 of the firearms seized under uniform report number 918-08710-2646-151 were transferred from the Central Property Unit to LASD Scientific Services for ballistics testing. A true and correct copy of the spreadsheet for the testing of these 98 firearms is attached hereto and incorporated by reference herein as Exhibit C." | 24. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating crimes, subjecting handguns to ballistics testing, and participating in the entirely voluntary NIBIN program are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402.<br><br>**Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Navetta does not declare that she was present when the transfer occurred, nor does she provide any other foundation for how she knows when the transfer happened, who was involved, or how long it took. She has no personal knowledge about the time it took unidentified LASD staff to transfer the items from CPE to LASD Scientific Services.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court |

12
PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EVIDENCE

| | |
|---|---|
| | statement to prove the truth of the matters asserted in the document, i.e., work done by other CPE personnel, and she relies on another out-of-court document.<br><br>Fed. R. Evid. 801.<br><br>**Failure to Disclose.** Defendants did not identify Catherine L. Navetta as a person likely to have discoverable information in their FRCP 26(a) Initial Disclosures, nor did they supplement those disclosures once Ms. Navetta was identified. Defendants also failed to produce the "spreadsheet for the testing of these 98 firearms" that Navetta relies on even though Plaintiff requested the production of documents concerning the actual costs incurred by the County when seizing, storing, or returning the Fernandez firearms. *See* Barvir Decl., Ex. H [Defs.' Initial Disclosures] at 459-63, Ex. K [Def. Cnty.'s Resp. to Pls.' Req. Prod. Docs.]; Ex. P [Def. Cnty.'s Suppl. Resp. to Pls.' Req. Prod. Docs.].<br><br>Fed. R. Civ. P. 37(c)(1); Fed. R. Evid. 403. |
| 25. Spreadsheet Re: NIBIN Testing of 98 Firearms (attached as Ex. 16C to the Declaration of Catherine L. Navetta). | 25. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating crimes, subjecting handguns to ballistics testing, and participating in the entirely voluntary NIBIN program are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402.<br><br>**Lacks authentication.** The spreadsheet (1) lacks any markings of authenticity; (2) was not turned over in discovery; and (3) appears to have been created for this motion, though there is no evidence or declaration explaining where the information contained in the spreadsheet came from.<br><br>Fed. R. Evid. 901.<br><br>**Hearsay.** Declarant offers this out-of-court document to prove the truth of the matters asserted in the document, e.g., that a total of 97 firearms were processed by Deputy John Carter in 2018 and 2019, that the time spent to process each firearm and enter it into |

| | | |
|---|---|---|
| | | NIBIN was between 0.5 to 1.0 hour per firearms, 11 firearms were not fire due to malfunctions, and one firearm was not fired because it was unsuitable for NIBIN. |
| | | Fed. R. Evid. 801. |
| | | **Failure to Disclose.** Defendants failed to produce the "spreadsheet for the testing of these 98 firearms" even though Plaintiff requested the production of documents concerning the actual costs incurred by the County when seizing, storing, or returning the Fernandez firearms. *See* Logan Decl., Ex. 16C [NIBIN Log]; Barvir Decl., Ex. K [Def. Cnty.'s Resp. to Pls.' Req. Prod. Docs.], Ex. P Def. Cnty.'s Suppl. Resp. to Pls.' Req. Prod. Docs.]. |
| | | Fed. R. Civ. P. 37(c)(1); Fed. R. Evid. 403. |
| | 26. Declaration of Catherine L. Navetta (attached as Ex. 16 to the Declaration of Amber Logan) at ¶ 8: "According to the data pulled from PRELIMS and NIBIN, the firearms tested under this report number were all tested by Deputy John Carter (#459493) on the dates listed in the chart. Eleven (11) of the ninety-eight (98) firearms were not fired due to prior malfunctions with the firearm. One (1) firearm was not fired because it was deemed unsuitable for NIBIN." | 26. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating crimes, subjecting handguns to ballistics testing, and participating in the entirely voluntary NIBIN program are general law enforcement functions and are not relevant to the issues of this case. |
| | | Fed. R. Evid. 402. |
| | | **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs her of the work of other individuals. Navetta does not have personal knowledge that "[e]leven of the 98 firearms were not fired due to prior malfunctions with the firearm" or that "[o]ne (1) firearm was not fired because it was deemed unsuitable for NIBIN." She does not declare that she was present when Deputy John Carter tested the weapons. Nor does she provide any other foundation for how she could know what happened when Carter tested them. |
| | | Fed. R. Evid. 602. |
| | | **Hearsay.** Declarant offers this out-of-court document to prove the truth of the matters asserted in the document, i.e., work completed by another person to complete ballistics testing for NIBIN and the outcome |

