1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANA PATRICIA FERNANDEZ, | ) Case No. CV 20-9876-DMG (PDx) |
| Plaintiff, | ) |
| | ) **ORDER RE DEFENDANTS' MOTION** |
| v. | ) **FOR SUMMARY JUDGMENT [79]** |
| COUNTY OF LOS ANGELES, WYATT | ) |
| WALDRON, AND JOHN ROTH, | ) |
| Defendants. | ) |
| | ) |
| | ) |

The matter before the Court is Defendants County of Los Angeles, Wyatt Waldron, and John Roth's motion for summary judgment ("MSJ"). [Doc. # 79.] The motion is fully briefed. [Doc. ## 84 ("Opp."), 85 ("Reply")]. The Court held a hearing on the motion on May 10, 2024. Having carefully considered the parties' arguments,

the Court **GRANTS in part** and **DENIES in part** Defendants' MSJ for the reasons set forth below.

# I.
# PROCEDURAL BACKGROUND

Plaintiff Ana Patricia Fernandez filed the instant action on October 27, 2020. [Doc. # 1.]  In the time since the filing of the initial complaint, Defendants have brought two motions to dismiss [Doc. ## 21, 44], the first of which the Court granted and the second of which the Court granted in part and denied in part.  [Doc. ## 30, 53.]  The operative complaint at issue on this MSJ is Plaintiff's first amended complaint ("FAC"). [Doc. # 31.]

Plaintiff has one remaining claim under Federal law—a section 1983 claim for a violation of Plaintiff's Fourth Amendment rights—and three remaining claims under California law for negligence, trespass to chattels, and breach of constructive bailment. Defendants seek summary judgment on all of the remaining claims.

# II.
# FACTUAL BACKGROUND

The facts in this section are uncontroverted, unless otherwise stated.  Many of the parties' purportedly disputed facts are not in fact controverted by evidence, and the Court therefore cites to them as uncontroverted facts.  Facts are drawn from Defendants' Statement of Undisputed Facts ("SUF") [Doc. # 81], as set forth with Plaintiff's responses in her Opposition [Doc. # 84-1] and Defendants' responses thereto [Doc. #

86].  The Court has reviewed the entire record, but discusses only the uncontroverted

material facts that are necessary to or affect its analysis.

## A.   Evidentiary Objections

The Court has reviewed the parties' evidentiary objections and the accompanying

responses.  [Doc. ## 84-2, 87, 88.]  To the extent it does not address any of them, it is

because the Court did not rely on the objected-to evidence in reaching its ruling.  Any

objections to such evidence are **OVERRULED as moot**.  Otherwise, the Court will

address any pertinent evidentiary objections throughout this Order.

## B.   Video Evidence

In support of their MSJ, Defendants lodged two video exhibits.  [Doc. # 83.]  The

first is pre-search video footage of the Caprock Lane address, and the second is pre-

search video footage of the Sweetwater address.  Declaration of Amber A. Logan ISO

MSJ ("Logan Decl."), Exs. 18, 19.  Although Plaintiff does not challenge the authenticity

of the videos, the Parties do interpret the video footage differently.  Defendants suggest

that the videos show that Mr. Fernandez's firearms were stored haphazardly, in

"hoarder-like conditions," while Plaintiff states that the videos simply show that the

couple "kept many items of varying value, age, and sentimental value in their home."

MSJ at 33;[1] SUF ¶ 27, 86.

---

[1] Page citations herein refer to the page number inserted by the CM/ECF system.

When confronted with a videotape of the events in question, the Court must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by [the video], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. Indeed, to the extent that the Court can identify any firearms in the videos, the videos may obviate any genuine disputes of material fact as to their storage condition at the Fernandez home. "In the absence of material factual disputes, the objective reasonableness of a police officer's conduct is 'a pure question of law.'" *Lowry v. City of San Diego*, 858 F.3d 1248, 1254 (9th Cir. 2017) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)).