| | |
|---|---|
| | of that testing.<br><br>Fed. R. Evid. 801.<br><br>**Failure to Disclose.** Defendants did not identify Catherine L. Navetta as a person likely to have discoverable information in their FRCP 26(a) Initial Disclosures, nor did they supplement those disclosures when Ms. Navetta was identified. Defendants also failed to produce the "spreadsheet for the testing of these 98 firearms" even though Plaintiff requested the production of documents concerning the actual costs incurred by the County when seizing, storing, or returning the Fernandez firearms. *See* Barvir Decl., Ex. H [Defs.' Initial Disclosures] at 459-63, Ex. K [Def. Cnty.'s Resp. to Pls.' Req. Prod. Docs.], Ex. P [Def. Cnty.'s Suppl. Resp. to Pls.' Req. Prod. Docs.].<br><br>Fed. R. Civ. P. 37(c)(1); Fed. R. Evid. 403. |
| 27. Declaration of Catherine L. Navetta (attached as Ex. 16 to the Declaration of Amber Logan) at ¶ 9:<br><br>"At the time of the testing of these weapons, it took Deputy John Carter between 30 minutes to one hour per firearm, totaling between 48 and 97 hours to complete the ballistics testing of the firearms from this seizure." | 27. **Relevance.** The case concerns the legality of the administrative cost of processing seized firearms subject to Los Angeles County's $54 firearm storage fee, which is by law limited to actual administrative costs. Time spent investigating crimes, subjecting handguns to ballistics testing, and participating in the entirely voluntary NIBIN program are general law enforcement functions and are not relevant to the issues of this case.<br><br>Fed. R. Evid. 402.<br><br>**Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs her of the work of other individuals. Navetta does not have personal knowledge that "it took Deputy John Carter between 30 minutes to one hour per firearm, totaling between 48 and 97 hours to complete the ballistics testing…." She does not declare that she was present when Deputy John Carter tested the weapons. Nor does she provide any other foundation for how she could know how long it took Carter to test them.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court document to prove the truth of the matters asserted in the document, i.e., the amount of time it took another person to complete |

| | |
|---|---|
| | ballistics testing for NIBIN.<br><br>Fed. R. Evid. 801.<br><br>**Failure to Disclose.** Defendants did not identify Catherine L. Navetta as a person likely to have discoverable information in their FRCP 26(a) Initial Disclosures, nor did they supplement those disclosures when Ms. Navetta was identified. Defendants also failed to produce the "spreadsheet for the testing of these 98 firearms" even though Plaintiff requested the production of documents concerning the actual costs incurred by the County when seizing, storing, or returning the Fernandez firearms. *See* Barvir Decl., Ex. H [Defs.' Initial Disclosures] at 459-63, Ex. K [Def. Cnty.'s Resp. to Pls.' Req. Prod. Docs.], Ex. P [Def. Cnty.'s Suppl. Resp. to Pls.' Req. Prod. Docs.].<br><br>Fed. R. Civ. P. 37(c)(1); Fed. R. Evid. 403. |
| 28. Declaration of Susan O'Leary Brown (attached as Ex. 14 to the Declaration of Amber Logan) at ¶ 31:<br><br>"After the firearms were released on December 19, 2019, I am informed and believe that two staff members at the Palmdale station spent another two weeks updating the AFS system to inform the DOJ and all law enforcement agencies that the Fernandez firearms had been released from Sheriff's Department custody." | 28. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs her of the work of other individuals. Brown does not have personal knowledge "that two staff members at the Palmdale station spent another two weeks updating the AFS system." She does not declare that she herself participated in updating AFS after the firearms were released or that she was present when that work was done. Nor does she provide any other foundation for how she could know who did the work, when it was done, what work was done, or how long it took.<br><br>Fed. R. Evid. 602.<br><br>**Hearsay.** Declarant offers this out-of-court document to prove the truth of the matters asserted in the document, i.e., that two other Palmdale staff members spent two weeks updating AFS after the release of the Fernandez firearms.<br><br>Fed. R. Evid. 801.<br><br>**Failure to disclose.** Defendants failed to disclose that, after the firearms were released on December 19, 2019, two staff members at the Palmdale Station spent another two weeks updating AFS. To the contrary, Defendants did not describe this work at all when asked |