## C.  Request for Judicial Notice

Plaintiff requests judicial notice of California Assembly Bill 2431, an analysis of the bill by the California Senate Committee on Public Safety, and the Assembly Floor Analysis of the bill. Request for Judicial Notice [Doc. # 84-3 ("RJN")]. Defendants do not oppose the request. All three documents are matters of public record and therefore are the proper subject of judicial notice. *See U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd*, 678 F. App'x 594 (9th Cir. 2017) (public records and government documents are proper subject of judicial notice). Plaintiff's request for judicial notice is **GRANTED.**

**D.     Facts of the Case**

Plaintiff Ana Patricia Fernandez's late husband, Manuel Fernandez, was prohibited from owning firearms, ammunition, and speed loaders because of prior felony convictions from 2009. FAC ¶¶ 5, 43; SUF ¶ 1. In June 2018, the Los Angeles Sheriff's Department ("LASD") received a tip that Mr. Fernandez was in possession of a large number of firearms. SUF ¶ 2. After further investigation and obtaining a search warrant, a team of 12–13 LASD officers served the search warrant on the Fernandez residence. SUF ¶ 6; *see also* Logan Decl., Ex. 8 ("Incident Report") at 105–06 [Doc. # 82]. During that search, the officers expected to find approximately 42 firearms, but they found over 400. SUF ¶ 7; Logan Decl., Ex. 3 ("Waldron Depo.") at 55.

When LASD seizes a large number of firearms, it is Department protocol to contact the Central Property and Evidence unit ("CPE") so that CPE can come to the location, take possession of the evidence, and process it at the CPE warehouse. SUF ¶ 10; Declaration of Anna M. Barvir ("Barvir Decl."), Ex. L ("LASD Manual") at 274 [Doc. # 84-7]. When the LASD Palmdale station contacted CPE, however, CPE informed the officers that "it did not have the time or the manpower" to retrieve and process that many firearms. SUF ¶ 11. Defendant Deputy Wyatt Waldron instructed the officers to begin cataloguing and processing the firearms at the Fernandez residence. SUF ¶ 12. The officers, led by Waldron, began cataloguing the firearms and loading them into the patrol cars and the bed of a station-owned pickup truck. SUF ¶ 13; Logan

Decl., Ex. 5 at 87.  Once the firearms were loaded, the vehicles drove in a convoy for the 15- to 20-minute drive from the Fernandez residence to the Palmdale station.  SUF ¶ 14.

During their search of the Fernandez residence, Plaintiff informed Deputy Cesar Vilanova that she had taken several of Mr. Fernandez's guns to the home of Carey Moisan, Mr. Fernandez's business partner.  SUF ¶ 19; Logan Decl., Ex. 2 ("Fernandez Depo.") at 40.  The officers procured another search warrant to search Ms. Moisan's home on Sweetwater Drive.  SUF ¶ 20;[2] Logan Decl., Ex. 7 ("Waldron Decl.") ¶ 11. While at Sweetwater, the officers recovered at least 20 additional firearms.  SUF ¶ 22. A few days later, on or about June 20, 2018, nine deputies searched the Fernandez residence again and seized nearly 100 additional firearms.  SUF ¶ 26.  As a result of all three searches, LASD seized 517 pieces of evidence, 493 of which were firearms, ammunition, or firearm parts.  SUF ¶ 30.

Because of CPE's limited capacity, the firearms were processed first at LASD and then again at CPE.  Although the initial expectation was that the Fernandez firearms would be destroyed, LASD received notice in 2019 that the firearms were to be returned to Plaintiff.  SUF ¶ 56.  The custody status was updated in the appropriate systems and the firearms were transferred back to Palmdale station so they could be released to Carol Watson, Plaintiff's designated agent with a Federal Firearms License.  SUF ¶¶ 56, 57.

---

[2] Plaintiff's objection to this fact based on relevance is **OVERRULED**.

In order for Watson to retrieve all 451 firearms, she had to pay a fee of $54 per firearm, totaling $24,354.  SUF ¶ 62.

When Watson began preparing the firearms for auction, she found that many of the firearms were scratched, dented, or otherwise damaged.  SUF ¶ 120.  According to Watson, the firearms could have sold for $43,490 to $47,710 more if they were not damaged.  SUF ¶¶ 120, 121.[3]  Plaintiff herself does not know how much her husband originally spent on the firearms, nor does she have any receipts or evidence of insurance for the firearms.  SUF ¶¶ 64–66.  Other than Watson's opinions about the firearms' diminution in value, Plaintiff does not know the estimated value of the firearms prior to their seizure in June 2018.  SUF ¶ 68.

### III.
### LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine

---

[3] Defendants' objection to these facts based on irrelevance and inadmissibility are **OVERRULED**.  The Court considers Ms. Watson's opinion, but does not accept the conclusory statement that the loss in value was a result of the firearms being in Defendants' custody.