| | |
|---|---|
| | to "[d]escribe, in reasonable detail, every step taken by the COUNTY, its employees, OR contractors when seizing, storing, AND returning the FERNANDEZ FIREARMS." *See* Barvir Decl., Ex. I [Def. Cnty.'s Resp. to Pl.'s Interrogs., Set 1] at 482-83, Ex. J [Def. Cnty.'s Supp. Resp. to Pl.'s Interrogs., Set 1] at 493-95.<br><br>Fed. R. Civ. P. 37(c)(1); Fed. R. Evid. 403. |
| 29. Declaration of Susan Brown (attached as Ex. 14 to the Declaration of Amber Logan) at ¶ 32, in part:<br><br>"The weapons seized from Mr. Fernandez were not in pristine condition when we received them at the station. The overwhelming majority of the long guns and rifles had damage (scratches/nicks) to the barrels and stocks, some of the stocks were split." | 29. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. O'Leary Brown has no personal knowledge about the condition of the firearms when they were received. She does not declare that she was present at the search or that she observed the condition of the firearms at the time they were seized and before their transport to the Palmdale Station. Brown's statement is uncorroborated by any photographic evidence of the individual firearms or their condition taken by LASD personnel—let alone photographs taken before they were unpackaged, thrown into the bed of a pickup truck without any protective covering or wrapping, laid on the hard cement at the Palmdale Station to flaunt the haul, and tossed into plastic bins, trash cans, or a laundry basket for carrying and storage. Nor is Brown qualified as an expert on whether or not a firearm is in "pristine" condition.<br><br>Fed. R. Evid. 602.<br><br>**Unfairly prejudicial.** The statement is unfairly prejudicial because it seems to assume the firearms were in a damaged condition upon seizure, when in fact, they were transported all packed together on a truck and were arguably damaged during transit.<br><br>Fed. R. Evid. 403. |