1   "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

2   party." *Liberty Lobby*, 477 U.S. at 248.

3

4           The moving party bears the initial burden of establishing the absence of a genuine

5   dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the

6   moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go

7   beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers

8   to interrogatories, and admissions on file,' designate 'specific facts showing that there

9   is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also*

10  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56

11  requires the parties to set out facts they will be able to prove at trial.").  "In judging

12  evidence at the summary judgment stage, the court does not make credibility

13  determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509

14  F.3d 978, 984 (9th Cir. 2007).  "Rather, it draws all inferences in the light most favorable

15  to the nonmoving party." *Id.*

16

17                                          **V.**
                                    **DISCUSSION**

18

19  **A.      Unreasonable Seizure under the Fourth Amendment**

20          **1.      The County's Unlawful Fee**

21          The Fourth Amendment protects the "right of the people to be secure in their

22  persons, houses, papers, and effects, against unreasonable searches and seizures."  With

23  regard to property, a "seizure" occurs "when there is some meaningful interference with

an individual's possessory interests in that property." *United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)) (quotation marks omitted).  Even if the initial seizure did not violate the Fourth Amendment, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

Here, Plaintiff does not argue that the initial seizure of her late husband's guns violated the Fourth Amendment.  Opp. at 17–18.  Rather, she contends that the violation occurred once her husband passed, and she was required to pay over $24,000 to regain possession of the guns.  *Id.*  Defendants do not dispute that the guns remained "seized" by the County after the death of Mr. Fernandez and until their release.  Thus, the only issue in dispute is whether the $54 flat fee per gun was "unreasonable."

### a.   *Monell* Liability

Local governments and local officials in their official capacities may be sued under section 1983 for monetary, declaratory, or injunctive relief if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).  A plaintiff seeking to establish *Monell* liability must demonstrate that the government "had a

deliberate policy, custom, or practice that was the moving force behind the constitutional violation he suffered." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007). To establish an official custom or policy, a plaintiff must show a constitutional violation under one of three theories:  (1) the employee who caused the alleged harm acted under "an official municipal policy"; (2) the employee acted in keeping with the municipality's "longstanding practice or custom"; or (3) the employee caused the alleged harm through his or her "final policymaking authority."  *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003).

There is no dispute that the challenged administrative fee of $54 per firearm was an official County policy, as adopted by the County Board of Supervisors in 2005.  SUF ¶ 97.  Thus, the County may be held liable under *Monell* if the policy is determined to be in violation of the Constitution.

### b.     Penal Code 33880(a)

California Penal Code section 33880 provides that:

(a)  A [county] may adopt a regulation, ordinance, or resolution imposing a charge *equal to its administrative costs* relating to the seizure, impounding, storage, or release of any firearm, ammunition feeding device, or ammunition.

(b) The fee under subdivision (a) *shall not exceed the actual costs* incurred for the expenses directly related to taking possession of any firearm, ammunition feeding device, or ammunition, storing it, and surrendering possession of it to a licensed firearms dealer or to the owner.

Cal. Penal Code § 33880 (emphasis added).

In support of their argument that the $24,354 fee was reasonable, Defendants submitted thousands of pages of evidence and dedicated much of their briefing to detailing the 800+ hours of work related to seizing, storing, and releasing the 451 firearms. *See* Logan Decl. Ex. 14D. Defendants contend that "the amount actually expended by the Department vastly exceeded the amount assessed" and, in fact, Plaintiff could have been charged between $45,181.88 and $51,903 to recover the firearms. MSJ at 23–24. Plaintiff, on the other hand, argues that the County "trie[d] to pass on the costs of its unreasonably duplicative work," included hundreds of hours of non-administrative work, and inflated the average hourly rate of LASD employees. Opp. at 21.

The parties dispute heavily what costs qualify as "administrative" for the purposes of section 33880, and whether LASD may seek to recoup costs for non-administrative tasks. Defendants include all tasks from the time Waldron received the anonymous tip until the firearms were released to Carol Watson. *See* MSJ at 11–23. Plaintiff argues that many of those hours were spent doing routine law enforcement tasks (e.g., conducting surveillance of the Fernandez home, time spent in Court obtaining the warrants) that were not strictly administrative tasks associated with the seizure, storage, and release of the firearms. Opp. at 18–19.