| | |
|---|---|
| 30. Deposition of John Roth (attached as Ex. 11 to the Declaration of Amber Logan) at 91:16-92:4:<br><br>"Q: Okay. Did you notice anything -- or what, if anything, did you notice about the condition of the firearms that you were looking through at that time?<br><br>A: I noticed that the firearms kind of had a -- there was a theme amongst them. And the theme for a large body of them were military-style rifles, middle of the 19th Century. And they weren't pristine. They weren't -- for the time period maybe a desirable feature, but natural condition of the firearms, I don't recall seeing any that I thought, wow, this is a well-cared-for firearm. A lot of them just appeared to be old, haphazardly strewn about, and not cared for in a manner that would be indicative of an antiquity or a fine firearm collector, if that makes sense." | 30. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Roth admitted that he was only present "on the back end of the – the tail part of the initial [Caprock] search, and the vast majority of firearms had already been seized." He also admitted that whatever damage he claimed to have observed during the first search was to guns "that were already seized prior to [his] arrival." He could not have known firsthand how "the majority" of the guns were stored or what condition they were found in, a fact that Roth conceded: "I was unable to see the seizure or the condition of the items seized prior to my arrival, so anything, I guess, would be speculative on the condition." Logan Decl., Ex. 11 [Roth Dep.] at 77:4-9.<br><br>Additionally, Roth is not qualified as an expert on firearm condition or storage.<br><br>Fed. R. Evid. 602. |
| 31. Deposition of Wyatt Waldron (attached as Ex. 3 to the Declaration of Amber Logan) at 119:2-7:<br><br>"Q: I'll admit I'm speculating a little there, but the close-up shots all do seem to involve scratches or dings on the firearms, yes.<br><br>A: Yeah, I don't know because if you look at the original photos in the truck, it kind of shows it. But most of these older-style wood grain stocks were all like that. They were all that way when they were recovered, so I don't know specifically why those photos were taken of those." | 31. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs this statement. Waldron has no personal knowledge that "most of these older-style wood grain stocks were all like that [i.e., scratched or dinged]. He did not personally handle most or all of the firearms with wood grain stocks. He admitted that he personally handled only about 20-30 firearms and several from the garage of the nearly 400 firearms seized during the first search of the Caprock residence. He admits that he discovered them and immediately handed them off to other personnel for tagging, loading, and transporting. Logan Decl., Ex. 3 [Waldron Dep.] at 49:8-50:11.<br><br>There is no admissible evidence—including photographs, video, or police reports drafted at the time of the seizure—supporting Waldron's self-serving claim that most (or "all") of the guns contained scratches or dings in them prior to transport to the Palmdale Station.<br><br>Fed. R. Evid. 602. |
| 32. Deposition of Wyatt Waldron (attached as Ex. 3 to the Declaration of | 32. **Lacks personal knowledge.** There is no information provided that the declarant has percipient or personal knowledge that informs |

| | |
|---|---|
| Amber Logan) at 82:25-83:20:<br><br>Q: "At the search earlier that day at the Fernandez residence, you said you found firearms strewn about throughout the house. Were any of the firearms stored in safes or in cases?<br><br>A: Yes.<br><br>Q: Okay. What -- how many would you say were stored in cases versus ones that were just lying around?<br><br>A: I remember personally opening up – and forgive me, I don't remember if it was a glass case or just a wood case. But I remember in the garage against the back wall behind a bunch of stuff – I'll just call it stuff – unpiling all that stuff, and there was some type of cabinet that when you opened it had some guns. To estimate, I would say five to ten inside of it.<br><br>Q: Understood. So as a percentage, you'd say the majority were not in cases or safes?<br><br>A: Yeah, I would be comfortable saying 90 percent of the firearms were not in any kind of box, safe, or any kind of protective case." | this statement. Waldron could not personally know that 90% of the firearms seized from Manuel Fernandez were not stored in a box, safe, or other kinds of protective case. He did not personally handle most or all of the firearms seized. On the contrary, he admitted that he personally handled only about 20-30 firearms and several from the garage during the first search of the Caprock residence. He admits that he discovered them and immediately handed them off to other personnel for tagging, loading, and transporting. Logan Decl., Ex. 3 [Waldron Dep.] at 49:8-50:11.<br><br>There is no admissible evidence—including photographs, video, or police reports drafted at the time of the seizure—supporting Waldron's self-serving claim that "90% of the firearms were not in any kind of box, safe, or any kind of protective case."<br><br>Fed. R. Evid. 602. |

Dated: April 12, 2024                                    **MICHEL & ASSOCIATES, P.C.**

                                                                                   *s/ Anna M. Barvir*
                                                                                   Anna M. Barvir
                                                                                   Attorneys for Plaintiff

# CERTIFICATE OF SERVICE
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Fernandez, v. Los Angeles County, et al.*
Case No.:    2:20-cv-09876 DMG (PDx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFF'S SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Amber A. Logan
amberlogan@lmhfirm.com
lmh@lmhfirm.com
Logan Mathevosian & Hur LLP
3435 Wilshire Blvd., Suite 2740
Los Angeles, CA 90010
   *Attorneys for Defendants Los Angeles County, Wyatt Waldron, and John Roth*

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 12, 2024.

_Laura Palmerin_
Laura Palmerin