In support of her argument that the fee was not intended to cover non-administrative tasks, Plaintiff submitted a letter from former Sheriff Baca to the Los

Angeles County Board of Supervisors recommending that the Board adopt the $54 administrative fee. Barvir Decl., Ex. E.[4]  Included in that letter was a breakdown of the tasks associated with the seizure, storage, and release of firearms. *Id.* at 7.  That list of tasks did not include many of the tasks that Defendants included in their calculations. Plaintiff also points to LASD's manual of policy and procedures, which describes the fee as covering "storage/processing."  LASD Manual at 287.

Although the language of section 33880 is somewhat ambiguous insofar as it uses the term "administrative costs" in subdivision (a) and "actual costs" in subdivision (b), the Court finds Plaintiff's interpretation of the statute to be the more accurate one.  First, as a matter of statutory interpretation, subdivision (b) is intended to *limit* the costs allowed under subdivision (a) by stating that "[t]he fee under subdivision (a) *shall not exceed* . . . ."  It would therefore be contrary to subdivision (a)'s definition of a reimbursable charge to hold that subdivision (b) grants counties the authority to pass on costs outside of those that are associated with administrative tasks.  Second, although challenges to administrative fees are often brought in the context of other Amendments, Courts tend to limit fees only to those that stem directly from the administrative costs associated with administering a particular program or statute.  *See, e.g., Cox v. State of N.H.*, 312 U.S. 569, 577 (1941) (explaining that such a fee is lawful to the extent it

---

[4] Defendants object to former-Sheriff Baca's letter on the basis of hearsay and irrelevance.  The Court finds that the letter is relevant, as it states the original purpose of the $54 fee, which is the central issue in this case.  The Court also **OVERRULES** the hearsay objection because it is an admission of an opposing party.  *See* Fed. R. Evid. 801(d)(2).

-12-

"meet[s] the expense incident to the administration of the act."); *Vivid Entertainment, LLC v. Fielding*, 965 F. Supp. 2d 1113, 1131 (C.D. Cal. 2013) (requiring governments to prove that the fees charged merely cover "the costs of administering [the] program.").

Further, the Court agrees with Plaintiff that Defendants miscalculated the average hourly rate of LASD employees when they simply added together the hourly wages of the highest- and lowest-paid Department employees and then divided by two.  MSJ at 23; Opp. at 23.  As Plaintiff points out, this is improper because it assumes that an equal number of the highest-paid employees and the lowest-paid employees worked on the firearms for an equal amount of time.  Opp. at 23.  Neither party suggests that this was the case, nor does the record suggest that it was so.

According to Plaintiff, when only the hourly rates of those who carried out administrative tasks relating to the Fernandez firearms are considered, the appropriate hourly rate is $36.45, and a reasonable total cost to recover the firearms is between $6,378.75 and $7,049.  Opp. at 23.  To arrive at these numbers, Plaintiff analyzed the following records:  (1) the Incident Reports from all three searches, Logan Decl., Exs. 8, 9, 13; (2) the LASD Chain of Custody Report, Logan Decl., Ex. 14B; (3) the Declaration of Anel Frederick regarding LASD's wage and hour records, Logan Decl., Ex. 17; (4) LASD's wage and hour records, Logan Decl., Ex. 17A; and (5) the County's response to Plaintiff's first set of interrogatories, Barvir Decl., Ex. I.  In analyzing these records, Plaintiff determined which LASD employees completed administrative tasks

-13-

pertaining to the firearms, how much they were paid in June 2018, and how many hours were spent on each category of administrative task.  Opp. at 23; Barvir Decl. ¶ 21, fig. A.  The Court finds that a reasonable jury could determine that Plaintiff's method of calculation is the appropriate one and, accordingly, Plaintiff has done enough to raise a triable issue of material fact as to the reasonableness of the fee.

There is a genuine dispute of material fact as to the number of hours expended on the seizure, storage, and release of the Fernandez firearms and the reasonable value of those hours.  Summary judgment is therefore inappropriate because the Court cannot determine at this juncture whether the $24,254 fee was excessive, unlawful under section 33880, and unreasonable under the Fourth Amendment.  Although it is theoretically possible that the amount of work conducted by Defendants justified the $24,354 fee, that is not obvious from the record, and a reasonable jury could find that the fee was unreasonable.

The Court therefore **DENIES** Defendants' motion for summary judgment on Plaintiff's claim against the County for violating the Fourth Amendment by imposing an unlawful fee.

### 2.    The Individual Defendants' Liability Under Section 1983

Under 42 U.S.C. section 1983, a plaintiff may bring a civil action for the deprivation of constitutional rights by an individual acting under color of state law.  42 U.S.C. § 1983; *see Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014) ("Section 1983

creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights.").   The two essential elements of a Section 1983 claim are that the defendant acted under color of law, and his conduct deprived the plaintiff of a constitutional right.  *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011).  Even when a constitutional violation has occurred, however, state officers are entitled to qualified immunity from a Section 1983 action unless the unlawfulness of their conduct was "clearly established" at the time.  *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).

### a.    Color of Law

It is undisputed that Defendants Waldron and Roth were acting under the color of law when they allegedly damaged Mr. Fernandez's guns, so the Court's analysis will address solely the existence of a constitutional violation and, where applicable, whether qualified immunity applies.

### b.    Deprivation of Constitutional Right

Unjustified damage to property has long been established to violate the Fourth Amendment.  "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be secure in their effects as does the physical taking of them." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) (internal brackets, citation, and quotation marks omitted). Nonetheless, "the destruction of property during a search does not necessarily violate

the Fourth Amendment" because "officers executing a search warrant occasionally must damage property in order to perform their duty." *Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000).  "Rather, only unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment."  *Id.* (citing *Liston v. Cnty. of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997)).

Plaintiff alleges that Waldron and Roth violated section 1983 when they caused unjustified damage to the firearms, therefore infringing on Plaintiff's Fourth Amendment rights.  FAC ¶¶ 11–19; 52–57; 60; Opp. at 28.  When Carol Watson retrieved the firearms from LASD, she noted that many of the guns were scratched, dented, or damaged in other ways.  Declaration of Carol Watson ("Watson Decl."), Ex. D. at 11.[5]  Based on her own research and her expertise in the field, Watson estimated that the damage decreased the value of the firearms by $43,490 to $47,710.  *Id.*  Because Plaintiff recalled her husband storing the firearms carefully while he was alive, she alleges that Defendants must have caused the damage.  Opp. at 10; Fernandez Depo. at 37.

Although it is certainly possible that Defendants caused *some* damage to the firearms during seizure, transport, and booking, even drawing all inferences in the light most favorable to Plaintiff, the Court cannot conclude that Defendants caused an

---

[5] Defendants object to the entirety of Watson's declaration based on Federal Rules of Evidence 401–403, 601, and 602.  The Court **OVERRULES** these objections at this stage.  *See* Fed. R. Civ. P. 56(c)(1)(B); *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (allowing inadmissible evidence on summary judgment if its contents would likely be admissible at trial).

*unjustified* amount of damage. Both sides have submitted pictures of the seized guns piled into the bed of Defendants' pickup truck and laid out in a covered concrete area outside of the LASD station. Logan Decl., Ex. 5. Plaintiff correctly points out that this was a contravention of LASD's normal policy to place the firearms in cardboard boxes or manila envelopes. LASD Manual at 243. It is also the case, however, that the seizure of the firearms was an anomaly for LASD—Defendant Waldron stated that the second largest seizure of firearms in his career was of approximately 15 firearms. Waldron Depo. at 57. Given the extraordinary size of the seizure and the fact that CPE did not have the capacity to immediately process the guns as it normally would, the Court finds that any amount of damage to the guns as a result of being piled in the truck or laid out at the station cannot be deemed unjustified. Moreover, it is undisputed that at the time of the seizure, the firearms were contraband.

Further, Plaintiff has offered no admissible evidence of the condition of the firearms prior to seizure. Although she has declared that she remembers her husband keeping the guns in boxes and/or wrapped in towels or blankets, she admitted in her deposition that she knew very little else about the guns (e.g., whether they were purchased new or used, how the guns were organized, how much the guns were worth, whether the guns were insured). Fernandez Depo. at 34–35. Without any admissible evidence regarding the pristine condition of the firearms prior to seizure, the Court

cannot determine whether Defendants damaged the firearms and, if they did, whether it was "unjustified."

Accordingly, the Court concludes that Plaintiff has failed to raise a genuine dispute of material fact as to the amount of damage Defendants Waldron and Roth caused to the firearms during the initial seizures.  The Court therefore **GRANTS** Defendants' motion for summary judgment on Plaintiffs claims against the Individual Defendants for violations of the Fourth Amendment.

### c.   Qualified Immunity

Because the Court finds that the Individual Defendants did not deprive Plaintiff of any constitutional right, it need not analyze whether Waldron and Roth would be entitled to qualified immunity.

## B.   Negligence

Under California law, a claim of negligence requires:  (1) a legal duty of care; (2) a breach of that duty; (3) causation; and (4) damages. *See Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917–18 (1996).  Here, Defendants do not dispute that they owed a duty of care to Plaintiff.  Rather, Defendants argue that neither the County nor the Individual Defendants breached that duty.

Because the Court has already found that Plaintiff has failed to demonstrate a triable issue of fact as to whether Waldron and Roth caused unjustified damage to Plaintiff's firearms, the Court concludes that they did not breach their duty of care to

Plaintiff, for the same reasons as expressed above.  Further, Plaintiff's negligence claim against the County arises solely from the damage to the firearms, and not from the County's imposition of an unlawful fee.  Opp. at 30; FAC ¶¶ 116–21.  Since Plaintiff's claim against Waldron and Roth for negligence fails, the County has no vicarious liability for negligence.

The Court thus **GRANTS** Defendants' motion for summary judgment on Plaintiff's state law claim for negligence in its entirety.

## C.     Trespass to Chattels

"[T]he tort of trespass to chattels allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion, and so to compel the defendant to pay the full value of the thing with which he has interfered.'" *See, e.g.*, *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350 (2003) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 14 (5th Ed. 1983)).  Here, Plaintiff has withdrawn her trespass to chattels claim based on the County's fee.  Plaintiff only pursues the claim based on her argument that the County, through its employees, "intentionally interfered" with her interest in the firearms when Defendants allegedly damaged the firearms.  Again, because Plaintiff has not submitted any evidence pertaining to the condition of the firearms prior to their seizure, there is no genuine dispute as to whether Defendants caused the damage.  The Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's state law trespass to chattels claim.

**D.      Breach of Constructive or "Involuntary" Bailment**[6]

A bailment is the "delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose."   Black's Law Dictionary 169 (10th ed. 2014).   A bailee typically has a legal duty to keep the items safe, as determined either by an express agreement or as implied by the parties' conduct. Bailments may therefore be voluntary or involuntary.   *Gebert v. Yank*, 172 Cal. App. 3d 544, 551 (1985).

As with Plaintiff's other state law claims, her breach of constructive bailment pertains only to Defendants' purported damage to the firearms.   Thus, for the same reasons the Court has already described, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's breach of constructive bailment claim.

**E.      Remaining Claims for Declaratory Relief and Punitive Damages**

According to Plaintiff, since her Fourth Amendment claim survives in part, "then her declaratory relief claim necessarily survives as well."   Opp. at 38.   Inasmuch as Plaintiff's "declaratory relief claim" is derivative of her remaining Fourth Amendment claim, the Court finds that it is duplicative of the Section 1983 claim and dismisses it to the extent that it was intended to be a free-standing cause of action.   *See supra* Part V.A;

---

[6] In her Opposition, Plaintiff asserts that Defendants only addressed whether "traditional bailment" occurred in this case and, therefore, waived any argument against a constructive bailment. Opp. at 36–37.   This is not so.   In their MSJ, Defendants address both traditional and constructive bailment.   As such, the Court will address both sides' arguments regarding this claim.

*see, e.g., Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) (explaining that declaratory relief is a remedy and not a separate cause of action).

Lastly, as Plaintiff has agreed to waive her claim for punitive damages, the Court **DISMISSES** that claim.

## VI.
## CONCLUSION

In light of the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendants' motion for summary judgment. The Court **DENIES** Defendants' MSJ as to Plaintiff's claim against the County for violating the Fourth Amendment by imposing an unreasonable fee. The Court **GRANTS** Defendants' MSJ as to Plaintiff's Fourth Amendment claim against the Individual Defendants and Plaintiff's state law claims against both the County and the Individual Defendants. Individual Defendants Waldron and Roth are hereby **DISMISSED** from this action. The claims for declaratory relief and punitive damages are also dismissed.

**IT IS SO ORDERED.**

DATED: May 10, 2024

_Dolly M. Gee_
DOLLY M. GEE
CHIEF UNITED STATES DISTRICT JUDGE